NILDA GUTIERREZ, LINDA MORGAN and COURTNEY JENKINS,
Individually and as Class Representatives, Plaintiffs, v. JOHNSON & JOHNSON,
Inc., Defendant.

Civil Action No.: 01-5302 (WHW)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2002 U.S. Dist. LEXIS 15418

August 12, 2002, Decided
August 13, 2002, Filed; August 15, 2002, Entered

**DISPOSITION:** [*1] Defendant's motion for a protective order was denied.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For NICHOLAS H. POLITAN, special master: NICHOLAS H. POLITAN, CARELLA, BYRN, BAIN, GILLFILLAN & STEWART, ROSELAND, NJ.

For NILDA GUITIERREZ, LINDA MORGAN, plaintiffs: BENNET DANN ZUROFSKY, REITMAN & PARSONNET, NEWARK, NJ.

For JOHNSON & JOHNSON, defendant: FRANCIS X. DEE, CARPENTER, BENNETT & MORRISSEY, ESQS., NEWARK, NJ.

For JOHNSON & JOHNSON, defendant: THEODORE V. WELLS, JR., PAUL, WEISS, RIFKIND, WHARTON & GARRISON Esqs., NEW YORK, NY.

**JUDGES:** Honorable Nicholas H. Politan, U.S.D.J., ret., SPECIAL MASTER.

**OPINIONBY:** Nicholas H. Politan

**OPINION:**

Opinion & Order

Honorable Nicholas H. Politan, U.S.D.J., ret., SPECIAL MASTER

This matter is before the Special Master on a motion for a protective order filed by defendants Johnson & Johnson ("J&J" or "defendant"). Plaintiff's, Nilda Gutierrez ("Gutierrez"), Linda Morgan ("Morgan") and Courtney Jenkins ("Jenkins")(collectively "plaintiffs") filed opposition to the motion. On May 29, 2002, a hearing on the motion for the protective order was held before the Special Master. Thereafter, supplemental briefs were submitted by the parties. For the reasons that follow, the motion [*2] for a protective order is denied in its entirety.

Statement of Facts and Procedural History n1

n1 The statement of facts and procedural history is taken from the Complaint, the Answer; the first Amended Complaint, and the parties papers in support of and in opposition to the motion for a protective order filed by defendants.

Plaintiffs Gutierrez and Morgan filed a putative class action in the United States District Court for the District of New Jersey, on November 15, 2001. Gutierrez and Morgan seek to represent a class of over 1000 persons of African or Hispanic descent who were employed, either presently or in the past, by the defendant J & J. Defendant is a manufacturer of health care products and has more than 195 operating companies in 51 countries worldwide, of these, defendant has 32 operating companies in eleven states throughout the United States.

Case 3:02-cv-01454-RNC   Document 69-3   Filed 04/13/2004   Page 2 of 6

Page 2
2002 U.S. Dist. LEXIS 14*4

Plaintiff Gutierrez is a Hispanic-American. She was employed by Johnson & Johnson Services, Inc., in New Brunswick, New Jersey, as a recruiting consultant. [*3] Gutierrez's position was an entry level administrative position in the recruiting division. Subsequent to the filing of the Complaint, on March 18, 2002, Gutierrez resigned from her employment with Johnson & Johnson Services. Gutierrez claims that she was subject to national origin discrimination by defendants with respect to compensation. Gutierrez further alleges that she was denied certain salary increases and bonuses as a result of allegedly discriminatory performance evaluations.

Plaintiff Morgan is an African American. She is employed by Ethicon, Inc., in Somerville, New Jersey, in a mid-level managerial position. Morgan was a Managing Buyer in the Materials Management Division of Ethicon. Morgan alleges that she was denied promotion opportunities because of her race. Specifically, Morgan alleges that Ethicon failed to promote her to the position of Director of Purchasing, transportation and Distribution in February 2001. Morgan alleges that although she expressed an interest in the position to her former director, she was neither interviewed nor hired for the position which she sought. Morgan further alleges that her qualifications for the Director of Purchasing position equaled [*4] or exceeded those of the five individuals who were interviewed for the position.

In their complaint, Gutierrez and Morgan alleged that certain of J&J's compensation and promotion policies, practices and procedures violated plaintiff's civil rights. On May 3, 2002, plaintiffs sought leave to amend their complaint to include claims of disparate impact and disparate treatment under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e*, et seq. n2 The May 3, 2002 motion further sought leave to amend the complaint to add a third named plaintiff, Courtney Jenkins n3. Leave to amend the complaint was granted on May 17, 2002.

   n2 Plaintiff already alleged these theories under the New Jersey Law Against Discrimination; and were awaiting a "Right to Sue" letter from the United States Equal Opportunity Employment Commission in order to bring their federal claims.

   n3 Leave to amend to include Jenkins as a named plaintiff was not granted until after the motion for the protective order was filed, consequently, the parties did not address the existence of Jenkins' claims and work unit in their papers until later in the briefing process. For ease of reading and to prevent confusion of the record, any later made arguments with respect to Jenkins' work unit and claims are not specifically referenced in this opinion. The opinion should be read to encompass the claims of Jenkins, as well.

[*5]
The gravamen of plaintiff's complaint is that J&J's policies, practices, and procedures resulted in salaried employees of African or Hispanic descent failing to achieve the compensation levels or promotion rates of comparable white colleagues. J&J has denied any such practices, procedures or policies.

According to the Complaint, discrimination occurs not at the direction of any centralized authority or policy, but rather because too much discretion is granted to managers at the local level, some of whom allegedly make discriminatory compensation and promotion decisions. Plaintiff's theory of class wide discrimination is that decentralized and subjective decision-making permits individual managers at the local level to make discriminatory decisions.

Discussion

Pursuant to the Federal Rules of Civil Procedure, plaintiff's served upon defendants certain discovery requests, which form the basis of this motion. Specifically at issue are four Rule 30(b)(6) deposition notices and a request for documents which sought information with respect to: the scope, content and application of policies, practices and procedures described in the complaint; any information regarding J&J's equal [*6] employment opportunity performance under those policies, practices and procedures; whatever centralized data J&J maintains related to compensation and promotion; and what role, if any, J&J's Board of Directors has played in monitoring or overseeing J&J's equal employment performance. In response to the above requests, J&J filed the instant motion for a protective order.

In support of their motion, Defendants argue that the discovery sought by plaintiffs is burdensome and far reaching. Defendant further argues that the Special Master should permit discovery in a staged approach, first allowing discovery at those entities in which plaintiffs were employed; and then, if that discovery evidences some sort of discriminatory intent or impact, discovery should be expanded to include other corporate entities of defendant. Plaintiffs argue that they are entitled to company wide discovery for the following reasons:

> 1. Defendant's credo, which is referenced in the complaint, is a company-wide policy, applicable to all J&J employees,

no matter where in the company or country they work;

2. Defendant's human resources function is intentionally highly centralized; and,

3. Policy [*7] regarding how employees who work at any domestic Operating Company should be compensated, and how internal and external hiring decisions are handled, is set by corporate headquarters and disseminated throughout the company.

Plaintiff's further argue that defendant's motion should be denied as it is procedurally and substantively deficient.

Pursuant to *Fed. R. Civ. P. 26(c)*, a Court, "upon good cause shown ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In the Third Circuit, the "good cause shown" language is no mere formality; rather,

> Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. *Publicker Indus., Inc., v. Cohen, 733 F.2d 1059, 1071 (3d. Cir. 1984)*. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing. *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d. Cir. 1986)*, cert. denied, *484 U.S. 976, 98 L. Ed. 2d 485, 108 S. Ct. 487 (1987)*. [*8] The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order. *785 F.2d at 1122*.

*Morton v. F.H. Paschen, Inc., 1998 U.S. Dist. LEXIS 228, 1998 WL 13270 (E.D.Pa.1998)*

A party seeking a protective order bears the burden of proving that good cause exists to limit or foreclose discovery. See *Fed. R. Civ. P. 26(c)*: see also, 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2035 (West 1994) ("Wright & Miller"). The Third Circuit requires that a party seeking a protective order show a specific factual basis for the order. See *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121(3d. Cir. 1986)*("broad allegations of harm, unsubstantiated by specific examples and articulated reasoning, do not satisfy the Rule 26(c) test ..."). Indeed, that absence of a specific factual basis is fatal to a motion for a protective order. See e.g., *Nestle Foods Corp v. Aetna Casualty & Surety Co., 129 F.R.D. 483, 485 (D.N.J. 1990)*.

When a protective order is sought to prevent a deposition, a heightened showing [*9] is required. Indeed, absent extraordinary circumstances, it is an error for a court to prevent the taking of a deposition. See In re Arthur Treacher's Franchisee *Litigation, 92 F.R.D. 429, 437 (E.D.Pa. 1981)* (citing *Salter v. Upjohn Co., 593 F.2d 649 (5th Cir. 1979))*.

*Federal Rule of Civil Procedure 26* governs the taking of discovery. Pursuant to Rule 26(b)(1) a party "may obtain⋅ discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." It is axiomatic that Rule 26 grants wide latitude to a party seeking discovery. The purpose of the modern discovery rules is to allow the parties to obtain the fullest possible knowledge of the issues and facts before trial. See *Young v. Lukens Steel Co., 1994 U.S. Dist. LEXIS 1462, 1994 WL 45156 (E.D.Pa.1994)* (citing *Grinnell Corp. v. Hackett, 70 F.R.D. 326 (D.R.I. 1976))*. The modern discovery rules mandate a liberality in the scope of discoverable material. Both parties should be provided with information essential to proper litigation on all of the relevant facts. See Id. (citing *Mallinckrodt Chemical Works v. Goldman Sachs & Co., 58 F.R.D. 348 (S.D.N.Y. 1973))*. [*10]

Although the scope of discovery is broad, it is not unlimited. Discovery is not permitted where the discovery sought is irrelevant to the claims at issue, where the requests were tendered in bad faith, or where the requests are unduly burdensome. See Id. (citing *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inv., 103 F.R.D. 635 (D.Mass. 1984))*. The party resisting production of discovery bears the burden of establishing lack of relevancy or undue burden. See Id. (citing *Flora v. Hamilton, 81 F.R.D. 576 (M.D.N.C. 1978))*. The party resisting production of discovery must demonstrate to the Court that the requested documents either do not come within the broad scope of relevance as defined in *Fed.R.Civ.P. 26(b)(1)* or else that they are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. See Id. (quoting *Burke v. New York City Police Department, 115 F.R.D. 220, 224 (S.D.N.Y. 1987))*.

In employment discrimination cases, Courts generally grant wide latitude to a plaintiff or plaintiffs who seek to conduct company wide discovery. [*11] See e.g., *Hollander v. American Cyanamid, 895 F.2d 80 (2d Cir. 1990); Diaz v. American Tel. & Tel., 752*

F.2d 1356 (9th Cir. 1985); Lineen v. Metcalf & Eddy, Inc., 1997 U.S. Dist. LEXIS 1767, 1997 WL 73763 (S.D.N.Y. 1997); Lyoch v. Anheuser-Busch Companies, Inc., 164 F.R.D. 62 (E.D. Mo. 1995); Avillan v. Digital Equipment Corp., 1994 U.S. Dist. LEXIS 6454, 1994 WL 198771 (S.D.N.Y.1994); Runyan v. Sybase, Inc., 1993 U.S. Dist. LEXIS 13425, 1993 WL 377062 (E.D.Pa.1993); Barnhart v. Safeway Stores, Inc., 1992 U.S. Dist. LEXIS 22572, 1992 WL 443561 (E.D.Cal.1992); Shannon v. Hess Oil Virgin Islands Corp., 96 F.R.D. 236 (D.V.I 1982); Flanagan v. Travelers Insurance Co., 111 F.R.D. 42 (W.D.N.Y. 1986); Canty v. Philip Morris USA, 18 F.E.P. Cases 86 (E.D.Pa. 1978).

The relevant issue for many Courts in considering whether to allow company-wide or otherwise expanded discovery is the extent to which the case involves a common employment policy or practice. See, e.g., Runyan v. Sybase, Inc., 1993 U.S. Dist. LEXIS 13425, 1993 WL 377062 (E.D. Pa.1993) (permitting discovery of statistical data regarding employees [*12] outside the plaintiffs work unit in an individual age discrimination case); Flanagan v. Travelers Insurance Co., 111 F.R.D. 42 (W.D.N.Y. 1986) (rejecting the defendant's attempt to limit the scope of discovery to the plaintiff's work unit and job classification in an individual case).

Defendant argues that it is entitled to a protective order, because the named plaintiffs are employed by two discrete corporate entities, namely Johnson & Johnson Services, Inc. and Ethicon, Inc. Defendant proposes that the Court adopt a staged approach to discovery, wherein plaintiffs are first permitted discovery with respect to the companies at which the named plaintiffs were employed, and thereafter, if warranted, discovery with respect to companies which did not employ the named plaintiffs. J & J proposes that discovery should address whether there is any connection between the challenged employment decisions affecting the two named plaintiffs and the hundreds of decisions affecting the other employees at Johnson & Johnson Services, Inc. and Ethicon, Inc. whom plaintiffs seek to represent. Specifically, J &J argues that discovery should address the immediate scope of the class claims [*13] potentially defined by the named plaintiffs' own claims: compensation claims by Hispanic Business-Finance Professionals at Johnson & Johnson Services, Inc., and promotion claims by African American Officials and Managers at Ethicon, Inc. Once such discovery has been completed, J & J argues, the Court could then evaluate whether or to what extent broader discovery might be appropriate.

Plaintiffs argue that such an approach will result in an unacceptable gerrymandering of the data set. Plaintiffs further argue that often a pattern of discrimination will only be apparent when enough data is analyzed and that because of the concept of statistical power, "disaggregating" of data by business unit, type of job, or other fragments may serve only to mask violations of the law that actually exist.

The Special Master agrees with Plaintiffs' position. Defendant's approach will artificially limit the data available to plaintiffs. Such a limitation is "an unacceptable statistical procedure to turn a large sample into a small one by arbitrarily excluding observations." Washington v. Elec. Joint Appren. & Train. Comm., 845 F.2d 710, 713 (7th Cir. 1988). Indeed, all things being [*14] equal, large samples are more reliable than small ones. See Id. Permitting a broader range of discovery, as advocated by plaintiffs, will present a more complete and reliable picture of the effects of J & J's practices. See, e.g., Smith v. Xerox Corp., 196 F.3d 358, 369 (2d Cir. 1999); Eldredge v. Carpenters 46 N. Cal Counties Joint Appren. & Train. Comm., 833 F.2d 1334, 1339 n.7 (9th Cir. 1987); Cook v. Boorstin, 246 U.S. App. D.C. 201, 763 F.2d 1462, 1468-69 (D.C. Cir. 1985); Ezell v. Mobile Housing Bd., 709 F.2d 1376, 1382 (11th Cir. 1983); Capaci v. Katz and Besthoff Inc., 711 F.2d 647, 654 (5th Cir. 1983); Winfield v. St .Joe Paper Co., No. MCA 76-28- MMP, 58 FEP Cases 1863, 1985 WL 308 at *11 (N.D. Fla. Aug. 5, 1985).

Moreover, all parties will benefit from a broad examination of the data. First and foremost, the Court, when asked to rule on class certification, will have the necessary data before it to determine if the requirements of Fed.R.Civ.P. 23(a) are met. n4 Plaintiffs will be able to adequately determine whether there is evidence of discrimination. Defendant, if no [*15] such discrimination pattern is found, will be able to point to a concrete statistical analysis and assert that J & J does not engage in a pattern or practice of discrimination. Further, plaintiffs' approach promotes expedient litigation and conserves judicial resources; for if the Special Master were to adopt J&J's approach to discovery, the parties will find themselves before the Court again and again, each time a data set was analyzed.

---

n4 Fed. R.Civ. P. 23(a) requires a Court to examine numerosity; commonality; typicality and adequateness, when determining a motion for class certification.

---

Additionally, it would be improper to limit the scope of discovery on the basis that class certification is untenable at this stage of the litigation. As discussed, supra, the legal standard for a protective order requires an assessment of the actual harm posed by the requested discovery. The question of whether or not a class may be certified is not a basis to deny discovery. The question of

class certification is a [*16] different and distinct analysis, one usually made after discovery. See *Abdallah v. The Coca-Cola Company*, 1999 WL 527835 (N.D. Ga., July 16, 1999) (the shape and form of a class action evolves only through the process of discovery, and it is premature to draw a conclusion as to class certification before the claim has taken form); see also, *Dillon v. Bay City Construction Co. Inc.*, 512 F.2d 801, 804 (5th Cir. 1975); *Miller v. Baltimore Gas & Elec. Co.*, 202 F.R.D. 195, (D. Md. 2001) (denying motion to dismiss class claims because plaintiffs had not had the opportunity to obtain discovery).

*Fed.R.Civ.P.23 (c)(1)* provides that a determination of class certification must be made as soon as practicable. In the Third Circuit, "as soon as practicable" is not synonymous with at the onset of the litigation; such a determination should be made "at a time when the trial court has had adequate opportunity to acquaint itself with the case and the complexities likely to be encountered in its disposition." *Link v. Mercedes-Benz of N.A., Inc.*, 550 F.2d 860, 864 (3d Cir. 1977); see also, *Salter v. Philadelphia Housing Authority*, 1999 U.S. Dist. LEXIS 16960, 1999 WL 997758 [*17] (E.D. Pa.1999).

Only the most unusual circumstances will justify withholding class discovery. In those instances where the information concerning pertinent facts, such as the hiring, compensation or promotion statistics, are exclusively in the control of the defendant, class action allegations should not be struck until the plaintiffs have had an opportunity to conduct discovery, unless the class claims are patently frivolous. See 5 Newborn and Conte, Newberg on Class Actions § 24.80 (3d ed.1992).

From the record before the Special Master, it is not clear the plaintiffs' claims are patently frivolous. Plaintiffs have alleged disparate impact claims under state and federal law. While not patently frivolous, whether plaintiffs' claims will ultimately support class certification or survive a motion for summary judgment is a question for future consideration. Alternatively, should defendant believe that the appropriate time to answer these questions is prior to the commencement of discovery, a motion to dismiss would be a more appropriate vehicle to challenge the ability of plaintiffs to succeed in this matter.

There is no question that challenges to subjective employment [*18] practices may be appropriate cases for class certification. Disparate impact claims do not require proof of intent. See *Green v. USX Corp.*, 843 F.2d 1511, 1525 (3d. Cir. 1988) Indeed in Green, the Third Circuit opined:

Although we recognize the reasonableness of an employer's use of subjective criteria to help make hiring or promotion decisions, nothing in the Supreme Court's analysis in Griggs, or that we can find in Title VII, suggests that these criteria should be insulated from scrutiny under impact analysis ... We are not persuaded that there is a well-reasoned distinction between objective criteria that present barriers to employment opportunities for blacks, and subjective criteria that lead to the same results, that requires us to circumscribe the use of the tool that the Supreme Court has ' provided to combat such discrimination ... we cannot conclude that application of disparate treatment analysis, and its requirement that plaintiffs demonstrate an intent to discriminate, is the only proper method of scrutinizing subjective criteria ... [Otherwise] an employer could use a wide range of criteria during an interview or on a recommendation [*19] form without ever articulating these criteria clearly or, more importantly, without validating their necessity to the selection procedure ... We cannot believe it was the intent of Congress to allow unarticulated biases or unconscious prejudices to result in discriminatory hiring practices merely because they appear in the form of an unsupervised interview.

Id. (internal citations omitted) Plaintiffs have sufficiently plead a disparate impact theory in their complaint, and that is all that is required at this stage to permit discovery to proceed.

As its final argument, J & J postures that plaintiffs' requests are unduly burdensome, and thus a protective order is warranted. Specifically, J & J argues that the burden of identifying, collecting, reviewing, copying and producing the requested documents for at least 34 different entities, which operate out of approximately 65 offices and facilities located in the United States would be oppressive. J & J further argues that the 34 different entities do not have uniform practices for maintaining their documents and do not maintain them in centralized locations. J&J argues that there are hundreds of thousands of boxes stored off-site [*20] by these various companies and that the off-site records are not indexed in a detailed way. J & J estimates that it would take, at the very least, several months and cost millions of dollars to complete a company by company, facility by facility,

department by department and manager by manager search to retrieve, review, and produce the requested material. In addition to the costs associated with locating and copying the material, J & J argues that its legal team would then be required to review and analyze all of the raw data and conduct massive factual investigations at the various entitles to understand the facts that underlie the data. Such an undertaking, defendant argues, is unduly burdensome, especially in light of its position that the class action is untenable.

Plaintiffs counter that their requests did not seek data from the 34 individual operating units, only documents that related to those units and were stored at Johnson & Johnson Headquarters in New Brunswick, New Jersey. Consequently plaintiff argues that its request is not unduly burdensome, as it relates to documents and data centrally located. Once plaintiff pointed this limitation out to defendant, defendant substantially [*21] withdrew this portion of its objection to the production. n5

> n5 It is worth noting, without making a federal case out of the matter, that the parties could have conserved considerable judicial resources had they conferred prior to the filing of the motion for the protective order, as required under *Fed.R.Civ.P. 26(c)*. Indeed, the purpose of the conference requirement of the rule is to avoid situations such as this.

Defendant continues to argue, however, that discovery about the 34 operating companies, regardless of whether stored at J&J headquarters in New Brunswick or at various locations nationwide remains unduly burdensome. Defendant's argument was much more compelling when it related to data stored nationwide. The burdensomeness of retrieving documents stored at headquarters is significantly less than that which required a nationwide scouting expedition.

The party resisting production of discovery bears the burden of establishing lack of relevancy or undue burden. See Id. (citing *Flora v. Hamilton, 81 F.R.D. 576 (M.D.N.C. 1978))*. [*22] The party resisting production of discovery must demonstrate to the Court that the requested documents either do not come within the broad scope of relevance as defined in *Fed.R.Civ.P. 26(b)(1)* or else that they are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. See Id. (quoting *Burke v. New York City Police Department, 115 F.R.D. 220, 224 (S.D.N.Y. 1987))*. This burden has not been met by J&J.

Plaintiffs' requests are tailored to documents and other things that concern the existence of common employment policies and practices promulgated or approved by defendant. Such documents are clearly relevant to the issue of whether defendant engaged in a pattern of discrimination. Such documents fall squarely within the broad definition of relevance as defined in *Fed.R.Civ.P. 26*. Plaintiffs have brought a class action against Johnson & Johnson, Inc., not against Ethicon, Inc. and/ or Johnson & Johnson Services, Inc. It bears repeating that the defendant in this matter is the parent company, Johnson & Johnson, Inc., and that what is at issue are policies, practices and procedures [*23] implemented by, or at the direction of, or in the absence of any direction whatsoever, from, the parent company Johnson & Johnson, Inc;. Therefore documents in the possession of the named defendant are relevant, absent a clear and convincing showing to the contrary. This is especially true when, as is the case here, the documents requested are centrally maintained by the parent company. Consequently, to prevent their discovery, J & J must do more than argue that to compile and produce them would be burdensome, it must convince the undersigned that this burden is so great that it outweighs the ordinary presumption in favor of discovery. While it may be time consuming for defendant and its counsel to review the documents and other matters requested, it would be error, on the record before the Special Master, to grant the protective order.

CONCLUSION

For the foregoing reasons, defendant's Motion for a Protective Order is denied.

SO ORDERED

Dated: August 12, 2002.

NICHOLAS H. POLITAN

SPECIAL MASTER