Westlaw.

Not Reported in F.Supp.2d  
(Cite as: 2002 WL 1967023 (S.D.N.Y.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Andrew TOTTENHAM, Plaintiff,  
v.  
TRANS WORLD GAMING CORPORATION,  
a/k/a: Trans World Corporation, Defendant.

No. 00 Civ. 7697(WK).

June 21, 2002.

Former chief executive officer (CEO) sued corporation, alleging wrongful termination. Corporation counterclaimed for unjust enrichment, conversion, and breach of fiduciary duties. Corporation moved for discovery order requiring production of former CEO's expenses for four and one=half year period. The District Court, Knapp, Senior District Judge, held that lack of evidence of defalcations on part of former CEO precluded discovery request, other than discovery relating to two instances of alleged private use of corporate funds.

Order accordingly.

**Federal Civil Procedure** ⚷1588

170Ak1588 Most Cited Cases

Evidence that former chief executive officer used corporation's funds to purchase one share of stock in another corporation, without authorization, and to pay insurance premium on wife's automobile, was insufficient support for discovery request of all records of expenses paid by former officer for period of four and one half years, to determine if defalcation of corporate funds took place. Fed. Rules Civ. Proc., Rule 26(b)(1).

David M. Fish, Rosen, Leff, Hempstead, NY, for Plaintiff.

Daniel P. Goldberg, White & Case, LLP, New York, NY, for Defendant.

*ORDER*

KNAPP, Senior J.

*1 In 1996, Defendant Trans World Gaming Corporation (hereinafter the "Defendant" or "TWG") hired Plaintiff Andrew Tottenham (hereinafter the "Plaintiff" or "Tottenham") as its President and Chief Executive Officer ("CEO"). On June 16, 2000, the Defendant terminated the Plaintiff and, consequently, he initiated these legal proceedings against the company. In responding to the Plaintiff's Second Amended Complaint, the Defendant asserted counterclaims against the Plaintiff for unjust enrichment, conversion, and the breach of fiduciary duties. The latter claim was premised on the Plaintiff's conduct while he was employed as the Defendant's President and CEO. During that time period, TWG contends that the Plaintiff used TWG's funds to purchase one share of stock in another company for his own personal benefit without the authorization or knowledge of TWG's board of directors. The Defendant further alleges that the Plaintiff also used its funds to pay for his own personal expenses, such as his wife's automobile insurance.

The Defendant now asserts that "if Tottenham used company money to pay for his personal insurance needs, he may well have used company money to pay other personal expenses." June 17, 2002 Daniel P. Goldberg Letter at 2 (hereinafter the "Goldberg Letter"). Since TWG contends that "[t]he only way TWG can make this determination is to obtain discovery from Tottenham," it propounded requests for the following documents: (a) "[a]ll documents concerning any expense or obligation paid by or on behalf of Tottenham or Tottenham's wife from January 1, 1996 up to and including June 16, 2000, including documents sufficient to show the source of funds used to pay such expenses or obligations;" and (b) "[a]ll documents concerning Tottenham's finances from January 1, 1996 up to and including June 16, 2000, including tax returns for tax years

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 1967023 (S.D.N.Y.))

Page 2

1996 through 2000, inclusive, financial statements, checkbooks, bankbooks, bank statements, and investment account statements." Goldberg Letter at 2. The Plaintiff, however, refuses to produce such documents on the grounds that the Defendant "has not offered a scintilla of proof that 'Tottenham defalcated TWG's funds by using company money to pay personal expenses." ' June 17, 2002 David M. Fish Letter at 1 (hereinafter the "Fish Letter"). Since the parties were unable to resolve this discovery dispute, the Defendant has asked this Court to direct the Plaintiff to produce the foregoing documents.

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). In accordance with this generous standard, a party may obtain discovery regarding any matter that is relevant to the parties' claims if it appears reasonably calculated to lead to the discovery of admissible evidence. *See* Fed.R.Civ.P. 26(b)(1). *See also Weber v. Multimedia Entertainment, Inc.* (S.D.N.Y. Nov.24, 1997) 1997 WL 729039, *1.

*2 "Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *Cleveland-Goins v. City of New York* (S.D.N.Y. Aug.30, 1999) 1999 WL 673343, *2. At a conference addressing this discovery dispute conducted via telephone on June 19, 2002, this Court inquired as to the support underlying the Defendant's allegations. The Defendant's counsel informed us that the Defendant's own records indicated that the Plaintiff had used company funds to pay for his wife's automobile insurance. June 19, 2002 Tr. at 2-3. In addition, both parties agreed that the Plaintiff used the Defendant's funds to purchase a share of stock in another company (although the Plaintiff contends that he was entitled to that share). *Id.* However, the Defendant provided no further information which would support that the Plaintiff purportedly misused company funds on other specific occasions.

Discovery requests cannot be based on pure speculation or conjecture. *Surles v. Air France* (S.D.N.Y. July 19, 2001) 2001 WL 815522, *4. Here, although the Answer contains allegations with respect to specific instances of defalcation (namely the Plaintiff's alleged misuse of company funds to purchase stock and to pay for his wife's automobile insurance), the Defendant's document requests constitute no more than a fishing expedition to discover additional instances of wrongdoing beyond those already alleged in the Answer. We will not condone such a fishing expedition on the mere speculation that the Plaintiff "may well have used company money to pay other personal expenses," *see* Goldberg Letter at 2, where the Defendant has not offered any objective support for that contention. *See United States v. Consolidated Edison Co. of New York* (E.D.N.Y. Dec.15, 1988) 1988 WL 138275, *1-*2 (denying motion to compel where the requested discovery constituted no more than a fishing expedition by the plaintiff to discover additional violations beyond those alleged in the complaint).

Since the Defendant indicated that there is objective support for its allegation that the Plaintiff breached his fiduciary duties by using the company's money to pay for his wife's automobile insurance and to purchase a share of stock in another company, the Defendant may propound document requests which seek information relating to these allegations. However, for the aforementioned reasons, we will not grant the Defendant's broad request for *all* documents "concerning any expense or obligation paid by or on behalf of Tottenham or Tottenham's wife from January 1, 1996 up to an including June 16, 2000," or for all documents "concerning Tottenham's finances from January 1, 1996 up to and including June 16, 2000." If the Defendant acquires some modicum of objective support (for example, by relying as it already has on company records) for its contention that the Plaintiff may have used company funds to pay personal expenses on other occasions, then the Defendant may also propound discovery requests for information related to those other specific instances of defalcation.

*3 SO ORDERED.

2002 WL 1967023 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works