Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
(Cite as: 2003 WL 21488058 (S.D.N.Y.))

C
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

TUDOR INSURANCE COMPANY, Plaintiff,
v.
MCKENNA ASSOCIATES and Edward Joyce,
Defendants.
MCKENNA ASSOCIATES, Third-Party Plaintiff,
v.
HOOD-CONNORS-JACKSON AGENCY, INC.,
Third-Party Defendant.

No. 01Civ.0115(DAB)(JCF).

June 25, 2003.

Insurer brought diversity action against insured, seeking declaration that it was not obligated to defend or indemnify with respect to underlying lawsuit brought in connection with accident on insured's property. Insured brought third party action against insurance broker. On insured's motion to compel discovery, the District Court, Francis, United States Magistrate Judge, held that: (1) insurer could not assert attorney-client privilege as against its insured with respect to its communications with attorney it appointed to represent insured in underlying tort case; (2) insurer could not assert attorney-client privilege as against insurance broker; (3) insurer could not assert work product protection as against its insured with respect to documents prepared by attorney it appointed to represent insured in anticipation of tort litigation; (4) insurer could not assert work product protection as against insurance broker; (5) communications between insurer and its coverage counsel, that related to provision of legal advice, were privileged; (6) interoffice correspondence and notes created by insurer or its claims manager were immune from discovery under New York work product doctrine; (7) document created prior to insurer's declination of coverage was not immune from discovery.

Motion granted in part and denied in part

[1] Witnesses 198(1)

410k198(1) Most Cited Cases

Insurer could not assert attorney-client privilege as against its insured under New York law, in insurer's lawsuit against insured seeking declaratory judgment as to whether it had duty to defend, with respect to its communications with attorney it appointed to represent insured in underlying tort case. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's CPLR 4503(a).

[2] Witnesses 198(1)
410k198(1) Most Cited Cases

Insurer could not assert attorney-client privilege as against insurance broker under New York law, with respect to its communications with attorney it appointed to represent insured in underlying tort case, in insurer's lawsuit against insured seeking declaratory judgment as to whether it had duty to defend, in which insured brought third party action against broker, since broker was aligned in interest with insured and was likewise adverse to insurer. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's CPLR 4503(a).

[3] Federal Civil Procedure 1600(3)
170Ak1600(3) Most Cited Cases

Insurer could not assert work product protection as against its insured under New York law, in insurer's lawsuit against insured seeking declaratory judgment as to whether it had duty to defend, since documents prepared by attorney it appointed to represent insured in anticipation of tort litigation were drafted principally on behalf of insured as his paramount client. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's CPLR 4503(a).

[4] Federal Civil Procedure 1600(3)
170Ak1600(3) Most Cited Cases

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
(Cite as: 2003 WL 21488058 (S.D.N.Y.))

Page 2

Insurer could not assert work product protection as against insurance broker under New York law, in insurer's lawsuit against insured seeking declaratory judgment as to whether it had duty to defend, in which insured brought third party action against broker, since broker was aligned in interest with insured and was likewise adverse to insurer. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's CPLR 4503(a).

[5] Witnesses ⚖ 198(1)  
410k198(1) Most Cited Cases

Communications between insurer and its coverage counsel, that related to provision of legal advice, were privileged and did not have to be disclosed to insured under New York law, in insurer's lawsuit against insured seeking declaratory judgment as to whether it had duty to defend. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's CPLR 4503(a).

[6] Federal Civil Procedure ⚖ 1600(3)  
170Ak1600(3) Most Cited Cases

In insurer's lawsuit against insured, seeking declaratory judgment as to whether it had duty to defend, interoffice correspondence and notes created by insurer or its claims manager were immune from discovery under New York work product doctrine, except to the extent they discussed progress of underlying tort action, since those materials postdated service of complaint upon insured. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's CPLR 4503(a).

[7] Federal Civil Procedure ⚖ 1600(3)  
170Ak1600(3) Most Cited Cases

Document created prior to insurer's declination of coverage was not immune from discovery under New York work product doctrine, in insurer's lawsuit against insured, seeking declaratory judgment as to whether it had duty to defend; however, references to coverage could be redacted since insurer was anticipating litigation over coverage issue at that time. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's CPLR 4503(a).

MEMORANDUM AND ORDER

FRANCIS, Magistrate J.

*1 In this action, Tudor Insurance Company ("Tudor") seeks a declaration that it is not obligated to defend or indemnify its insured, McKenna Associates ("McKenna"), with respect to a lawsuit brought in connection with an accident on McKenna's property. Tudor has withheld from discovery a number of documents on the grounds that they are protected by the attorney-client privilege or the work product doctrine. The parties have submitted letter briefs addressing these discovery issues, and I have reviewed the disputed documents *in camera.* The outstanding disputes are now resolved in accordance with this opinion.

*Background*

On December 3, 1997, Edward Joyce was injured while doing construction work on property in Armonk, New York that was owned by McKenna. Mr. Joyce commenced a negligence action against McKenna in New York State Supreme Court, Westchester County. *Joyce v. McKenna Associates, Inc.,* Index No. 04393/00. Tudor, as McKenna's insurer, appointed Marc D. Orloff to represent McKenna in the tort case. It also retained Thurm & Heller (now Heller, Jacobs & Kamlet, LLP) to act as coverage counsel, providing advice on the scope of Tudor's own obligation.

Although the precise date is in dispute, Tudor ultimately declined coverage on the ground that McKenna had failed to provide timely notice of the accident. Tudor then commenced the instant declaratory judgment action, naming both McKenna and Mr. Joyce as defendants. McKenna, in turn, filed a third-party complaint against its insurance broker, Hood-Connors-Jackson Agency, Inc. ("H-C-J"), contending that it was H-C-J's obligation to notify Tudor of the accident.

In the course of discovery, H-C-J served discovery demands to which Tudor responded. However, Tudor withheld and designated in its privilege log a number of documents that it identified as attorney-client communications or work product. The documents at issue include correspondence between Tudor and either its coverage counsel, Thurm & Heller, or counsel retained to defend the tort action, Mr. Orloff, as well as the notes of Tudor's claims manager, Westco Management Services, Inc. ("Westco"). When it became apparent that H-C-J did not agree that these documents were properly withheld, the parties brought the dispute to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                                                          Page 3
**(Cite as: 2003 WL 21488058 (S.D.N.Y.))**

my attention.

*Discussion*

Because jurisdiction in this case is based on diversity, and because New York law governs the substantive issues, New York law likewise applies to assertion of the attorney-client privilege. *See Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.,* No. 00 Civ. 9212, 2002 WL 31729693, at *3 (S.D.N.Y. Dec.5, 2002); *Mount Vernon Fire Insurance Co. v. Try 3 Building Services, Inc.,* No. 96 Civ. 5590, 1998 WL 729735, at *3 (S.D.N.Y. Oct.16, 1998). Under New York law, the attorney-client privilege protects from discovery any communication between attorney and client that relates to legal advice. *See* N.Y. C.P.L.R. § 4503(a); *Rossi v. Blue Cross & Blue Shield of Greater New York,* 73 N.Y.2d 588, 593, 542 N.Y.S.2d 508, 510, 540 N.E.2d 703 (1989).

*2 At the same time, Rule 26(b)(3) of the Federal Rules of Civil Procedure governs the discovery of work product. Documents prepared "in anticipation of litigation or for trial by or for [a] party or by or for that ... party's representative (including the ... party's attorney, consultant, surety, indemnitor, insurer, or agent)" need not be disclosed absent a "showing that the party seeking discovery has substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3).

Whether the documents at issue in this case are protected from discovery by either the attorney-client privilege or the work product doctrine turns in large measure on whether they involve counsel appointed to represent McKenna on the one hand or coverage counsel on the other.

A. *Appointed Counsel*

"New York courts have held that the counsel retained by the insurer may act as an attorney for that insurer as well as for the insured." *Bovis Lend Lease,* 2002 WL 31729693, at *3 (citing *Goldberg v. American Home Assurance Co.,* 80 A.D.2d 409, 439 N.Y.S.2d 2 (1st Dep't 1981); *Liberty Mutual Insurance Co. v. Engels,* 41 Misc.2d 49, 244 N.Y.S.2d 983, 986 (Sup.Ct. Kings Co.1963), *aff'd,* 21 A.D.2d 808, 250 N.Y.S.2d 851 (2d Dep't 1964)

). Thus, in this case there was an attorney-client relationship between Mr. Orloff and Tudor.

However, "[w]here ... an insurer retains counsel to defend an insured in litigation, the attorney's 'paramount' client is the insured." *Bovis Lend Lease,* 2002 WL 31729693, at *3 (quoting *Feliberty v. Damon,* 72 N.Y.2d 112, 120, 531 N.Y.S.2d 778, 782, 527 N.E.2d 261 (1988). Therefore, to the extent that the interests of the insured and the insurer collide with respect to the assertion of the attorney-client privilege for communications with counsel retained for the insured, the insured necessarily prevails.

[1][2] Here, Tudor has sued McKenna, and Tudor can therefore no longer assert the privilege as against its insured with respect to communications with Mr. Orloff. *See Woodson v. American Transit Insurance Co.,* 280 A.D.2d 328, 328, 720 N.Y.S.2d 467, 468 (1st Dep't 2001); *Zurich Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 137 A.D.2d 401, 402, 524 N.Y.S.2d 202, 203 (1st Dep't 1988). Moreover, H-C-J, the party that has propounded the discovery requests is aligned in interest with McKenna and is likewise adverse to Tudor: both H-C-J and McKenna benefit from a holding that Tudor is obligated to defend and indemnify McKenna. Therefore, just as Tudor cannot assert the privilege as a shield against McKenna, so it cannot claim the privilege against H-C-J.

[3][4] A similar analysis applies to work product. Documents prepared by Mr. Orloff in anticipation of the tort litigation were drafted principally on behalf of his "paramount" client, McKenna. Tudor cannot seek work product protection for such documents where it has sued McKenna, and, by extension, H-C-J is entitled to access to them as well.

*3 This does not mean, however, that Mr. Orloff's attorney-client communications with Tudor or his work product must be disclosed to counsel for Mr. Joyce. Although Mr. Joyce's interests are similar to those of McKenna in this coverage litigation, they remain adverse in the underlying tort case. Accordingly, the Orloff documents required by this Order to be produced to H-C-J may not be disclosed to Mr. Joyce.

The documents covered by this portion of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Order are those with Bates numbers 2-5, 6, 8, 9-10, 15, 16-20, 22-23, 24, 25, 26, 27-31, 32, 33-34, 35, 37, 38-40, 41, 42, 44, 45, 46, and 47.

B. *Coverage Counsel*

[5] Tudor's relation with its coverage counsel, Thurm & Heller, is markedly different from its relation with Mr. Orloff. Thurm & Heller was retained to advise Tudor and owed no duty of loyalty to McKenna. Therefore, the fact that Tudor is now in an adversarial posture with respect to McKenna does not enter into the analysis. Consequently, communications between Tudor and Thurm & Heller that relate to the provision of legal advice are privileged and need not be disclosed. This category includes the documents with Bates numbers 1, 21, 36, and 48.

C. *Claims Files*

[6] A number of the documents at issue are neither attorney-client communications nor documents drafted by counsel, but are rather interoffice correspondence or notes created by Tudor or its claims manager, Westco. Tudor argues that these documents are immune from discovery under the work product doctrine.

In determining whether claims files qualify for work product protection, it is necessary to distinguish between "documents prepared in the ordinary course of the insurer's business (which by its nature, involves claim investigation and analysis) and documents prepared 'in anticipation of litigation." ' *Bovis Lend Lease,* 2002 WL 31729693, at *4 (citation omitted). An insurer's decision to decline coverage is typically the point at which the ordinary course of business ends and the anticipation of litigation begins. *See id.* at *4; *Amoco Oil Co. v. Hartford Accident & Indemnity Co.,* No. 93 Civ. 7295, 1995 WL 555696, at *1 (S.D.N.Y. Sept.18, 1995); *Landmark Insurance Co. v. Beau Rivage Restaurant, Inc.,* 121 A.D.2d 98, 101, 509 N.Y.S.2d 819, 822 (2d Dep't 1986). In some cases, however, the retention of counsel by the insurer prior to formal declination signals the anticipation of litigation. *See Bovis Lend Lease,* 2002 WL 3729693, at *4; *American National Fire Insurance Co. v. Mirasco, Inc.,* Nos. 99 Civ. 12405, 00 Civ. 5098, 2001 WL 876816, at *2 (S.D.N.Y. Aug.2, 2001).

With one exception, neither the date that Tudor retained Thurm & Heller to consider litigation nor the precise date of declination is critical. Tudor had unequivocally declined coverage no later than January 17, 2001, when it served the complaint in this action on the insured. Virtually all of the notes and internal memoranda of Tudor and Westco postdate that event and are therefore subject to work product protection insofar as they address coverage. This protection does not extend, however, to those notes to the extent they discuss the progress of the underlying tort action. Tudor was not "anticipating litigation" against Mr. Joyce except as it was acting on behalf of its insured, McKenna. Therefore, those portions of the notes must be produced to McKenna and H-C-J but may not be disclosed to Mr. Joyce. The documents covered by this ruling are identified by Bates numbers 7, 11, 12, 13-14, and 49-75. Tudor shall redact and produce those documents in accordance with this Order.

*4 [7] The one document as to which the date of declination is important is designated Bates number 43. That document was created on October 31, 2000, prior to Tudor's declination of coverage. The earliest date on which Tudor could arguably have declined is November 2, 2000, when it sent a letter to McKenna in which it stated that "[i]n *disclaiming coverage,* [Tudor] neither intends to waive or invalidate any other rights under this, or any other policy." (Letter from Steve Niehaus dated Nov. 2, 2000 ("Niehaus Letter") at 3) (emphasis added). Even that letter, however, twice stated that Tudor "reserves its right to disclaim coverage." (Niehaus Letter at 2, 3). Nevertheless, it is clear from the content of the October 31 notes that by that date Tudor was anticipating litigation over the coverage issue. Therefore, references to coverage may be redacted, though the balance of the document must be produced.

*Conclusion*

Tudor's objections to the production of documents identified in its privilege log are upheld in part and overruled in part, as set forth above.
   SO ORDERED.

2003 WL 21488058 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works