Westlaw.

EXHIBIT C

205 F.Supp.2d 482
(Cite as: 205 F.Supp.2d 482)

Page 1

United States District Court,
D. Maryland.

UNITED STATES of America
v.
STAR SCIENTIFIC, INC.

No. Civ. JFM-02-CV-971.

June 3, 2002.

United States brought motion to compel tobacco company to comply with subpoena duces tecum. The District Court, Motz, J., held that transfer of discovery dispute to alternate forum was warranted.

Motion transferred.

West Headnotes

[1] Federal Courts ⬅106.5
170Bk106.5 Most Cited Cases
(Formerly 170Bk106)

Transfer of tobacco litigation discovery dispute to alternate forum was warranted, since transfer was convenient to and was sought by subpoenaed nonparty, and transferee court was in better position to evaluate claims of confidentiality, undue burden, and relevancy involved in discovery dispute due to complexity and scope of underlying litigation. Fed.Rules Civ.Proc.Rule 45, 28 U.S.C.A.

[2] Federal Courts ⬅101
170Bk101 Most Cited Cases

A court issuing a subpoena has a strong interest in the enforcement of its subpoenas; thus, a nonparty cannot seek transfer of a discovery dispute as a matter of right, over the objection of the court that issued the subpoena. Fed.Rules Civ.Proc.Rule 45, 28 U.S.C.A.

[3] Federal Courts ⬅103

170Bk103 Most Cited Cases

Where a nonparty indicates a preference for a forum other than the court issuing a subpoena, the transfer of a discovery dispute, in the issuing court's discretion, is permissible. Fed.Rules Civ.Proc.Rules 1, 45, 28 U.S.C.A.

*482 Thomas M. DiBiagio, Jamie M. Bennett, Office of the United States Attorney, Baltimore, MD, for Petitioner.

MEMORANDUM

MOTZ, District Judge.

The Plaintiff, the United States of America, has moved to compel Star Scientific, Inc. to comply with a subpoena duces tecum issued from this Court pursuant to Fed.R.Civ.P. 45. The subpoena requires Star to produce documents in connection with a lawsuit the United States has filed against tobacco companies in the United States District Court for the District of Columbia. *See United States v. Philip Morris, Inc.*, No. 99-CV-02496 (D.D.C. filed Sept. 22, 1999). Star is not a party to that underlying suit. For the reasons set forth below, the motion will be transferred *483 to the United States District Court for the District of Columbia.

I.

Star describes itself as a small and relatively new tobacco company "with a central focus on the reduction of toxins in tobacco and tobacco smoke." (Def.'s Opp'n at 1.) On November 30, 2001, the United States served Star with a subpoena issued from this Court. The subpoena requested documents that the government asserted were relevant to the *Philip Morris* case, in which the government alleges a long-running conspiracy by tobacco companies to conceal the dangers of smoking from the public. Among the alleged co-conspirators being sued by the government is Brown & Williamson Tobacco Corp. ("B & W"), a business partner of Star's. [FN1]

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

205 F.Supp.2d 482                                                                                                  Page 2
(Cite as: 205 F.Supp.2d 482)

> FN1. Star acknowledged in its opposition to this motion that it has had "limited contact with several other tobacco companies" (Def.'s Opp'n at 2-3), a revelation that was previously unknown to the government. (*See* Pl.'s Reply at 5.)

Beginning in the late 1990s, Star contracted to supply B & W with tobacco containing low levels of tobacco specific nitrosamines ("TSNAs"). (*See* Pokusa Dec. ¶ 4.) TSNAs are believed by some scientists to be a significant carcinogen in tobacco leaf and cigarette smoke. (*See* Def.'s Opp'n at 2.) Star believes that "tobacco with lower TSNA levels may eventually be shown to reduce the health risks associated with tobacco use...." (*Id.*) Star also worked with B & W on the development of Advance, a low-TSNA cigarette that B & W sells pursuant to a royalty agreement with Star, and Ariva, a tobacco lozenge. (*See* Pl.'s Mem.Ex. O, Star 2001 Annual Report; Pl.'s Mem. at 13.) The government's subpoena seeks, *inter alia,* documents relating to Star's relationship with B & W.

Star objected to the subpoena, which had requested documents in 13 separate categories. (*See id.* Ex. A, Subpoena.) As a result, attorneys for Star and the United States met, and the United States agreed to trim its request to documents that would be "particularly useful." (Pl.'s Mem. at 4.) The government's request, as modified, seeks documents in 11 categories. These include "documents concerning any position of or statement made by Star Scientific or any Defendant regarding: the health effects of smoking, nicotine, low nitrosamine tobacco ..., low tar/low nicotine cigarettes, marketing of tobacco products to youth, or FDA regulation of tobacco products" and communications between Star or its Science Advisory Board and defendants about any of these topics. (*Id.* Ex. F, Ltr. from Jerrob Duffy & Hima Vatti to Richard McMillan, Jr., Feb. 21, 2002.) The government also seeks contracts between Star and B & W; documents relating to research, development, and marketing by B & W of products containing Star tobacco; documents concerning business contacts Star has had with any defendants other than B & W; and communications by Star about the underlying litigation in this case and an earlier settlement between the states and tobacco manufacturers. (*See id.*) In addition, the government has requested documents relating to sales of products made or marketed by Star or containing Star tobacco to people under the age of 20, and cost, research, and consumer preference information pertaining to low-TSNA tobacco in general. (*See id.*)

Star has refused to comply with the modified request. It told the government it would produce only four categories of documents: public statements it has made to health organizations, its press releases on low-TSNA tobacco or tobacco products, *484 its public filings, and copies of warning labels and "onserts," a type of external package label, for Ariva and the version of Advance that Star test-marketed. (*See id.* Ex. I, Ltr. from Jonathan H. Pittman to Jerrob Duffy & Hima Vatti, March 15, 2002.)

The United States argues in this motion to compel that Star's compliance with its modified request is important because Star may possess documents that shed important light on how the defendant tobacco companies viewed smoking and health issues. (*See* Pl.'s Reply at 2.) Indeed, the government argues that Star is a "probable lynchpin for the continuation of actions by Defendants to maintain the pillars of [their] conspiracy...." (*Id.* at 4.)

Star counters that the subpoena, even as limited by the government, is too sweeping, embracing tens of thousands of pages of documents--"a majority of the documents in Star Scientific's possession"--and requiring more than 100 hours of time for its officials and outside counsel to review. (Pokusa Dec. ¶¶ 6-7.) Star also questions the protection that would be afforded to the trade secrets and other sensitive information that it contends are in the documents, despite the issuance by the United States District Court for the District of Columbia of a protective order in the underlying case. (*See* Pl.'s Mem.Ex. A, Order # 7).

II.

[1] Federal Rule of Civil Procedure 45 establishes the rules for subpoenas served upon individuals and entities that are not parties to the underlying lawsuit. *See also* Fed.R.Civ.P. 34(c) ("A person not a party to the action may be compelled to produce documents ... as provided in Rule 45.") When a nonparty receives a subpoena to which it

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

205 F.Supp.2d 482
(Cite as: 205 F.Supp.2d 482)

Page 3

objects, it has several options: file a motion to quash or modify the subpoena pursuant to Fed.R.Civ.P. 45(c)(3)(A), seek a protective order pursuant to Fed.R.Civ.P. 26(c), or, as Star has done here, object to production of documents by opposing a motion to compel under Fed.R.Civ.P. 45(c)(2)(B). [FN2] *See, e.g., Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1322-23 (Fed.Cir.1990) (outlining options).

> FN2. The three courses of action implicate many of the same concerns. Thus, by objecting to the motion to compel, Star has raised the same questions of confidentiality, undue burden, and relevancy that would arise in a motion to quash or a motion for a protective order. Further, although Star has not moved for a protective order, this motion involves the application to Star of a protective order governing confidential information already instituted by the District of Columbia court. As a result, Rule 26(c), governing protective orders, and Rule 45(c)(3)(A), governing motions to quash, and cases discussing transfers of motions filed under those rules are relevant to this analysis.

Rule 45 states that when a person or entity objects to a subpoena served on it, "the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises *except pursuant to an order of the court by which the subpoena was issued.*" Fed.R.Civ.P. 45(c)(2)(B) (emphasis added). Because the subpoena to Star was issued from this Court, the government contends that only this Court may enforce the subpoena.

[2][3] The language of Rule 45 clearly contemplates that the court enforcing a subpoena will be the court that issued the subpoena. However, this language must be read in light of the underlying purposes of the rule, which include "protect[ing] ... persons who are required to assist the court by giving information and evidence...." Fed.R.Civ.P. 45, Advisory Committee Notes, 1991 Amendment. The practice commentaries to the rule explain *485 that a motion to compel under Rule 45(c)(2)(B) "should, like the motion to quash or modify ..., be made to the court from which the subpoena issued," which "will presumably be a court in a district convenient to the nonparty" since it is "of course the nonparty whose convenience Rule 45 is most concerned about protecting." [FN3] David D. Siegel, Practice Commentaries, Fed.R.Civ.P. 45. Accordingly, where the nonparty indicates a preference for a forum other than the issuing court, the notes and commentary to the rule suggest that transfer, in the issuing court's discretion, would accord with Rule 45's purposes. *See also* Fed.R.Civ.P. 1 (explaining that the overarching principle in interpreting the Federal Rules of Civil Procedure is that they "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

> FN3. Obviously, a court issuing a subpoena also has a strong interest in the enforcement of its subpoenas. Thus, a nonparty could never seek transfer of a discovery dispute as a matter of right, over the objection of the court that issued the subpoena.

Additionally, the Advisory Committee Notes to Rule 45 indicate that when Rule 45(c) was added in 1991, it was "not intended to diminish rights conferred by Rules 26-37 or any other authority." Fed.R.Civ.P. 45, Advisory Committee Notes, 1991 Amendment, Subdivision (c). Rule 26(c), governing protective orders, expressly permits flexibility in cases in which discovery disputes involve multiple courts. It provides that "the court in which the action is pending" may rule on a protective order, unless a deposition is involved, in which case the protective order may be sought in the district in which the deposition is being taken. Fed.R.Civ.P. 26(c). However, even in the latter case, "[t]he court in the district where the deposition is being taken may, and frequently will, remit the deponent or party to the court where the action is pending." Fed.R.Civ.P. 26(c), Advisory Committee Notes, 1970 Amendment, Subdivision (c). Thus, a discovery rule expressly referenced in the Advisory Committee Notes to Rule 45 recognizes the importance of a court where an action is pending deciding questions relating to the scope of discovery being conducted elsewhere.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

205 F.Supp.2d 482
(Cite as: 205 F.Supp.2d 482)

Page 4

Still, because Rule 45, unlike Rule 26(c) does not refer to a process for "remit[ting]" a discovery dispute from one court to another, courts have divided on the question of whether Rule 45 motions may be transferred from the court issuing the subpoena to the court where the underlying litigation is pending. [FN4] The *486 Fourth Circuit has not ruled on the issue. In *McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330 (4th Cir.2001), the court stated that Rule 45 assigns the ancillary court "the responsibility of issuing and enforcing subpoenas in its district." *Id.* at 334. It did not indicate whether such responsibility could be transferred by the court, although it did stress the ties between the ancillary court and the court presiding over the underlying dispute, stating that the "ancillary discovery proceeding is, by its very terms, an extension of the underlying proceeding and the subject matter jurisdiction of the ancillary proceeding is derived from the jurisdiction of the underlying case...." *Id.*

> FN4. Courts in the Eighth and Tenth Circuits and a district court in the Second Circuit have supported such transfers. *See, e.g., In re Digital Equip. Corp.*, 949 F.2d 228, 231 (8th Cir.1991) (finding that court that issued deposition subpoenas pursuant to Rule 45 may remit consideration of objections to court where underlying case is pending, in its discretion and pursuant to Rule 26(c)); *Petersen v. Douglas County Bank & Trust Co.*, 940 F.2d 1389, 1391 (10th Cir.1991) (stating that a transfer of discovery matters to court handling underlying case was "not improper simply because the transferred matter involved a motion to quash under Rule 45"); *In re Armstrong*, 1997 WL 739616, at *1 n. 1 (Bankr.E.D.Ark.1997) (stating that motions to quash "are generally transferred to the court handling the case on the merits where resolution of the discovery dispute may require delving into the merits of the case and hardship on nonparties would be minimal"); *Pactel Pers. Communications v. JMB Realty Corp.*, 133 F.R.D. 137, 138 (E.D.Mo.1990) (transferring party's motion to compel nonparties' production of documents along with nonparties' discovery motions pursuant to Rule 26(c) and nonparties' consent); *see also Devlin v. Transp. Communications Int'l Union*, 2000 WL 249286, at *1 (S.D.N.Y.2000) (dictum) ( "There is substantial support in the caselaw, among the commentators, and in the Advisory Committee Note to Rule 26(c) ... for the proposition that the court from which a subpoena has issued has the authority to transfer any motion to quash or for a protective order to the court in which the action is pending.")

Meanwhile, courts in the Seventh and D.C. Circuits and a district court in the Third Circuit have found transfer of discovery disputes inappropriate. *See, e.g., In re Sealed Case*, 141 F.3d 337, 342 (D.C.Cir.1998) (rejecting transfer as not supported by the language of Rule 45); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir.1996) (rejecting transfer of discovery disputes and instead advocating stays in courts where discovery is being conducted and refiling of motions in court handling the underlying dispute); *Central States, Southeast & Southwest Areas Pension Fund v. Quickie Transport Co.*, 174 F.R.D. 50, 52 n. 1 (E.D.Pa.1997) ("remit[ting]" discovery dispute involving nonparty subpoenas, a process which involved not transferring the dispute, but denying a motion for a protective order while granting the party seeking the order leave to renew its request before the court handling the underlying dispute). *Cf. Productos Mistolin v. Mosquera*, 141 F.R.D. 226, 227 (D.P.R.1992) (finding court "powerless" to enforce subpoena not issued by it).

Although the Fourth Circuit has not addressed the question involved here, district courts within this circuit have indicated that such transfers are permissible in certain circumstances. In *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68 (M.D.N.C.1986), the court stated that the transfer of discovery disputes involving nonparties is "limited to situations where the non-party has moved for a protective order under Rule 26(c) or *consents to the transfer.*" *Id.* at 70 n. 2 (emphasis added). In fact, the court went

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

205 F.Supp.2d 482                                                                Page 5
(Cite as: 205 F.Supp.2d 482)

so far as to suggest that while the "emerging consensus" was that a court may not transfer discovery disputes over the objection of a nonparty, "[t]o the extent the non-party seeks a ruling by the court where the action is pending, ... the parties do not have a right to prevent transfer." *Id.*

Similarly, in *Socialist Workers Party v. Att'y Gen. of the United States,* 73 F.R.D. 699 (D.Md.1977), this court transferred discovery motions made by nonparties to the court considering the underlying dispute. *Id.* at 701. The court found support for the transfer in Rule 26(c), although the nonparties also had filed a motion to quash under Rule 45. *See id.* at 699, 701. It rejected the idea that "no matter how complicated the case in the foreign Court might be, or how long it has been going on, or what relationship exists between the subject matter of the issues raised in the foreign Court and other similar procedural and substantive issues in the Court in which the case is pending, it would be impossible to transfer to that Court." *Id.* at 701. *See also Securities & Exchange Comm'n v. Paradyne Corp.,* 601 F.Supp. 560, 562-63 (D.Md.1985) (transferring motion seeking an order under Rule 26(c) to prevent a nonparty attorney from attending a deposition, while staying other discovery motions); Charles Alan Wright & Arthur R. Miller, 9A *Federal Practice & Procedure* § 2463 (2d ed.1995) (noting, in discussion of motions to quash, modify, or condition subpoenas, that while the issuing court is the "logical forum" to enforce a *487 subpoena, "it is within the discretion of the court that issued the subpoena to transfer motions involving the subpoena to the district in which the action is pending").

Likewise, a district court in Wisconsin that considered whether to quash document subpoenas issued to nonparties in connection with a case pending elsewhere decided that the motion should be transferred "in the interest of uniformity and judicial economy...." *In re Subpoenas Duces Tecum to Schneider National Bulk Carriers,* 918 F.Supp. 272, 273 (E.D.Wis.1996). [FN5] It transferred the dispute over the apparent objection of the nonparties and despite the fact that the court handling the underlying dispute was in Ohio, a significant distance from the Wisconsin business offices of the principal nonparty. *See id.*

> FN5. *Schneider* involved a motion to quash, not a motion to compel. However, the language of Rule 45 as it relates to the two types of motions is similar. The rule states that "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena" if it makes certain findings. Fed.R.Civ.P. 45(c)(3)(A).

In this case, the two potential fora for the airing of this discovery dispute--the District of Maryland and the District of Columbia--both are in close proximity to one another and to Star's Bethesda, Maryland, regulatory, scientific, and executive offices. Indeed, although Star's offices are within this district, they probably are closer to the District of Columbia court than to this court. Most significantly, Star has indicated that it views the United States District Court for the District of Columbia as the "preferable forum" because of its familiarity with the issues in the underlying case, and it has offered to submit to the jurisdiction of that court for the limited purpose of resolving this discovery dispute. [FN6] (*See* Def.'s Opp'n at 6 n. 2.)

> FN6. It is immaterial that Star did not formally move for the transfer of this motion. *Cf., e.g., Socialist Workers Party,* 73 F.R.D. at 699, 701 (transferring nonparties' discovery dispute despite lack of a formal transfer motion by the plaintiff).

I agree that the District of Columbia is the preferable forum for the resolution of this dispute. Although I have thoroughly reviewed the materials submitted by the government in support of its motion, I recognize that the underlying litigation is complex, alleging a conspiracy involving six corporate defendants and their parent companies and two industry organizations, a conspiracy that allegedly spanned nearly 50 years and resulting in potential damages in the hundreds of billions of dollars. (*See* Pl.'s Mem.Ex. M, First Am.Compl. ¶ ¶ 4, 6, 10-22.) The materials submitted to me thus necessarily represent but one piece of a much bigger puzzle. [FN7] Thus, *488 even if district courts are or should be limited in the occasions in which they may transfer discovery motions, this

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

205 F.Supp.2d 482  
(Cite as: 205 F.Supp.2d 482)

Page 6

motion clearly would fall within that category of cases in which transfer is appropriate. *See, e.g., In re Sealed Case*, 141 F.3d at 343 (Henderson, J., concurring) (stating that a district court's power to transfer discovery disputes "should be reserved for the extraordinary, complex case in which the transferee court is plainly better situated to resolve the discovery dispute"); *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45-46 (S.D.Texas 1973) (transferring discovery motion in "very complicated matter" in which the court was "hesitant to make a decision which may substantially affect the course of the main action, without a lengthy presentation by both sides").

> FN7. As it stands, I am concerned with the burden that would be involved in Star's compliance with a number of the categories in the government's modified document request, notably the following: "documents concerning any position of or statement made by Star Scientific or any Defendant regarding: the health effects of smoking, nicotine, low nitrosamine tobacco (including StarCure tobacco), low tar/low nicotine cigarettes, marketing of tobacco products to youth, or FDA regulation of tobacco products;" "documents concerning communications between Star Scientific or any member of the Star Science Advisory Board ("SAB"), with any officer, director, employee, attorney, or agent of any Defendant" concerning those topics; "documents concerning efforts to reduce TSNA levels in the curing process of Burley tobacco that relate to consumer preferences of low-TSNA Burley tobacco, or cigarette unit costs containing low-TSNA Burley tobacco vis-a-vis traditional Burley tobacco;" "documents concerning the attractiveness, access, purchase, or consumption of products produced or marketed by Star Scientific or using Star Scientific tobacco, by persons under the age of 20...." (Pl.'s Mem.Ex. F., Ltr. from Jerrob Duffy & Hima Vatti to Richard McMillan, Jr., Feb. 21, 2002.) These documents represent four of the 11 areas in the government's modified request. They are the areas in which the government seeks documents that do not necessarily relate to B & W or one of the other defendants, or which facially appear to encompass much of Star's business.

Further, considerations of comity counsel the transfer of this motion to the District of Columbia court. The Hon. Gladys Kessler, United States District Judge for the District of Columbia assigned to the *Philip Morris* case, has entered an order in that case expressing "willingness" to decide nonparty discovery disputes. [FN8] *See* Order # 51: Ninth Case Management Order, *United States v. Philip Morris, Inc.*, No. 99-CV-02496 (D.D.C. March 26, 2001). A special master, the Hon. Richard A. Levie (Ret.), has been appointed to handle the voluminous discovery and issues that arise from it. *See* Order # 41, *United States v. Philip Morris, Inc.*, No. 99-CV-02496 (D.D.C. Dec. 22, 2000).

> FN8. I might note that I have spoken with Judge Kessler and she has expressed her willingness to decide the issues raised by this motion. I might also note that assuming that my interpretation of Rule 45 is incorrect, I would attempt (with Judge Kessler's consent, of course) to accomplish the same result by requesting that Judge Kessler be assigned by the Chief Justice to the District of Maryland to decide this dispute pursuant to 28 U.S.C. § 292(d). In light of my interpretation of the rule, it is unnecessary to take on the administrative burden the intercircuit assignment procedure requires.

Accordingly, because I find a transfer would be convenient to and is sought by the subpoenaed nonparty, and because the District of Columbia court is better position to evaluate claims of confidentiality, undue burden, and relevancy involved in this discovery dispute given the complexity and scope of the underlying litigation, I will transfer this matter to the United States District Court for the District of Columbia.

ORDER

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

205 F.Supp.2d 482  
(Cite as: 205 F.Supp.2d 482)

Page 7

For the reasons stated in the accompanying memorandum, it is, this 3rd day of June 2002

ORDERED that

Plaintiff's motion to compel is transferred to the United States District Court for the District of Columbia to be considered in connection with the pending case of *United States v. Philip Morris, Inc.*, No. 99-CV-02496 (D.D.C. filed Sept. 22, 1999).

205 F.Supp.2d 482

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works