# EXHIBIT "A"

Source: Legal > / . . . / > CT State Cases, Combined
Terms: name(kane and neveleff) (Edit Search)

*2002 Conn. Super. LEXIS 2621, \**

Kevin H. **Kane** et al. v. Eleanor **Neveleff** et al.

CV000439308S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEW HAVEN, AT NEW HAVEN

2002 Conn. Super. LEXIS 2621

July 11, 2002, Decided
July 11, 2002, Filed

**NOTICE:** [\*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Motion to strike Counts VII and X of the plaintiffs' complaint alleging CUTPA violations denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** After buying a new home and experiencing water leakage, plaintiff buyers sued defendant seller and defendants, the seller's real estate agent and its agency (realty defendants). The realty defendants moved to strike count VII, which alleged a misrepresentation claim under the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et seq., and count X, which alleged a CUTPA claim for omissions and withholding of information.

**OVERVIEW:** The realty defendants argued that the allegations of counts VII and X lacked a sufficient factual basis to state a CUTPA claim. The trial court disagreed. The buyers alleged that (1) the realty defendants knowingly and intentionally misrepresented the condition of the basement and septic system when the buyers inquired on a certain day, in order to induce reliance by the buyers, and that the buyers did rely to their detriment; (2) the realty defendants stated that the basement and septic system were satisfactory and that there were no water problems; and (3) the realty defendants took steps to conceal the defective conditions by failing to have the seller execute a disclosure report. These allegations described instances of misrepresentations and the withholding of material information and satisfied the "cigarette rule" in setting forth a claim. Contrary to the realty defendant's second contention, the buyers did not have to allege multiple incidents of misconduct to state a CUTPA claim. The complaint alleged activity and harm which violated public policy and which CUTPA was intended to remedy; this, and not the number of incidents, created the factual predicate for the claim.

**OUTCOME:** The trial court denied the motion to strike counts VII and X of the complaint.

**CORE TERMS:** seller, motion to strike, unfair, real estate agent, real estate, regulation, broker, buyer, judicial district, misrepresentation, septic, basement, favorable, conceal, leakage, water, federal trade commission, violation of public policy, real estate transaction, public policy, disclose, inspection, cigarette, Federal Trade Commission Act, real estate salesperson, fiduciary capacity, legal sufficiency, duty to disclose, cause of action, material fact

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Antitrust & Trade Law > Trade Practices & Unfair Competition
**HN1** See Conn. Gen. Stat. § 42-110b.

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action
**HN2** The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. A motion to strike shall be granted if the plaintiff's complaint does not sufficiently state a cognizable cause of action as a matter of law. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action
**HN3** A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. A motion to strike is properly granted where a plaintiff's complaint alleges legal conclusions unsupported by facts. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. A motion to strike is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged. Upon deciding a motion to strike, the trial court must construe the plaintiff's complaint in a manner most favorable to sustaining its legal sufficiency. The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail. However, if the plaintiff has alleged mere conclusions of law unsupported by the requisite facts, the motion to strike should be granted. More Like This Headnote

Real & Personal Property Law > Brokers > Broker Relationships
Business & Corporate Entities > Agency > Duties & Liabilities > Third Party Responsibilities & Rights
**HN4** Despite the statutory provisions placing a real estate broker in a fiduciary capacity with either the seller or the buyer, the Department of Consumer Protection Regulations, Conn. Agencies Regs. § 20-328-5a, provides that a real estate agent or broker shall not misrepresent or conceal any material facts in any transaction. While § 20-325d-2 of said regulations also provides for dual agency agreements, as well as a buyer's agent and a seller's agent, it is important to note that the regulations provide that all real estate brokers, whether representing a buyer or a seller are obligated by law to treat all parties to a real estate transaction "honestly and fairly." More Like This Headnote

Real & Personal Property Law > Brokers > Broker Relationships
**HN5** The primary responsibility of a seller's real estate agent is to arrive at a deal or transaction, which is most favorable to the seller, as the seller's agent is working in behalf of the seller. However, the fiduciary relationship arising between the seller's agent and seller does not give license for dishonesty, deception, and sharp dealing. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation
**HN6** See Conn. Gen. Prac. Book, R. Super. Ct. § 10-1.

Antitrust & Trade Law > Trade Practices & Unfair Competition
**HN7** In determining whether an act or practice violates the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et seq., Connecticut courts have adopted the criteria set out in the "cigarette rule" by the Federal Trade Commission

for determining when an act or practice is unfair: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen. All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Thus, a violation of CUTPA may be established by showing either an actual deceptive practice, or a practice amounting to a violation of public policy. Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. Knowledge of falsity, either constructive or actual, need not be proven to establish a CUTPA violation. More Like This Headnote

Torts > Business & Employment Torts > Deceit & Fraud
HN8 The general rule is that mere nondisclosure does not ordinarily give rise to an action in fraud and misrepresentation. To constitute fraud the nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction. More Like This Headnote

Torts > Business & Employment Torts > Concealment
Real & Personal Property Law > Sales, Exchanges & Remedies > Duty to Disclose
HN9 A vendor of property may not do anything to conceal from the vendee a material fact affecting it or deliberately hide defects, for, in so doing, he is not merely remaining silent, but is taking active steps to mislead. More Like This Headnote

Torts > Business & Employment Torts > Deceit & Fraud
Real & Personal Property Law > Sales, Exchanges & Remedies > Duty to Disclose
HN10 If the defendant does speak, he must disclose enough to keep his words from being misleading. In addition, the seller of a property must not do anything to conceal from the buyer a material fact affecting it. More Like This Headnote

Antitrust & Trade Law > Trade Practices & Unfair Competition
HN11 A violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq., must be established by showing either an actual deceptive "practice" or a practice amounting to a violation of public policy and in reference to a failure to disclose, there must be a duty to disclose. More Like This Headnote

Antitrust & Trade Law > Trade Practices & Unfair Competition
HN12 A single instance of misconduct can be a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. More Like This Headnote

Antitrust & Trade Law > Trade Practices & Unfair Competition
HN13 The Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et seq., is designed to protect the public from unfair practices, and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy. A violation of CUTPA can be found where the defendant's actions violate public policy. Therefore, it is the violation of public policy, and not the number of incidents, that creates the factual predicate for a claim of a CUTPA violation. More Like This Headnote

Antitrust & Trade Law > Trade Practices & Unfair Competition

Governments > Legislation > Interpretation
HN14⬇ The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq., is a remedial statute and should be liberally construed. More Like This Headnote

**JUDGES:** Arnold, J.

**OPINIONBY:** Arnold

**OPINION:** MEMORANDUM OF DECISION (MOTION TO STRIKE)

Pursuant to Practice Book § 10-39 et seq., the defendants A-Dan Realty and Joyce Bello have moved to strike Counts VII and X of the plaintiffs' complaint of April 28, 2000 arguing that the allegations of the complaint are legally insufficient to set forth a claim for violation of the Connecticut Unfair Trade Practices Act (hereinafter "CUTPA"), General Statutes § 42-110b. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Sec. 42-110b. Unfair trade practices prohibited. Legislative intent.

HN1⬇(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45 (a)(1)), as from time to time amended. (c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

(d) It is the intention of the legislature that this chapter be remedial and be so construed.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*2]

The plaintiffs commenced the present action against the defendants A-Dan Realty, Inc. and Joyce Bello and others claiming pecuniary losses and damages as a consequence of the plaintiffs' purchase of the premises at 20 Salem Road, Madison, Connecticut from the defendant, Eleanor Neveleff.

On or about October 14, 1998, the plaintiffs entered into a written real estate purchase agreement with Neveleff. The plaintiffs, as purchasers, had a real estate agent, and the defendant Neveleff's real estate agent was the defendant Bello and her principal Century 21 A-Dan Realty. The plaintiffs retained the services of a home inspection service, Tiger Group, Inc. which is also a named defendant.

Pursuant to said real estate purchase agreement, the plaintiffs purchased the premises from Neveleff on or about November 20, 1998. Prior to the purchase the plaintiffs, along with their home inspector, inspected the premises on October 29, 1998. On that date, it is alleged that the water service to the premises was not turned on despite a prior request to do so by the

plaintiffs' real estate agent and despite assurances by the homeowner Neveleff and her real estate agent, defendant Bello, **[*3]** that the water service to the premises would be turned on for the home inspection. It is further alleged that prior to the inspection date, the defendant Neveleff through her real estate agent, Bello, represented to the plaintiffs that there were "no leakage and/or water problems or defects of any kind in regard to said premises, or in regard to the premises' septic system." Additionally, it is alleged that the defendant Neveleff never completed or forwarded to the plaintiffs a written residential condition report as required by General Statutes § 20-327b.

In the two months following the plaintiffs' purchase of the subject premises during periods of rain, it is alleged that the plaintiffs experienced leakage in the basement of the home and its garage. An investigation of the leakage by the plaintiffs disclosed that it was caused by the "defective condition of said basement and garage, as well as the septic system and the grading and drainage of the premises."

The instant complaint presents claims for damages arising out of non-disclosure and misrepresentations made by the defendants regarding the defective condition of basement, the septic system **[*4]** and the grading and the drainage of the premises. Count VII presents a claim sounding in CUTPA arising out of misrepresentation while Count X presents a CUTPA claim arising from the alleged omissions or withholding of material information by the defendants Bello and A-Dan Realty, Inc.

I

*HN2* "The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." _Mingachos v. CBS, Inc._, 196 Conn. 91, 108, 491 A.2d 368 (1985). A motion to strike shall be granted if "the plaintiff's complaint [does not] sufficiently [state] a cognizable cause of action as a matter of law." _Mora v. Aetna Life and Casualty Ins. Co._, 13 Conn.App. 208, 211, 535 A.2d 390 (1988).

*HN3* A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted.) _Id._ "A motion to strike is properly granted where a plaintiff's complaint alleges legal conclusions unsupported by facts." _Id._ "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. **[*5]** " _Gordon v. Bridgeport Housing Authority_, 208 Conn. 161, 170, 544 A.2d 1185 (1988). A motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged." (Internal quotation marks and citations omitted.) _Alarm Applications Co. v. Simsbury Volunteer Fire Co._, 179 Conn. 541-50, 427 A.2d 822 (1980).

Upon deciding a motion to strike, the trial court must construe the "plaintiff's complaint in [a] manner most favorable to sustaining its legal sufficiency." _Bouchard v. People's Bank_, 219 Conn. 465, 471, 594 A.2d 1 (1991). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." _Mingachos v CBS, Inc._, 196 Conn. 91, 108-09, 491 A.2d 368 (1985). However, if the plaintiff has alleged mere conclusions of law unsupported by the requisite facts, the motion to strike should be granted. _Cavallo v. Derby Savings Bank_, 188 Conn. 281, 285, 449 A.2d 986 (1982). **[*6]**

II

The defendants correctly argue that any analysis of the allegations made in the complaint must be made in the context of statutes governing real estate brokers and their responsibilities and duties. General Statutes § 20-325d requires that a real estate salesperson or broker who acts as the agent of a seller must disclose this to the buyer unless

the buyer is represented by another real estate salesperson or broker. The underlying regulation § 20-235d-1 et seq. provides for different types of agency relationships with differing duties and disclosure responsibilities. Section 20-325d-5 provides that the seller's agent acts in a fiduciary capacity for the seller in a real estate transaction. "The seller's agent owes the seller . . . undivided fiduciary obligations, such as: loyalty, reasonable care, disclosure, obedience to lawful instruction, confidentiality and accountability." The same conditions also apply to a real estate agent or broker who represents a buyer in a real estate transaction. It is noted that the plaintiffs and the defendant Neveleff were both represented by their own real estate agents in this transaction. However, HN4 despite [*7] the statutory provisions placing a real estate broker in a fiduciary capacity with either the seller or the buyer, the Department of Consumer Protection Regulations § 20-328-5a provides that "a [real estate agent or broker] shall not misrepresent or conceal any material facts in any transaction." While § 20-325d-2 of said regulations also provides for dual agency agreements, as well as a buyer's agent and a seller's agent, it is important to note that the regulations provide that all real estate brokers, whether representing a buyer or a seller are obligated by law to treat all parties to a real estate transaction "honestly and fairly."

Clearly, as argued by the plaintiffs, HN5 the primary responsibility of the seller's agent is to arrive at a deal or transaction, which is most favorable to the seller, as the seller's agent is working in behalf of the seller. However, the fiduciary relationship arising between the seller's agent and seller does not give license for dishonesty, deception and sharp dealing. Therefore, it is within this statutory and regulatory context that the court examines the allegations of Counts VII and X of the plaintiffs' complaint to see if they are sufficient [*8] to set forth claims for violation of CUTPA.

III

The defendants Bello and A-Dan Realty claim that Counts VII and X do not contain sufficient particularity to support CUTPA claims. Specifically, the defendants argue that the counts merely insert the statement that the conduct cited in such counts was "immoral, oppressive and unscrupulous . . ." without providing sufficient factual allegations to support a CUTPA claim. A review of Counts VII and X however cite specific instances of misrepresentations by the defendants and misrepresentations by the withholding of material information. They satisfy the requirements of Practice Book § 10-1 which states HN6 "each pleading shall contain a concise statement of the material facts on which the pleader relies, but not of the evidence of which they are to be proved . . ." as well as the case law interpreting and analyzing CUTPA.

In determining whether or not allegations of a complaint state sufficient facts to constitute a violation of CUTPA, our courts employ the "cigarette rule."

It is well settled that HN7 in determining whether [an act or] practice violates CUTPA we have "adopted the criteria set out in the 'cigarette rule' by [*9] the federal trade commission for determining when [an act or] practice is unfair: '(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen].' *Normand Josef Enterprises v. Connecticut National Bank*, 230 Conn. 486, 522, 646 A.2d 1289 (1994), citing *Conaway v. Prestia*, [191 Conn. 484, 492-93, 464 A.2d 847 (1983)], quoting *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972) . . ." *McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 567-68, 473 A.2d 1185 (1984).

"All three criteria do not need to be satisfied to support a finding of unfairness. A practice

may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent **[*10]** it meets all three. Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed.Reg. 59,614, [and] 59,635 (1978)." (Internal quotation marks omitted.) *Id.* 192 Conn. at 569 n.15. "Thus a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g., *Sprayfoam, Inc. v. Durant's Rental Centers, Inc.,* 39 Conn.Sup. 78, 468 A.2d 951 (1983); or a practice amounting to a violation of public policy. See, e.g., *Sportsmen's Boating Corporation v. Hensley,* [192 Conn. 747, 474 A.2d 780 (1984)]." Web Press Services Corporation v. New London Motors, Inc., [203 Conn. 342, 355, 525 A.2d 57]. Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. See, *id.* at 363 (knowledge of falsity, either constructive or actual), need not be proven to establish CUTPA violation)." *Normand Josef Enterprises v. Connecticut National Bank, supra* 230 Conn. 486, 522-23, quoting Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 105-106, 612 A.2d 1130.

**HN8** The general **[*11]** rule is that mere nondisclosure does not ordinarily give rise to an action in fraud and misrepresentation. *Egan v. Hudson Nut Products, Inc.,* 142 Conn. 344, 348, 114 A.2d 213 (1955); *Watertown Savings Bank v. Mattoon,* 78 Conn. 388, 393, 62 A. 622 (1905). "To constitute fraud the nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction." *Egan v. Hudson Nut Products, Inc., supra,* 142 Conn. at 348. **HN9** "A vendor of property may not do anything to conceal from the vendee a material fact affecting it . . . or deliberately hide defects, for, in so doing, he is not merely remaining silent, but is taking active steps to mislead." *Id.* at 348, quoting *Gayne v. Smith,* 104 Conn. 650, 652, 134 A. 62.

In the present matter the plaintiffs have alleged that defendants Bello and/or A-Dan Realty did misrepresent the condition of the basement, septic system, water leakage and water problems at the premises on October 17, 1998 when the plaintiffs made inquiries. The **[*12]** plaintiffs allege that these representations by the defendants were intentional and were false representations of fact. Further, the plaintiffs have alleged that Bello and A-Dan Realty knew they were false at the time the defendants made them. Lastly, they allege that the representations were made to induce reliance by the plaintiffs, and that the plaintiffs did, in fact, rely upon these misleading representations to their detriment. *Gelinas v. Gelinas,* 10 Conn.App. 167, 173, 522 A.2d 295 (1987). **HN10** "If the defendant does speak, he must disclose enough to keep his words from being misleading." Prosser and Keeton on the Law of Torts, at 738 (5th ed. 1984). In addition, the seller of a property must not do anything to conceal from the buyer a material fact affecting it. *Gayne v. Smith,* 104 Conn. 650, 652, 134 A.62 (1926). The defendants, Bello and/or A-Dan Realty allegedly stated that the premises basement and septic system were satisfactory and that there were no water problems. Once the defendants made such assurances the obligation to disclose the actual defective conditions began. *Wedig v. Brinster,* 1 Conn.App. 123, 469 A.2d 783 (1983); **[*13]** *Duksa v. Middletown,* 173 Conn. 124, 127, 376 A.2d 1099 (1977). The plaintiffs also allege that the defendants Bello and A-Dan Realty took affirmative steps to conceal the alleged defective conditions by failing to have the seller, Neveleff, execute a Residential Condition Disclosure Report and forward the same to the plaintiffs, as required by General Statutes § 20-327b.

The complaint when taken in a manner most favorable to the plaintiffs presents claims arising from misrepresentations by the defendants Bello and A-Dan Realty, and therefore, satisfies the "cigarette rule" of CUTPA analysis.

IV

The defendants next argue that there is no appellate precedent in Connecticut addressing whether a single unfair or deceptive act can constitute a CUTPA violation. They argue that

the allegations of the complaint must demonstrate that the particular conduct is a general practice of the defendants. A "practice" they contend is a custom or habit; something that is done frequently. HN11 A violation of CUTPA must be established by showing either an actual deceptive "practice" or a practice "amounting to a violation of public policy" and in reference [*14] to a failure to disclose, there must be a duty to disclose. *Willow Springs Condominium Assn., Inc. v. Seventh BRT Development Corp.*, 245 Conn. 1, 44, 717 A.2d 77 (1998); *Daddona v. Liberty Mobile Home Sales, Inc.*, 209 Conn. 243, 257, 550 A.2d 1061 (1988). As the court has determined that there was a duty to disclose, a discussion regarding the application of CUTPA to isolated transactions is necessary. Additionally, the question remains as to whether alleged deceptive acts by the defendants violated public policy.

The majority of superior court decisions have held that a litigant does not need to allege more than a single act of misconduct in order to bring an action under CUTPA. *Slitz v. Pyramid Custom Home Corp. of Ct.*, Superior Court, judicial district of Danbury, Docket No. 323247 (April 4, 1997, Stodolink, J.). See, e.g., *Abrams v. Riding High Dude Ranch*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 345046 (February 5, 1998, Skolnick, J.); *Four Beaches Condominium Assn. v. W.C. Brescia Plumbing and Heating, Inc.*, Superior Court, judicial district of New Haven at New Haven, Docket No. 384124 (May 23, 1997, Licari, [*15] J.) (20 Conn. L. Rptr. 442); *Michael J. Stula Agency v. Wisniewski*, Superior Court, judicial district of New London at New London, Docket No. 526137 (January 22, 1994, Austin, J.); *Levesque v. Kris Enterprises*, Superior Court, judicial district of Litchfield, Docket No. 053776 (May 20, 1991, Susco, J.) (4 Conn. L. Rptr. 86); *Metpath, Inc. v. IDS Corp.*, Superior Court, judicial district of Hartford/New Britain at New Britain (March 12, 1991, Aronson, J.) (3 Conn. L. Rptr. 349).

In *Daddona v. Liberty Mobile Home Sales, Inc.*, 209 Conn. 243, 550 A.2d 1061 (1998), the Supreme Court held that HN12 a single instance of misconduct can be a violation of CUTPA. The Court found that a violation of CUTPA existed where the defendant dismantled the plaintiff's mobile home rather than evicting her. *Id. at 257-58.* The court reasoned that HN13 "CUTPA was designed to protect the public from unfair practices, and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy . . . [A] violation of CUTPA can be found . . . where the defendant's actions violate public policy . . ." *Id.*; *Roache v. Rogers,* Superior [*16] Court, judicial district of Fairfield at Bridgeport, Docket No. CV98 0354114, (July 26, 1999, Skolnick, J.).

Therefore, it is the violation of public policy, and not the number of incidents, that creates the factual predicate for a claim of a CUTPA violation. *Roache v. Rogers, supra.* Moreover, HN14 CUTPA is a remedial statute and should be liberally construed. *Web Press Services Corporation v. New London Motors*, 203 Conn. 342, 354, 525 A.2d 57 (1987).

A distinguishing factor in this case is that the defendants Bello and A-Dan Realty are, as the plaintiffs argue, commercial actors. They are a real estate agent and a real estate agency holding themselves out for hire to the public for assistance in real estate purchases and sales. They are not individuals selling a single residence in a limited nonrepetitive transaction. Their activities are commercial in nature and are ongoing by their nature. Their business and activities are regulated by statute and regulations. The type of activity presented by the complaint and the type of harm alleged by the plaintiffs as a consequence of such activity is the type of harm which CUTPA and the statutes and regulations [*17] regarding real estate agents and brokers were intended to remedy as a matter of public policy. CUTPA is remedial in nature and it is to be applied liberally.

The court finds that in this instance CUTPA can apply to the home purchase transaction involving the defendant real estate agent Bello and her principal real estate agency, A-Dan Realty.

Accordingly, the motion to strike Counts VII and X of the plaintiffs' complaint alleging CUTPA violations is hereby denied.

The Court by Arnold, J.

Source: Legal > / . . . / > **CT State Cases, Combined** [i]
Terms: **name(kane and neveleff)** (Edit Search)
View: Full
Date/Time: Tuesday, August 10, 2004 - 10:50 AM EDT

\* Signal Legend:
- ⬤ - Warning: Negative treatment is indicated
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.