# EXHIBIT "F"

Source: Legal > / . . . / > CT State Cases, Combined [i]
Terms: **number(565866)** (Edit Search)

*2004 Conn. Super. LEXIS 653, \**

Milltex Properties v. George Johnson d/b/a Johnson Municipal Services

**565866**

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEW LONDON, AT NEW LONDON

*2004 Conn. Super. LEXIS 653*

March 15, 2004, Decided
March 15, 2004, Filed

**NOTICE:** **[\*1]** THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Defendants' motion to strike count three, breach of an express warranty under General Statutes § 42a-2-313, granted. Motion to strike count four, a violation of CUTPA, denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff hotel owner filed suit against defendant contractors, alleging breach of a written or verbal contract, breach of express warranty under the Connecticut Uniform Commercial Code, Conn. Gen. Stat. § 42a-2-313, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et seq. The contractors sought to strike the two statutory claims.

**OVERVIEW:** The owner contracted for construction and installation of a sanitary sewer or wastewater treatment plant at the hotel. The work was completed and defendants were paid, but thereafter, difficulties with the treatment plant resulted. The contractors refused to correct the problem, nor did they reimburse the owner for repair expenses. The owner filed a multi-count complaint and the contractors sought to strike the statutory claims. The court found that the owner filed a timely memorandum in opposition pursuant to Conn. Gen. Prac. Book, R. Super. Ct. § 10-42, but that it did not oppose striking the breach of express warranty claim. Accordingly, the owner was deemed to consent to that relief. The court found that the doctrine of economic loss was not applicable to the violation of the CUTPA claim, as it did not involve a product liability claim. There were aggravating circumstances alleged for purposes of the CUTPA violation, and there was no heightened pleading requirement for such a claim. The court found that the allegations that the contractors represented that they were highly skilled in wastewater treatment for the needs of hotel businesses were sufficient to withstand the motion.

**OUTCOME:** The court granted the contractors' motion to strike the breach of an express warranty claim, but denied the motion with respect to the claim alleging a violation of CUTPA.

**CORE TERMS:** economic loss, motion to strike, judicial district, quotation, memorandum, breach of contract, unfair, misrepresentation, product liability, aggravating circumstances,

misrepresented, risk of loss, contract law, contractual, treatment plant, move to strike, revised, particularity, wastewater, prayer, plead, complex litigation, common law, applicability, unscrupulous, unethical, cigarette, warranty, customer, immoral

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike
Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action

**HN1** The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged. A court must construe the facts in the complaint most favorably to the plaintiff. Also, Conn. Gen. Prac. Book, R. Super. Ct. § 10-39 allows for a claim for relief to be stricken only if the relief sought could not be legally awarded. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike

**HN2** Prior to the amendment of Conn. Gen. Prac. Book, R. Super. Ct. § 10-42 in 1989, a party who failed to timely file a memorandum of law in opposition to a motion to strike was deemed to have consented to the granting of the motion. With the deletion of the foregoing provision from § 10-42, the failure to timely file an opposing memorandum will not necessarily be fatal and a court may therefore address the merits of the motion. However, despite the amendment to § 10-42, the filing of a memorandum in opposition to a motion to strike is mandatory and the failure to file such may still serve as a ground for granting a motion to strike. More Like This Headnote

Torts > Business & Employment Torts > Unfair Business Practices
Torts > Negligence > Defenses
Torts > Products Liability

**HN3** The economic loss doctrine is a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic. When deciding to adopt the economic loss doctrine in product liability cases, the Connecticut Supreme Court looked at case law from other jurisdictions. The economic loss doctrine is applicable in product liability and negligence cases including claims of negligent misrepresentation. A party who engages in contractual negotiations with another has the ability to protect itself in the contractual language against the other party's innocent, though wrong representations. More Like This Headnote

Torts > Business & Employment Torts > Unfair Business Practices
Contracts Law > Contract Interpretation > Interpretation Generally

**HN4** The United States Supreme Court has held that contract law, and the law of warranty in particular, is well suited to commercial controversies because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power, there is no reason to intrude into the parties' allocation of the risk. The economic loss doctrine has been applied to contracts for repair services and contracts for services rendered as part of the construction or manufacture of products. More Like This Headnote

Torts > Products Liability

Contracts Law > Breach > Causes of Action
HN5 ±Contract law and tort law address fundamentally different concerns. When a person is injured, the cost of the injury and the loss of time or health may be an overwhelming misfortune, and one the person is not prepared to meet. In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or experiences increased costs in performing a service. Such damages mean simply that the product has not met the customers' expectations, or, in other words, that the customer has received insufficient product value. Almost any contract breach can be conceived of in terms of a negligent or intentional tort claim. When, through the negligence of one of the parties, the subject of the transaction physically injures a person, or damages the property of someone not a party to the contract, the law of tort properly provides a cause of action. But to permit a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of the parties to allocate the risks of their own transactions.  More Like This Headnote

Torts > Business & Employment Torts > Bad Faith Breach of Contract
Torts > Negligence > Defenses
HN6 ±The two most frequently cited reasons for adopting the economic loss doctrine are that commercial parties are capable of negotiating the terms of their contracts and that the doctrine protects the extinction of fundamental theories of contract law because many breaches of contract are the result of tortuous conduct.  More Like This Headnote

Torts > Business & Employment Torts > Bad Faith Breach of Contract
Torts > Products Liability
Torts > Damages > Damages Generally
HN7 ±There is a line of Connecticut cases that refuses to adopt the economic loss doctrine or adopts the doctrine in limited circumstances. The doctrine may only surface where the tort claim arises from the failure to satisfy a contract provision. It appears inapplicable where the tortious conduct lies in the making of the contract such as where fraud or misrepresentation to induce a party to contract is alleged. In Flagg, the courts adopt the economic loss doctrine in products liability actions, but they do not adopt the economic loss doctrine when the plaintiff's claim does not sound in products liability. Furthermore, the holding in Flagg may fairly be read as holding that where a plaintiff claims commercial losses suffered as a result of defective performance of a contract for the sale of goods, such losses are governed by the Connecticut Uniform Commercial Code (UCC), which in turn preserves common law actions for fraud and misrepresentation only as long as such actions are consistent with the particular provisions of the UCC. One such provision, Conn. Gen. Stat. § 42a-2-721, is in fact intended to make actions for fraud or misrepresentation presumptively inconsistent with post-acceptance claims for breach of warranty.  More Like This Headnote

Torts > Business & Employment Torts > Bad Faith Breach of Contract
Torts > Products Liability
Torts > Damages > Damages Generally
HN8 ±The Superior Court of Connecticut, Judicial District of New London, agrees with the reasoning in the line of cases restricting the applicability of the economic loss doctrine. No appellate court in Connecticut has held that a plaintiff may not recover for economic losses when the relationship is contractual in nature other than in actions where the claim is based on product liability and the sale of goods. Until such time when an appellate court does expand the so-called economic loss

Case 3:02-cv-01454-RNC    Document 92-7    Filed 08/12/2004    Page 5 of 13

doctrine, the New London Superior Court will limit its applicability to circumstances similar to the facts in Flagg.  More Like This Headnote

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices

HN9 It is well settled that in determining whether a practice violates the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq., courts have adopted the criteria set out in the cigarette rule by the Federal Trade Commission for determining when a practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businessmen. All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.  More Like This Headnote

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices

HN10 A violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et seq., may be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy. Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. Whether a practice is unfair and thus violates CUTPA is an issue of fact. The facts found must be viewed within the context of the totality of circumstances which are uniquely available to a trial court. A simple breach of contract, even if intentional, does not amount to a violation of CUTPA; a claimant must show substantial aggravating circumstances attending the breach to recover under the CUTPA. A misrepresentation can constitute an aggravating circumstance that would allow a simple breach of contract claim to be treated as a CUTPA violation; it would in effect be a deceptive act.  More Like This Headnote

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices
Civil Procedure > Pleading & Practice > Pleadings > Interpretation

HN11 There is no longer a requirement that a plaintiff in an action under the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et seq., plead with particularity. The Connecticut Supreme Court has held that there is no special pleading requirement for a CUTPA claim over and above any other claim.  More Like This Headnote

**JUDGES:** D. Michael Hurley, Judge Trial Referee.

**OPINIONBY:** D. Michael Hurley

**OPINION:** MEMORANDUM OF DECISION MOTION TO STRIKE # 109

I

FACTS

The plaintiff, Milltex Properties, filed an amended complaint on September 15, 2003, against the three defendants, George Johnson, Dean Wilburn and Brian Campbell. The complaint alleges breach of a written contract as to Johnson and Wilburn, breach of a verbal contract as to Campbell, breach of express warranty under the Connecticut Uniform Commercial Code

(hereinafter UCC), General Statutes § 42a-2-313, and a violation of the Connecticut Unfair Trade Practices Act (hereinafter CUTPA), General Statutes § 42-110a et seq., as to Johnson and Wilburn.

The plaintiff alleges that it contracted with Johnson and [*2] Wilburn (hereinafter the defendants) n1 "for the construction and installation of a sanitary sewer or wastewater treatment plant to be located [at the plaintiff's hotel]." (Amended and Revised Complaint, Count 3, P4.) The plaintiff further alleges that the contract required that the work be done in "a good and workmanlike manner" (Amended and Revised Complaint, Count 3, P5); and the plaintiff relied on the defendant's work to be such. After the work was completed and the defendants were paid in full, the plaintiff's hotel began experiencing difficulties with the treatment plant "resulting from the defective design, installation and construction of the wastewater treatment plant by the defendants." (Amended and Revised Complaint, Count 3, P7.) Although the plaintiff asked the defendants to correct the problem, as was required by the contract, the defendants did not do so, nor did they reimburse the plaintiff for the expenses it incurred when it was forced to employ another contractor to correct the error.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The motion to strike does not pertain to count two, which is the only count involving the defendant, Brian Campbell, therefore all the allegations relevant to him have been omitted.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*3]

On September 30, 2003, the defendants filed a motion to strike counts three and four of the plaintiff's amended and revised complaint accompanied by a memorandum of law in support of their motion. They move to strike the third count on the ground that it is legally insufficient because the claim arises from a contract for services and not goods; therefore, the express warrantees under the UCC do not apply. The defendants move to strike the fourth count on the grounds that the claim is barred by the economic loss doctrine, that the plaintiff does not sufficiently allege aggravating circumstances beyond a mere breach of contract and that the plaintiff does not allege conduct comprising unfair and deceptive trade practices. In addition, the defendants request that if the court strikes the CUTPA count it should also strike all remedies permitted by CUTPA and listed in the plaintiff's prayer for relief. On November 6, 2003, the plaintiff filed a memorandum in opposition to the defendants' motion to strike and on December 4, 2003, the defendants filed a reply to the plaintiff's opposition to the motion to strike. The court heard oral argument on the motion on December 8, 2003.

II

DISCUSSION [*4]

HN1 "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Fort Trumbull Conservatory, LLC v. Alves, 262 Conn. 480, 498, 815 A.2d 1188 (2003). "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis in original; internal quotation marks omitted.) Faulkner v. United Technologies Corp., 240 Conn. 576, 588, 693 A.2d 293 (1997). "A motion to strike is properly granted if' the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Internal quotation marks omitted.) Fort Trumbull Conservatory, LLC v. Alves, supra 262 Conn. 498. "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp., supra, 240 Conn. 580.

Also, "Practice Book . . . § 10-39, allows for a claim for relief to be stricken only if the relief sought could not be legally [*5] awarded." *Pamela B. v. Ment*, 244 Conn. 296, 325, 709 A.2d 1089 (1998).

Count Three

The defendants move to strike count three of the plaintiff's complaint, breach of express warranty pursuant to General Statutes § 42a-2-313, on the ground that it does not state a claim under this statute because the provisions of the UCC do not apply to this contract. The defendants argue that the words the plaintiff used in its complaint to describe the contract indicate that this contract was for the rendition of services. In addition, the defendants argue that even if the contract is a hybrid contract for both goods and services, the predominant purpose of the contract is for services to be provided; therefore, the UCC does not apply. In its memorandum in opposition to the motion to strike the plaintiff makes no arguments opposing the motion to strike count three.

HN2 "Prior to the amendment of . . . Practice Book § [10-42 in 1989], a party who failed to timely file a memorandum of law in opposition to a motion to strike was deemed to have consented to the granting of the motion . . . With the deletion of The foregoing provision from [ § 10-42], [*6] the failure to timely file an opposing memorandum will not necessarily be fatal and the court may therefore address the merits of the motion. *However, despite the amendment to . . . Practice Book § [10-42], the filing of a memorandum in opposition to a motion to strike is mandatory and the failure to file such may still serve as a ground for granting a motion to strike.*" (Emphasis in original; internal quotation marks omitted.) *Bonelli v. Giguere*, Superior Court, judicial district of Hartford, Docket No. CV 02 0819257 (October 15, 2003, Hale, J.T.R.). The plaintiff in the present case has not failed to file timely a memorandum in opposition to the motion to strike. If that had been the case, this court would have been inclined to address the merits since the defendant did not object to the failure. See *Capital Crossing Bank v. Sherman*, Superior Court, judicial district of New London, Docket No. 0554794 (November 16, 2000, Hurley J.T.R.). In the present case, the plaintiff did file a timely memorandum in opposition; however, in the memorandum it chose not to make any arguments in opposition to striking the third count. Therefore, this court holds that the plaintiff has [*7] consented to strike count three and will grant the defendants' motion to strike this count. See *Wells v. Plainfield*, Superior Court, judicial district of Windham at Putnam, Docket No. CV 02 0068211 (January 20, 2004, Foley, J.).

Count Four and Prayer for Relief

The defendants move to strike the fourth count, a violation of CUTPA, on three grounds. First, that the claim is barred by the economic loss doctrine. Second, that the allegations in the plaintiff's complaint do not allege anything more than a simple breach of contract; and third, that the plaintiff does not allege conduct constituting unfair or deceptive trade practices.

1

Economic Loss Doctrine

In support of their first ground for striking count four, the defendants argue that according to the economic loss doctrine a plaintiff may not recover in tort when the relationship between the parties is contractual in nature and the plaintiff has suffered only economic losses. They argue that the Connecticut Supreme Court in *Flagg Energy Development Corp. v. General Motors Corp.*, 244 Conn. 126, 709 A.2d 1075 (1998), adopted the common-law economic loss doctrine and subsequent Connecticut [*8] Superior Courts have expanded the doctrine to include all torts especially when the parties have the ability to negotiate regarding who will bear the risk of loss. They argue that the courts have specifically adopted the doctrine in

negligence, CUTPA and construction contract cases. Furthermore, the defendants argue that the reasons why the courts have adopted the doctrine are applicable in this case. There are two reasons often cited by courts for adopting the doctrine. The first is when the parties are sophisticated corporations they are capable of negotiating contractual terms regarding the risk of loss. Second, allowing a plaintiff to recover for economic losses resulting from a breach of contract would make many fundamental rules of contract law irrelevant including the measure of damages and risk of loss.

In its memorandum in opposition to the defendants' motion to strike, the plaintiff argues that the economic loss doctrine is not widely adopted in Connecticut courts. There is a split of authority among the Superior Courts as to whether the economic loss doctrine is applicable in Connecticut. The plaintiff also argues that the even if the doctrine has been adopted, it only **[*9]** has been applied when the plaintiff is alleging a tort claim or a CUTPA claim based on tortuous conduct. It argues that the doctrine is therefore not applicable in the present case because it is alleging a CUTPA claim based on a breach of contract, not a tort.

The defendants respond in their memorandum in response to the plaintiff's memorandum in opposition that the authority they cited previously shows that the economic loss doctrine may also operate to bar a CUTPA claim based on allegations of breach of contract, not just claims based on allegations of tortuous conduct as the plaintiff argues. The defendants also respond that the plaintiff does not make any arguments to show why the reasoning in the cases rejecting the economic loss doctrine is the better approach.

*HN3* "The economic loss doctrine is a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic." (Internal quotation marks omitted.) *Darien Asphalt Paving v. Newtown*, Superior Court, judicial district of New Britain, Docket No. CV 98 04878 (December 7, 1998, Nadeau, J.) (23 Conn. L. Rptr. 495). The Connecticut Supreme Court **[*10]** addressed the issue of whether to adopt the economic loss doctrine in *Flagg Energy Development Corp. v. General Motors Corp., supra,* 244 Conn. 126.

When deciding to adopt the economic loss doctrine in product liability cases, the Connecticut Supreme Court looked at case law from other jurisdictions. These cases are *Duquesne Light Co. v. Westinghouse Electric Corp.,* 66 F.3d 604 (3rd Cir. 1995); and *Princess Cruises, Inc. v. General Electric Co.,* 950 F. Supp. 151 (E.D.Va 1996). In *Duquesne Light Co. v. Westinghouse Electric Corp., supra,* 66 F.3d 620, the Third Circuit Court of Appeals, analyzing Pennsylvania law, held that the economic loss doctrine is applicable in product liability and negligence case including claims negligent misrepresentation. The court reasoned, "[a] party who engages in contractual negotiations with another has the ability to protect itself in the contractual language against the other party's innocent, though wrong representations." *Id.*

In *Princess Cruises, Inc. v. General Electric Co., supra,* 950 F. Supp. 151, the Federal District Court for the eastern district **[*11]** of Virginia looked at *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986). Both *Princess Cruises* and *East River* involved maritime law. "*HN4* The [United States Supreme] Court reasoned: 'Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power, we see no reason to intrude into the parties' allocation of the risk.' " *Princess Cruises, Inc. v. General Electric Co., supra,* 950 F. Supp. 154, quoting *East River S.S. Corp. v. Transamerica Delaval, Inc., supra,* 476 U.S. 858, 872-73. "The economic loss doctrine has since been applied to contracts for repair services . . . and contracts for services rendered as part of the construction or manufacture of products." (Citation omitted; internal **[*12]** quotation marks omitted.) *Id.* The court further stated "that it also is

Get a Document - by Docket Number - 565800
Case 3:02-cv-01454-RNC   Document 92-7   Filed 08/12/2004   Page 9 of 13
Page 8 of 12

compelled by the reasoning, if not the specific holding of *East River*. As the Court explained in *East River*, HN5⨮contract law and tort law address fundamentally different concerns. When a person is injured, the cost of the injury and the loss of time or health may be an overwhelming misfortune, and one the person is not prepared to meet. In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or . . . experiences increased costs in performing a service . . . Such damages mean simply that the product has not met the customers' expectations, or, in other words, that the customer has received insufficient product value . . . Almost any contract breach can be conceived of in terms of a negligent or intentional tort claim. When, through the negligence of one of the parties, the subject of the transaction physically injures a person, or damages the property of someone not a party to the contract, the law of tort properly provides a cause of action. But to permit a party [*13] to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of the parties to allocate the risks of their own transactions." (Citation omitted; internal quotation marks omitted.) *Id.*, 155. Thus, HN6⨮the two most frequently cited reasons for adopting the economic loss doctrine are that commercial parties are capable of negotiating the terms of their contracts and that the doctrine protects the extinction of fundamental theories of contract law because many breaches of contract are the result of tortuous conduct. See *Cocchiola Paving, Inc. v. Peterbuilt of Southern Connecticut*, Superior Court, judicial district of Waterbury, Docket No. CV 01 0168579S (March 3, 2003, Gallagher, J.).

Since *Flagg Energy Development Corp. v. General Motors Corp., supra,* 244 Conn. 126, no appellate court in Connecticut has dealt with whether the economic loss doctrine should apply in cases where the claim is not based on product liability. The Superior Courts have been divided as to whether the doctrine truly has been adopted in Connecticut and if it has, when to apply the doctrine. The line [*14] of cases relied on by the defendants holds that Connecticut has adopted the economic loss doctrine and expanded the applicability of the doctrine beyond product liability cases. These cases include *Worldwide Preservation Services, LLC v. IVth Shea, LLC*, Superior Court, judicial district Stamford/Norwalk at Stamford, Docket No. CV 98 0167154 (February 1, 2001, Tierney, J.) (29 Conn. L. Rptr. 7); *Morganti National, Inc. v. Greenwich Hospital Assn.*, Superior Court, complex litigation docket at Waterbury, Docket No. X06 CV 99 0160125 (September 27, 2001, McWeeny, J.); and *Amity Regional School District # 5 v. Atlas Construction Co.*, Superior Court, complex litigation docket at Waterbury, Docket No. X06 CV 99 0153388 (July 26, 2000, McWeeny, J.) (27 Conn. L. Rptr. 605). *Worldwide* provides a thorough analysis of *Flagg* and cites to much of the relevant language in *Princess Cruises* quoted above. The court then holds that although *Flagg* may appear to be limited to product failures governed by the UCC, it "involved not a pure contract sale of goods, but the manufacturing off-site of large components to be later construed as part of a large building." This characterization [*15] of the facts in *Flagg* would make the economic loss doctrine applicable in many construction contract cases, including the present case. The court in *Morganti National, Inc. v. Greenwich Hospital Assn., supra,* "[chose] to follow the well-reasoned opinion of Judge Tierney in *Worldwide*" and reasoned that the use of the doctrine is most compelling when "the parties are sophisticated corporations who entered into a contract involving a major construction project," particularly when the contract "addresses risk of loss and limitations on damage claims."

HN7⨮There is also a line of cases that refuses to adopt the economic loss doctrine or adopts the doctrine in limited circumstances. These cases include *Dobco, Inc. v. Williams Development Co.*, Superior Court, complex litigation docket at Tolland, Docket No. X07 CV 99 007215 (May 17, 2002, Sferrazza, J.) (32 Conn. L. Rptr. 214); *Darien Asphalt Paving Inc. v. Newtown*, Superior Court, judicial district of New Britain, Docket No. CV 98 04878 (December 7, 1999, Nadeau, J.) (23 Conn. L. Rptr. 495); *Scap Motors, Inc. v. Pevco Systems International, Inc.*, Superior Court, judicial district Fairfield at Bridgeport, Docket [*16] No. CV 97 0348461 (August 12, 1999, Melville, J.) (25 Conn. L. Rptr. 283); *Carolina Casualty v.*

*60 Gregory Boulevard*, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV 98 0169383 (March 20, 2000, Hickey, J.) (26 Conn. L. Rprt. 685); and *Reynolds, Pearson & Co., LLC v. Miglietta*, Superior Court, judicial district of Hartford, Docket No. CV 00 0801247 (March 27, 2002, Berger, J.) (29 Conn. L. Rptr. 481).

In *Dobco, Inc. v. Williams Development Co.*, supra, the court "[anticipated] that our appellate jurisprudence will recognize the economic loss doctrine at least in limited circumstances. The doctrine may only surface where the tort claim arises from the failure to satisfy a contract provision. It appears inapplicable where the tortious conduct lies in the making of the contract such as where fraud or misrepresentation to induce a party to contract is alleged . . ."

In a footnote, the court in *Carolina Casualty v. 60 Gregory Boulevard*, supra, refused to apply the economic loss doctrine because the plaintiff's claim did not sound in products liability. The court reasoned that "in *Flagg*, the plaintiff asserted a negligent misrepresentation **[*17]** claim based upon a warranty that a product was not defective, when the product was in fact defective . . . In the cases cited by the court in *Flagg*, the courts adopt the economic loss doctrine in products liability actions, but they do not adopt the economic loss doctrine when the plaintiff's claim does not sound in products liability." (Citation omitted.) *Id.*

Furthermore, "the holding in *Flagg* may fairly be read as holding that where a plaintiff claims commercial losses suffered as a result of defective performance of a contract for the sale of goods, such losses are governed by the UCC, which in turn preserves common law actions for fraud and misrepresentation only as long as such actions are consistent with the particular provisions of the UCC . . . The Connecticut Supreme Court specifically found that one such provision, General Statutes § 42a-2-721, was in fact intended to make actions for fraud or misrepresentation presumptively inconsistent with post-acceptance claims for breach of warranty . . . Therefore, the court's affirmance of the trial court's granting of the defendant's motion to strike the plaintiffs' misrepresentation claim **[*18]** was not expressly premised on the economic loss doctrine but rather on the fact that such a claim was incompatible with and thus displaced by the provisions of the UCC." (Citations omitted; internal quotation marks omitted.) *Reynolds, Pearson & Co., LLC v. Miglietta*, supra.

HN8 This court agrees with the reasoning in the line of cases restricting the applicability of the economic loss doctrine. No appellate court in Connecticut has held that a plaintiff may not recover for economic losses when the relationship is contractual in nature other than in actions where the claim is based on product liability and the sale of goods. Until such time when an appellate court does expand the so called economic loss doctrine, this court will limit its applicability to circumstances similar to the facts in *Flagg*; therefore, the court does not accept the economic loss doctrine as a ground for striking the fourth count.

2

Aggravating Circumstances

In their memorandum of law the defendants argue in support of their second ground for striking the fourth count that a mere breach of contract does not support an action for CUTPA unless the plaintiff has alleged aggravating circumstances. **[*19]** Furthermore, they argue that a plaintiff cannot recover under CUTPA when a defendant does not make good on a promise unless the defendant made a representation as to a future act and the defendant had a present intent not to fulfill the promise. The plaintiff agrees that aggravating circumstances are required to recover under CUTPA for a breach of contract; however, it argues that it has alleged a misrepresentation that induced reliance, which is an aggravating circumstance. Additionally the plaintiff argues that it alleged a present intent when it alleged that the "defendants misrepresented that the plant would be fully operational upon the installation without extensive, costly modification when the defendants knew or should have

known that said representation was untrue."

HN9 "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether, in other words, [*20] it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen] . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) _Journal Publishing Co. v. Hartford Courant Co., 261 Conn. 673, 695-96, 804 A.2d 823 (2002)._

"[A] HN10 violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA . . . Whether a practice is unfair and thus violates CUTPA is an issue of fact . . . The facts found must be viewed within the context of the totality of circumstances which are uniquely available to the trial court . . . A simple breach of contract, even if intentional, does not amount to a violation of [CUTPA]; a [claimant] [*21] must show substantial aggravating circumstances attending the breach to recover under the Act . . . [A] misrepresentation can constitute an aggravating circumstance that would allow a simple breach of contract claim to be treated as a CUTPA violation; it would in effect be a deceptive act." (Citations omitted, internal quotation marks omitted.) _Gladue v. Cummins_, Superior Court, judicial district of New London, Docket No. 0547927 (September 27, 1999, Hurley, J.).

The facts of this case are similar to the facts in _Lester v. Resort Camplands International, Inc., 27 Conn.App. 59, 605 A.2d 550 (1992)._ In that case it was held that a jury could reasonably have found a violation of CUTPA when the defendant made misrepresentations to the plaintiff in order to induce the plaintiff to enter into the contract. In the present case, paragraph sixteen of count four of the plaintiff's complaint alleges that the defendant "misrepresented to the plaintiff that it was highly skilled in the area of wastewater treatment for the needs of hotel businesses, thereby knowingly inducing the plaintiff's reliance upon the defendant's expertise, when the defendant knew or should have known [*22] that they did not possess sufficient skills to install the plant." This allegation is sufficient to withstand a motion to strike.

The defendants rely on _Raffone v. Home Depot U.S.A., Inc._, Superior Court, judicial district of New Haven, Docket No. CV 02 0465471 (June 23, 2003, Harper, J.) (34 Conn. L. Rptr. 747), for the proposition that the plaintiff may not recover in CUTPA "when a defendant merely has not delivered on a promise unless the defendant made a representation as to a future fact coupled with a present intent not to fulfill the promise . . . The court is not aware of a case that holds that a statement predictive of future conduct . . . somehow becomes a 'misrepresentation' for CUTPA purposes simply when the party making the representation cannot deliver on the promise." The plaintiff in the present case is not merely alleging an inability to perform, it is alleging that the defendants knowingly misrepresented their ability to perform the contract in order to induce the plaintiff into entering into the contract; therefore, _Raffone v. Home Depot U.S.A., Inc._, supra, is inappliable.

3

Unfair and Deceptive Trade Practices

In support on their final [*23] ground for striking the fourth count, that the plaintiff has not

alleged facts sufficient to constitute "unfair or deceptive trade practices," the defendants argue that the plaintiff is required to plead a CUTPA claim with particularity. They argue that the plaintiff is required to show, but did not do so, how the defendants' conduct was "immoral, unethical, oppressive, unscrupulous or offensive to the public." The defendants argue that the plaintiff's allegations regarding this requirement were merely statements of legal conclusions unsupported by facts. The plaintiff responds by arguing that the facts to support this requirement can be found in paragraph sixteen of its complaint.

*HN11* There is no longer a requirement that the plaintiff in a CUTPA action plead with particularity. In _Macomber v. Travelers Property & Casualty Corp._, 261 Conn. 620, 644, 804 A.2d 180 (2002), the Connecticut Supreme Court held that there is no special pleading requirement for a CUTPA claim "over and above any other claim." Although prior to _Macomber v. Travelers Property & Casualty Corp., supra_, 261 Conn. 644, this court has required plaintiffs to plead allegations of **[*24]** CUTPA with particularity; see _Channer v. Channel Three News_, Superior Court, judicial district of New London, Docket No. 0559328 (May 21, 2002, Hurley, J.) ("If a claim does not set forth how or in what respect the [defendant's] alleged activities are either immoral, unethical, unscrupulous or offensive to public policy . . . [a] motion to strike is granted, because a CUTPA claim requires those allegations"); following _Macomber_ this court has not required plaintiffs to do so. See _Pri Capital Funding, LLC v. Eastern Capital Funding, LLC_, Superior Court, judicial district of New London, Docket No. CV 01 0559410 (February 19, 2003, Hurley, J.) (34 Conn. L. Rptr. 227) ("There is no special CUTPA pleading requirement to plead with particularity greater than that of any other claim").

Since there is no elevated pleading requirement for a CUTPA claim, it must be determined whether the plaintiff has alleged facts to satisfy the cigarette rule. In the present case, this court finds, when viewing the allegations in the light most favorable to the plaintiff, that the plaintiff has alleged the defendants misrepresented their ability to install the wastewater treatment plant and **[*25]** that they misrepresented that the plant would be fully operational without costly modifications. These allegations are sufficient to satisfy the cigarette rule and therefore withstand a motion to strike. Therefore, the defendants' motion to strike the fourth count is denied.

Finally, the defendants seek to strike the plaintiff's prayer for relief, which seeks remedies only available in CUTPA actions. "Practice Book . . . § 10-39, allows for a claim for relief to be stricken only if the relief sought could not be legally awarded." _Pamela B. v. Ment_, 244 Conn. 296, 325, 709 A.2d 1089 (1998). Because the court has denied the defendants' motion to strike the CUTPA claim, it likewise denies the motion to strike the relevant prayer for relief.

III

CONCLUSION

Based on the foregoing, the defendants' motion to strike count three, breach of an express warranty under General Statutes § 42a-2-313, is granted. However, their motion to strike count four, a violation of CUTPA, is denied.

D. Michael Hurley, Judge Trial Referee

Source: Legal > / . . . / > CT State Cases, Combined
Terms: number(565866) (Edit Search)
View: Full
Date/Time: Tuesday, August 10, 2004 - 11:38 AM EDT

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.