# EXHIBIT "G"

Source: Legal > / . . . / > CT State Cases, Combined [i]
Terms: name(greater new haven transit district and nafis & young) (Edit Search)

*2003 Conn. Super. LEXIS 1904, \**

**Greater New Haven Transit District** v. **Nafis & Young** Engineers, Inc.

CV020469107S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEW HAVEN

2003 Conn. Super. LEXIS 1904

July 1, 2003, Decided
July 1, 2003, Filed

**NOTICE:** [\*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff quasi-governmental organization sued defendant professional engineering services corporation for breach of contract; common law negligence; intentional misrepresentation; negligent misrepresentation; and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. The trial court granted the corporation's motion to strike certain causes of action. The organization moved the court to reconsider its order.

**OVERVIEW:** The organization entered into a written contract with the corporation for an environmental investigation of real estate the organization was considering buying. The investigation to be performed by the corporation was to include a magnetometer survey to detect the presence of underground storage tanks on the property. The organization alleged that despite the statements contained in the corporation's investigation report that no evidence of current or historical underground storage tanks were observed on the property, a 7500-gallon underground storage tank was discovered during the course of construction of a parking lot on the site, and as a result, the organization claimed money damages. The court found that the allegations regarding intentional and negligent misrepresentation and a violation of CUTPA were based on the same facts that the organization relied upon in its counts sounding in breach of contract and common law negligence. Thus, the parties' relationship was governed by the contract and the tort claims for purely economic damages arising out of the contractual relationship were barred by the economic loss doctrine.

**OUTCOME:** The court declined to vacate its ruling, and ordered that the intentional misrepresentation, negligent misrepresentation, and Connecticut Unfair Trade Practices Act claims were stricken.

**CORE TERMS:** motion to strike, memorandum, economic loss, calendar, contract law, breach of contract, engineering, tort law, opposing, reconsideration, negligent misrepresentation, judicial district, present matter, setting forth, adverse party, entrepreneurial, objected, site, intentional misrepresentation, failed to comply, intentional act, days prior, additionally, distinctive, eviscerate, conceived, unchecked, cherished, incessant, allocate

**LexisNexis(R) Headnotes** + Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike
**HN1** See Conn. Gen. Prac. Book, R. Super. Ct. § 10-42.

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike
Civil Procedure > Pleading & Practice > Motion Practice Generally > Time Limitations
**HN2** Conn. Gen. Prac. Book § 155 (current version at Conn. Gen. Prac. Book, R. Super. Ct. § 10-42) provides that if an adverse party objects to a motion to strike he shall, at least five days before the date the motion is to be considered on the short calendar, file and serve in accordance with Conn. Gen. Prac. Book § 120 (current version at Conn. Gen. Prac. Book, R. Super. Ct. §§ 10-12 through 10-17) a memorandum of law. An adverse party who fails timely to file such a memorandum pursuant to the section shall be deemed by the court to have consented to the granting of the motion. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike
**HN3** The principal function of Conn. Gen. Prac. Book § 155 (current version at Conn. Gen. Prac. Book, R. Super. Ct. § 10-42) is to enable movement beyond the allegations in the pleadings, and to assist the court in its analysis of the evidence so as to ascertain whether an actual need for trial exists. The filing of a memorandum of law setting forth the relevant arguments is mandatory under Conn. Gen. Prac. Book § 155 (current version at Conn. Gen. Prac. Book, R. Super. Ct. § 10-42). The memorandum must be filed, or the motion to strike shall be granted. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike
Civil Procedure > Preclusion & Effect of Judgments > Res Judicata
**HN4** A judgment that follows a consent to the granting of a motion to strike, though not necessarily a determination on the merits, is nevertheless a final judgment whose issues are thereafter res judicata as between the parties. More Like This Headnote

Torts > Business & Employment Torts > Deceit & Fraud
Torts > Business & Employment Torts > Unfair Business Practices
Contracts Law > Breach > Causes of Action
**HN5** Claims for recovery of commercial loss on the basis of breach of contract and sounding in misrepresentation or a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq., are displaced and precluded by breach of contract claims. More Like This Headnote

Torts > Business & Employment Torts
Contracts Law > Breach > Causes of Action
**HN6** Almost every breach of contract involves actions or inactions that can be conceived of as a negligent or intentional act. If left unchecked, the incessant tide of tort law would erode and eventually swallow contract law. If tort law and contract law are to fulfill their distinctive purposes, they might be distinguished where it is possible to do so. The economic loss doctrine serves the basis for such a distinction. Allowing a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of parties to allocate the risks of their own transactions. More Like This Headnote

Torts > Business & Employment Torts > Unfair Business Practices
**HN7** When reviewing a plaintiff's Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et seq., allegations, a court must look to the underlying nature of the claim to determine whether it is really a professional negligence claim

recast as a CUTPA claim. More Like This Headnote

Torts > Business & Employment Torts > Unfair Business Practices
Torts > Malpractice Liability > Professional Services
HN8 Only the entrepreneurial aspects of the engineering profession are subject to the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et seq. Claims of professional malpractice by engineers are exempt from CUTPA. More Like This Headnote

**JUDGES:** By Arnold, J.

**OPINIONBY:** Arnold

**OPINION:** MEMORANDUM OF DECISION MOTION FOR RECONSIDERATION RE: DEFENDANT'S MOTION TO STRIKE

Pursuant to Practice Book § 10-39, the defendant has moved to strike Counts 3, 4 and 5, alleging intentional misrepresentation, negligent misrepresentation, and a violation of the Connecticut Unfair Trade Practices Act, respectively . . . The defendant argues that the plaintiff has improperly alleged these causes of action in the context of a commercial dispute for purely economic losses, and that such claims are barred by the economic loss rule recognized in *Flagg Energy Development Corp. v. General Motors Corp.*, 244 Conn. 126 (1998).

The court first sets forth a review of the procedural history of the defendant's motion to strike. The defendant's motion to strike and the supporting memorandum of law were filed in the court on October 15, 2002. Thereafter, the matter was claimed as a nonarguable matter and appeared on the short calendar on February 24, 2003. The court (Arnold, J.), unaware [*2] that the plaintiff filed its opposing memorandum of law on February 24, 2003, granted the motion to strike, ruling that the plaintiff had failed to comply with Practice Book § 10-42, (formerly section 155) by not filing a memorandum of law in opposition to the motion to strike. The court additionally ruled that it was adopting the reasoning set forth in decisions of *Flagg Energy Development Corp. v. General Motors Corp., supra,* and *Morganti National, Inc. v. Greenwich Hospital Assoc.,* Superior Court, judicial district of Waterbury, Docket No. X06CV990160125 (September 27, 2001) (McWeeny, J.).

Thereafter, on March 3, 2003, the plaintiff moved for reconsideration of the court's ruling granting the motion to strike, setting forth that the plaintiff, although tardy in doing so, had filed a memorandum of law setting forth its opposition. The plaintiff also argued that it was in the interest of justice for the court to reconsider its ruling and that the defendant would not be prejudiced. The defendant objected and opposed the motion for reconsideration.

On March 21, 2003, the court ordered that reargument would be heard on April 28, 2003. The court additionally [*3] notified the parties on March 21, 2003 that the parties should not conclude that by allowing reargument, the court had vacated or set aside its previous ruling granting the motion to strike. The parties appeared on April 28, 2003 and argued their respective positions. However, the plaintiff did not explain why its opposition memorandum of law was not filed timely in accordance with Practice Book § 10-42. n1 The plaintiff has, by sworn affidavits, explained that it had mailed a copy to the defendant's counsel and the court on February 19, 2003, five days prior to the scheduled short calendar date of February 24, 2003. There is no claim by the plaintiff that the memorandum was filed with the court, other than on February 24, 2003, or that the plaintiff had requested a continuance of that hearing date from the court or opposing counsel. The plaintiff agrees that the matter was to be presented to the court "on the papers" on February 24, 2003. The defendant's counsel would

not have known that the plaintiff's memorandum of law would not be filed with the Clerk's Office until sometime on February 24, 2003, and would not physically be in the case file when the court issued its ruling granting **[*4]** the motion to strike.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Sec. 10-42.--Memorandum of' Law--Motion and Objection

HN1(a) Each motion to strike must be accompanied by an appropriate memorandum of law citing the legal authorities upon which the motion relies.

(b) Any adverse party who objects to this motion shall, at least five days before the date the motion is to be considered on the short calendar, file and serve in accordance with Sections 10-12 through 10-17 a memorandum of law.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Regarding the failure to file a timely memorandum of law opposing a motion to strike, the Connecticut Supreme Court in *Hughes v. Bemer*, 200 Conn. 400, 402-03, 510 A.2d 992 (1986) (*Hughes I*), stated:

The defendants claim that, irrespective of the merits, the judgment of the trial court must be upheld under Practice Book 155. n2 We agree. HN2That section provides in relevant part: 'If an adverse party objects to [a motion to strike] he shall, at least five days before the date the motion is to be considered on the short calendar, file and serve **[*5]** in accordance with Sec. 120 a memorandum of law. An adverse party who fails timely to file such a memorandum pursuant to this section shall be deemed by the court to have consented to the granting of the motion.' The plaintiffs in this case filed no memorandum of law in opposition to the motion to strike.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Practice Book § 155 was the predecessor of § 10-42.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

HN3"The principal function of Practice Book 155 is to enable movement beyond the allegations in the pleadings, and to assist the court in its analysis of the evidence so as to ascertain whether an actual need for trial exists. The filing of a memorandum of law setting forth the relevant arguments is mandatory under Practice Book 155. Cf. *Darling v. Waterford*, 7 Conn.App. 485, 508 A.2d 839 (1986). The memorandum must be filed, or the motion to strike shall be granted. The trial court did not err in granting the defendants motion to strike the complaint." *Hughes v. Bemer, supra* at 402-03.

The plaintiff's in Hughes I then **[*6]** re-instituted their action, relying on the accidental failure of suit statute. General Statutes § 52-592. The defendants moved to dismiss the second action arguing that § 52-592 was not available to reinitiate actions that had been heard on their merits. The trial court agreed and granted the motion. In *Hughes v. Bemer*, 206 Conn. 491, 495, 538 A.2d 703 (1988) (*Hughes II*), the Supreme Court affirmed the trial court's conclusion holding that HN4a judgment that followed "a consent to the granting of the motion to strike . . . though not necessarily a determination on the merits, is

nevertheless a final judgment whose issues are thereafter res judicata as between the parties." (Emphasis in original.); see also Southport Manor Convalescent Center Inc. v. Foley, 216 Conn. 11, 14-15 578 A.2d 646 (1990).

In *Hughes I* and *Hughes II* no memorandum opposing the motion to strike was filed, while in the present matter, a memorandum was filed late. However, the holdings in *Hughes I* and *Hughes II*, have been found applicable to a late filing of a required opposition memorandum of law. See. Burton v. Planning Commission, 209 Conn. 609, 553 A.2d 161 (1989); **[*7]** (memorandum of law opposing motion to dismiss filed four days prior to scheduled short calendar).

The plaintiff in the present matter did not file its memorandum of law in opposition to the motion to strike until February 24, 2003, the same day the court was considering the motion on the short calendar. It is clear that the plaintiff's filing of its memorandum of law did not comply with Practice Book § 10-42, which required the memorandum to be filed five days prior to the short calendar of February 24, 2003. The plaintiff, by failing to file its memorandum in a timely manner, consented to the granting of the motion to strike. The court's initial finding in its ruling of February 24, 2003 was that the "*Plaintiff has failed to comply with P.B. Sec. 10-42. Plaintiff has not objected and/or filed a memorandum of law in opposition to the motion to strike.*" (Emphasis added). The fact that the memorandum was filed the date of the short calendar hearing was a violation of § 10-42.

The defendant has objected to the court reconsidering its initial ruling, citing in support of its position the plaintiff's violation of § 10-42. If the court's ruling had ended with a violation of § 10-42, there **[*8]** is no reason that the defendant shouldn't be allowed to avail itself of the remedies discussed in *Hughes v. Bemer I* and *Hughes v. Bemer II* and their progeny. However, the court, as noted herein, in addition to granting the motion to strike because of the plaintiff's noncompliance with Practice Book § 10-42, also ruled that it "adopts the reasoning cited by the defendant as set forth in Flagg Energy Development Corp. v. General Motors Corp., supra 244 Conn. 126 and *Morganti National, Inc., v. Greenwich Hospital, Inc., supra* . . ." In citing these cases as additional authority for its granting of the motion to strike, the court has, in fact issued a "determination on the merits" of the relevant issues. See Hughes v. Bemer, supra, 206 Conn. 491, 495, (Hughes II). The plaintiff has in its late-filed memorandum pointed to several appellate cases and Superior Court cases that it maintains will show that the court's reliance on the above cases is in error. The court therefore, in exercising discretionary judgment, feels that a review of the court's reliance on Flagg Energy Development Corp. v. General Motors Corp., supra 244 Conn. 126 **[*9]** and *Morganti National, Inc., v. Greenwich Hospital, Inc., supra*, is warranted. It is, therefore, necessary to set forth the relevant facts in the present matter in order to conduct this review.

This action arises from a contractual dispute between the plaintiff, a quasi-governmental organization providing transportation services in the greater New Haven area and the defendant, a Connecticut corporation providing professional engineering services, including environmental site assessment services. The plaintiff's claims arise from a written contract for an environmental investigation of real estate to be performed by the defendant for the plaintiff. The plaintiff was, at the time, contemplating the purchase of said real estate. The investigation to be performed by the defendant was to include a magnetometer survey to detect the presence of underground storage tanks on the property. The plaintiff alleges that despite the statements contained in the defendant's investigation report that "no evidence of current or historical USTs were observed on the Site property," a 7500-gallon underground storage tank was discovered during the course of construction of the parking lot on the **[*10]** site, and as a result, the plaintiff has claimed money damages for breach of contract; common law negligence; intentional misrepresentation; negligent misrepresentation; and a violation of CUTPA. The allegations regarding intentional and negligent misrepresentation and a violation of CUTPA are based on the same facts that the plaintiff relies upon in its counts sounding in breach of contract and common law negligence.

The court continues to agree with the defendant that HN5 claims for recovery of commercial loss on the basis of breach of contract and sounding in misrepresentation or a violation of CUTPA are displaced and precluded by the breach of contract claims. This concept was first recognized in *Flagg Energy Development Corp. v. General Motors Corp., supra*. While limited to actions arising out of a defective product under the Uniform Commercial Code, the reasoning set forth in *Flagg* was expanded in *Morganti National, Inc. v. Greenwich Hospital Association, supra*. The court in *Morganti* stated:

In their motion, the defendants assert that the parties' relationship is governed by the construction contract and that the tort claims for purely economic [*11] damages arising out of the contractual relationship are barred by the economic loss doctrine. The rationale for the economic loss rule has been stated as follows:

HN6 'Almost every breach of contract involves actions or inactions that can be conceived of as a negligent or intentional act. If left unchecked, the incessant tide of tort law would erode and eventually swallow contract law. This court believes that if tort law and contract law are to fulfill their distinctive purposes, they might be distinguished where it is possible to do so. The economic loss doctrine serves the basis for such a distinction.'

*Princess Cruises Lines, Inc., v. General Electric Co.*, 950 F. Supp. 151, 155 (E.D. Va. 1996).

'Allowing a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of parties to allocate the risks of their own transactions.'

*Id.* at 155.

In issuing its decision, the *Morganti* court acknowledged that it was choosing to follow the opinion issued in *Worldwide Pres. Servs., LLC v. Ivth Shea, LLC*, Superior Court Complex Litigation Docket, judicial [*12] district of Fairfield at Stamford, Docket No; X05-CV-98-0167154S (Feb. 1, 2001, Tierney, J.), 29 Conn. L. Rptr. 1, (*Worldwide I*) which presents a thorough analysis of the economic loss rule. In *Worldwide I*, the court stated:

"To permit a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of the parties to allocate the risks of their own transactions." (quoting, *Princess Cruises, Inc. v. General Electric Co., supra*, 950 F. Supp. 151, 155). "Almost every breach of contract involves actions or inactions that can be conceived of as a negligent or intentional act. If left unchecked, the incessant tide of tort law would erode and eventually swallow contract law. This Court believes that if tort law and contract law are to fulfill their distinctive purposes, they might be distinguished where it is possible to do so. The economic loss doctrine serves as a basis for such a distinction." *Id.* at 155. Using a case specific metaphor the Princess Cruises court concluded: 'This Court must follow the Supreme Court's effort in East River to prevent contract [*13] law from drowning in a sea of tort." *Id.* at 156 (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986)).

On the same day that the court (Tierney, J.) issued its decision in *Worldwide I*, the court issued a companion decision in *Worldwide Pres. Servs., LLC v. Ivth Shea; LLC*, Superior Court Complex Litigation Docket, judicial district of Fairfield at Stamford, Docket No. X05-CV-98-01671545 (Feb. 1, 2001, Tierney, J.), 29 Conn. L. Rptr. 7 (*Worldwide II*), discussing whether the profession of engineering is subject to the entrepreneurial rule of CUTPA. The court concluded in Worldwide II that the CUTPA claims in that case by themselves were nothing more than breach of contract claims. The engineering firm in *Worldwide II*, had been sued in its capacity as an engineering professional. The claims arose out of its practice of engineering and the damages claimed were substantially related to the performance of those engineering

services.

*HN7* "When reviewing a plaintiff's CUTPA allegations, a court must look to the underlying nature of the claim to determine whether it is really a [professional **[*14]** negligence] claim recast as a CUTPA claim." *Haynes v. Yale-New Haven Hospital*, 243 Conn. 17, 38, 699 A.2d 964 (1997).

The court in *Worldwide II*, further stated, that the CUTPA counts only alleged a professional malpractice claim against the engineering firm and not a violation of the entrepreneurial or commercial aspect of the relationship. The court held that *HN8* only the entrepreneurial aspects of the engineering profession are subject to CUTPA. Claims of professional malpractice by engineers are exempt from CUTPA.

The court recognizes that the Connecticut appellate courts have not yet applied the economic loss rule to a construction case, and a number of Superior Court judges have refused to apply the economic loss doctrine, but this court given the facts of the present case, respectfully disagrees.

The court adopts the reasoning set forth in *Worldwide I* and *Worldwide II*, in addition to the previously cited cases of *Flagg Energy* and *Morganti*. Accordingly, upon reconsideration of its previous ruling of February 24, 2003, this court declines to vacate said ruling and hereby orders that Counts Three, Four and Five, of the plaintiff's complaint be **[*15]** stricken.

THE COURT

By Arnold, J.

Source: Legal > / . . . / > CT State Cases, Combined
Terms: name(greater new haven transit district and nafis & young)  (Edit Search)
View: Full
Date/Time: Tuesday, August 10, 2004 - 11:46 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.