LEXSEE 2001 CONN.SUPER. LEXIS 952

**Reynolds, Pearson & Company, LLC et al. v. Irvin J. Miglietta et al.**

CV000801247

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF HARTFORD, AT HARTFORD

*2001 Conn. Super. LEXIS 952*

March 27, 2001, Decided
March 27, 2001, Filed

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** The defendants' motion to strike counts seven and thirteen is granted. The defendants' motion to strike counts nine and ten is denied.

**LexisNexis(R) Headnotes**

**JUDGES:** Berger, J.

**OPINIONBY:** Berger

**OPINION:** MEMORANDUM OF DECISION ON MOTION TO STRIKE

Introduction and Factual Background

On August 25, 2000, the plaintiffs, Richard Reynolds and Reynolds, Pearson & Company, LLC (RP&C), filed a complaint against the defendants, Irvin Miglietta and The Allied Group, Inc.-DEL (Allied). Reynolds is a member of RP&C and a licensed certified public accountant, and Miglietta was the President and largest shareholder of Allied at the time the allegations occurred. The complaint alleges the following facts.

On or about July 3, 1997, Allied and Reynolds entered into an employment agreement whereby Reynolds agreed to serve as chief financial officer of Allied. Because of the defendants' promises and incentives, Reynolds curtailed his full time accounting practice. In particular, Miglietta told Reynolds that he would receive share certificates reflecting a 20 [*2] percent ownership interest in Allied, but Reynolds never received the certificates as promised. Thereafter, Reynolds sought legal representation in an effort to obtain the promised share certificates, and, by the summer of 1999, Miglietta and Reynolds negotiated the final language of a proposed employment agreement and shareholders agreement. Miglietta terminated Reynolds, however, in September 1999. Prior to Reynolds' termination, Miglietta jointly transferred share certificates representing 40 percent of the common stock in Allied to two employees in exchange for their agreement to oppose issuance of share certificates to Reynolds and to support Reynolds' termination.

The complaint further alleges that on or about October 19, 1999, Reynolds negotiated a severance package with Allied's representatives, and, in return, Reynolds agreed to release Allied from claims he would have against it under the employment agreement. On November 5, 1999, Allied provided Reynolds with the initial draft of the settlement agreement between Allied and Reynolds. In March 2000, the plaintiffs maintained that certain inaction by Allied constituted a repudiation of the settlement agreement. In response, [*3] Allied denied a repudiation occurred because it maintained that no settlement agreement existed.

The plaintiffs commenced this lawsuit against the defendants alleging, against Allied, breach of the settlement agreement (count one), breach of the covenant of good faith and fair dealing implied in the settlement agreement (count two), unjust enrichment as to the

settlement agreement (count three), breach of the employment agreement (count four), breach of the covenant of good faith and fair dealing implied in the employment agreement (count five), unjust enrichment as to the employment agreement (count six) and promissory estoppel as to the employment agreement (count seven). In addition, the plaintiffs allege, against both defendants, a claim for wages pursuant to *General Statutes § 31-72* (count eight), intentional misrepresentation (count nine), negligent misrepresentation (count ten) and violation of CUTPA (count thirteen). The plaintiffs further allege, against Miglietta, tortious interference with contractual relations (count twelve) and personal liability (count fourteen). n1 Finally, RP&C makes a claim against Allied for rent (count eleven).

> n1 The fourteenth count of the plaintiffs' complaint, alleging personal liability of Miglietta, is incorrectly labeled in the complaint as count thirteen.

[*4]

The defendants have now filed a motion to strike counts seven, nine, ten and thirteen of the plaintiffs' complaint.

DISCUSSION

"The purpose of the motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270, 709 A.2d 558 (1998).* "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) *Waters v. Autuori, 236 Conn. 820, 825, 676 A.2d 357 (1996).* "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) *Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997).*

A

The defendants first move to strike count seven alleging promissory estoppel. Specifically, the defendants argue that the plaintiffs are precluded from asserting a claim for promissory estoppel when a written employment contract exists. The plaintiffs argue in opposition that count seven is a legally sufficient [*5] claim because it is permissible to plead alternative causes of action. Because the defendants have not admitted that either the employment agreement or its terms are enforceable by the plaintiffs they argue that count seven is a legally permissible alternative claim to their contract claim pleaded in count four. See, e.g., *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 1999 Conn. Super. LEXIS 1776,* Superior Court, judicial district of Hartford at Hartford, Docket No. 580129 (July 2, 1999) (Sullivan, J.) (denying motion to strike alternative claim of promissory estoppel where defendant had not yet filed answer and unclear whether defendant would contest enforceability of contract); *Clock Tower Mill Development v. Cambridge Development Corp., 1996 Conn. Super. LEXIS 1047,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 555348 (April 23, 1996) (Lavine, J.) (same).

"A fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisee could reasonably have expected to induce reliance." *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987).* Where a "valid contract exists, the [*6] remedy of promissory estoppel, which is a theory inconsistent with the existence of a contract, is precluded." *Moukarzel v. Oxygen Electronics, LLC, 1999 Conn. Super. LEXIS 2207,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 359965 (August 12, 1999) (Melville, J.); *Johnson v. Bridgeport, 1999 Conn. Super. LEXIS 1761,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 321129 (June 3, 1999) (Nadeau, J.) ("when valid contracts exist, recovery cannot be obtained under the doctrine of promissory estoppel"); *Lark v. Post Newsweek Stations Connecticut, Inc., 1995 Conn. Super. LEXIS 2332,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 705326 (August 9, 1995, Wagner, J.) ("An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another").

The plaintiffs insist upon their right to plead in the alternative, claiming that count seven "alleges that because the defendants' promises induced him to act upon them, the defendants should now be estopped from claiming that the Employment Agreement is either invalid or unenforceable." (Plaintiff's Memorandum, p. 2.) The plaintiffs subsequently claim that count seven [*7] "assumes that there is no valid contract but, alternatively, that the defendants' promises to Mr. Reynolds should be enforced nonetheless." (Plaintiff's Memorandum, p. 2.)

Contrary to the plaintiffs' claims, count seven does not allege or assume what the plaintiffs represent it does. It is true that "under our pleading practice, a plaintiff is permitted to advance alternative and even inconsistent theories of liability against one or more defendants in a

single complaint." *Dreier v. Upjohn Co., 196 Conn. 242, 245, 492 A.2d 164 (1985);* see also Practice Book § 10-25. Construing the complaint in the light most favorable to the plaintiffs, however, the plaintiffs have not pleaded in the alternative as they claim. Count seven contains numerous incorporated paragraphs in which the plaintiffs specifically plead the existence and terms of an employment contract. Significantly, count seven alleges no promises other than those specifically alleged to be "set forth in the Employment Agreement." (Count seven, PP55-58.) Moreover, there is no indication in any of the allegations contained in count seven that the alleged contract is invalid or unenforceable for any reason, [*8] and the court will not assume facts not pleaded. "A party does not have a cause of action for promissory estoppel *where an existing contract . . . is alleged and appears to be enforceable.*" (Emphasis added.) *Lark v. Post Newsweek Stations Connecticut, Inc., supra, 1995 Conn. Super. LEXIS 2332,* Superior Court, Docket No. 705326. If the plaintiffs meant for count seven to be pleaded in the alternative, i.e. to assume the invalidity or unenforceability of the contract, they may take advantage of their opportunity pursuant to Practice Book § 10-44 to replead the count to allege such. For present purposes, however, because count seven alleges the existence of a written contract containing the alleged promises, it is not pleaded as an alternative claim of promissory estoppel. Therefore, the defendants' motion to strike count seven is granted.

B

The defendants next move to strike counts nine and ten alleging intentional and negligent misrepresentation. Specifically, the defendants argue that, pursuant to the "economic loss doctrine," Connecticut courts bar claims for liability in tort when the loss is merely economic and does not involve physical harm or injury to property. They argue that because [*9] the plaintiffs' claims arise entirely out of the employment contract, there is no injury to person or property and that, therefore, the plaintiffs' alleged injury is purely economic, barring any claim in tort. In opposition, the plaintiffs, citing *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 218,* argue that the ninth and tenth counts should not be stricken because the Connecticut Supreme Court recognizes a tort cause of action for misrepresentation in the context of an employer-employee relationship. The defendants respond that the issue is not whether a misrepresentation claim may be brought in the context of an employer-employee relationship, which they do not dispute, but rather whether such a tort claim may be brought by a plaintiff claiming purely economic damages. As the defendants correctly point out, the plaintiff in *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 206,* was not claiming purely economic damages; see *202 Conn. at 209;* thus, the defendants argue, the case is not dispositive of the issue.

"The thrust of the common law economic loss rule is that [*10] in the absence of privity of contract between the plaintiff and the defendant, or, in the absence of an injury to the plaintiff's person or property, the plaintiff may not recover in tort for a purely economic loss." *Amity Regional School District # 5 v. Atlas Construction Co., 2000 Conn. Super. LEXIS 1897,* Superior Court, judicial district of Waterbury, Complex Litigation Docket No. 153388 (July 26, 2000) (McWeeny, J.) (27 Conn. L. Rptr. 605). "The economic loss doctrine is a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic. *Scap Motors, Inc. v. Pevco Systems International, Inc., 1999 Conn. Super. LEXIS 2230,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 348461 (August 12, 1999) (Melville, J.) (25 Conn. L. Rptr. 283). The rationale for this rule appears in *Princess Cruises, Inc. v. General Electric Co., 950 F. Supp. 151, 156 (E.D.Va. 1996):* "Almost every breach of contract involves actions that can be conceived of as a negligent or intentional tort. If left unchecked, the incessant tide of tort law [*11] would erode and eventually swallow contract law. This Court believes that if tort law and contract law are to fulfill their distinctive purposes, they must be distinguished where it is possible to do so. The economic loss doctrine serves as a basis for such a distinction." The court further explained: "When, through the negligence of one of the parties, the subject of the transaction physically injures a person, or damages the property of someone not a party to the contract, the law of tort properly provides a cause of action. But to permit a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of the parties to allocate the risks of their own transactions." *Id., 155.*

There is inconsistency in the decisions of Superior Court judges regarding the applicability of the economic loss doctrine in Connecticut. One line of authority holds that the economic loss doctrine has been accepted and applied by Connecticut courts. See, e.g., *Amity Regional School District # 5 v. Atlas Construction Co., 2000 Conn. Super. LEXIS 2031,* Superior Court, judicial district of Waterbury, Complex Litigation Docket No. [*12] 153388 (August 4, 2000) (McWeeny, J.) ("this court recognizes the economic loss rule, barring claims for liability in tort when, as in this case, the loss is merely economic and does not involve physical harm or injury to property"); *Amity Regional School District # 5 v. Atlas Construction Co., 2000 Conn. Super. LEXIS*