*1897,* 27 Conn. L. Rptr. 605 (motion to strike negligence claim granted on ground claim barred by economic loss doctrine); *DeVillegas v. Quality Roofing, Inc., 1993 Conn. Super. LEXIS 3185,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 294190 (December 1, 1993) (Freedman, J.) (10 Conn. L. Rptr. 487) (motion to strike negligence claim granted on ground economic loss doctrine bars claim for economic damages absent allegations of privity of contract and of injury to person or property). In contrast, the other line of authority rejects the proposition that the economic loss doctrine has been adopted by the appellate courts and allows tort claims despite the fact that only economic losses are claimed. See, e.g., *Carolina Casualty v. 60 Gregory Boulevard, 2000 Conn. Super. LEXIS 739,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 169383 (March 20, 2000) (Hickey, J.) (26 Conn. [*13] L. Rptr. 685) (motion to strike plaintiff contractor's claim against defendant architectural firm hired by owner for negligent provision of inaccurate plans and specifications denied on ground majority of jurisdictions hold economic loss doctrine does not bar negligence actions by construction professionals against one another where reliance by plaintiff reasonably foreseeable); *Scap Motors, Inc. v. Pevco Systems International, Inc., 1999 Conn. Super. LEXIS 2230,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 348461 (August 12, 1999) (Melville, J.) (25 Conn. L. Rptr. 283) (in action alleging breach of agreement settling dispute concerning sale and installation of pneumatic tube transport system, motion to strike fraud claim for economic losses denied on ground appellate courts have not recognized economic loss doctrine and court likewise would not); *Darien Asphalt Paving, Inc. v. Newtown, 1998 Conn. Super. LEXIS 3496,* Superior Court, judicial district of New Britain at New Britain, Docket No. 4878 (December 7, 1998) (Nadeau, J.) (23 Conn. L. Rptr. 495) (motion to strike tort claims denied, declining to recognize the economic loss doctrine); *Reiner & Reiner, P.C. v. Connecticut Natural Gas Corp., 1995 Conn. Super. LEXIS 3470,* Superior [*14] Court, judicial district of Hartford-New Britain at Hartford, Docket No. 551260 (December 12, 1995) (Hennessey, J.) (motion to strike negligence claims denied, rejecting argument that economic loss doctrine bars action for direct economic losses resulting from defendant's negligence); *Eremita v. Stein, 1995 Conn. Super. LEXIS 3096,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463210 (November 2, 1995) (Arena, J.) (judgment for plaintiff on negligent misrepresentation claim not barred by fact only economic losses claimed).

The former line of authority accepting the economic loss doctrine cites *Flagg Energy Development Corp. v. General Motors Corp., 244 Conn. 126, 709 A.2d 1075 (1998),* and/or *Connecticut Mutual Life Ins. Co. v. New York & New Haven R. Co., 25 Conn. 265 (1856),* as authority for the proposition that the economic loss doctrine has been adopted and applied in Connecticut. This court's own reading of these cases finds, however, that neither *Flagg* nor *Connecticut Mutual* provides support for the proposition that the economic loss doctrine has been conclusively adopted as precluding all tort claims such as those in the [*15] present case. The holding in *Flagg* may fairly be read as holding that where a plaintiff claims commercial losses suffered as a result of defective performance of a contract for the sale of goods, such losses are governed by the UCC, which in turn preserves common law actions for fraud and misrepresentation only as long as such actions are consistent with the particular provisions of the UCC. See *Flagg Energy Development Corp. v. General Motors Corp., supra, 244 Conn. at 154-55.* The Connecticut Supreme Court specifically found that one such provision, *General Statutes § 42a-2-721,* was in fact intended "to make actions for fraud or misrepresentation presumptively inconsistent with post-acceptance claims for breach of warranty." (Emphasis omitted.) *Id., 155.* Therefore, the court's affirmance of the trial court's granting of the defendant's motion to strike the plaintiffs' misrepresentation claim was not expressly premised on the economic loss doctrine but rather on the fact that such a claim was incompatible with and thus displaced by the provisions of the UCC.

*Connecticut Mutual* involved an action by an insurance company against a railroad after the insurer became liable to pay the proceeds of a life insurance policy to the estate of its insured, who died after the train he was riding in derailed due to the negligence of the railroad. *Connecticut Mutual Life Ins. Co. v. New York & New Haven R. Co., supra, 25 Conn. 271.* The court directed judgment for the defendant, holding that "in the absence of any privity of contract between the plaintiffs and defendants, and of any direct obligation of the latter to the former growing out of the contract or relation between the insured and the defendants, the loss of the plaintiffs, although due to the acts of the railroad company. . . was a remote and indirect consequence of the misconduct of the defendants, and not actionable." *Id., 276-77.* The court reached this conclusion after finding neither a public law charging the railroad with a duty to insurers of its passengers nor that the insured exacted any obligation from the railroad toward his insurer when he contracted for carriage. *Id., 276.*

The above quoted language from *Connecticut Mutual* is presumably the [*16] portion of the case relied on as articulating the concepts of the economic loss doctrine. This language, however, does not articulate the economic loss doctrine, but rather illustrates an early

application of the concepts of privity of contract and foreseeability, which the court utilized in holding that the injury to the insurer was too remote and indirect a consequence to hold the railroad liable therefore.

Nevertheless, even if *Flagg* and *Connecticut Mutual* do stand for the general adoption of the economic loss doctrine, the Connecticut Supreme Court has indicated that where the tort alleged is an intentional tort, the doctrine would not apply to bar the cause of action. See *Connecticut Mutual Life Ins. Co. v. New York & New Haven R. Co., supra, 25 Conn. 276* ("Had the life of [the insured] been taken with intent to injure the plaintiffs through their contract liability, a different question would arise, inasmuch as every man owes a duty to every other not intentionally to injure him"). In addition, the Connecticut Supreme Court has expressly rejected the economic loss doctrine as a bar to a claim for negligent misrepresentation. See *Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 579, 657 A.2d 212 (1995).* [*17] In that case, the defendant argued that the tort of negligent misrepresentation did not apply to the facts of the case on the ground that "where the controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship between businesses, it is contract law, rather than tort law, that should apply." *Id.* The court rejected this argument, relying on its prior decision of *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 218,* to support its conclusion that "a remedy on the contract is independent of a remedy for negligent misrepresentation." *Williams Ford, Inc. v. Hartford Courant Co., supra, 579.* The court's reliance on *D'Ulisse-Cupo* for this proposition also would seem to imply that its allowance of a negligent misrepresentation claim in *D'Ulisse-Cupo* was not dependent on the nature of the damages alleged by the plaintiff. See also *Eremita v. Stein, 1995 Conn. Super. LEXIS 3096,* *15, Superior Court, Docket No. 463210 ("a claim of negligent misrepresentation, based on statements made during the course of a contractual relationship, may be brought even though purely economic losses [*18] are alleged"). Thus, whatever the viability of the economic loss doctrine in Connecticut, the Connecticut Supreme Court has not, in at least some cases, barred claims for intentional torts or for negligent misrepresentation despite the fact purely economic damages are claimed.

Based on the foregoing, the court declines to apply the economic loss doctrine to bar the plaintiffs' claims for intentional and negligent misrepresentation. Therefore, the defendants' motion to strike counts nine and ten is denied.

C

Finally, the defendants move to strike count thirteen alleging a violation of CUTPA. Specifically, the defendants argue that employer-employee relationships do not constitute trade or commerce within the context of CUTPA. In opposition, the plaintiffs argue that the substance of their CUTPA claim arises out of a dispute over the ownership structure of Allied and not out of anything within the narrow confines of the employer-employee relationship that existed between Reynolds and the defendants.

In *Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 613 A.2d 838 (1992),* the Appellate Court held that "the actual employment relationship is not itself trade or commerce [*19] for the purpose of CUTPA." (Internal quotation marks omitted.) *Id., 670.* In reliance on *Quimby v. Kimberly Clark Corp., supra, 670,* numerous Superior Court judges have stricken CUTPA claims when the allegations arise out of or are closely related to an employer-employee relationship. See, e.g., *Jablonski v. Sheldon Precision Co., 2000 Conn. Super. LEXIS 959,* Superior Court, judicial district of Waterbury, Docket No. 145784 (April 10, 2000) (Doherty, J.); *Shah v. Cover-It, Inc., 2000 Conn. Super. LEXIS 946,* Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 68182 (April 10, 2000, Arnold, J.); *Bishop v. Paine Webber, Inc., 1999 Conn. Super. LEXIS 2029,* Superior Court, judicial district of Danbury, Docket No. 331709 (July 28, 1999, Moraghan, J.) (25 Conn. L. Rptr. 173, 175); *D'Aquila v. Environmental Systems Products, Inc., 1993 Conn. Super. LEXIS 3132,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 455259 (November 18, 1993) (Berger, J.); see also *United Components, Inc. v. Wdowiak, 239 Conn. 259, 264-65, 684 A.2d 693 (1996).*

The plaintiffs are correct, however, in their assertion that it is not the relationship between the parties that is dispositive but the conduct of the defendants. [*20] *Fink v. Golenbock, 238 Conn. 183, 214, 680 A.2d 1243 (1996); Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 491, 656 A.2d 1009 (1995).* This court thus focuses on the conduct of the defendants alleged to be in violation of CUTPA. The allegations show that the complained of activities of the defendants all arise out of or are related to, first, the defendants' refusal to honor the terms of Reynolds' employment contract by giving him an ownership interest in the company and, then, the defendants' subsequent refusal to honor an agreement settling the dispute over the ownership structure of the company.

The court finds that these allegations of the complaint bear little similarity to the kind of anticompetitive activity conducted outside of the employment relationship held to have violated CUTPA in *Larsen Chelsey Realty Co. v. Larsen, supra, 232*

*Conn. 480,* and *Fink v. Golenbock, supra,* 238 Conn. 183. As the court explained in *Fink:* "In *Larsen Chelsey Realty Co. v. Larsen, supra,* 232 Conn. 480 . . . the defendant, who was president of [the plaintiff], accepted employment with a competing firm. [*21] *Id., 485.* He sent notices to clients and business contacts, falsely informing them that [the plaintiff] was being taken over by the competing firm and that they should take their business to that firm. *Id.*" *Fink v. Golenbock, supra,* 238 Conn. at 213. "We concluded that by falsely informing clients and business contacts that [the plaintiff] was going out of business, by taking that client base to a competitor and by taking [the plaintiff's] employees to a competitor, the defendant had engaged in unfair trade practices in violation of CUTPA." *Id., 214.*

Similar circumstances were present in *Fink v. Golenbock, supra,* 238 Conn. 183. In that case, the plaintiff and the defendant had formed a corporation in which each owned 50 percent. After the relationship between the parties deteriorated, the defendant "using threats . . . forced the plaintiff first to leave the practice and then to leave town. [The defendant] informed clients that the corporation had changed and that they should take their business and pay their bills to a new corporation. [The defendant] took over the corporation's assets, equipment and employees, [*22] using them to establish his new practice, which provided the same type of services. Because the original corporation had neither been dissolved . . ., nor extinguished . . . these acts amounted to competitive moves designed to co-opt all of the corporation's operations." *Id., 214.* The defendant characterized the action as a "dispute over the internal governance of the corporation," to which CUTPA did not apply. *Id., 213.* The court rejected his argument, concluding that his "actions went well beyond governance of the corporation, and placed him in direct competition with the interests of the corporation." *Id.*

No such allegations are made in the present case. Instead, the allegations all arise out of or are related to an alleged breach of the terms of an employment contract and the subsequent activities of the parties to resolve the dispute. It is hard to imagine anything more closely arising out of an employment relationship than the formation and terms of the employment. This court thus finds that these allegations cannot support a cause of action under CUTPA. See *Quimby v. Kimberly Clark*

*Corp., supra,* 28 Conn. App. 670; see [*23] also *Jablonski v. Sheldon Precision Co., supra,* Superior Court, Docket No. 145784 (allegations that plaintiff accepted employment with defendant in reliance on representations of terms of that employment, which included control over enforcement of quality control standards, and that plaintiff was later discharged for failing to approve poor quality goods arise out of employer-employee relationship and do not implicate CUTPA).

The plaintiffs' characterization of their claims as a dispute over the ownership structure does not save their CUTPA claim. Numerous Superior Court decisions hold that such intra-organizational disputes do not fall within the purview of CUTPA. See, e.g., *Chila v. Chila, 1995 Conn. Super. LEXIS 1056,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 140570 (April 3, 1995) (D'Andrea, J.) (motion to strike CUTPA claim granted on ground allegation that defendants agreed to transfer ownership in corporation in return for plaintiff's continued employment concerns dispute over ownership of corporation not within purview of CUTPA); see also *Sector Management, Inc. v. Taurus Advisory Group, Inc., 1998 Conn. Super. LEXIS 1043,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 154033 (April 15, 1998) (D'Andrea, J.) (intra-organizational [*24] dispute concerning resource contribution in formation of company does not implicate CUTPA); *Diette v. Dental Group of Norwalk, 1998 Conn. Super. LEXIS 512,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 158747 (February 27, 1998) (Lewis, J.) (allegations that defendant offered ownership interest in corporation to plaintiff involve internal workings of corporation to which CUTPA is inapplicable).

For the foregoing reasons, the defendants' motion to strike count thirteen is granted.

CONCLUSION

The defendants' motion to strike counts seven and thirteen is granted. The defendants' motion to strike counts nine and ten is denied.

Berger, J.