UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

PARFUMS DE COEUR LTD                              NO.: 3:02 cv 1454 (RNC)
         plaintiff

v.

LE PAPILLON LTD
         defendant.                              SEPTEMBER 13, 2004

FEDERAL INSURANCE COMPANY'S
MOTION FOR PROTECTIVE ORDER / MOTION TO QUASH

Pursuant to Fed.R.Civ.Pro. 45(c)(3)(A) and Fed.R.Civ.Pro. 26(c), the Movant, Federal Insurance Company, L.L.C., ("Federal")[1] hereby moves to quash the Plaintiff, Parfums De Coeur's ("Parfums"), subpoena dated September 7, 2004     and moves for a protective order regarding the scope of the deposition testimony of a Federal Insurance Company representative, the date of which has yet to be determined.[2]  Federal moves to quash the subpoena to the extent the subpoena requires disclosure of documents protected by the attorney client privilege and work product doctrine.  Additionally, Federal moves this Court for an order that at the deposition of a Federal representative, the Plaintiff not

_____

[1] Federal Insurance Company is an affiliate of Chubb Group of Insurance Companies.  Therefore, throughout this motion Federal and Chubb may be used interchangeably.

[2] The subpoena indicates a deposition date of September 27, 2004 for the deposition of a Federal Representative to occur.  However, the parties have agreed that once the issues concerning the production of documents is resolved a mutually convenient deposition date will be selected.

be allowed to orally inquire into matters contained within the withheld documents which likewise would be protected by the attorney client privilege and/or work product doctrine.

Prior to the filing of the subject Motion for Protective Order and Motion to Quash, Federal has provided the Plaintiff will all non-privileged documents responsive to the Plaintiff's subpoena along with a Privilege Log dated August 18, 2004, complying with L.Civ.R. 37(a), and outlining the documents withheld and the privileges asserted.[3] Plaintiff's counsel has also conceded on several occasions, including in his Motion for Contempt, that he is not seeking the production of any communications between Attorney Ryan, defense counsel for Le Papillon, and Federal. (See Plaintiff's Motion for Contempt dated August 24, 2004, p. 4).

Notwithstanding Federal's compliance with the production requests attached to the subpoena, the Plaintiff still seeks to obtain certain documents contained within Federal's claim file, including claim/file notes; correspondence between Federal and its insured, Le Papillon, and/or its attorneys; and internal correspondence, evaluations, strategies and analyses of the subject litigation. As set forth more fully below, the information withheld is protected by the attorney client privilege and work product doctrine and was prepared "because of" the prospect of litigation or for trial. Moreover, the plaintiff has not made a

---

[3] Federal, with this motion, has prepared a Supplemental Privilege Log, clarifying that certain privileged documents are undated and the author of the documents are unknown. Additionally, Federal has included bate stamp # 000784-000883 as encompassing claim notes dated 8/16/2002 to 7/12/2004 regarding the Parfums v. Le Papillon action. A copy of this Supplemented Privilege Log is attached to this motion as Exhibit N.

showing of substantial need or that the plaintiff is unable without undue hardship to obtain the substantial equivalent of the material by other means. Accordingly, Federal respectfully requests this Court grant its Motion for Protective Order and Motion to Quash.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 27, 2004, the Plaintiff, Parfums De Coeur, issued a subpoena on Federal Insurance Company, a non-party, from United States District Court for the District of New Jersey pursuant to Fed. R. Civ. P. 45 and in connection with above-captioned action currently pending in the United States District Court District of Connecticut. (See Subpoena attached as Exhibit A). The subpoena commanded a Federal Insurance Company agent most knowledgeable about documents to be produced to appear at a deposition to occur on March 30, 2004 at Diserio Martin O'Connor & Castiglioni, the Plaintiff's counsel's law firm, in Stamford, Connecticut. Additionally, the subpoena commanded the production of documents specified in a Schedule A which was annexed to the subpoena. (See Exhibit A).

On March 23, 2004, the Defendant, Le Papillon, Ltd. (Le Papillon) filed Objections to the Subpoena and Document Requests served on Federal. (See Objections to Subpoena attached as Exhibit B). On the same date, Federal filed with this Court a Motion to Quash/Motion for Protective Order regarding the deposition of a Federal

representative and the production requests contained in the subpoena. The Plaintiff filed a Response to the Motion to Quash/Motion for Protective Order on April 12, 2004. A Reply to the Plaintiff's Response was filed by Federal on April 21, 2004 and oral argument on the motions was held on May 11, 2004.

On July 2, 2004, the Honorable Donna F. Martinez denied Federal's Motion to Quash/Motion for Protective Order ordering that "[a]ny motion regarding the enforcement of a subpoena must be filed with the District Court for the District of New Jersey – the court from which this subpoena was issued. See Fed. R. Civ. P. 45(c)(3)(A). SO ORDERED." On July 16, 2004, Federal filed a Motion for Reconsideration of the Court's July 2, 2004 decision denying Federal's Motion for Protective Order.

Since the issuance of this Court's July 2, 2004 Order on Federal's Motion to Quash/Motion for Protective Order, counsel for Federal has reached an agreement with Plaintiff's counsel to make a Federal representative available for his deposition along with agreeing to produce all non-privileged documents responsive to the Plaintiff's production request contained in the subpoena. On July 14, 2004, counsel for Federal spoke with Plaintiff's counsel regarding this Court's Order and the validity of the Plaintiff's subpoena. Additionally during that conversation, counsel for Federal was first informed that Plaintiff's counsel sent out a subsequent notice for the deposition of a Federal Insurance Company representative for August 3, 2004. On July 15, 2004,

counsel for Federal confirmed in writing the scope of the telephone conversation the previous day and inquired into a proposed agreement for the production of documents attached to the Subpoena. (See Letter dated July 15, 2004 from Attorney Cavalier to Attorney Shapiro attached as Exhibit C).

On July 19, 2004, counsel for Federal and the Plaintiff reached an agreement to make available a representative of Federal for a deposition and to produce all non-privileged documents along with a privilege log for all documents for which a privilege is being asserted. It was agreed that once all documents were received, a date for the deposition of a Federal Insurance Company representative would be confirmed. (See Letter dated July 19, 2004 from Attorney Shapiro to Attorney Cavalier attached as Exhibit D and Letter from Attorney Cavalier to Attorney Shapiro dated July 20, 2004 attached as Exhibit E).

On July 29, 2004, counsel for Federal advised Plaintiff's counsel that a privilege log was being prepared. As explained to Plaintiff's counsel, these documents were not located in one centralized location, but rather the claim files were handled out of various claims offices around the United States. Moreover, several of the claim files were closed and needed to be archived to obtain the information contained in the request. Due to the amount of information contained in the claim files, counsel for Federal advised that it would not be feasible to have the privilege log completed and proceed with the deposition

previous scheduled for August 3, 2004.  (See July 29, 2004 letter from Attorney Cavalier to Attorney Shapiro attached as Exhibit F).

In an attempt to expedite the process, on August 6, 2004, counsel for Federal sent to Plaintiff's counsel copies of all non-privileged documents and indicated that upon completion a privilege log will be provided.  (See August 6, 2004 letter from Attorney Cavalier to Attorney Shapiro attached as Exhibit G).  On August 18, 2004, counsel for Federal sent a copy of Federal's Privilege Log along with the production of additional non-privileged documents to the Plaintiff.  (See August 18, 2004 letter from Attorney Cavalier to Attorney Shapiro and Privilege Log attached as Exhibit H).   On September 1, 2004, Federal provided available dates of September 15 or 16, 2004 for the deposition of a Federal representative to occur.  (See Letter from Attorney Cavalier to Attorney Shapiro attached as Exhibit I).

On August 24, 2004, Parfums filed a Motion for Contempt against Federal for its alleged failure to comply with the Subpoena.  On September 3, 2004, Judge Martinez held a telephonic hearing with all parties on Federal's Motion for Reconsideration. During this hearing it was decided the Plaintiff would issue a new Subpoena from the District Court of Connecticut and thereafter both the defendant and Federal would file supplemental motions briefing the legal issues surrounding the production of the documents contained in the privilege log.  On September 7, 2004, the Plaintiff issued a

new subpoena from the District Court of Connecticut to which the same production requests were attached in a Schedule A annexed to the subpoena. (See Subpoena attached as Exhibit J).

II.   LEGAL ARGUMENT

    A.   Applicable Law

Although the Federal Rules allow parties to "obtain discovery regarding any matter, *not privileged*, that is relevant to the claim or defense of any party . . .", the Rules, at the same time, endeavor to "preserve a zone of privacy" in which lawyers, *insurers*, and other representatives of litigants may develop legal theories and strategies uninhibited by the possibility that an adversary may become privy to the resulting documents, by protecting certain work product prepared for the litigation.   See Fed.R.Civ.P. 26(b)(1) (emphasis added); Fed.R.Civ.P. 26(b)(3); United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998).

The work-product doctrine codified in Fed.R.Civ.P. 26(b)(3) provides in relevant part that:

> . . . a party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue

- 7 -

> hardship to obtain the substantial equivalent of the materials
> by other means. In ordering discovery of such materials when
> the required showing has been made, the court shall protect
> against disclosure of the mental impressions, conclusions,
> opinions, or legal theories of an attorney or other
> representative of a party concerning the litigation.

In order to qualify for work product protection, the materials sought to be withheld must be: (1) documents or tangible things; (2) prepared in anticipation of litigation or for trial; and (3) prepared by or for a party or by or for a party's representative (including a party's insurer). In defining the scope of the term "prepared in anticipation of litigation" courts have held that documents which "in light of the nature of the document and the factual situation in the particular case . . . can fairly be said to have been prepared or obtained *because of* the prospect of litigation" are "prepared in anticipation of litigation" under Fed.R.Civ.P. 26(b)(c). Adlman, 134 F.3d at 1202 (emphasis added). Courts have reasoned that the degree of protection afforded under the work product doctrine is dependant on whether the work product is ordinary or opinion work product. Loftis v. Amica Mutual Insurance Company, 175 F.R.D. 5 (2d Cir. 1997). "Opinion work product, which reflects the mental impressions, conclusions or opinions of an attorney, receives greater protection." Id. "Disclosure of opinion work product is particularly disfavored by the courts and requires a far stronger showing of necessity and unavailability by other means." Id. citing Upjohn Co. v. United States, 449 U.S. 383, 401-02 (1981).

- 8 -

Furthermore, Connecticut law governs the issues of the attorney-client privilege. See Loftis v. Amica Mutual Insurance Co., 175 F.R.D. 5 (2d Cir. 1997) citing Dixon v. 80 Pine St. Corp., 516 F.2d 1278, 1280 (2d Cir. 1975). Under Connecticut law, "[w]here legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection may be waived." Id. citing Rienzo v. Santangelo, 160 Conn. 391, 395 (1971). The party asserting the privilege must establish all of the elements of the privilege. State v. Hanna, 150 Conn. 457, 466 (1963).

B.    The Documents Contained in Federal's Privilege Log are Protected by the Attorney Client Privilege and/or Work Product Doctrine.

Although the Plaintiff has conceded that it is not seeking correspondence between defense counsel for Le Papillon and Federal, its insurer, the Plaintiff still claims it is entitled to obtain certain other documents contained in Federal's claim file, specifically claim/file notes; correspondence between Federal and Le Papillon and/or its attorneys; and internal communications, evaluations, strategies and analyses of the subject litigation. These documents are the exact type of material the work product doctrine and/or attorney client privilege seeks to protect.

The documents withheld and claimed to be privileged in Federal's Privilege Log can be grouped into five general categories: (1) claim notes/file notes prepared by

Federal's employees tracking the defense of these cases; (2) correspondence between the insured, Le Papillon, and its insurers; (3) correspondence between defense counsel for the insured and Federal; (4) internal evaluations, strategies and analyses of the claims and litigation; and (5) correspondence between defense counsel for the insured.  As set forth more fully below, these documents are protected by the attorney client privilege and/or work product doctrines.

      C.      The Documents Contained in Federal's Claim File Were Prepared "Because Of" Litigation or For Trial and Are Protected by the Work Product Doctrine.

By its very nature, insurance "claims files" contain documents "prepared in anticipation of litigation."  Courts are often faced with the obligation of determining exactly which documents are entitled to protection under the work product doctrine.  In assisting in this determination, courts have often looked to when the matter was referred to defense counsel as a measure of when the work product doctrine would attach.  "When documents are generated after the insurer has referred the matter to counsel, the insurer is fairly anticipating litigation and thus work product immunity will typically attach."  See Bovis Lend Lease LMB, INC. et al. v. Seasons Contracting Corp. et al., 2002 WL 31729693 (S.D.N.Y.)(attached as Exhibit K).  "An insurer's referral of a claim to its attorney is a significant factor in determining when the insurer anticipated litigation."  Am. Nat'l Fire Ins. Co. v. Mirasco, Inc., 2001 WL 876816 at *2 (S.D.N.Y. Aug. 2,

2001)(attached as Exhibit L).   Accordingly in <u>Mirasco</u>, because the majority of the documents were created after the matter was referred to counsel, the court found that the insurers had sustained their burden of demonstrating that the withheld documents are protected from disclosure.  <u>Id</u>. at *2.  <u>See</u> <u>also</u> <u>Great American Ins. Co. v. J. Aron & Company, Inc</u>. 1995 A.M.C. 2854 (S.D.N.Y. 1995)(attached as Exhibit M)(the court reviewed the claimed privileged documents in camera and determined that, based on that review, documents created after counsel was appointed were subject to the privilege).

Moreover, courts have reasoned that "documents created after litigation has commenced, when the claims handlers' work had plainly shifted from investigating the initial claim to assisting in the defense of the pending litigation and evaluating litigation exposure, are likely to be covered by the work product doctrine."   <u>Id</u>. <u>see also</u>, <u>Magee v. Paul Revere Life Ins. Co.</u>, 172 F.R.D. 627, 640 (E.D.N.Y. 1997)(documents created after litigation commenced and related to legal advice in connection with the ongoing litigation was work product).

The Second Circuit adopted a "causation" test for determining whether a document was prepared in anticipation of litigation.  <u>See</u> <u>United States v. Adlman</u>, 134 F.3d 1194, 1202-1203 (1998).   The party seeking to withhold a document must demonstrate, in light of the nature of the document and the factual situation in the particular case, that the document it seeks to withhold was created "because of" the

prospect of litigation.  Id.  Moreover, where a document is created because of the prospect of litigation and analyzes the likely outcome of that litigation, it does not lose protection because it is created in order to assist with a business decision.  Id.  Rather, it is only those documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation that do not qualify for the protection.  Id.

In the present case, the documents contained in Federal's Privilege Log and described as the claim/file notes; internal evaluations, strategies and analyses of the claims and litigation; along with Federal's internal communications between claims handlers, satisfy the three prong test set forth in Rule 26(b)(3).  First, the materials withheld are documents.  Second, the documents were prepared by a representative of a party, namely Federal, Le Papillon's insurer.  Lastly, and as more fully set forth below, the withheld documents were prepared by Federal "because of" the prospect of litigation or for trial.  (See Supplemental Privilege Log attached as Exhibit N).

The documents enumerated on Federal's Privilege Log, including the claim/files notes relating to the claims of Ciara Beers, Bessie Mays, Kayla Hahn, Jeffrey Lovell and Kayla Moorehous were all prepared "because of" the prospect of litigation.  The claim/file notes and internal evaluations on each of these claimants were only prepared **after** Federal was notified by Travelers Insurance Company, the Plaintiff's insurer, of

pending claims and litigation by these claimants against Parfums. (See Letters (5) from Travelers to Chubb notifying of claims for Ciara Beers, Bessie Mays, Kayla Hahn, Jeffrey Lovell and Kayla Moorhous attached as Exhibit O; See also Affidavit of Cliff Hall, ¶s 4-13, attached as Exhibit P). At such time Travelers placed Chubb on notification that it would be seeking indemnification from Chubb for any monies paid on these claims/actions. Accordingly Federal's involvement in these actions clearly began **after** the prospect of litigation has already ensued.

Additionally, the claim/file notes prepared in connection with the subject lawsuit, Parfums De Coeur v. Le Papillon, began on August 16, 2002 upon receipt of the Complaint, which was received by Chubb on August 6, 2002. (See Affidavit of Cliff Hall, ¶s 14-15). Therefore, it was only after notification of the present lawsuit that the claims notes in the Pafums De Coeur v. Le Papillon action were generated. As the court reasoned in Bovis, supra, where the "documents are created after litigation has commenced, when the claims handlers' work had plainly shifted . . . to assisting in the defense of the pending litigation and evaluating litigation exposure" the work product doctrine is likely to apply. Therefore, it is clear that all claim/file notes; internal correspondence between Federal claims handlers; along with the internal evaluations, analyses, and investigation prepared after August 6, 2002 were prepared "because of" litigation or for trial and are protected by the work product doctrine.

Additionally, aside from the claim/file notes being generated in connection with the defense of these claims and "because of" pending litigation or the potential for future litigation involving Federal's insured, Le Papillon, these claim/file notes encompass and memorialize correspondence and communications between Federal and the defense counsel in this case along with Federal's internal evaluations of the monetary exposure of these claims, defense strategies and analyses of these claims and the pending lawsuit in the <u>Parfums v. Le Papillon</u> action. (<u>See</u> Supplemental Privilege Log attached as Exhibit N; Affidavit of Michael T. Ryan, ¶s 7-8; attached to defendant Le Papillon's Ltd.'s Motion to Quash and/or Motion for Protective Order a copy of which is attached to Federal's Motions as Exhibit Q).

Notwithstanding the application of the work product doctrine, the Plaintiff has not made an adequate showing of substantial need for the documents **and** an inability to obtain its contents elsewhere without undue hardship. This is **not** a bad faith action brought against the insurer where the insurer's actions are a central issue in the case and where the information contained in the claims file, concerning the internal strategies, evaluations, analyses and investigations are of central important to support the Plaintiff's claim. Rather, this case is one based on claims of breach of contract, CUTPA, and indemnity against Le Papillon. The Plaintiff should not be permitted to circumvent the standard discovery process, whereby it is granted full opportunity to inquire from Le

Papillon directly about its alleged knowledge of prior claims and investigation into those claims, by simply obtaining the insurer's claim file.    Furthermore, Federal has a contractual obligation to its insured under the insurance policy.  Any disclosure of such privileged information to the Plaintiff, could expose Federal to a subsequent action in bad faith.  Accordingly, the Plaintiff has failed to meet its burden of "substantial need" **and** inability to obtain the information elsewhere and should not be entitled to obtain these privileged documents.

   D.    Correspondence Between The Insured and Its Insurers Are Entitled To Work Product Protection.

   Additionally, courts have held that correspondence between an insured and its liability insurer, written "as a consequence of pending litigation for the purposes of mounting a defense to the claim" is entitled to work product protection.  See Bovis Lend Lease, supra at Exhibit K.  In the present case, Federal has asserted the work product privilege with respect to correspondence between a principle of the insured, Watson Warriner, and his insurers, The Atlantic Mutual Company and Chubb.    This correspondence was prepared **after** Federal had received notification by Travelers of the Moorehous and Beers claims/actions and was  prepared assist in the defense of these claims. (See Federal's Supplemental Privilege Log entries on 5/23/2002, 7/15/2002, and 7/29/2002).  Accordingly, this correspondence between the insured and its insurers, both

- 15 -

Atlantic Mutual and Chubb, is protected by the work product privilege and should not subject to production.

       E.      <u>Correspondence Between Counsel for Le Papillon and Federal is Protected by the Attorney Client Privilege and the Work Product Doctrine</u>.

Although the Plaintiff has conceded that it is not seeking any correspondence between counsel for Le Papillon and Federal, such information is likewise protected by the attorney client privilege and work product doctrine. Fed.R.Civ.P. 26(b)(3) is intended "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation' free from unnecessary intrusion by his adversaries." <u>United States v. Adlman</u>, 134 F.3d 1194, 1196 (2d Cir. 1998). "Analysis of one's case 'in anticipation of litigation' is a classic example of work product." <u>Id</u>. at 1196-1197. If the work of an attorney was accessible to his adversary, much of what is written would remain unwritten for the fear that the attorney's work would benefit the opposing party. <u>Id</u> <u>citing</u> <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947). "Neither the interests of clients nor the cause of justice would be served, if work product were freely discoverable." <u>Hickman</u> at 511.

As indicated above, Fed.R.Civ.P. 26(b)(3) codifies the above principles. The Rule states that documents "prepared in anticipation of litigation or for trial" are discoverable only upon a showing of substantial need of the materials and the inability, without undue hardship, to obtain their substantial equivalent elsewhere. Even where this showing has

been made, the Rule provides that the court "*shall* protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney *or other representative of a party* concerning the litigation."  Fed.R.Civ.P. 26(b)(3)(emphasis added).

Additionally, courts have held that counsel retained by an insurer may act as an attorney for that insurer as well as for the insured.  See  Bovis Lend Lease LMB, INC. et al v. Seasons Contracting Corp., attached as Exhibit K).  Accordingly, "communications between the retained attorney and the insurer should be considered privileged, to the extent such communications request or provide legal advice or analysis."  Id. at *3.  "It is generally accepted that, regardless of whether the retained attorney and the insurer can be said to have a distinct attorney-client relationship, their 'communications . . . concerning such matters as progress reports, case evaluations, and settlement should be regarded as privileged and otherwise immune from discovery by the claimant or another party to the proceedings."  Id.

In the present case, Attorney Ryan was contacted by a representative at Chubb Insurance Company on September 11, 2002 requesting that he file an appearance on behalf of its insured, Le Papillon, in connection with the above-captioned litigation.  (See Affidavit of Michael T. Ryan, ¶ 5, attached as Exhibit Q).  It was on this date that Attorney Ryan first received a copy of the Complaint filed in connection with the above-

captioned action. (<u>See</u> Affidavit of Michael T. Ryan, ¶ 6, attached as Exhibit Q). Therefore, it is evident that any correspondence between defense counsel for Le Papillon, and Federal was prepared "because of" litigation or for trial. In fact, any correspondence between Attorney Ryan and other attorneys of his firm, occurred after September 11, 2002, the date Attorney Ryan was retained by Federal to defend and represent the interest of Le Papillon, Federal's insured, in connection with the present case. (<u>See</u> Affidavit of Michael T. Ryan, ¶s 5-8, attached as Exhibit Q). Accordingly because a lawsuit had already been commenced upon Attorney Ryan's retention, all documents between counsel and Federal prepared after said date were prepared "because of" litigation and should be afforded protection under the work product doctrine and/or attorney client privilege. <u>Id</u>. Additionally, any correspondence between Le Papillon's personal counsel and Federal or between defense counsel is likewise privileged as it was prepared after the institution of the lawsuit or notification of the pending claims by Travelers.

## III.    <u>CONCLUSION</u>

WHEREFORE, for all the foregoing reasons, Federal respectfully requests this Court grant its Motion to Quash the subpoena to the extent the subpoena requires disclosure of documents set forth in Federal's Privilege Log and protected by the attorney client privilege and work product doctrine. Additionally, Federal respectfully requests this Court grant its Motion for Protective Order and issue an order that at the deposition of a

Federal representative, the Plaintiff not be allowed to orally inquire into matters contained in the withheld documents which likewise would be protected by the attorney client privilege and/or work product doctrine.

THE MOVANT
FEDERAL INSURANCE COMPANY


By_____
    Jennifer J. Cavalier
    Federal Bar No: ct 24646
    NUZZO & ROBERTS, L.L.C.
    One Town Center
    P.O. Box 747
    Cheshire, Connecticut 06410
    (203) 250-2000
    jcavalier@nuzzo-roberts.com

This is to certify that on September 13, 2004, a true copy of the foregoing Motion for Protective Order / Motion to Quash was mailed via first class postage prepaid mail to:

Jonathan M. Shapiro
Diserio Martin O'Connor & Castiglioni
One Atlantic St.
Stamford, CT  06901

Robert N. Chan, Esq.
Robson, Ferber, Frost, Chan & Essner, LLP
530 Fifth Avenue
New York, NY  10036-5101

Peter D. Clark, Esq.
Law Offices of Peter D. Clark
525 Bridgeport Avenue
Shelton, CT   06484

Michael Ryan, Esq.
Ryan Ryan Johnson & Deluca LLP
80 Fourth St.
P.O. Box 3057
Stamford, CT  06905-3057

_____
Jennifer J. Cavalier
 Federal Bar No: ct 24646
NUZZO & ROBERTS, L.L.C.
One Town Center
P.O. Box 747
Cheshire, Connecticut 06410
(203) 250-2000
 jcavalier@nuzzo-roberts.com

F:\WP\403002\261\Mot Protective Order (2).doc