# EXHIBIT L

**Westlaw.**

2001 WL 876816
2001 WL 876816 (S.D.N.Y.)
(Cite as: 2001 WL 876816 (S.D.N.Y.))

Page 1

**H**
Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

AMERICAN NATIONAL FIRE INSURANCE
CO. and Great American Insurance Co.,
Plaintiffs,
v.
MIRASCO, INC., Defendant.
MIRASCO, INC., Plaintiff,
v.
AMERICAN NATIONAL FIRE INSURANCE
COMPANY, Defendant.

Nos. 99 Civ. 12405(RWS), 00 Civ. 5098(RWS).

Aug. 2, 2001.

Kingsley & Kingsley, Hicksville, NY, By: Harold M. Kingsley, for American National Fire Insurance Co., of counsel.

Haight Gardner Holland & Knight, New York, NY, By: James V. Marks, for Mirasco, Inc., of counsel.

OPINION

SWEET, J.

*1 Defendant Mirasco, Inc. ("Mirasco") has moved by letter motion to compel production of certain documents by plaintiff Great American Insurance Co. ("the Insurers") that have been withheld on grounds of work product protection pursuant to Rule 26(b)(3), Fed.R.Civ.P. The subject documents have been submitted to the court for *in camera* review. Following review, for the reasons stated, the motion to compel is granted in part.

*Parties and Prior Proceedings*

Great American is an Ohio corporation licensed to do business as a marine insurance company in New York.

Mirasco is a Georgia corporation with its principal place of business in Georgia.

On December 28, 1999, this declaratory judgment action was instituted by the filing of the complaint by the Insurers. The instant dispute arose during discovery, which is ongoing. Additional proceedings are described in this Court's prior opinions, familiarity with which is presumed. *See, American National Fire Insurance Co. v. Mirasco,* 143 F.Supp.2d 372; *American National Fire Insurance Co. v. Mirasco,* 2001 A.M.C. 489, 2000 WL 1368009.

*The Motion to Compel is Granted in Part*

The Insurers have withheld numerous document from production on the grounds that they are not subject to production since they were prepared "in anticipation of litigation" and thus protected under Fed.R.Civ.P. 26(b)(3). The documents are listed in two privilege logs--the "Pam Kobin Privilege Log" and the "Amended Privilege Log". Rule 26(b)(3) provides in relevant part that:

> a party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2001 WL 876816
2001 WL 876816 (S.D.N.Y.)
**(Cite as: 2001 WL 876816 (S.D.N.Y.))**

Page 2

As many courts have noted, it often is difficult to determine whether documents prepared by an insurance company or its representatives are entitled to work-product protection because insurers are in the business of investigating and adjusting claims. *See, e.g., Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.,* No. 90 Civ. 7811, 1994 WL 510043, at *5 (S.D.N.Y. Sept. 16, 1994) (Francis, M.J.) ("line between documents prepared in the ordinary course of business and those prepared in anticipation of litigation is not always clear"); *Mount Vernon Fire Ins. Co. v. Try 3 Building Servs., Inc.,* No. 96 Civ. 5590, 1998 WL 729735, at *5 (S.D.N.Y. Oct. 16, 1998) (Pitman, M.J.) ("Application of the work-product doctrine to documents prepared by insurance companies has been particularly troublesome"); *see also International Surplus Lines Ins. Co. v. Willis Corroon Corp.,* No. 91 C 6057, 1992 WL 345051, at *5 (N.D.Ill. Nov. 12, 1992) (expressing dismay that certain "discovery opponents seem to use the doctrine to relieve themselves of the burden of producing factual information accumulated in what appears to be routine investigations").

*2 The Second Circuit has adopted a "causation" test for determining whether a document was prepared in anticipation of litigation. *See United States v. Adlman,* 134 F.3d 1194, 1202-1203 (1998) ("Adlman"). Thus, the party seeking to withhold a document must demonstrate that the document it seeks to withhold was created "because of" the anticipation of litigation. *See id.* Additionally, documents prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation do not qualify for protection. *See id.*

In *Great American Ins. Co. v. J. Aron & Company, Inc.,* 1995 A .M.C. 2854 (S.D.N.Y.1995), this Court reviewed certain documents *in camera* and determined that, based on that review, documents created after counsel was appointed were subject to the privilege. However, no bright-line rule was employed or established there. As has been noted under similar circumstances, "an insurer's referral of a claim to its attorney is a significant factor in determining when the insurer anticipated litigation." *Mount Vernon Fire Insurance Co. v. Try 3 Building Services, Inc.,* No. 96 Civ. 5590 (MJL HBP), 1998 WL 729735 (S.D.N.Y. Oct. 16, 1998), *citing,* 525 *Fulton Street Holding Corp. v. Mission Nat'l Ins.,* 83 Civ. 8229(KTD), 1984 WL 591 (S.D.N.Y. June 29, 1984) (investigator's report prepared before insurer denied claim was made in the ordinary course of business where there was no evidence that an attorney requested the preparation of the report); *see also, Westhemco, Ltd. v. New Hampshire Ins. Co.,* 82 F.R.D. 702 (S.D.N.Y.1979).

However, the Second Circuit has made clear that the party seeking to withhold a document must demonstrate that the document it seeks to withhold was created "because of" the anticipation of litigation. *Adlman,* 134 F.3d at 1202-03. That approach is followed here. The documents have been reviewed *in camera* and the conclusions set forth herein are based on a determination of whether the documents at issue were prepared "because of" the anticipation of litigation.

Based on the review of documents contained in the Pam Kobin Privilege Log and the Amended Privilege Log, the Insurers did not anticipate litigation immediately after May 4, 1999 as they contend. However, the matter was referred to counsel on or near June 22. From that point forward, the bulk of the documents at issue reflect an "anticipation of litigation". The apparent rationale for referral to counsel was to protect the Insurers interests in what was a dispute over terms of coverage. Of the documents submitted for *in camera* review, most of those created after the June 22, 1999 referral of the claim to counsel are protected. The documents created after that point have a materially different tenor than those previous, and litigation was not anticipated until that point in time.

Here, as in *Great American Ins. Co. v. J. Aron & Company, Inc.,* 1995 A.M.C. 2854 (S.D.N.Y.1995), the documents submitted for *in camera* review indicate that referral of the claim to counsel is largely the point at which litigation was anticipated. The documents created subsequently indicate an awareness of that possibility. Therefore, as to most of the documents created after the matter was referred to counsel, the Insurers have sustained their burden of demonstrating that the withheld documents are protected from disclosure. *See, American Ins. Co. v. Elgot Sales Corp.,* No. 97 Civ. 1327, 1998 WL 647206,*1 (S.D.N.Y. Sept. 21,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2001 WL 876816
2001 WL 876816 (S.D.N.Y.)
**(Cite as: 2001 WL 876816 (S.D.N.Y.))**

Page 3

1998).

*3 The only exception to this finding is the report of and correspondence with Sea Horse International, who surveyed the discharge of the M/V "Spero"-- the ship that was refused entry into Egypt. Those documents were prepared in the ordinary course of business and would have been created in essentially similar form irrespective of the litigation. *See, Adlman,* 134 F.3d at 1203.

*Conclusion*

For the reasons stated above, responsive document dated prior to June 22, 1999 will be produced, in addition to the reports of and correspondence with Sea Horse International.

It is so ordered.

2001 WL 876816 (S.D.N.Y.)


Motions, Pleadings and Filings (Back to top)


- 1:00CV05098  (Docket)
  (Jul. 12, 2000)

- 1:99CV12405  (Docket)
  (Dec. 23, 1999)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT M

Westlaw.

1995 WL 325652
1995 WL 325652 (S.D.N.Y.), 1995 A.M.C. 2854
(Cite as: 1995 WL 325652 (S.D.N.Y.))

Page 1

H

United States District Court,
S.D. New York.

GREAT AMERICAN INSURANCE COMPANY,
as leading underwriters, and St. Paul Fire
and Marine Insurance Company, Commercial
Union Insurance Company and Fireman's
Fund Insurance Company, as following
co-underwriters, Plaintiffs,
v.
J. ARON & COMPANY, INC., Defendant.

No. 94 CIV. 4420 (RWS).

May 30, 1995.

Kingsley & Kingsley Hicksville, NY Harold M. Kingsley, of counsel, for plaintiffs.

Watson Farley & Williams, New York City, Alfred E. Yudes, Jr., John G. Kissane, of counsel, for defendant.

*OPINION*

SWEET, District Judge.

*1 Defendant J. Aron & Company, Inc. ("J. Aron") has moved under Rule 34, Fed. R. Civ. P for the production of certain documents of the plaintiff Great American Insurance Company ("Great American") withheld on the grounds of privilege. Great American has cross moved under Rule 12(c) Fed. R. Civ. P. to dismiss the counterclaim of J. Aron alleging the bad faith of Great American in rejecting coverage of certain losses incurred by J. Aron. Great American's motion to dismiss will be granted with leave granted to J. Aron to replead, and J. Aron's motion for the production of documents will be granted in part.

*Parties*

The plaintiffs are marine insurers duly incorporated as follows: Great American is incorporated under the laws of Ohio with its principal place of business at 580 Walnut Street, Cincinnati, Ohio. St. Paul Fire and Marine Insurance Company is incorporated under the laws of Minnesota with its principal place of business at 385 Washington Street, St. Paul, Minnesota. Commercial Union Insurance Company is incorporated under the laws of Massachusetts with its principal place of business at 1 Beacon Street, Boston, Massachusetts. Fireman's Fund Insurance Company is incorporated under the laws of California with its principal place of business at 777 San Marin Drive, Novato, California (collectively, the "Plaintiffs").

J. Aron is a Delaware corporation with its principal place of business at 85 Broad Street, New York, New York.

*Prior Proceedings*

The Plaintiffs instituted this action on June 15, 1994 seeking a declaration that certain losses suffered by J. Aron were not covered under policies issued by the Plaintiffs. Discovery was undertaken and the Plaintiffs withheld documents created after November 15, 1993 on the grounds that were prepared in anticipation of litigation. The instant motions were made and heard on February 15, 1995 and considered fully submitted at that time. A number of documents have been produced *in camera* for review by the court.

*Facts*

In the summer of 1993, Plaintiffs insured J. Aron under a policy of marine cargo insurance identified as:
  No. FC080192 (Great American) OMP7375368
  No. 390JM1995 (St. Paul)
  No. CJC200662 (Commercial Union)
  No. OP18519 (Fireman's Fund)

The policy was drafted by J. Aron's broker, Frenkel & Co. Inc. ("Frenkel") and issued on Frenkel's form.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1995 WL 325652  
1995 WL 325652 (S.D.N.Y.), 1995 A.M.C. 2854  
**(Cite as: 1995 WL 325652 (S.D.N.Y.))**

Page 2

The policy provided coverage for physical loss or damage from external causes including contamination, heating, sweating, and spontaneous combustion but excluded shipments purchased on terms not requiring J. Aron to purchase insurance. The policy also permitted J. Aron to declare contingent coverage known as "Difference in Conditions/Guarantee of Collectibility" for "merchandise purchased by the assured on C.I.F. or similar terms under which insurance is provided by the seller," covering:

 1. The difference in average conditions, if any, between those applying under this policy for such goods and those applying under the insurance provided by the seller.

 *2 2. ... the collectibility of any claim recoverable under the insurance provided by the Seller, not entered in New York.

and contained exclusionary terms with respect to delay and inherent vice and required the assured to give prompt notice of every loss or damage.

The "Difference in Conditions" coverage was available at the option of J. Aron for a reduced premium of 30% of the normal premium where similar coverage was provided by the Seller, and at 50% of the normal premium where less broad coverage was provided by the Seller.

In the summer of 1993, J. Aron declared 22 barges of corn under its contingent "Difference in Conditions/Guarantee of Collectibility" coverage which they declared at 30% of normal premium for similar coverage provided by the Seller. J. Aron suffered the loss of the contents of the barges as a consequence of the flood occurring on the Mississippi River during the summer of 1993.

J. Aron gave Plaintiffs notice of the loss in accordance with the terms of the policy in August 1993.

At a conference of November 15, 1993, Plaintiffs discussed the claims of J. Aron and exchanged memos and held conversations thereafter.

On December 28, 1993, Frenkel presented claims to Plaintiffs for $1,811,276.37 for damage to the corn due to deterioration arising from delays in transit.

The Plaintiffs sent a "reservation of rights" letter to J. Aron on or about March 4, 1994.

*Certain of the Withheld Documents Will Be Produced*

"Many district courts have recognized that, while litigation often results from an insurance company's denial of claim, not every document prepared by the insurance company after such a claim has arisen is shielded from discovery because it is 'prepared in anticipation of litigation' within the meaning of Rule 26(b)." *Wenck v. Standard Fire Ins. Co.*, 1992 WL 193540, 91 Civ. 1617, at *1 (E.D. La. 1992, Aug. 6, 1992), *see also Westhemceco Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702, 708 (S.D.N.Y. 1979). Nor will the attorney/client privilege protect documents prepared by outside counsel hired to monitor the progress of case to the extent that attorneys act as claims adjusters, claims process supervisors, or claims investigation monitor rather than legal advisors. *Bank Hapoalim, B.M. v. American Home Assur. Co.*, 1993 WL 37506, 92 Civ. 3561, at *4, (S.D.N.Y., Feb. 8, 1993); *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 671 (S.D. Ind. 1991).

A review of the *in camera* documents establish that a decision was made on January 3, 1994 to refer the J. Aron claim to counsel and that is the date upon which any litigation privilege commenced. Documents originated prior to that date will be produced while withheld documents which originated after that date may continue to be withheld.

Although it is the position of the Plaintiffs that its correspondence with another insured, Louis Dreyfus Company ("Dreyfus"), is also covered by the litigation privilege as having been prepared in anticipation of litigation, no authority is cited for the proposition. By definition this material was not held in confidence and cannot contain the mental impressions of Plaintiffs' attorneys with respect to J. Aron's claim. It will be produced.

*The Bad Faith Counterclaim Will Be Dismissed At This Time*

*3 After alleging coverage, loss and the refusal of the Plaintiffs to pay under the policies, J. Aron

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1995 WL 325652
1995 WL 325652 (S.D.N.Y.), 1995 A.M.C. 2854
**(Cite as: 1995 WL 325652 (S.D.N.Y.))**

Page 3

alleged as follows:
> 40. Plaintiffs wantonly, vexatiously and in breach of their covenant of good faith and fair dealing withheld the benefits of the insurance contract from defendant knowing that payment was due and owing under the Policy.
> 41. The plaintiffs' bad faith and breach of the covenant of good faith and fair dealing has damaged defendant over and above its claim to the benefit of the Policy by forcing defendant to pursue litigation, arbitration and other measures to secure payment from other sources which is properly due under the Policy.
> WHEREFORE, defendant, J. Aron & Company, demands judgment in an amount in excess of $2 million for the proceeds of the insurance contract covering the 22 barge loads of grain and damages occasioned by the plaintiffs breach of the covenant of good faith and fair dealing, together with interest, costs and attorneys' fees, and such other and further relief as the Court may deem just.

The New York Court of Appeals recently denied a bad faith claim against underwriters, in *Rocanova v. Equitable Life Assurance,* 612 N.Y.S.2d 339, 342 (N.Y. 1994), stating:
> Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights (*see Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 358). However, where the breach of contract also involves a fraud evincing a "high degree of moral turpitude" and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations," punitive damages are recoverable if the conduct was "aimed at the public generally" (*see Walker v. Sheldon,* 10 N.Y.2d 401, 404-05). Punitive damages are available where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious under the *Walker* standard to warrant the additional imposition of exemplary damages. Thus, a private party seeking to recover punitive damages must not only also demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally.

> Clearly, then, the standard for awarding punitive damages in first-party insurance action is a "strict one" (*see Cohen v. New York Property Ins. Underwriting assoc.,* 65 AD2d 71, 79), and this extraordinary remedy will be available "only in limited number of instances" (*see Garrity,* 40 N.Y.2d at 358, supra).

612 N.Y.S.2d at 342.

Thus, the legal standard J. Aron must meet requires pleading and proof of "fraud," "a high degree of moral turpitude," "wanton dishonesty," and "criminal indifference to civil obligations," which is "aimed at the public generally."

The Counterclaim fails to allege sufficient facts in its conclusory allegation of "wanton, vexatious breach of covenant of good faith and fair dealing," and thus fails to meet the requirements of Rule 9(b).

*4 This provision has been strictly construed to require the factual elements of a fraud claim be specifically pleaded or the claim will be dismissed. See *Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987); *Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F. Supp. 576, 584 (S.D.N.Y. 1995); *O'Brien v. Price Waterhouse,* 740 F.Supp. 276, 279 (S.D.N.Y.1990), aff'd, 936 F.2d 674 (2d Cir.1991).

The counterclaim also fails to meet the requirement of *Rocanova* that an independent tort must be set forth as well and further that the conduct must be part of a similar pattern aimed at the public generally. Faced with *Rocanova,* J. Aron asserted that its claim arose in admiralty rather than state law, though Paragraph 25 and Defendant's Answer denied admiralty subject matter jurisdiction and asserted jurisdictional diversity as a basis for the Counterclaim.

The Plaintiffs have cited *Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 320-21 (1955) for the proposition that state law should normally prevail in a marine insurance case where no clear historical rule existed in maritime law. However, the applicability of that authority to the present case need not be resolved there being no delineated admiralty claim.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1995 WL 325652
1995 WL 325652 (S.D.N.Y.), 1995 A.M.C. 2854
**(Cite as: 1995 WL 325652 (S.D.N.Y.))**

Page 4

According to J. Aron, the inadequacy of its pleading is directly related to the failure of the Plaintiffs to comply with their discovery obligations, an issue resolved above. For that reason, as well as customary practice, J. Aron is granted leave to replead its counterclaim within twenty days of the completion of the Plaintiffs' production in accordance with this opinion.

*Conclusions*

The motion of J. Aron to compel the production of documents is granted as set forth above and the motion of the Plaintiffs to dismiss the counterclaim of J. Aron is granted. J. Aron is granted leave to replead as set forth above.

It is so ordered.

1995 WL 325652 (S.D.N.Y.), 1995 A.M.C. 2854

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.