UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PARFUMS DE COEUR, LTD. | : | CIVIL ACTION NO. |
| | : | 302 CV 1454 (RNC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LE PAPILLON, LTD. | : | |
| | : | |
| Defendant, | : | SEPTEMBER 17, 2004 |

### OBJECTION TO FEDERAL INSURANCE AND DEFENDANTS' RESPECTIVE MOTIONS FOR PROTECTIVE ORDER/MOTIONS TO QUASH

Plaintiff, PARFUMS DE COEUR, LTD., ("Plaintiff" or "PARFUMS") respectfully requests this Court to enter an Order denying FEDERAL INSURANCE COMPANY'S, LLC, and LE PAPILLON's respective Motions to Quash and Motions for Protective Order dated September 13, 2004. In support thereof, Plaintiff responds as follows:

**I.   FACTS AND PROCEDURAL HISTORY**

On February 27, 2004, Plaintiff, in connection with its discovery, issued a subpoena to FEDERAL from the District of New Jersey pursuant to Fed. R. Civ. P. 45 seeking the production of documents and the deposition of its agent most knowledgeable about said documents. On March 23, 2004, FEDERAL filed a Motion to Quash

1

and Motion for Protective Order in the Connecticut District Court claiming that the request was overly broad, unduly burdensome and invaded the attorney-client privilege and work product doctrine.

On April 12, 2004, Plaintiff filed its Response to FEDERAL's Motion to Quash/Motion for Protective Order arguing that the Court did not have jurisdiction to hear FEDERAL's Motions and that FEDERAL failed to meet its burden. FEDERAL subsequently filed a Reply Brief.

On May 11, 2004, the Connecticut District Court heard oral argument on said papers. On July 2, 2004, the Honorable Donna F. Martinez denied the Movant's Motion to Quash/Motion for Protective Order. Thereafter, on July 16, 2004, FEDERAL moved the Connecticut District Court to reconsider its July 2, 2004 decision which Plaintiff opposes.

Throughout this discovery dispute, Plaintiff has remained willing to work with FEDERAL to resolve their differences. After the Connecticut District Court's July 2, 2004 decision, Plaintiff and FEDERAL worked to resolve their differences. To that end, FEDERAL, through counsel, agreed to provide all "non-privileged" documents and agreed to the deposition of its representative. See

Letter from Jennifer Cavalier to Jonathan Shapiro dated July 29, 2004 attached hereto as Exhibit "A".

After waiting more than five months for its production request, on August 6, 2004 and August 18, 2004, FEDERAL provided its documents to Plaintiff. FEDERAL served its privilege log for the first time on August 18, 2004. The vast majority of the documents provided were merely a reproduction of Plaintiff's own documents, pleadings and initial notices. On August 24, 2004, counsel for Plaintiff and FEDERAL conversed to discuss their differences regarding the privilege log submitted by FEDERAL. Despite their good faith efforts, Plaintiff and FEDERAL were unable to resolve their differences. Thereafter, Plaintiff filed a Motion for Contempt against FEDERAL for its failure to comply with the Subpoena.

On September 3, 2004, Judge Martinez held a telephonic hearing with all parties to discuss FEDERAL's Motion for Reconsideration. During said telephonic hearing, the parties agreed that Plaintiff would issue a new Subpoena from the District Court of Connecticut and the parties agreed to a briefing schedule to address the remaining discovery disputes at issue. On September 7, 2004,

Plaintiff issued its Subpoena from the District Court of Connecticut. Pursuant to the agreed scheduling order, FEDERAL and Defendant both filed their respective Motions to Quash and Motions for Reconsideration on September 13, 2004.

## II. LEGAL ARGUMENT

This Court is well aware of the applicable law regarding the attorney-client privilege and work product doctrine. See, e.g., Loftis v. Amica Mutual Insurance Co., 175 F.R.D. 5 (D.Conn. 1997); Nationwide Mutual Fire Insurance Co. v. Smith, 174 F.R.D. 250 (D.Conn. 1997); Go Medical Industries Pty, Ltd. v. C.R. Bard, Inc., 1998 U.S.Dist. LEXIS 22919 (D.Conn. 1998) (attached hereto as Exhibit "B").

Generally speaking, the work product doctrine, as codified by Fed. R. Civ. P. 26(b)(3), "shield[s] from disclosure documents and other materials prepared in anticipation of litigation or trial by a party or a party's representative, absent a showing of substantial need." See, e.g., Loftis v. Amica, 175 F.R.D. at 10; see also Fed. R. Civ. P. 26(b)(3). As FEDERAL and Defendant state, the Second Circuit has defined the term "prepared in anticipation of litigation" as those documents that "can fairly be said to have

been prepared or obtained because of the prospect of litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2nd Cir. 1997). Moreover, the degree of protection afforded under the work product doctrine is dependent on whether the work product is ordinary or opinion work product. A party may obtain discovery of ordinary work product materials by demonstrating substantial need and the inability to obtain the substantial equivalent of the materials without undue hardship. Plaintiff recognizes that disclosure of opinion work product, which reflects the mental impressions, conclusions or opinions of an attorney, receives greater protection. Go Medical Industries Pty, Ltd. v. C.R. Bard, Inc., 1998 U.S.Dist. LEXIS 22919 (See Exhibit "B"). However, there is no indication in FEDERAL's privilege log that the items discussed below constituted opinion work product.

The attorney-client privilege states that "where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser." Loftis v. Amica Mutual Insurance Co., 175 F.R.D. at 8.

FEDERAL and Defendant assert that the documents withheld are protected by either the attorney-client privilege or work product doctrine. FEDERAL identified five categories that all the documents withheld may be grouped: (1) claims notes/file notes prepared by FEDERAL's employees tracking the defense of these cases; (2) correspondence between the insured, Le Papillon, and its insurer; (3) correspondence between defense counsel for the insured and FEDERAL; (4) internal evaluations, strategies and analyses of the claims and litigation; and (5) correspondence between defense counsel for the insured.[1]

The party asserting a claim of attorney-client privilege or the protection of the work product doctrine bears the burden of demonstrating that the communication was privileged or that the documents were prepared in anticipation of litigation. See, e.g., Loftis v. Amica, 175 F.R.D. at 11 (citations omitted). The party must present competent proof that the privilege should attach. See, e.g., Hildebrand v. Wal-Mart Stores, Inc., 194 F.R.D. 432, 435 (D.Conn. 2000) (citations omitted). "This burden cannot be

---

[1] Defendant summarized the documents as consisting of either "(i) communications between the defendant (and/or its attorney) and Chubb, or (ii) the internal claim notes of Chubb and internal communications between Chubb employees

discharged by mere conclusory or ipse dixit assertions." Id. (citations omitted); see also Omega Engineering, Inc. v. Omega, S.A., 2001 U.S.Dist. LEXIS 2016 (D.Conn. 2001) (attached hereto as Exhibit "C").

"A party must supply opposing counsel with sufficient information to assess the applicability of the privilege or protection, without revealing information which is privileged or protected." Id. (citation omitted). Pursuant to Rule 37 of the Local Rules of Civil Procedure, the privilege log must indicate: 1) the type of document; 2) the general subject matter of the document; 3) the date of the document; 4) the author of the document; and 5) each recipient of the document.

FEDERAL has failed to satisfy its burden and establish that all documents identified in FEDERAL's privilege log are protected under either the attorney-client privilege or work product doctrine. As stated previously, Plaintiff does not seek correspondence between counsel for Defendant, Attorney Michael Ryan, retained by FEDERAL on behalf of its insured and FEDERAL nor does it seek Attorney Ryan's mental impressions. However, the mere

---

concerning claims against the defendant by the plaintiff and claims made by other consumers of plaintiff's product."

7

...

fact an attorney sends correspondence or documents to FEDERAL does not make them privileged.

For example, two of the items sought are described in the privilege log as an e-mail from Attorney Ryan to an expert and a letter from Attorney Ryan to an expert. (See Privilege Log (attached hereto as Exhibit "D"), page 1, item 5; page 11, item 1). The log entries do not specify who the expert is or whether he was retained. There is no question that communications with an expert are discoverable and are not subject to work product protection or the attorney client privilege. Instruction given by Attorney Ryan may form a basis to impeach Defendant's experts. Plaintiff has no other means of obtaining this information.

Plaintiff had previously advised FEDERAL that its privilege log failed to identify the authors and each recipient of the documents, and also failed to provide the specific dates of documents. The supplemental privilege log provided on September 13, 2004, is, for the most part, a reproduction of plaintiff's initial privilege log filed on August 18, 2004.

However, its supplemental privilege log notes that documents without dates were not dated. Apparently, the dates of these

documents are not known and there is no way for FEDERAL to determine the dates of these documents. Moreover, with respect to documents previously listed without authors, the supplemental privilege log either indicates that the author was unknown or that it was "prepared by Chubb employees" without any indication of the employees' name or position with Chubb.

For example, there are numerous entries in the privilege log regarding claim notes of various identified claims which are said to include "investigations and evaluations" of the said claims. (See Privilege Log: page 1, items 1, 3 and 5; page 2, items 2, 3 and 5; and page 3, item 4).[2] These entries all group numerous documents over a broad range of dates into one entry. With respect to these documents, FEDERAL has failed to provide Plaintiff with sufficient information to assess the applicability of their asserted privileges and protections. In addition to failing to provide details regarding the authors of these documents, the entries do not indicate that any of the documents were prepared at the direction of Attorney Ryan.

---

[2] These entries relate to the claims of Ciara Beers, Bessie Mays, Kayla Hahn, Kayla Moorhous and Kyle Lovell. Of these claims, only Lovell was ever filed in court. The remaining claims have not been the subject of litigation and

FEDERAL's failure to provide a privilege log that complies with the Local Rules makes it difficult, if not impossible, for Plaintiff to ascertain which documents may be appropriately protected by the asserted privileges. In these circumstances, FEDERAL's failure to provide an appropriate privilege log in and of itself may constitute a waiver of privilege. See, e.g., Strougo v. Bea Associates, 199 F.R.D. 515 (S.D.N.Y. 2001); see also Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center of Haverstraw, Inc., 2003 U.S.Dist. LEXIS 15917 (S.D.N.Y. 2003) (citations omitted) (attached hereto as Exhibit "E").

Even if not deemed a waiver, the above referenced entries contain, as stated, claim notes regarding "investigations and evaluations." FEDERAL's privilege log also contains numerous similar entries related to investigations, evaluations and notifications of claims without identifying what claim the item refers. (See Privilege Log: page 1, item 2; page 2, items 1, 6 and 7; page 3, items 1 and 2; page 5, items 3, 4 and 6; and page 6, item 6). In essence, FEDERAL has sought to protect all notes and documents in its claims files relating to the roller ball fitments

---

there is no indication as to if and when counsel was retained regarding these matters.

as work product regardless of the date produced, whether litigation was actually pending or whether litigation could actually have been considered forthcoming.

Documents prepared in the ordinary course of business are **not** protected by the work product doctrine. See, e.g., United States v. Adlman, 134 F.3d 1194 (2nd Cir. 1998). Admittedly, "[i]nsurance claim files may present difficult issues regarding where the line should be drawn between documents prepared in the ordinary course of the insurer's business (which, by is nature, involves claim investigation and analysis) and documents prepared in anticipation of litigation." (internal quotations omitted; citations omitted) Bovis Lend Lease, LMB, Inc. et al. v. Seasons Contracting Corp. et al., 2002 U.S.Dist. LEXIS 23322 (D.Conn. 2002) (attached hereto as Exhibit "F").

Nonetheless, despite FEDERAL and Defendant's suggestion to the contrary, all documents contained in an insurance company's claims file, including investigative reports and notices, are not subject to the work product doctrine. See, e.g., Westhemco Ltd. v. New Hampshire Insurance Co., 82 F.R.D. 702, 708 (S.D.N.Y. 1979) *modified on other grounds*, Commercial Union Insurance Co. v. Albert

Pipe & Supply Co., 484 F.Supp. 1153 (S.D.N.Y. 1980) (finding that a report investigating a claim was kept in the ordinary course of business and not prepared in anticipation of litigation).

Indeed, the supplemental privilege log identifies claim file documents regarding the investigation and evaluation of claims dating back as far as May 16, 2002. This action was not commenced until July 23, 2002 nor was any lawsuit by any third parties regarding the fitments initiated prior to that date. FEDERAL cannot honestly state that all these documents identified were prepared **because of** the prospect of litigation, especially the undated entries. It has not provided any evidence to support that litigation was anticipated as of the date of these documents.

Furthermore, Defendant has asserted several affirmative defenses including failure to mitigate on the part of Plaintiff. To that end, Defendant has conducted extensive discovery, including the deposition of Plaintiff's insurer and their investigation into a possible recall, on Plaintiff's alleged failure to recall its product. To the extent FEDERAL conducted any investigation into a possible recall by Defendant of its product, this information would certainly be discoverable and Plaintiff would have no other means

to obtain such information except through FEDERAL.

FEDERAL has also identified numerous correspondences between their employees and Defendant's independently retained counsel, (Attorney Kaplan) as protected by the attorney-client privilege and work product doctrine. (See Privilege Log: page 2, item 4; page 3, item 7; and page 6, items 1, 3, 7 and 8). There is no indication that Attorney Kaplan represented FEDERAL. There is no indication that the communications between Defendant's privately retained counsel and FEDERAL were pursuant to a common interest. Plaintiff is currently unaware as to whether FEDERAL is providing a defense of this matter under a reservation of rights. To the extent these communications concern matters in which FEDERAL and counsel for Defendant take adversarial positions, these communications are certainly discoverable.

Moreover, in order for a claim of attorney-client privilege to apply, "it must be made for the purpose of seeking or providing legal advice or assistance and the communication itself must have been predominantly of a legal character." The fact that an attorney sends or receives correspondence or documents to or from FEDERAL does not make them privileged. FEDERAL has failed to

show that these communications involve the seeking or providing of legal advice or assistance.

FEDERAL and Defendant also seek to protect from disclosure as work product all communications between FEDERAL, the insurer, and Defendant, the insured (specifically from or to Watson Warriner, President of Defendant). (See Privilege Log: page 3, items 3, 5, 6 and 8; and page 5, item 8). There is no indication that this correspondence was written by or at the direction of an attorney or contains the mental impressions of counsel. To the extent any of these communications concern statements against interest, statements of third parties, or concern any coverage issues, again, these communications are discoverable.

As discussed, the work product doctrine does not provide an absolute protection to the discovery of documents. <u>Go Medical Industries Pty, Ltd. v. C.R. Bard, Inc.</u>, 1998 U.S.Dist. LEXIS 22919. A party may obtain discovery of ordinary work product materials by demonstrating substantial need and the inability to obtain the substantial equivalent of the materials without undue hardship. <u>Id.</u> With respect to communications between FEDERAL and Defendant, Plaintiff has substantial need for these materials and

cannot obtain them by any other means.

Plaintiff's action against Defendant includes a count under the Connecticut Unfair Trade Practices Act.[3]  In its CUTPA claim, Plaintiff alleges that Defendant received complaints from another one of its customers, KAUFMAN CONTAINERS ("KAUFMAN"), indicating that the roller balls were coming out of the fitments.  Plaintiff further alleges that after receiving notification from KAUFMAN, PAPILLON worked with them to solve the problems KAUFMAN's customer, BONNE BELL, was experiencing with the roller ball fitments.

At all times thereafter, Defendant kept its knowledge and the extent of the problems it experienced with its fitments secret from PARFUMS despite the fact that PARFUMS notified Defendant of similar problems.  Defendant further kept secret from Plaintiff the findings of a consultant it hired to examine the mold and molding process.  In particular, Defendant's consultant determined that the mold core pins which make the fitment were very inconsistent cavity to cavity and that two of the cavities were below specification. (See Exhibit "G").

---

[3] A recommended ruling was issued granting Plaintiff leave to amend its complaint to include its CUTPA claim, but Judge Chatigny has not yet issued a final ruling.

In addition to the findings of Defendant's consultant acknowledging inconsistent core pins, Defendant admits, in documents it has produced, that there were certain molding problems. Despite these written statements, Defendant and its representatives have repeatedly denied having any problems with the molding of the fitments. Due to the conflicting nature of Defendant and its representatives' statements, to the extent that these documents contain any such statements that would impeach the testimony of Defendant's witnesses, Plaintiff has substantial need for these documents. Accordingly, the work product doctrine does not afford protection to these communications.

Finally, FEDERAL has claimed that correspondence between Watson Warriner and Judith Manganelli at the Atlantic Mutual Companies is somehow protected under the work product doctrine. (See Privilege Log: page 3, item 4). Similarly, FEDERAL has claimed work product protection for letters from Attorney Kaplan to Ms. Manganelli of the Atlantic Mutual Companies. (See Privilege Log: page 4, item 8; page 5, item 7; page 8, item 5; page 10, item 2 and page 11, item 8). To the best of Plaintiff's knowledge and belief, the Atlantic Mutual Companies ("Atlantic Mutual") is not an

affiliate of FEDERAL, and Mr. Kaplan does not represent Atlantic Mutual or FEDERAL. Plaintiff fails to see how FEDERAL can claim work product protection to such correspondence. Moreover, to the extent that these materials may have contained any work product, any such protection has been waived by their disclosure to FEDERAL.

**WHEREFORE**, for all the foregoing reasons, Plaintiff respectfully requests this Court to enter an order denying FEDERAL's and Defendant's respective Motions for Protective Order and Motions to Quash dated September 13, 2004, an order requiring the production of the requested documents, and an order awarding Plaintiff its attorneys' fees in connection with the enforcement of the subpoena in accordance with Local Rule 37(4). Plaintiff also requests an in camera review of the documents in question.

THE PLAINTIFF
PARFUMS DE COEUR, LTD.


/s/JMS

By _____
Richard E. Castiglioni (ct07280)
Jonathan M. Shapiro (ct24075)
Diserio Martin O'Connor & Castiglioni
One Atlantic Street
Stamford, CT 06901
(203) 358-0800

**CERTIFICATE OF SERVICE**

This is to certify that a true copy of the foregoing has been mailed, postage prepaid, this 17th day of September, 2004, to the following counsel and parties of record:

Robert N. Chan
Robson Ferber Frost Chan & Essner, LLP
530 Fifth Avenue
New York, NY 10036
(212) 944-2000

Michael T. Ryan (ct05685)
Jeffrey C. Nagle
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT 06905-3057
(203) 357-9200

Peter D. Clark (ct06484)
Law Offices of Peter D. Clark
525 Bridgeport Avenue
Shelton, Connecticut 06484

Jennifer Cavalier (ct24646)
Nuzzo & Roberts, LLC
One Town Center
P.O. Box 747
Cheshire, Connecticut 06410

/s/JMS
_____
Jonathan M. Shapiro

H:\LIT\JMS\Parfum\21090.objection to motion for protective order.doc