FILED

2004 SEP 28 A 7:

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PARFUMS  DE COEUR, LTD. | : CIVIL ACTION NO. |
| | : 302 CV 1454 (RNC) |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| LE PAPILLON, LTD. | : |
| | : |
| Defendant, | : APRIL 30, 2004 |

## FIRST AMENDED COMPLAINT

### FIRST COUNT (BREACH OF CONTRACT)

1.    At all times hereinafter mentioned, Plaintiff, PARFUMS
DE COEUR, LTD. ("PARFUMS") was and is a corporation duly
organized and existing and qualified to do business in the State
of Connecticut with a principal place of business in Darien,
Connecticut.

2.    Upon information and belief, Defendant, LE PAPILLON
LTD. ("PAPILLON") is a New Jersey corporation with a main
business address of .12 Albany Street, New Brunswick, NJ 08901
and which does business in the State of Connecticut.

3.    Plaintiff is a company engaged in the business of producing perfume fragrances including fragrances that it packages in Glitter Roll-On bottles for retail sale.

4.    Defendant is engaged in the business of producing and selling assembled ball and collar fitments for use with bottles.

5.    PARFUMS' Glitter Roll-On bottles are topped with two part dispensing mechanisms consisting of a roller ball and collar fitment (the "Mechanisms") that enable consumers to apply the fragrances.

6.    Beginning on or about February 16, 2001, Plaintiff entered into a contract with PAPILLON pursuant to various purchase orders, whereby Plaintiff purchased from PAPILLON, and PAPILLON sold and supplied to Plaintiff, the Mechanisms to be used on top of its Glitter Roll-On bottles.  Copies of purchase orders involved in this action are attached hereto as Exhibit "A" and made a part hereof.

7.    Pursuant to the purchase order, PAPILLON expressly stated that the Mechanisms were "of merchantable quality,

conforms to specifications and is suitable for the Purchaser's intended uses and purposes in the ordinary course of business."

8.    Relying on PAPILLON'S contractual obligations, PARFUMS used the Mechanisms it purchased from PAPILLON for the purpose described above as the dispensing mechanism on its Glitter Roll-On products.

9.    Beginning on or about June 2001, PARFUMS began receiving numerous complaints and claims from consumers of its Glitter Roll-On products that the roller ball in the Mechanism supplied by PAPILLON would burst out of the fitment when pressure was applied to the bottle.

10.    On or about January 9, 2002, PAPILLON advised PARFUMS that the mold used to create the collar fitments of the Mechanisms was defective.

11.    PAPILLON breached its express contract with PARFUMS in one or more of the following ways:

      (a)    the Mechanisms provided by PAPILLON were not fit
      for normal use due to the defect which caused the

roller ball to burst out of the fitment when pressure was applied.

(b)  the Mechanisms provided by PAPILLON were not acceptable in the trade due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(c)  the Mechanisms provided by PAPILLON were not suitable  for PARFUMS' intended uses and purposes in the ordinary course of its business due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(d)  the Mechanisms provided by PAPILLON did not conform to specifications due to the defect which caused the roller ball to burst out of the fitment when pressure  was applied .

12.  As  a  result  of  such  defective  quality  of  the Mechanisms  and  PAPILLON'S  breach  of  its  contract,  PARFUMS  has suffered  substantial  losses  and  damages  including,  but  not limited to, lost profits, cancellation of its product liability

and general liability insurance by Travelers, increased insurance costs, excess manufacturing costs, other incidental and consequential damages, attorneys' fees and costs.

**SECOND COUNT (BREACH OF EXPRESS WARRANTY)**

1-6. Plaintiff repeats and realleges paragraphs 1 through and including 6 of the First Count as if same were fully set forth at length herein.

7. Pursuant to the purchase order, PAPILLON expressly warranted that the Mechanisms were "of merchantable quality, conforms to specifications and is suitable for the Purchaser's intended uses and purposes in the ordinary course of business."

8. Relying on PAPILLON'S express warranties PARFUMS used the Mechanisms it purchased from PAPILLON for the purpose described above as the dispensing mechanism on its Glitter Roll-On products.

9. Beginning on or about June 2001, PARFUMS began receiving numerous complaints and claims from consumers of its Glitter Roll-On products that the roller ball in the Mechanism

supplied by PAPILLON would burst out of the fitment when pressure was applied to the bottle.

10. On or about January 9, 2002, PAPILLON advised PARFUMS that the mold used to create the collar fitments of the Mechanisms was defective.

11. PAPILLON breached its express warranty with PARFUMS in one or more of the following ways:

(a) the Mechanisms provided by PAPILLON were not fit for normal use due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(b) the Mechanisms provided by PAPILLON were not acceptable in the trade due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(c) the Mechanisms provided by PAPILLON were not suitable for PARFUMS' intended uses and purposes in the ordinary course of its business due to the defect

which caused the roller ball to burst out of the
fitment when pressure was applied.

(d)  the Mechanisms provided by PAPILLON did not
conform to specifications due to the defect which
caused the roller ball to burst out of the fitment
when pressure  was applied.

12.  As  a  result  of  such  defective  quality  of  the
Mechanisms  and  PAPILLON'S  breach  of  its  express  warranty,
PARFUMS  has  suffered  substantial  losses  and  damages  including,
but  not  limited  to,  lost  profits,  cancellation  of  its  product
liability  and  general  liability  insurance  by  Travelers,
increased  insurance  costs,  excess  manufacturing  costs,  other
incidental  and  consequential  damages,  attorneys'  fees  and  costs.

**THIRD COUNT (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)**

1-6. Plaintiff  repeats  and  realleges  paragraphs  1  through
and  including  6  of  the  First  Count  as  if  same  were  fully  set
forth at length herein.

7

7.   At all relevant times mentioned herein, PAPILLON was a merchant of the Mechanisms, as that term is described in Conn. Gen. Stat. § 42a-2-314.

8.   Relying on the implied warranty of merchantability, PARFUMS used the Mechanisms it purchased from PAPILLON for the purpose described above as the dispensing mechanism on its Glitter Roll-On products.

9.   Beginning on or about June 2001, PARFUMS began receiving numerous complaints and claims from consumers of its Glitter Roll-On products that the roller ball in the Mechanism supplied by PAPILLON would burst out of the fitment when pressure was applied to the bottle.

10.  On or about January 9, 2002, PAPILLON advised PARFUMS that the mold used to create the collar fitments of the Mechanisms was defective.

11.  The Mechanisms sold and supplied by PAPILLON to PARFUMS were subject to the implied warranty of merchantability pursuant to Conn. Gen. Stat. Section 42a-2-314.

12. PAPILLON breached the implied warranty of merchantability applicable to the Mechanisms it sold and supplied to PARFUMS in one or more of the following ways:

(a)  the Mechanisms provided by PAPILLON were not fit for normal use due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(b)  the Mechanisms provided by PAPILLON were not acceptable in the trade due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(c)  the Mechanisms provided by PAPILLON were not suitable  for PARFUMS' intended uses and purposes in the ordinary course of its business due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(d)  the Mechanisms provided by PAPILLON did not conform to specifications due to the defect which

caused the roller ball to burst out of the fitment when pressure was applied.

13. As a result of such defective quality of the Mechanisms and PAPILLON'S breach of the implied warranty of merchantability, PARFUMS has suffered substantial losses and damages including, but not limited to, lost profits, cancellation of its product liability and general liability insurance by Travelers, increased insurance costs, excess manufacturing costs, other incidental and consequential damages, attorneys' fees and costs.

**FOURTH COUNT** (BREACH OF IMPLIED WARRANTY OF FITNESS)

1-6. Plaintiff repeats and realleges paragraphs 1 through and including 6 of the First Count as if same were fully set forth at length herein.

7. At the time of the purchase orders, PAPILLON knew or had reason to know of the particular purposes for which the Mechanisms were to be used by PARFUMS, namely to dispense perfume from PARFUMS Glitter Roll-On products, and PAPILLON further knew or had reason to know that PARFUMS was relying

10

solely on PAPILLON's skill and judgment to furnish Mechanisms that were suitable for PARFUMS' purposes.

8. The assembled fitments purchased by PARFUMS pursuant to the purchase orders from PAPILLON were subject to the implied warranty of fitness for particular purpose prescribed by Conn. Gen. Stat. § 42a-2-315.

9. Relying on the implied warranty of fitness for particular use, PARFUMS used the Mechanisms for the purpose described above as the dispensing mechanism on its Glitter Roll-On products.

10. Beginning on or about June 2001, PARFUMS began receiving numerous complaints and claims from consumers of its Glitter Roll-On products that the roller balls in the Mechanisms supplied by PAPILLON would burst out of the collar fitment when pressure was applied to the bottles.

11. On or about January 9, 2002, PAPILLON advised PARFUMS that the mold used to create the collar fitments of the Mechanisms was defective.

12.  PAPILLON breached the implied warranty of fitness for a particular purpose as provided in Conn. Gen. Stat. Section 42a-2-315, in one or more of the following ways:

(a)  the Mechanisms provided by PAPILLON were not fit for the particular use due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(b)  the Mechanisms provided by PAPILLON were not acceptable in the trade due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(c)  the Mechanisms provided by PAPILLON were not suitable  for PARFUMS' intended uses and purposes in the ordinary course of its business due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(d)  the Mechanisms provided by PAPILLON did not conform to specifications due to the defect which

caused the roller ball to burst out of the fitment when pressure was applied.

13. As a result of such defective quality and PAPILLON'S breach of the implied warranty of fitness for particular purpose, PARFUMS has suffered substantial losses and damages including, but not limited to, lost profits, cancellation of its product liability and general liability insurance by Travelers, increased insurance costs, excess manufacturing costs, other incidental and consequential damages, and attorneys' fees and costs.

**FIFTH COUNT** **(CONTRACTUAL INDEMNIFICATION)**

1-6. Plaintiff repeats and realleges paragraphs 1 through and including 6 of the First Count as if same were fully set forth at length herein.

7. Pursuant to the purchase order, PAPILLON expressly stated that the Mechanisms were "of merchantable quality, conforms to specifications and is suitable for the Purchaser's intended uses and purposes in the ordinary course of business."

8.   Pursuant to the purchase order, PAPILLON expressly stated that it would hold PARFUMS "harmless against any liability, judgment, damages, incidental or consequential, loss or expense, including reasonable counsel fees resulting from Seller's failure to meet the requirements of the [warranties]."

9.   Relying on PAPILLON'S express warranties, PARFUMS used the Mechanisms it purchased from PAPILLON for the purpose described above as the dispensing mechanism on its Glitter Roll-On products.

10.   Beginning on or about June 2001, PARFUMS began receiving numerous complaints and claims from consumers of its Glitter Roll-On products that the roller ball in the Mechanism supplied by PAPILLON would burst out of the fitment when pressure was applied to the bottle.

11.   On or about January 9, 2002, PAPILLON advised PARFUMS that the mold used to create the collar fitments of the Mechanisms was defective.

12.   PAPILLON breached its express warranty with PARFUMS in one or more of the following ways:

(a)   the Mechanisms provided by PAPILLON were not fit
for normal use due to the defect which caused the
roller ball to burst out of the fitment when pressure
was applied.

(b)   the Mechanisms provided by PAPILLON were not
acceptable in the trade due to the defect which
caused the roller ball to burst out of the
fitment when pressure was applied.

(c)   the Mechanisms provided by PAPILLON were not
suitable  for PARFUMS' intended uses and purposes in
the ordinary course of its business due to the defect
which caused the roller ball to burst out of the
fitment when pressure was applied.

(d)   the Mechanisms provided by PAPILLON did not
conform to specifications due to the defect which
caused the roller ball to burst out of the fitment
when pressure  was applied.

13.  Pursuant  to  the  hold  harmless  provision  in  the
purchase orders, PAPILLON expressly and impliedly contracted to

15

indemnify PARFUMS against all claims, judgments, damages, incidental or consequential, loss or expense, including reasonable counsel fees damages resulting from its failure to satisfy its warranties.

**SIXTH COUNT** (CONTRIBUTION)

1-12. Plaintiff repeats and realleges paragraphs 1 through and including 11 of the First Count as if same were fully set forth at length herein.

13. The matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

14. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332.

15. The aforesaid defects existed at the time of manufacturing and sale of the Mechanisms to PARFUMS.

16. The Mechanisms as sold and distributed by PAPILLON were expected to and did reach the injured consumers without substantial change in condition.

17. PAPILLON breached its duty to safely sell and distribute the Mechanism giving rise to the condition whereby

the roller balls would come out of the fitments, and consumers were injured thereby.

18.  PARFUMS' product and general liability policies were cancelled effective July 1, 2002.

19.  As a result of such defective quality of the Mechanisms and PAPILLON'S breach of its contract, numerous claims have been filed and will be filed by consumers against PARFUMS for personal injuries resulting from said defects in the Mechanisms which have and will result in PARFUMS having to satisfy personal injury claims arising out of injuries caused by the defective Mechanisms.

20.  Beginning July 2, 2002 and continuing to the present, claims falling outside of PARFUMS' policy period have been and will continue to be self-insured by PARFUMS.

21.  PARFUMS has notified and tendered the defense of such claims to PAPILLON, but PAPILLON has refused to accept the tender and defense of said claims on behalf of PARFUMS.

22.  PARFUMS has discharged and will discharge, by payment of the common liability of PARFUMS and PAPILLON, for injuries

caused by PAPILLON's placement of the defective Mechanisms into the stream of commerce.

23.   PARFUMS paid more than its share of liability of each claim.

24.   Each settlement of the claims has been reasonable.

25.   PARFUMS is entitled to contribution from PAPILLON for the aforementioned losses.

**SEVENETH COUNT (CUTPA)**

1-14.   Plaintiff repeats and realleges paragraphs 1 through and including 14 of the Sixth Count as if same were fully set forth at length herein.

15.   PAPILLON failed to have any proper quality control measures in place in its manufacturing process of the Mechanisms or to oversee the actions of its molder in maintaining the mold and producing the Mechanisms.

16.   In or about late June/early July 2001, PAPILLON received complaints from another one of its customers, Kaufman Containers ("Kaufman"), indicating that the roller balls were coming out of the fitments.

17. As a result of the roller balls coming out of the fitments, Kaufman rejected thousands of Mechanisms.

18. After receiving notification in late June/early July 2001, PAPILLON worked with Kaufman Containers to solve the problems Kaufman's customer, Bonne Bell, was experiencing with the Mechanisms.

19. Despite possessing the knowledge of the widespread problems Kaufman and Bonne Bell experienced, PAPILLON kept this knowledge and the extent of the problem secret from PARFUMS.

20. On or about August 2, 2001, PARFUMS notified PAPILLON that the balls were coming out of the fitments and sought PAPILLON's assistance in correcting the problem.

21. Despite possessing the knowledge that PARFUMS was experiencing a similar problem as Kaufman and Bonne Bell, PAPILLON kept this knowledge and the extent of the problem secret from PARFUMS.

22. On or about August 2, 2001, PARFUMS sent PAPILLON samples of the containers it was using with the Mechanisms and the results of testing done by its filler which showed widely

inconsistent ball retention in the Mechanisms supplied by PAPILLON. PARFUMS requested PAPILLON's assistance in solving the ball retention problem.

23. Despite possessing the knowledge of PARFUMS' containers which PAPILLON alleges in defense of this action were not suitable for use with the Mechanisms, PAPILLON kept this knowledge secret from PARFUMS.

24. In late September 2001, after losing the Bonne Bell business, PAPILLON engaged the services of a consultant to examine its mold and molding process. He determined that the mold core pins which make the Mechanism were very inconsistent cavity to cavity and two cavities were below specification. Because of the inconsistencies in the cavities of the mold, PAPILLON could not produce consistent parts.

25. Despite possessing said knowledge about the defective mold, PAPILLON also kept this information secret from PARFUMS.

26. PAPILLON also discovered that there were problems with the molding process used by its molder, but also kept this information secret from PARFUMS.

27.   PAPILLON had a duty to disclose the information it had about the mold and the Mechanisms.

28.   PAPILLON's failure to disclose all information regarding its Mechanisms is immoral, unethical, oppressive, unscrupulous, and offends public policy.

29.   PAPILLON's failure to disclose said information resulted in substantial injuries being caused to consumers.

30.   PAPILLON's failure to disclose said information to PARFUMS was deceptive and unfair, and amounted to a deceptive trade practice.

31.   PARFUMS suffered ascertainable losses including, but not limited to, lost profits, cancellation of its product liability and general liability insurance by Travelers, increased insurance costs, excess manufacturing costs, payment of claims by consumers, other incidental and consequential damages, and attorneys' fees and costs.

32.   PARFUMS is entitled to damages pursuant to Conn. Gen. Stat. § 42-110a, et seq.

**WHEREFORE,** Plaintiff PARFUMS claims as to Counts One through Four:

1. Money damages;

2. Consequential and incidental damages pursuant to Conn. Gen. Stat. § 42a-2-715.

3. Costs of this action;

4. Reasonable attorney fees; and

5. Such other and further relief as this court may deem just and proper.

**WHEREFORE,** Plaintiff PARFUMS seeks as to Count Five:

1. A Declaration that Defendant has a duty under the contract to indemnify Plaintiff against any claims and liabilities arising out of Defendant's breach of its express warranties.

2. Costs of this proceeding;

3. Reasonable attorney fees; and

4. Such other and further relief as this court may deem just and proper.

**WHEREFORE,** Plaintiff PARFUMS seeks as to Count Six:

1.    Contribution for their claimed losses;

2.    Costs of this proceeding;

3.    Reasonable attorney fees; and

4.    Such other and further relief as this court may deem just and proper.

**WHEREFORE,** Plaintiff PARFUMS seeks as to Count Seven:

1.    Damages pursuant to Conn. Gen. Stat. § 42-110a, et seq.;

2.    Costs of this proceeding;

3.    Reasonable attorney fees;

4.    Punitive damages; and

5.    Such other and further relief as this court may deem just and proper.

THE PLAINTIFF

PARFUMS DE COEUR, LTD.

BY: _____
Richard E. Castiglioni(ct072820)
Jonathan M. Shapiro(ct24075)
DISERIO MARTIN O'CONNOR &
  CASTIGLIONI, LLP  #102036
One Atlantic Street
Stamford, CT 06901
(203)358-0800

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing has been mailed, postage prepaid, this 30th day of April, 2004, to the following counsel and parties of record:

Robert N. Chan
Robson Ferber Frost Chan & Essner, LLP
530 Fifth Avenue
New York, NY 10036
(212) 944-2000

Michael T. Ryan (CT05685)
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT 06905-3057
(203) 357-9200

Peter D. Clark, Esq. (CT06814)
Law Offices of Peter D. Clark
525 Bridgeport Avenue
Shelton, CT 06484
(203) 925-9688

_____
Jonathan M. Shapiro

H:\LIT\JMS\Parfum\21090.first amended complaint.doc

25