# EXHIBIT A

Westlaw.

1999 WL 301688                                                                        Page 1
1999 WL 301688 (D.Conn.)
(Cite as: 1999 WL 301688 (D.Conn.))

C
Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Sol YOUNG, Individually and in His Capacity as
Trustee of the Nicole S. Zell
Express Trust, Betty Young, Denise Teicher, David
H. Zell, Cheryl O. Gottfried,
and Barbara Paccetti, Plaintiffs,
v.
LIBERTY MUTUAL INSURANCE COMPANY
and NEWARK INSURANCE COMPANY,
Defendants.

No. 3:96-CV-1189 (EBB).

Feb. 16, 1999.

RULING ON OBJECTIONS TO MAGISTRATE
JUDGE'S DISCOVERY ORDER

BURNS, Senior J.

*1 Plaintiffs Sol Young, individually and in his capacity as Trustee of the Nicole S. Zell Express Trust, Betty Young, Denise Teicher, David H. Zell, Cheryl O. Gottfried, and Barbara Paccetti ("plaintiffs") brought this action seeking indemnification and other remedies from defendant Liberty Mutual Insurance Company under several standard form Comprehensive General Liability insurance policies ("CGL policies"). Both the plaintiffs and Liberty Mutual have filed objections to a Ruling on Plaintiffs' Motion to Compel issued by Magistrate Judge Joan Glazer Margolis on October 27, 1998. For the following reasons, the Court denies plaintiffs' objections [Doc. No. 79] and the defendant's objections [Doc. No. 80], and affirms the Magistrate's ruling in its entirety.

BACKGROUND

This action arose out of two suits brought by the United States Department of Environmental Protection ("EPA") and EDO Corporation ("EDO") against the plaintiffs to recover costs associated with the environmental contamination of the Kellogg-Deering Well Field Superfund Site ("Kellogg-Deering") in Norwalk, Connecticut. Plaintiffs had demanded that Liberty Mutual defend and indemnify them against these suits pursuant to several CGL policies that Liberty Mutual had issued to them. In response to this demand, Liberty Mutual undertook the defense, under a reservation of rights, and conducted a three-year investigation. Following the investigation, the defendant concluded that the CGL policies did not cover plaintiffs' claims, denied coverage, and discontinued the defense. Plaintiffs eventually settled the environmental claims asserted against it by EPA and EDO, thus incurring proportionate financial responsibility for the clean-up of Kellogg-Deering.

Plaintiffs brought this suit in 1996, alleging that Liberty Mutual: (1) breached its contractual duty to defend the plaintiffs against the Kellogg-Deering claims; (2) breached its contractual duty to indemnify the plaintiffs for those claims; (3) violated the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes §§ 38a-815 and 38a-816; (4) violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a *et seq.;* and (5) breached its duty of good faith and fair dealing. (Pls.' Am. Compl. at 18-24.) As relief, plaintiffs sought a declaratory judgment, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and costs and attorney's fees. (*Id.* at 24.) The case was transferred to this Court in July 1998. That same month the Court denied both plaintiffs' motion for partial summary judgment and Liberty Mutual's cross-motion for summary judgment, without prejudice to renew them at a later date.

The Court then referred plaintiffs' motion to compel Liberty Mutual to produce thirty-six document requests and to answer thirteen interrogatories to Magistrate Judge Margolis on July 28, 1998. (Doc. Nos.73-74.) The Magistrate

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1999 WL 301688 Page 2
1999 WL 301688 (D.Conn.)
(Cite as: 1999 WL 301688 (D.Conn.))

issued a Ruling on Plaintiffs' Motion to Compel ("Ruling") on October 27, 1998. (Doc. No. 78). In the Ruling, the Magistrate grouped the documents and materials sought into five categories and addressed each *in seriatim:* (1) documents, premium calculations, and policies for the plaintiff policyholders; (2) drafting history and interpretive information related to policy language; (3) environmental claims of nonparty policyholders; (4) Liberty Mutual's communications with its reinsurers and auditors, regarding reinsurance and reserve information; and (5) advertising and promotional materials. The Magistrate ordered the defendant to produce the first category, the fourth category, and the fifth category of documents and materials as described above in their entirety. With regard to the second category involving drafting history and interpretive information, the Magistrate permitted discovery of such materials, but limited production from the date the first policy was issued to the time the last policy was renewed. As to the third category of environmental claims by nonpolicyholders, the Magistrate allowed discovery limited to the ten earliest and ten most recent claims files since 1967.

*2 The parties filed their objections within ten days of the ruling pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(a). Plaintiffs specifically object to: (1) the time period applicable to drafting history documents, claims manuals, and guidelines ordered to be produced; and (2) the time period applicable to "first ten/last ten" production of other policyholder claims files pertaining to environmental actions. (Pls.' Objection at 1-2.) On the other hand, while the defendant does not oppose production of the information in the first category, it objects to the rest of the Ruling "because it orders the production of extrinsic evidence, which is in conflict with Connecticut law as articulated in *Heyman Assocs. No. 1 v. Insurance Co. of State of Pa.,* 653 A.2d 122 (Conn.1995)." (Def.'s Objection at 2.)

## STANDARD OF REVIEW

District courts may refer nondispositive, pretrial matters to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) [FN] for a final decision. A magistrate's pretrial order on a nondispositive matter, such as a discovery motion, must be reviewed by district courts under a clearly erroneous or contrary to law standard. *See* 28 U.S.C. § 636(b)(1)(A) (1998); Fed.R.Civ.P. 72(a); *Thomas F. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.1990); *Unauthorized Practice of Law Comm. v. Gordon,* 979 F.2d 11, 13 (1st Cir.1992). A decision is clearly erroneous when, based on the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made. *See In re Savitt/Adler Litig.,* No. 95 Civ. 1842 (RSP/DH), 1997 WL 369387, at *4 (N.D.N.Y.1997). A magistrate's order resolving a discovery dispute is afforded substantial deference and may be overruled only if abused. *See Nova Biomedical Corp. v. i-Stat Corp.,* 182 F.R.D. 419, 422 (S.D.N.Y.1998); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 125 F.R.D. 51, 53 (S.D.N.Y.1989). Thus, a litigant seeking to overturn a magistrate's discovery order bears a heavy burden. *See Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.,* 753 F.Supp. 1078, 1099 (E.D.N.Y.1990); *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.,* 95 F.R.D. 398, 399 (S.D.N.Y.1982).

> FN1. 28 U.S.C. § 636(b)(1)(A) states in relevant part:
> [A] judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

## DISCUSSION

*I. Scope and Limits of Discovery*

Federal Rule of Civil Procedure 26(b)(1) authorizes discovery of relevant, nonprivileged matter that is reasonably calculated to lead to the discovery of admissible evidence. The rule provides

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1999 WL 301688  
1999 WL 301688 (D.Conn.)  
(Cite as: 1999 WL 301688 (D.Conn.))

Page 3

in relevant part:
> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

*3 Fed.R.Civ.P. 26(b)(1). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevancy should be broadly construed at the discovery stage of litigation. *See Smith v. MCI Tele. Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991). It must be stressed that information inadmissible at trial is still discoverable if it is reasonably calculated to lead to the discovery of admissible evidence.

While the Federal Rules mandate a liberal standard, they also afford courts the means to limit discovery. Rule 26(b)(2) provides in relevant part:
> The frequency or extent of use of the discovery methods otherwise permitted under these rules, and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Under the third exception in Rule 26(b)(2), courts must engage in a balancing test to determine whether the burden or expense of proposed discovery outweighs its likely benefit to the party seeking it.

II. *Insurance Contracts*

A. Construction

Under Connecticut law, "construction of an insurance contract presents a question of law for the court." *Aetna Life & Cas. Co. v. Bulaong*, 588 A.2d 138, 142 (Conn.1991); *Hammer v. Lumberman's Mut. Cas. Co.*, 573 A.2d 699, 703 (Conn.1990). The terms of an insurance policy must be construed according to the general rules of contract construction. *See Schultz v. Hartford Fire Ins. Co.*, 569 A.2d 1131, 1134 (Conn.1990); *A.M. Larson Co. v. Lawlor Ins. Agency, Inc.*, 220 A.2d 32, 34 (Conn.1966); *St. Paul Fire and Marine Ins. Co. v. Shernow*, 577 A.2d 1093, 1095 (Conn.App.Ct.1990). The determinative question concerns the intent of the parties, "that is, what coverage the [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy." *Marcolini v. Allstate Ins. Co.*, 278 A.2d 796, 798 (Conn.1971). The parties' intent must be evaluated by examining the language of the policy. *See Aetna Life*, 588 A.2d at 142; *Hammer*, 573 A.2d at 703-04. In this regard, every provision of an insurance contract should be given effect and no word or clause should be eliminated as meaningless, if any reasonable meaning consistent with other parts of the policy can be given to it. *See Hammer*, 573 A.2d at 709; *Schultz*, 569 A.2d at 1136.

*4 Where the terms of an insurance policy are clear and unambiguous, the contract language must be accorded its natural and ordinary meaning as written. *See Heyman Assocs. No. 1 v. Insurance Co. of State of Pa.*, 653 A.2d 122, 130 (Conn.1995); *EDO Corp. v. Newark Ins. Co.*, 878 F.Supp. 366, 371 (D.Conn.1995); *Town of Plainville v. Travelers Indem. Co.*, 425 A.2d 131, 136 (Conn.1979). The Court cannot torture or ignore words to import ambiguity where the ordinary meaning leaves no room for it, *see EDO Corp.*, 878 F.Supp. at 371; *Hammer*, 573 A.2d at 704, and words do not become ambiguous simply because lawyers and laymen contend for different meanings. *See Aetna Life*, 588 A.2d at 143; *Marcolini*, 278 A.2d at 799. On the other hand, when the terms of an insurance

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1999 WL 301688
1999 WL 301688 (D.Conn.)
(Cite as: 1999 WL 301688 (D.Conn.))

Page 4

contract are susceptible of two equally responsive interpretations, courts must adopt that interpretation favoring the policyholder which sustains the claim and covers the loss. *See, e.g., O'Brien v. United States Fidelity and Guar. Co.,* 669 A.2d 1221, 1224-26 (Conn.1996); *Ceci v. National Indem. Co.,* 622 A.2d 545, 548 (Conn.1993); *Beach v. Middlesex Mut. Assurance Co.,* 532 A.2d 1297, 1299 (Conn.1987); *Griswold v. Union Labor Life Ins. Co.,* 442 A.2d 920, 923 (Conn.1982). Insurers must carry a heavy burden when seeking to avoid the duty to defend against a lawsuit. *See State of N.Y. v. Blank,* 27 F.3d 783, 789 (2d Cir.1994); *Seaboard Sur. Co. v. Gillette Co.,* 476 N.E.2d 272, 275 (N.Y.1984).

B. Parol Evidence Rule

The parol evidence rule is not a rule of evidence, but a substantive rule of contract law. *See TIE Communications, Inc. v. Kopp,* 589 A.2d 329, 332 (Conn.1991); *Security Equities v. Giamba,* 553 A.2d 1135, 1138 (Conn.1989); *Damora v. Christ-Janer,* 441 A.2d 61, 64 (Conn.1981); Restatement (Second) of Contracts § 213, comment (a) (1981). The rule forbids the use of extrinsic evidence outside of the four corners of the contract, such as prior communications or written agreements, to vary or contradict the written terms of an integrated, unambiguous contract. *See, e.g., Heyman,* 653 A.2d at 135; *TIE Communications,* 589 A.2d at 332; *EDO Corp.,* 878 F.Supp. at 374; *Champion Int'l,* 129 F.R.D. at 66; *American Home Prods. Corp. v. Liberty Mut. Ins. Co.,* 748 F.2d 760, 765 (2d Cir.1984). Therefore, the parol evidence rule is triggered when: (1) the written contract at issue constitutes the entire agreement between the parties; and (2) the evidence sought to be introduced has the effect of varying or contradicting terms whose meaning is unambiguous. However, the rule remains subject to several exceptions.

Courts may utilize extrinsic evidence in deciding whether the parties intended the written contract to embody their entire agreement. *See Damora,* 441 A.2d at 64-65 (reasoning that the determination of whether a written contract constitutes an integrated agreement depends on the parties' intentions). If the evidence leads to the conclusion that the parties intended the writing to contain their whole agreement, parol evidence may not be considered to vary or alter any unambiguous terms, even though it was admitted to evaluate whether the writing was an integrated agreement. *See id.; Panaroni v. Johnson,* 256 A.2d 246, 255 (Conn.1969); *Shelton Yacht & Cabana Club, Inc. v. Suto,* 188 A.2d 493, 496 (Conn.1963); *Cohn v. Dunn,* 149 A. 851, 853 (Conn.1930). Another exception to the parol evidence rule provides that extrinsic evidence may be admitted when analyzing whether the parties actually formed a contract. *See Damora,* 441 A.2d at 65 (concluding that extrinsic evidence may be used to show that the parties did not intend for the writing to be operative); *Arnold Palmer Golf Co. v. Fuqua Indus., Inc.,* 541 F.2d 584, 588 (6th Cir.1976).

*5 In addition, courts may admit extrinsic evidence when relevant: (1) to explain an ambiguity in the written instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. *See Jay Realty, Inc. v. Ahearn Dev. Corp.,* 453 A.2d 771, 773 (Conn.1983); *Heyman,* 653 A.2d at 135; *TIE Communications,* 589 A.2d at 333. Of course, these recognized exceptions are only examples of situations where the evidence (1) does not vary or contradict the contract's terms, (2) may be considered because the contract has been shown not to be integrated, or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud. *See TIE Communications,* 589 A.2d at 333.

III. *Application of Standards*

This case now rests at the discovery phase, where documents and materials may be discovered if they are nonprivileged, relevant, and reasonably calculated to lead to admissible evidence. *See* Fed.R.Civ.P. 26(b)(1). At this stage, the Court does not evaluate whether information ultimately will be admissible, it merely decides whether information is discoverable. To facilitate a full understanding of the meaning of an insurance policy's terms, many courts have allowed discovery of the drafting history and interpretations of standard form CGL policy language, *see Montrose Chem. Corp. of Cal. v. Admiral Ins. Co.,* 913 P.2d 878, 891 (Cal.1995);

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1999 WL 301688                     Page 5
1999 WL 301688 (D.Conn.)
(Cite as: 1999 WL 301688 (D.Conn.))

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 558 A.2d 1091, 1095 (Del.Super.Ct.1989), reinsurance information, *see Hoechst Celanese Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1099, 1108 (Del.Super.Ct.1991); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Ill. Corp.*, 116 F.R.D. 78, 83-84 (N.D.Ill.1987), and other insureds' claims. *See Eli Lilly and Co. v. Home Ins. Co.*, No. 82-0669 (D.D.C. July 8, 1983); *Commercial Union Ins. Co. v. Pittsburgh Corning Corp.*, No. 81-2129 (E.D. Pa. June 1, 1982).

Summary judgment on an ambiguous insurance policy should not be granted while discovery is still incomplete. *See Uniroyal, Inc. v. Home Ins. Co.*, 707 F.Supp. 1368, 1374 (E.D.N.Y.1988); *Aetna Cas. & Sur. Co. v. Abbott Labs., Inc.*, 636 F.Supp. 546, 550 n. 7 (D.Conn.1986). Although the Court previously denied the parties' cross-motions for summary judgment, it did so without prejudice. Accordingly, nothing prevents the defendant from moving for summary judgment again at a later date after the parties have completed discovery, where it may renew its argument that the Court should not admit parol evidence to aid in interpreting the CGL policies. However, even if the Court were to ultimately conclude that the CGL policies at issue are unambiguous, this should not prevent the plaintiffs from discovering evidence which may present an ambiguity in the CGL policies at issue. *See Stonewall Ins. Co. v. National Gypsum Co.*, No. 86 Civ. 9671(SWK), 1988 WL 96159, at *3 (S.D.N.Y. Sept. 6, 1988); *Security Equities*, 553 A.2d at 1138; *National Union Fire Ins.*, 558 A.2d at 1094.

*6 The defendant invokes *Heyman Assocs. No. 1 v. Insurance Co. of State of Pa.* to support its contention that Magistrate Judge Margolis wrongfully allowed discovery of extrinsic evidence, but that case is inapposite to ours. In *Heyman*, both parties had moved for summary judgment, arguing that the terms of the contract were unambiguous. The Supreme Court of Connecticut accordingly found that "the absolute pollution exclusions [of the insurance policy] are *unambiguous* as applied to the facts of this case," and therefore barred the discovery of extrinsic evidence to vary or contradict the plain meaning of the exclusions. 653 A.2d at 135-36 (emphasis added). *Heyman* stands in direct contrast to this case, where the Magistrate determined that discovery could aid in interpreting the meaning of the terms in the CGL policies—such as "damages," "occurrence," "suit," "sudden and accidental," and "neither expected nor intended from the standpoint of the insured"—that plaintiffs' claims depend on. (Ruling at 6-7.)

Where an insurance policy is susceptible of more than one reasonable interpretation, the Court may look to extrinsic evidence of the parties' intent and their communications, as well as rules of construction, to discern the contract's meaning. *See, e.g., Heyman*, 653 A.2d at 135; *TIE Communications*, 589 A.2d at 333; *Jay Realty*, 453 A.2d at 773. Courts from other jurisdictions have held the same. *See Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983) (precluding summary judgment where the defendant submitted affidavits of the drafters of the industry-wide standardized CGL clause asserting an explication completely at variance from plaintiff's construction of the contract); *Champion Int'l*, 129 F.R.D. at 67; *United States Fidelity and Guar. Co. v. Colorado Nat'l Bank*, No. 86-Z-1033 (D. Col. Aug 15, 1989). As a result, the Court denies Liberty Mutual's objections to the Magistrate's Ruling. The defendant must produce the requested documents and information as described in the discovery order.

The Court also denies plaintiffs' objections to the Magistrate's limiting orders regarding: (1) the time period applicable to drafting history documents, claims manuals, and guidelines ordered to be produced; and (2) the time period applicable to "first ten/last ten" production of other policyholder claims files pertaining to environmental actions. Rule 26(b)(2) requires courts to balance the burden and expense of proposed discovery against its likely benefit, and to issue any appropriate limiting orders. *See Continental Ins. Co. v. Ventresca*, No. Civ. A. 90C-JL-219, 1992 WL 207248, at *3 (Del.Super.Ct. Aug. 5, 1992). The Magistrate determined that the preceding limiting orders were necessary in light of the burden and expense plaintiffs' proposed discovery would impose on Liberty Mutual taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Because the Court

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1999 WL 301688
1999 WL 301688 (D.Conn.)
(Cite as: 1999 WL 301688 (D.Conn.))

Page 6

finds that the Magistrate's limiting orders were neither clearly erroneous nor contrary to law under Rule 26, see *Stonewall Ins.*, 1988 WL 96159, at *3, plaintiffs' objections are denied.

## CONCLUSION

*7 For the preceding reasons, the Court affirms Magistrate Judge Margolis' Ruling on Plaintiffs' Motion to Compel in its entirety, and thus denies both the plaintiffs' objections [Doc. No. 79] and the defendant's objections [Doc. No. 80].

SO ORDERED.

1999 WL 301688 (D.Conn.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.