# EXHIBIT B



Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 1

C
Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

BOVIS LEND LEASE, LMB, INC., f/k/a Lehrer
McGovern Bovis Inc., a//k/a Lehrer
McGovern Bovis Construction, Inc., a/k/a the
Lehrer McGovern Bovis Group, Inc.,
Daewoo America Development (New York)
Corporation and Illinois National
Insurance Company, Plaintiffs,
v.
SEASONS CONTRACTING CORP. and Tudor
Insurance Company, Defendants.

No. 00 Civ. 9212(DF).

Dec. 5, 2002.

Site project manager, sub-manager, and insurer of owner of construction site brought declaratory action in diversity against demolition contractor and its insurer seeking contribution for defense and settlement of underlying personal injury action. On motion to compel discovery, the District Court, Freeman, J., sitting by consent of the parties, held that: (1) work product privilege applied to case analysis prepared by insurer's claims handler; (2) work product privilege applied to e-mail note "to file" that was prepared by insurer's claims handler; (3) e-mail from insurer's claims handler to insured's representative was not subject to attorney-client or work product privilege; (4) letter from insurer to insured's insurance broker was not subject to attorney-client or work product privilege; (5) investigative report of underlying claim was not entitled to attorney-client or work product privilege; and (6) letter from representative of insured to insurer's claims handler was not entitled to attorney-client or work product privilege.

Motion granted in part and denied in part.

West Headnotes
[1] Federal Civil Procedure ⇌1600(3)
170Ak1600(3) Most Cited Cases
Work product privilege applied under New York law to case analysis prepared by insurer's claims handler, relating to underlying action that had already been settled when document had been prepared, in declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement, even though there was no indication that document contained or memorialized any "communications" between persons; document was prepared by employee of party to existing litigation, and it contained evaluation of allegations made and issues to be resolved in that litigation, as well as specific plan as to litigation strategy going forward. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[2] Federal Civil Procedure ⇌1600(3)
170Ak1600(3) Most Cited Cases
In declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, work product privilege applied under New York law to e-mail note "to file" that was prepared by insurer's claims handler to memorialize internal discussions among insurer's claims handlers in regards to underlying action; even though document referred to possible business decisions by insurer, document as whole would not have been created but for litigation, it related to potential strategy by insurer for settling underlying litigation, and it anticipated litigation strategy going forward in event underlying case could not be satisfactorily resolved. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[3] Federal Civil Procedure ⇌1600(3)
170Ak1600(3) Most Cited Cases
In declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, work product privilege applied under New York law to e-mail note written by insurer's claims handler to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 2

supervisor, other persons within insurer, and inside counsel, that analyzed what occurred at court ordered mediation of underlying case, and, in aftermath of mediation, discussed potential strategies for settlement or pursuit of that litigation, even though it did not seek or contain legal advice, since it was apparently prepared because of pending litigation. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[4] Witnesses ⇌204(2)
410k204(2) Most Cited Cases
E-mail message from attorney, retained by insurer to defend insureds in underlying personal injury case, to insurer's claims handler, with copies to other attorneys at attorney's firm, that conveyed counsel's request for assistance with pending litigation and also contained assessment of insured's potential exposure in litigation, was protected by attorney-client privilege under New York law, in declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement, and document constituted work product since it was prepared because of existing litigation. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[5] Federal Civil Procedure ⇌1600(3)
170Ak1600(3) Most Cited Cases
[5] Witnesses ⇌204(2)
410k204(2) Most Cited Cases
E-mail message from attorney, retained by insurer to defend insureds in underlying personal injury case, to insurer's claims handler, that reported on underlying litigation and its likely outcome, clearly anticipated declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, and was protected by attorney-client privilege and work product privilege under New York law. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[6] Federal Civil Procedure ⇌1600(3)
170Ak1600(3) Most Cited Cases
[6] Witnesses ⇌204(2)
410k204(2) Most Cited Cases
E-mail message from insurer's claims handler, that sought legal advice with respect to pending and anticipated litigation and suggested arguments that might be raised in litigation, that was sent in response to attorney's e-mail message reporting on underlying litigation and its likely outcome, clearly anticipated declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, and was protected by attorney-client privilege and work product privilege under New York law. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[7] Federal Civil Procedure ⇌1600(3)
170Ak1600(3) Most Cited Cases
[7] Witnesses ⇌206
410k206 Most Cited Cases
In declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, e-mail from insurer's claims handler to insured's representative, with copies sent to insured's insurance broker and to attorney retained by insurer to represent insurer's other insureds, was not subject to attorney-client or work product privilege under New York law; at time letter was written, insurer was not assisting insured in mounting defense, having disclaimed coverage and refused to provide insured with defense in underlying suit, and insurer was not assisting insured to assert any third party claims. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[8] Federal Civil Procedure ⇌1600(3)
170Ak1600(3) Most Cited Cases
[8] Witnesses ⇌204(2)
410k204(2) Most Cited Cases
In declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, letter from insurer to insured's insurance broker summarizing amount of indemnity reserves, with assessments as to whether such reserves were adequate for claims against insured arising out of construction project, was not subject to attorney-client or work product privilege under New York law; document was created because broker, as matter of routine, asked for status report on all claims, and that document would have been prepared regardless of whether any claims were anticipated to be in litigation. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[9] Federal Civil Procedure ⇌1600(3)
170Ak1600(3) Most Cited Cases
[9] Witnesses ⇌204(2)

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 3

410k204(2) Most Cited Cases
In declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, investigative report of underlying claim, authored by insurer's claims investigator, and addressed to insurer's claims handler, was not entitled to attorney-client or work product privilege under New York law; even though "request for investigation" was received by investigator before insurer's disclaimer and before insurer agreed to defend other insureds in underlying case; document reflected type of claim investigation that insurer would have normally carried out in ordinary course of its business. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[10] Federal Civil Procedure ⚷1600(3)
170Ak1600(3) Most Cited Cases
[10] Witnesses ⚷204(2)
410k204(2) Most Cited Cases
In declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, letter from representative of insured to insurer's claims handler was not entitled to attorney-client or work product privilege under New York law, even though letter noted possibility of litigation and even though underlying lawsuit naming insured as defendant had already been filed; author of letter was not aware that insured had been named as defendant, letter itself did not contain any privileged communications, and did not, "in pursuit of legal representation," contain disclosures regarding insured's potential liability. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[11] Federal Civil Procedure ⚷1600(3)
170Ak1600(3) Most Cited Cases
In declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, contractor failed to show that it had inability to obtain desired information through other means, in order to obtain insurer's work product under New York law, since contractor had access to insurer's witnesses for deposition and they were able to inquire about basis for both insurer's initial disclaimer and insurer's subsequent change of position. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[12] Federal Civil Procedure ⚷1600(5)
170Ak1600(5) Most Cited Cases
In declaratory action brought by insurer against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, insurer was required to set out, in affidavit form, all facts relevant to question of whether it took reasonable precautions to protect confidentiality of its work product, if insurer wished to continue to assert work product protection under New York law for document that insurer inadvertently turned over to defendant, and those related to it that were not turned over. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[13] Federal Civil Procedure ⚷1600(5)
170Ak1600(5) Most Cited Cases
In declaratory action brought against demolition contractor by insurer seeking contribution for defense and settlement of underlying action, insurer waived work product protection under New York law to document that it voluntarily produced to defendant in discovery. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[14] Federal Civil Procedure ⚷1600(5)
170Ak1600(5) Most Cited Cases
Work product waiver resulting from insurer's voluntary disclosure of e-mail, that merely indicated that meeting would take place and that asked for participation by other persons, was appropriately limited to document itself under New York law; even though document was prepared because of litigation, document did not contain any substantive content, other than scheduling of meeting, and, consequently, it could not be relied upon by insurer to support its position in litigation. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[15] Federal Civil Procedure ⚷1600(5)
170Ak1600(5) Most Cited Cases
Work product waiver resulting from insurer's voluntary disclosure of partially redacted document, that related to its initial decision to disclaim coverage and its subsequent decision to withdraw its disclaimer, was appropriately limited to document itself under New York law, since parties did not dispute that insurer owed defense and indemnification to insured, insurer had not affirmatively relied on any work product material relating to its initial decision to disclaim coverage, or to its subsequent decision to withdraw its

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 4

disclaimer, and insurer had not given any indication that it intended to rely on such material at trial. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[16] Federal Civil Procedure ⚖1600(3)
170Ak1600(3) Most Cited Cases
[16] Witnesses ⚖199(2)
410k199(2) Most Cited Cases
Insurer, who initially disclaimed coverage and initially did not provide defense for its insured, was not entitled under New York law, under common interest rule, to gain access to insured's communications with counsel who provided insured's defense, even though insurer subsequently accepted that it did owe indemnification and defense to insured; documents once entitled to protection from disclosure as either privileged or work product maintained that protection, unless privilege was waived. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[17] Witnesses ⚖199(2)
410k199(2) Most Cited Cases
Insurer was entitled under New York law, under common interest rule, to gain access to insured's communications with counsel who provided insured's defense, up to point in time that insurer disclaimed coverage and decided not to provide defense for its insured, since, prior to insurer's disclaimer, insurer's interest was not even potentially adverse to its insured. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[18] Witnesses ⚖219(3)
410k219(3) Most Cited Cases
Under New York law, the mere assertion of a claim against a co-insurer for indemnification for the defense costs of an insured does not vitiate the attorney-client privilege with respect to all aspects of a client's defense. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[19] Insurance ⚖3417
217k3417 Most Cited Cases
Under New York law, an insurance carrier does not owe a fiduciary duty to a co-insurer.

[20] Witnesses ⚖219(1)
410k219(1) Most Cited Cases
Generally, where a party does not itself place in issue the matter as to which the privileged communications are relevant, the privilege is not waived under New York law. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

[21] Witnesses ⚖219(3)
410k219(3) Most Cited Cases
Where the attorney-client privilege is concerned, the concept of "prejudice" is irrelevant under New York law, unless there is an independent basis for a privilege waiver; once a waiver is found, then issues of fairness become relevant to determining the scope of the appropriate waiver. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; McKinney's C.P.L.R. § 4503(a).

MEMORANDUM AND ORDER

FREEMAN, Magistrate J.

*1 Discovery is nearly complete in this action. What remains are disputes regarding the discoverability of certain documents withheld by each side as subject to the attorney-client privilege and/or the work product doctrine. As set out below, the Court finds that, whereas particular documents should be disclosed, either because they are not fairly characterized as privileged or work product, or because privilege or work product immunity has been waived, most of the documents at issue have been appropriately withheld from production. The Court, however, will accept further submissions from the parties on narrow points identified herein, specifically relating to issues of potential waiver, and will consider modifying aspects of this Order if those submissions demonstrate a basis for a broader waiver.

*BACKGROUND*

This action, which is before me on consent of the parties, involves a dispute as to which party or insurer is responsible for payment of a settlement to Jan Trochimko ("Trochimko"), who was injured on a building construction site while in the employ of a demolition contractor, Seasons Contracting Corp. ("Seasons").

In an underlying personal injury suit in this Court, filed on May 12, 1999, [FN1] Trochimko sought to recover damages from the owner of the site ("845 UN Plaza"); [FN2] the site project manager, Daewoo America Development (New York) Corporation ("Daewoo"); and the sub-manager,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2002 WL 31729693 (S.D.N.Y.)  
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 5

Bovis Lend Lease, LMB, Inc. ("Bovis"). (Am.Compl.¶ 18.) All of those defendants requested that 845 UN Plaza's insurer, Illinois National Insurance Company (a member of the AIG insurance group, and, for simplicity, referred to herein as "AIG") [FN3] provide them with a defense in the Trochimko suit, and indemnification, should they be found liable. (*Id.* ¶ 19.)

> FN1. No. 99 Civ. 3480 (Kram, J).
>
> FN2. The parties herein generally refer to the site owner as "845 UN Plaza," and the Court will therefore do the same. In his personal injury suit, Trochimko named as defendants 845 UN Limited Partnership; Trump 845 UN GP LLC, as general partner; and Trump 845 UN GP LLC, individually.
>
> FN3. Illinois National Insurance Company acted through AIG Claims Service Inc. (the claims division of the AIG insurance group) in connection with matters relevant to this action. For the most part, the parties refer to "Illinois National" and "AIG" interchangeably on the pending motions.

On July 8, 1999, AIG, in turn, requested that Tudor Insurance Company ("Tudor"), which was Season's insurer, provide a defense to 845 UN Plaza, Daewoo and Bovis, in the Trochimko litigation. (*See* letter to the Court from Kenneth R. Maguire, Esq., dated July 31, 2002 ("7/31/02 Maguire Ltr."), at 4.) Tudor accepted defense and indemnity obligations for 845 UN Plaza, as an additional insured under the Tudor/Seasons policy, and retained the firm of Thurm & Heller to defend 845 UN Plaza against the Trochimko claim. Tudor, however, rejected the defense of Daewoo and Bovis. (*See id.*)

On August 20, 1999, AIG disclaimed coverage under its policy. Nonetheless, upon learning that Tudor was refusing to defend Daewoo and Bovis, AIG stepped in to provide a defense for those two defendants, retaining outside counsel-- the firm of Jacobowitz, Garfinkel & Lesman--to defend them against the Trochimko claim. (*See* letter to the Court from Kenneth R. Maguire, Esq., dated May 22, 2002, at 2.) Then, in June 2000, Daewoo and Bovis, through counsel, commenced a third-party action against Seasons, claiming that Seasons had a contractual duty to indemnify them for any damages paid to a Seasons employee injured on the job. (*Id.*) Although it arguably had a basis for asserting the same type of third-party indemnification claim against Seasons, 845 UN Plaza did not do so.

*2 The Trochimko case was eventually settled in April 2001, when Tudor, together with its excess carrier, made a payment to Trochimko on behalf of 845 UN Plaza. Daewoo, Bovis, and AIG did not contribute to that settlement. (Am.Compl.¶ 23.)

The instant case was commenced on December 5, 2000, prior to the conclusion of the Trochimko case. (Dkt. No. 1.) Daewoo, Bovis and AIG brought this action to obtain a declaration that, to the extent Daewoo or Bovis were found liable to Trochimko, any such liability should be passed on to Seasons. (Am.Compl.¶¶ 30-31.) Once the Trochimko case was settled, Daewoo, Bovis and AIG amended their complaint in this action to seek a declaration that they were not obligated to pay any part of that settlement. (Am.Compl.¶ 48.) Rather, Plaintiffs assert, the settlement should have been paid entirely by Seasons (or by Tudor, in its capacity as Seasons' insurer). *Id.* In addition, Plaintiffs seek to recover their costs of defending the Trochimko action, claiming that Seasons/Tudor were required to provide that defense. *Id.*

Complicating matters is the fact that, by letter dated January 23, 2001 (*i.e.,* shortly after commencing the instant action), AIG changed its position as to whether its policy afforded coverage to 845 UN Plaza for the Trochimko claim. (*See* letter to the Court from Frederick M. Molod, Esq., dated August 29, 2002 ("8/29/02 Molod Ltr."), Ex. 1.) AIG informed 845 UN Plaza and Tudor that its August 1999 disclaimer was in error, and that AIG should, in fact, have accepted coverage (both defense and indemnification) of 845 UN Plaza from the start. ( *See id.,* Exs. 1, 2.) AIG informed Tudor that it would therefore share, on a 50 percent basis, the cost of Tudor's defense and indemnification of 845 UN Plaza on the Trochimko claim. (*See id.,* Ex. 2.)

Based on AIG's acceptance of its coverage obligations for 845 UN Plaza, Tudor has now counterclaimed against AIG for a one-half

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 6

contribution to the settlement amount it has already paid on behalf of 845 UN Plaza, on the ground that AIG was a co-insurer of 845 UN Plaza, and that any settlement paid on behalf of that entity should therefore have been shared by the two insurers. (Tudor's Answer [and Counterclaims] ("Tudor Answer") ¶ 42.) For the same reason, Tudor also seeks a contribution from AIG of 50 percent of the attorneys' fees Tudor incurred in providing for 845 UN Plaza's defense. (Id. ¶ 45.)

AIG, however, contends that, despite its acceptance of its coverage obligations, it should have no actual obligation to make any payment to Tudor, because Tudor should never have settled with Trochimko on behalf of 845 UN Plaza, and acted in bad faith toward that insured. (See letter to the Court from Kenneth R. Maguire, Esq., dated June 17, 2002 ("6/17/02 Maguire Ltr."), at 2.) Specifically, AIG contends that, in the Trochimko suit, Tudor should have demanded that counsel for 845 UN Plaza commence a third-party claim against Seasons for indemnification, and that Tudor wrongfully failed to make such a demand because it had a conflict of interest as an insurer for both 845 UN Plaza and Seasons. Id. More precisely, AIG argues that, because 845 UN Plaza appeared to be co-insured by both Tudor and AIG, whereas Seasons was insured only by Tudor, Tudor had an incentive to try to steer any liability on the Trochimko claim to 845 UN Plaza (where the cost of any damages award or settlement might be shared with AIG), and away from Seasons (where Tudor would have to shoulder the cost alone). (See letter to the Court from Kenneth R. Maguire, Esq., dated June 3, 2002 ("6/3/02 Maguire Ltr."), at 2.) As noted above, AIG contends that Seasons, alone, was the party properly liable for Trochimko's injuries.

*3 The present dispute relates to two sets of documents claimed to be privileged and/or work product. The first set includes documents from AIG's "claim file" relating to the Trochimko claim. These documents were, for the most part, prepared in the course of the defense of Daewoo and Bovis in the Trochimko litigation, and, among other things, they anticipate the third-party claim against Seasons and the declaratory judgment suit now before the Court. The second set of documents constitute, for the most part, communications between Tudor and the attorneys it retained to defend 845 UN Plaza in the Trochimko action. Those communications generally took place during the period after AIG had disclaimed coverage of 845 UN Plaza, and before AIG changed its position and accepted that coverage obligation. The two discovery disputes will be addressed in turn, below.

I. *DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS CONTAINED IN AIG'S CLAIM FILES*

The first dispute before the Court involves documents principally authored by various claims handlers employed by AIG. In withholding these documents from production, AIG asserts, first, that its claims handlers' communications with litigation counsel (retained by AIG to defend Bovis and Daewoo in the Trochimko suit) are covered by attorney-client privilege. Second, AIG asserts that the documents at issue are protected as work product, in that they were all prepared either in connection with the defense of AIG's insureds in the Trochimko action, or in anticipation of the third-party action against Seasons.

A. *Attorney-Client Privilege and the Work Product Doctrine*

As jurisdiction in this case is based on diversity, [FN4] the New York law of privilege applies. *See Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.*, No. 96 Civ. 5590(MJL)(HBP), 1998 WL 729735, at *3 (S.D.N.Y. Oct. 14, 1998). "In New York, the attorney-client privilege protects confidential communications between attorney and client relating to legal advice." *Id.* (citing N.Y. C.P.L.R. § 4503(a)); *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 593, 542 N.Y.S.2d 508, 510, 540 N.E.2d 703 (1989).

> FN4. The complaint in this action alleges that this Court has jurisdiction over this matter based on the parties' diversity of citizenship (Am.Compl.¶ 11), and also pursuant to 28 U.S.C. § 1367, because the action is related to the Trochimko case, which was pending at the time the complaint in this case was filed (*see id.* ¶ 12). As noted herein, the Trochimko action was settled in April, 2001, and, according to the docket, that case was closed on

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 7

September 28, 2001.

Where, as in this case, an insurer retains counsel to defend an insured in litigation, the attorney's "paramount" client is the insured. *Feliberty v. Damon,* 72 N.Y.2d 112, 120, 531 N.Y.S.2d 778, 782, 527 N.E.2d 261 (1988). This does not mean, however, that the insured is the attorney's only client. Rather, New York courts have held that the counsel retained by the insurer may act as an attorney for that insurer as well as for the insured. *Goldberg v. American Home Assurance Co.,* 80 A.D.2d 409, 439 N.Y.S.2d 2 ----5 (1st Dep't 1981) (counsel retained by insurer to defend claim against plaintiff insured "was acting as counsel not only for plaintiff insured but also for ... insurer"); *Liberty Mut. Ins. Co. v. Engels,* 41 Misc.2d 49, 244 N.Y.S.2d 983, 986 (Sup.Ct. Kings County 1963) ("The attorney selected is counsel not only for the insured, but also acts as the attorney for the insurer."), *aff'd,* 21 A.D.2d 808, 250 N.Y.S.2d 851 (2d Dep't 1964). Accordingly, communications between the retained attorney and the insurer should be considered privileged, to the extent such communications request or provide legal advice or analysis. Indeed, it is generally accepted that, regardless of whether the retained attorney and the insurer can be said to have a distinct attorney-client relationship, their "communications ... concerning such matters as progress reports, case evaluations, and settlement should be regarded as privileged and otherwise immune from discovery by the claimant or another party to the proceeding." Restatement (Third) of Law Governing Lawyers, § 134(f). [FN5]

> FN5. Courts in this circuit have also applied the "common interest rule" to allow an insurer aligned in interest with the insured to have access to privileged communications between the insured and its counsel, without breach of the privilege. *See North River Ins. Co. v. Columbia Cas. Co.,* No. 90 Civ. 2518(MJL)(JCF), 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995); *Vt. Gas Sys., Inc. v. U.S. Fid. & Guar. Co.,* 151 F.R.D. 268, 277 (D.Vt.1993). The common interest rule, however, does not itself give rise to a separate privilege. *Bruker v. City of N.Y.,* No. 93 Civ. 3848(MGC)(HBP), 2002 WL 484843, at *4 (S.D.N.Y. Mar. 29, 2002). "Rather, it is a limited exception to the general rule that the attorney-client privilege is waived when a protected communication is disclosed to a third party outside the attorney-client relationship." *Id.; accord, SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC,* No. 01 Civ. 9291(JSK), 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002).

*4 In addition, Rule 26(b)(3) of the Federal Rules of Civil Procedure protects, as work product, documents prepared "in anticipation of litigation or for trial by or for [a] party or by or for that ... party's representative (including the ... party's attorney, consultant, surety, indemnitor, insurer, or agent)." The phrase "in anticipation of litigation" has been construed by the Second Circuit to mean that, " 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." ' *U.S. v. Adlman,* 134 F.3d 1194, 1202 (2d Cir.1998) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024, at 343 (1994)). The work product doctrine "protect[s] documents prepared in an earlier litigation from discovery in a subsequent suit, particularly where the two cases are related." *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* No. 90 Civ. 7811(AGS)(JCF), 1994 WL 510043, at *5 (S.D.N.Y. Sept. 16, 1994).

Insurance "claim files" may present difficult issues regarding where the line should be drawn between documents prepared in the ordinary course of the insurer's business (which, by its nature, involves claim investigation and analysis) and documents prepared "in anticipation of litigation." *See, e.g., Stephenson Equity Co. v. Credit Bancorp, Ltd.,* No. 99 Civ. 11395(RWS), 2002 WL 59418, at *2 (S.D.N.Y. Jan.16, 2002) ("As many courts have noted, it often is difficult to determine whether documents prepared by an insurance company or its representatives are entitled to work-product protection because insurers are in the business of investigating and adjusting claims."). Where, however, documents are generated after the insurer has declined coverage of a claim, *see Amoco Oil Co. v. Hartford Accident & Indem. Co.,* No. 93 Civ. 7295(JCF), 1995 WL 555696, at *1 (S.D.N.Y.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 8

Sept.18, 1995), or after the insurer has referred the matter to counsel, *see American Nat'l Fire Ins. Co. v. Mirasco, Inc.,* Nos. 99 Civ. 12405(RWS), 00 Civ. 5098(RWS), 2001 WL 876816, at *2 (S.D.N.Y. Aug. 2, 2001), it can generally be said that the insurer is fairly anticipating litigation, and thus work product immunity will typically attach.

Certainly, documents created after litigation has already commenced, when the claims handlers' work has plainly shifted from investigating the initial claim to assisting in the defense of the pending litigation and evaluating litigation exposure, are likely to be covered by the work product doctrine. *See, e.g., Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 640 (E.D.N.Y.1997) (document created after litigation commenced, and that related to legal advice in connection with the ongoing litigation, was work product). Similarly, correspondence between an insured and its liability insurer, written "as a consequence of pending litigation for the purpose of mounting a defense to the claim" is entitled to work product protection. *R.R. Salvage of Conn., Inc. v. Japan Freight Consol. (U.S.A.) Inc.,* 97 F.R.D. 37, 41 (E.D.N.Y.1983); *see also Chaiken v. VV Publ'g Corp.,* No. 91 Civ. 2102(DLC), 1994 WL 652492, at *2 (S.D.N.Y. Nov.18, 1994) (documents written by insured's attorney and sent to insurer were work product, where the documents concerned ongoing cases and included assessments by the attorney of the merits, legal strategy, and anticipated outcome of the cases), *aff'd,* 119 F.3d 1018 (2d Cir.1997).

*5 The burden of establishing that communications are subject to the attorney-client privilege rests with the party asserting the privilege, *U.S. v. Int'l Bhd. of Teamsters,* 119 F.3d 210, 214 (2d Cir.1997), and the same is true with respect to the burden of demonstrating that documents are eligible for work product protection, *A.I.A. Holdings v. Lehman Bros., Inc.,* No. 97 Civ. 4978(HBP), 2002 WL 31556382, at *4 (S.D.N.Y. Nov.15, 2002) (citing *In re Grand Jury Subpoena Dated Dec. 19, 1978,* 599 F.2d 504, 510 (2d Cir.1979)). Unlike privilege, work product immunity may be overcome by a showing that the party seeking disclosure has a "substantial need" for the documents at issue, and "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). Even when such a showing is made, however, the Court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

Both privilege and work product protection may also be waived by the conduct of the parties. For example, where a party selectively discloses certain privileged or work product material, but withholds similar (potentially less favorable) material, principles of fairness may require a more complete disclosure. *See, e.g., In re Grand Jury Proceedings,* 219 F.3d 175, 182-84 (2d Cir.2000) (discussing privilege waiver); *U.S. v. Nobles,* 422 U.S. 225, 239-40, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (work product waiver). Waiver of privilege and work product protection may also result from a party's injection of an issue into the litigation that, in fairness, requires the party to disclose otherwise protected material. *See In re Grand Jury Proceedings,* 219 F.3d at 182 ("This court has recognized that implied waiver may be found where the privilege holder 'asserts a claim that in fairness requires examination of protected communications."' ') (quoting *U.S. v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991)).

Privilege is also waived by voluntary disclosure to a party outside the privileged relationship, *see, e.g., In re Kidder Peabody Secs. Litig.,* 168 F.R.D. 459, 468 (S.D.N.Y.1996), and work product is waived by voluntary disclosure to an adverse party, *see In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235 (2d Cir.1993). Where, however, work product is disclosed to a third party aligned in interest with the author, the claim of work product protection may be maintained. *See Adlman,* 134 F.3d at 1199-1200 (work product may be shown to others "simply because there [is] some good reason to show it," without necessarily destroying the work product nature of the document); *ECDC Envtl., L.C. v. N.Y. Marine & Gen'l Ins. Co.,* No. 96 Civ. 6033(BSJ)(HBP), 1998 WL 614478, at *4 (S.D.N.Y. June 4, 1998) ("Disclosure of material protected by the work-product doctrine .... results in a waiver of the protection afforded by that doctrine only when the disclosure is to an adversary or materially increases the likelihood of disclosure to an adversary.") (citations omitted).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 9

B. *The Documents Sought from AIG*

*6 Tudor has sought production of 19 documents listed on AIG's privilege log. At the Court's request, these documents have been submitted to the Court for *in camera* review. The Court, having now reviewed the documents, finds as follows:

[1] *Document No. 1:* This document, dated October 31, 2001, is a case analysis of the Trochimko claim, prepared by an AIG claims handler. By the date the document was prepared, the Trochimko lawsuit had already been settled, and the instant action (to which AIG is itself a party) had been commenced. The document, on its face, does not indicate whether it was transmitted to counsel, or to anyone else. Although counsel for AIG asserts that the document is "privileged" because the AIG claims handler was acting as a "surrogate for defense of the insured" in connection with the Trochimko case (*see* 7/31/02 Maguire Ltr., at 5), there is no indication that the document contains or memorializes any "communications" between persons, and thus the concept of a "privileged" communication does not appear to apply. Nonetheless, the document is covered by the work product doctrine. It was prepared by an employee of a party to existing litigation, and it contains an evaluation of the allegations made and the issues to be resolved in that litigation, as well as a specific plan as to litigation strategy going forward.

[2] *Document No. 2:* This document consists of two pages, the first being a January 16, 2001 e-mail note written by an AIG claims handler to other AIG claims handlers, with a copy to Brian McCaffrey, Esq., the outside attorney retained to handle the defense of Bovis and Daewoo in the Trochimko action. The second page bears the same date, and appears to be an e-mail note written by the same author, but without designated recipients. Counsel for AIG describes the document (presumably referring to this second page) as an e-mail note "to file" that memorializes internal discussions among AIG claims handlers. (7/31/02 Maguire Ltr. at 5.) The document does not seek or describe the legal advice of counsel, and, therefore, it is not privileged, even though a copy of at least the first page was apparently sent to Mr. McCaffrey. The document is, however, eligible for protection as work product, as it relates to a potential strategy by AIG for settling the Trochimko litigation, and further anticipates litigation strategy going forward, in the event the Trochimko case could not be satisfactorily resolved. Although, in that context, the document also refers to possible business decisions by AIG, it appears that the document in whole would not have been created but for the litigation, and merely because the document's purpose may, in part, have been business-related does not mean that the document is exempt from work product protection. *See Adlman,* 134 F.3d at 1200.

[3] *Document No. 3:* This document is a January 12, 2001 e-mail note written by an AIG claims handler to his supervisor, and copied to others within AIG, including an inside counsel. The document does not seek or contain legal advice, and therefore is not privileged. Once again, however, it is entitled to work product protection, as it was apparently prepared because of pending litigation. More specifically, the document analyzes what occurred at a court-ordered mediation of the Trochimko case, and, in the aftermath of the mediation, the document discusses potential strategies for settlement or pursuit of that litigation.

*7 [4] *Document No. 4:* This document is an October 11, 2000 e-mail message from Mr. McCaffrey, the attorney retained by AIG to defend Bovis and Daewoo in the Trochimko case, to an AIG claims handler, with copies to other attorneys at Mr. McCaffrey's firm. The document conveys counsel's request for assistance with the pending litigation, and also contains an assessment of the insured's potential exposure in the litigation. This document is protected by privilege and further constitutes work product, as it was plainly prepared because of the existing litigation.

[5][6] *Document No. 5:* This document contains two e-mail messages, the first dated August 7, 2000, from Mr. McCaffrey to an AIG claims handler, and the second dated August 8, 2000, responding to the first. The responsive message is copied to another attorney at Mr. McCaffrey's firm, and to others within AIG, including an in-house counsel. The initial message reports on the Trochimko litigation and its likely outcome, and clearly anticipates the instant action. The second message seeks legal

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 10

advice with respect to the pending and anticipated litigation, and suggests arguments that might be raised in litigation. Both of these e-mail messages are privileged and are also fairly characterized as work product.

*Document Nos. 6-9:* These three documents, which appear to be identical, all contain the same two e-mail messages as are contained in Document No. 5, together with an additional response from Mr. McCaffrey, dated August 10, 2000, and copied to others at Mr. McCaffrey's firm. This response contains legal advice. The documents are privileged and, in any event, protected under the work product doctrine. [FN6]

> FN6. Documents No. 6-9 were among the documents submitted to the Court by AIG for *in camera* review. That submission was accompanied by a cover letter from AIG's counsel, explaining the basis for AIG's claims of privilege and/or work product as to all documents submitted. (*See* 7/31/02 Maguire Ltr. at 6 (describing basis for withholding Documents No. 6-9).) Yet in Defendants' initial letter to the Court seeking production of the documents listed on AIG's privilege log, Defendants' counsel states that "[i]tems # 8 and 9 of the Log were supplied by counsel. The balance of the items were not...." This is obviously contrary to the tenor of AIG's submissions, and thus the Court is left uncertain as to whether these documents have already been disclosed to Defendants. For purposes of this opinion, the Court is assuming that they were *not* disclosed. If this is incorrect, then the parties shall, within two weeks of the date of this Order, supplement their submissions to the Court, by setting out (1) exactly what documents were disclosed, (2) whether such disclosure was voluntary or inadvertent, (3) if the disclosure was inadvertent, the steps taken by AIG to protect against such inadvertent disclosure, and (4) the scope of any waiver that should result from the documents' disclosure.

*Document No. 10:* This document is an e-mail message from an AIG claims handler to Mr. McCaffrey, dated May 9, 2000. On its face, the message anticipates and plans for the instant litigation, and the document is thus protected as privileged or, at a minimum, as work product.

*Document No. 11:* This document consists of several e-mail notes, including (in chronological order): (1) an April 19, 2000 e-mail message from an AIG vice president in the claims division to an AIG claims handler (Stephen Haney), with a copy to another person within this AIG division; (2) an April 20, 2000 reply from Mr. Haney, copied to a number of people within AIG, including counsel; (3) a May 5, 2000 e-mail note written by Mr. Haney, with no apparent recipients, (4) a May 5, 2000 e-mail from Mr. Haney to Mr. McCaffrey, with copies to a number of people within AIG, including counsel, and (4) a May 5, 2000 response from Mr. McCaffrey to Mr. Haney and others within AIG. The last of these two messages, which are communications between AIG and Mr. McCaffrey, and which discuss litigation plans, are covered by privilege. In addition, all of these e-mail notes are work product, as they were written in the course of the ongoing Trochimko litigation, and anticipated both the third-party action against Seasons (which was imminent by that point) and the instant action.

*8 [7] *Document No. 12:* This document is an e-mail letter dated April 27, 2000, from an AIG claims handler to a representative of 845 UN Plaza, with copies sent to 845 UN Plaza's insurance broker and to Mr. McCaffrey, the attorney retained by AIG to represent Daewoo and Bovis. AIG was 845 UN Plaza's insurer, but, at the time this letter was written, AIG had disclaimed coverage of 845 UN Plaza for the Trochimko claim, and had refused to provide 845 UN Plaza with a defense in the Trochimko suit. Thus, it cannot be said that, at the time, AIG was working with 845 UN Plaza to provide a defense, nor can it reasonably be argued that AIG was writing to 845 UN Plaza for the purpose of assisting it in the prosecution of a third-party claim against Seasons. Indeed, as AIG itself points out in connection with its own motion to compel, 845 UN Plaza (represented in the Trochimko litigation by counsel retained by Tudor, not by AIG), never asserted a third-party claim against Seasons, leaving such a claim to be asserted only by Daewoo and Bovis. In this light, AIG's

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2002 WL 31729693 (S.D.N.Y.)  
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 11

argument as to why this document is "privileged and confidential" makes little sense. (*See* 7/31/02 Maguire Ltr. at 6 (arguing that the letter was sent to 845 UN Plaza by an AIG claims handler "as a 'surrogate attorney' handling the defense of Trump [ *i.e.*, 845 UN Plaza] prosecution of the third party action [against Seasons] and is thus privileged and confidential").)

Merely because a communication is between an insurer and its insured does not render it privileged. *See Mount Vernon Fire Ins.*, 1998 WL 729735, at *8 n. 4 (although insurer attempted to assert an "insurer-insured" privilege, "[n]o such privilege exists"); *Aiena v. Olsen*, 194 F.R.D. 134, 136 (S.D.N.Y.2000) ("Federal courts have never recognized an insured-insurer privilege as such.") (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1514 (D.C.Cir.1993)). Here, the bottom line is that, at the time this letter was written, AIG was *not* assisting 845 UN Plaza in mounting a defense or in asserting any third-party claims; if anything, AIG and 845 UN Plaza were potentially adverse. Under the circumstances, there does not appear to be a basis for deeming this document either privileged or work product, and it should be produced. *See Vt. Gas Sys.*, 151 F.R.D. at 277 ("where there is an adversarial relationship between an insured and insurer as to whether coverage exists, the parties have never shared the same counsel or litigation strategy and the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by the parties, a common interest, at this time, does not exist beyond the formal designations of insured and insurer").

*Document No. 13:* This document consists of the same two e-mail messages identified above as the first two messages in the e-mail string that makes up Document No. 11. For the reasons stated above, the document constitutes work product.

*9 [8] *Document No. 14:* This document is a letter dated April 11, 2000, from AIG to 845 UN Plaza's insurance broker. Apparently at the request of the broker, the letter describes the status of a number of claims against 845 UN Plaza, including the Trochimko claim, which, by then, was in litigation. For described claims that were then in litigation or where litigation was expected, the summaries include the amounts of then-current indemnity reserves, with assessments as to whether such reserves were adequate. There does not seem to be any dispute that, to the extent this letter describes claims other than the Trochimko claim, it is not relevant to the claims or defenses asserted in this action. The question, then, is whether the portion relating to the Trochimko document should be disclosed.

Although AIG argues that the document, overall, is privileged, the Court is not convinced that either the attorney-client privilege, or the common interest rule, protects this letter. *See SR Int'l*, 2002 WL 1334821 (declining to extend attorney-client or common interest privilege to communications between insured's broker and insured's attorney). A closer question is whether the document is work product. If the document was prepared "because of" litigation or anticipated litigation, its disclosure to the broker would not, in itself, prevent the document from being considered work product. *See id.* at *4 (documents prepared by insured or its counsel in anticipation of litigation were work product, despite being shared with insured's broker); *see also ECDC*, 1998 WL 614478, at *4. Here, however, it does not appear that the document was prepared because of litigation. Rather, it appears that the document was created because the broker, as a matter of routine, asked for a status report on all claims arising out of the 845 UN Plaza construction project, and that the document would have been prepared regardless of whether any claims were (or were anticipated to be) in litigation. AIG itself describes the document as a "periodic status report" (7/31/02 Maguire Ltr. at 7), which seems to confirm that the document was generated in the ordinary course of business. For this reason, the portion of the document relating to the Trochimko claim should be produced. *See Adlman*, 134 F.3d at 1202 (work product doctrine does not protect documents prepared in the regular course of business, rather than because of litigation).

*Document No. 15:* This document consists of (1) a March 16, 2000 e-mail "note to file" by an AIG claims handler, and (2) a March 22, 2000 e-mail note to that claims handler from Mr. McCaffrey, apparently reporting on a court appearance in the Trochimko action and commenting on aspects of the litigation. The first of these e-mails was

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 12

apparently prepared in anticipation of the instant action, and is therefore work product. The second, to the extent it contains legal evaluations by counsel, is covered by attorney-client privilege; it is also covered by the work product doctrine.

*10 *Document No. 16:* This document is an e-mail note from an AIG claims handler, memorializing certain discussions with his supervisor at AIG, and other discussions with Mr. McCaffrey. According to AIG's counsel, this document has already been produced to Defendants in redacted form, so as to exclude the communications with counsel regarding the litigation. Such communications are covered by privilege and were properly redacted.

Viewed in its entirety, however, this document raises a question as to why AIG chose to produce it in redacted form, as opposed to withholding it from production altogether. The unredacted portions of the document reveal AIG's internal views as to whether certain claims will be successful in litigation, and describes future litigation strategy. These portions of the document appear to have been prepared because of the litigation, and thus would have been eligible for work product protection. Tudor argues that, by producing portions of the document, AIG has waived privilege and/or work product protection as to the remainder of the document, and as to other withheld documents as well. This, and any other waiver arguments raised by Tudor, will be discussed further below, at Point D.

*Document No. 17:* This document is a March 9, 2000 e-mail message from Mr. McCaffrey to an AIG claims handler, with copies to others at Mr. McCaffrey's law firm. The document relates to pending and anticipated litigation and is protected by both privilege and the work product doctrine.

[9] *Document No. 18:* This document is an August 29, 1999 [FN7] investigative report of the Trochimko claim, authored by an AIG claims investigator, and addressed to an AIG claims handler. Although the document was apparently generated after AIG had disclaimed coverage, further review of the document shows that the "request for investigation" was received by the investigator on July 9, 1999, which was *before* AIG's August 20, 1999 disclaimer. This was also before AIG agreed to defend Daewoo and Bovis in the Trochimko case, and nothing about the document reflects litigation defense strategy, or an evaluation of litigation exposure. In fact, nothing about the document suggests that it was prepared "because of" the Trochimko litigation or because of anticipated litigation. Rather, the document appears to reflect the type of claim investigation that an insurer would normally carry out in the ordinary course of its business. As such, the document does not appear to be entitled to work product protection (*see* discussion *supra* at 7-9), and it should be produced.

> FN7. The date on this document is actually typed as "August 29th, 19990." Counsel has represented that the correct date is August 29, 1999, which would make sense in context.

[10] *Document No. 19:* This document is a letter, dated June 14, 1999, from a representative of Bovis, to an AIG claims handler. Even though the Trochimko lawsuit (naming Bovis as a defendant) had already been filed by that date, it appears from the letter that its author may not have been aware of that fact. This is certainly possible, given that the docket for the Trochimko action shows that Bovis was not served with process in that action until June 17, 1999, and, even then, through the Secretary of State. (*See* 99 Civ. 3480, Dkt. No. 2.) The letter itself does not contain any privileged communications, and does not, "in pursuit of legal representation," contain disclosures regarding the insured's potential liability. *American Special Risk Ins. Co. v. Greyhound Dial Corp.,* No. 90 Civ.2066(RPP), 1995 WL 442151, at *2 (S.D.N.Y. July 26, 1995) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.,* 5 F.3d 1508, 1515 (D.C.Cir.1993)). Further, on its face, the letter does not appear to have been written "because of" actual or anticipated litigation. The most that can be said on this point is that the letter notes the possibility of litigation, which is not sufficient, in the absence of any indication that this possibility was the motivation for the letter's creation. *See In re Grand Jury Proceedings,* No. M-11-189, 2001 WL 1167497, at * 14 (S.D.N.Y. Oct.3, 2001); *see generally Adlman,* 134 F.3d at 1202. Thus, even though the situation presented by this document is unusual, the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2002 WL 31729693 (S.D.N.Y.)  
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 13

document is not covered by the work product doctrine and should be produced.

C. *Defendants' Lack of Showing of "Need" or "Hardship"*

*11 [11] As noted above, Rule 23(b)(3) provides that work product may be discoverable, but "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Here, Defendants have not made such a showing with respect to the documents that the Court has identified as work product. Instead, Defendants principally rely on arguments that the documents are not actually entitled to protection in the first instance (*see* letter to the Court from Frederick M. Molod, Esq., dated May 14, 2002, at 2), or that any protection has been waived (*see infra* at Point D).

Defendants' only suggestion as to why they consider the withheld documents important is that many of these documents, Defendants believe, relate to meetings at which AIG representatives discussed whether the AIG policy contained an exclusion for demolition work, and, if not, whether AIG's initial disclaimer of coverage should therefore be withdrawn. (*See* letter to the Court from Frederick M. Molod, Esq., dated May 30, 2002, at 2 ("A good deal of that which is claimed to be work product and privileged are the entries made as a result of these meetings. Almost all of that which has been requested are notations of meetings that took place.").) Yet Defendants have not even demonstrated the basis for their belief that the withheld documents are, in fact, notations of such meetings. Certainly, Defendants have not shown why they have a "substantial need" for the purported notations, or why Defendants are unable, "without undue hardship," to obtain the substantial equivalent of this material from other sources.

With respect to need, it is difficult to see why the information sought is even relevant to this case, as there does not appear to be any dispute in the action that AIG policy did cover the Trochimko claim, and that AIG should not have initially disclaimed coverage. As for Defendant's ability to obtain the desired information through other means, the Court notes that Defendants have had access to AIG's witnesses for deposition, and have been able to inquire about the bases for both AIG's initial disclaimer and AIG's subsequent change of position. Indeed, Defendants indicate that they learned, through deposition testimony, that "a demolition exclusion in the [845 UN Plaza] policy was searched for [by AIG] and not found." (8/29/02 Molod Ltr. at 3.) Given the availability of this information from witnesses with knowledge, Defendants have not demonstrated any basis for requiring the disclosure of AIG's protected work product.

D. *AIG's Potential Waiver of Privilege and/or Work Product Protection*

[12] Defendants also argue that AIG has waived privilege and/or work product protection with respect to at least some of the above documents (a) by producing numerous documents obtained by subpoena from the broker for AIG's insureds (*see* 8/29/02 Molod Ltr. at 3), and (b) by selectively disclosing other documents from the AIG claim file that are no different in character than the documents AIG has chosen to withhold (*see id.* at 3-4). The first argument is moot, because the argument suggests that privilege should be waived with respect to documents disclosed to the broker, and the Court has already found, on other grounds, that such documents should be produced, to the extent they relate to this case (*see* discussion re Documents No. 12 and 14, *supra*.) The second argument, however, requires consideration.

*12 Defendants refer the Court, in particular, to three allegedly selective disclosures that, they claim, warrant a finding that privilege and/or work product has been waived. First, Defendants state that AIG has already produced to them an April 20, 2000 e-mail message concerning the Trochimko case, written by an AIG claims handler and sent to others within AIG. (*See* 8/29/02 Molod Ltr. at 3 and Ex. 6 thereto (Document Bates No. 0000060).) This is the same April 20, 2000, message that is contained in the e-mail strings listed on AIG's privilege log as Documents No. 11 and 13 (*see* descriptions of those documents, *supra* ). AIG responds that this document is indeed entitled to protection, and that its prior disclosure, "in production of hundreds of pages of such

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 14

memoranda and Claims file documents" was inadvertent. (9/20/02 Maguire Ltr. at 3.)

AIG, however, has not made clear to the Court what steps were taken to guard against inadvertent disclosure of work product. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105-06 (S.D.N.Y.1985). For the time being, Defendants are directed to return the document to counsel for AIG, but, if AIG wishes to continue to assert work product protection for this document and those related to it, AIG must set out, in affidavit form, and no later than two weeks from the date of this Order, all facts relevant to the question of whether it took reasonable precautions to protect the confidentiality of its work product. If necessary, the Court will then revisit this issue.

[13] The second document highlighted by Defendants is a January 16, 2001 e-mail message from an AIG claims handler to others within AIG and to Mr. McCaffrey (litigation counsel). (*See* 8/29/02 Molod Ltr. at 4 and Ex. 7 thereto (Document Bates No. 0000055).) This is the same January 16, 2001 message that is contained in Document No. 2 on AIG's privilege log. (*See supra.*) As to this e-mail message, AIG--seemingly ignoring the fact that the document appears on its privilege log--asserts that the document was produced because it is "merely a short memo concerning the scheduling of a meeting with an excess carrier" and therefore is "of no substance nor relevance in the case." (9/20/02 Maguire Ltr. at 3.)

[14] Whatever its rationale for producing the document, AIG does not deny that a copy was produced in discovery voluntarily. As a result, work product protection as to the document is waived. *See Niagra Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 587 (N.D.N.Y.1989) ("work product protection is waived when documents are voluntarily shared with an adversary"). The Court is not persuaded, however, that the production of this brief January 16, 2001 e-mail should effect a waiver as to any other work product materials withheld by AIG. The disclosed e-mail, while apparently prepared because of the litigation, merely indicates that a meeting will take place and asks for others' participation in that meeting. It does not contain any more substantive content, and, thus, it does not appear to be a document on which AIG can possibly rely to support its position in this litigation. *Cf. Coleco Indus., Inc. v.. Universal City Studios*, 110 F.R.D. 688, 691-92 (S.D.N.Y.1986) (where party relied on work product to support its position by affirmatively proffering the material through testimony, fairness required that discovery not be limited to selectively disclosed documents). Nor can there fairly be said to be any real "subject matter" of the document (other than the scheduling of a meeting) as to which work product protection can be considered waived. *Cf. Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 104 (S.D.N.Y.2000) ( "waiver of work product by disclosing that work product to one's opponent waives the privilege only as to matter covered in the waived documents"). For these reasons, the work product waiver resulting from the voluntary disclosure of this document is appropriately limited to the document itself.

*13 [15] The third document to which Defendants refer in arguing for a privilege waiver is Document No. 16 on AIG's privilege log. As discussed above, this document was produced in redacted form, but the produced portion itself appears to constitute work product. With respect to this document, Defendants argue that the unredacted section of the document was not only voluntarily produced, but that it relates to the relevant question of whether the AIG policy provided coverage to 845 UN Plaza on the Trochimko claim, and the related question of why AIG withdrew its disclaimer. (*See* 8/29/02 Molod Ltr. at 4.) Once again, the Court is hard-pressed to see why, in this action, these questions are actually relevant, as both sides now agree that the AIG policy *did* provide coverage to 845 UN Plaza. Nonetheless, Defendants are correct that the voluntary production of the unredacted portion of the document gives rise to a work product waiver. *See Niagra Mohawk*, 125 F.R.D. at 587. The question, then, is the appropriate scope of the waiver under the circumstances presented. *See Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222(LAP) (THK), 1997 WL 10924, at *5 (S.D.N.Y. Jan. 10, 1997) ("Depending upon the extent and context of the partial disclosure, the waiver may be broad ... or narrow.... Thus, for example, where there is a partial disclosure in the context of the litigation for the benefit of the privilege holder, there may be a complete subject matter waiver as to all communications on the subject. In contrast, where

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 15

the disclosure is extrajudicial or non-prejudicial to an adversary, there may be no waiver or only a narrow one.") (citations omitted).

As a preliminary matter, the Court has already determined that the redacted portion of the document is separately protected by the attorney-client privilege, which affords protection that is "separate and independent" from that afforded by the work product doctrine. *Fullerton,* 194 F.R.D. at 103. At this point, the Court has not found a waiver of attorney-client privilege, and therefore will not require the redacted portion of Document No. 16 to be produced.

"[F]airness concerns" govern the further question of whether, by producing a portion of the document, AIG has waived work product protection for other work product material on the same subject. *In re Grand Jury Proceedings,* 219 F.3d at 191; *see also McGrath v. Nassau County Health Care Corp.,* 204 F.R.D. 240, 245 (E.D.N.Y.2001) ("The same fairness concerns that govern the scope of the attorney-client privilege waiver guide waiver of the work product privilege."). "Because unfairness to the party seeking disclosure plays a central role in determination of the scope of the subject matter waiver, that party must demonstrate the specific prejudice it would suffer in the absence of the waiver." *Bank Brussels Lambert v. Credit Lyonnais (Suisse),* Nos. 93 Civ. 6876, 94 Civ. 1317(JCF), 1995 WL 598971, at *6 (S.D.N.Y. Oct. 11, 1995).

*14 To date, AIG has not, in this action, affirmatively relied on any work product material relating to its initial decision to disclaim coverage of 845 UN Plaza, or to its subsequent decision to withdraw its disclaimer. Nor has AIG given any indication that it intends to rely on such material at trial. Indeed, as already noted, the parties do not dispute that AIG owed a defense and indemnification to 845 UN Plaza. As this is not a contested issue, Defendants cannot demonstrate why they would be prejudiced if they cannot obtain work product documents relating to AIG's underlying decision-making on the issue. In these circumstances, the Court declines at this time to extend the work product waiver to documents, or portions of documents, other than the portion voluntarily produced. Should AIG attempt, however, to use any of this work product material at trial, or to introduce it by affidavit in the context of dispositive motion practice, the Court will reconsider this decision and may find that a broader work product waiver is appropriate.

II. *AIG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS REFLECTING COMMUNICATIONS BETWEEN TUDOR AND THE ATTORNEYS ASSIGNED BY TUDOR TO REPRESENT ITS INSUREDS*

[16] For its part, AIG has moved to compel production of the nine documents listed on Defendants' privilege log. These documents appear to be virtually all of the same type, and, therefore, the Court has not reviewed them *in camera.* Eight of the documents (Nos.2-9) are claimed by Tudor to be privileged communications between Tudor and attorneys with the law firm of Thurm & Heller, which was retained by Tudor to provide a defense to 845 UN Plaza in the Trochimko suit. The one other document on the log (No. 1) is identified by Defendants as a privileged report prepared by the separate counsel retained by Tudor to represent Seasons in the underlying litigation. That document is dated December 27, 2000, which was after Seasons was impleaded in the Trochimko case. The parties do not appear to dispute that the documents contain privileged communications, but do dispute (1) whether AIG may have access to any of these documents without breaching privilege, and (2) whether privilege has been waived. [FN8]

> FN8. Because defendants have not asserted a work product claim with respect to any of the listed documents, the Court will not consider such a claim. *See* S.D.N.Y. Local R. 26.2(a)(1) (requiring party relying on privilege to specify the privilege being asserted (including work product) in its privilege log).

A. *AIG's Argument That, As an Insurer of 845 UN Plaza, It Is Entitled To Access To the Thurm Heller Documents*

With respect to the Thurm & Heller communications, AIG claims that it is entitled to see these documents because, like Tudor, it was also an insurer of 845 UN Plaza. Under the common interest rule (*see supra* at n. 5), an insurer aligned in

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 16

interest with its insured may generally have access to the insured's privileged communications without breach of privilege. *See North River*, 1995 WL 5792, at *4. Tudor, however, asserts that all the documents in question were created during the period when 845 UN Plaza was disclaiming coverage for the Trochimko claim, and refusing to participate in 845 UN Plaza's defense. Essentially, Tudor argues that, when AIG took the position that it had no coverage obligation toward 845 UN Plaza, AIG lost any right it might otherwise have had to be privy to the strategy for that insured's defense. (*See* letter to the Court from Frederick M. Molod, Esq., dated June 11, 2002 at 2.)

*15 AIG argues that Tudor cannot maintain that AIG has no right to view the documents and simultaneously allege in this action that AIG was, in fact, a co-insurer of 845 UN Plaza. In addition, AIG argues that, regardless of its own prior position, it has now accepted that it did owe indemnification and a defense to 845 UN Plaza in the Trochimko suit, and it has informed both 845 UN Plaza and Tudor that it has accepted these obligations. (*See* letters to the Court from Kenneth R. Maguire, Esq., dated June 3, 2002 ("6/3/02 Maguire Ltr.") and June 17, 2002 ("6/17/02 Maguire Ltr.").).

On this issue, Tudor has the better argument, at least with respect to six of the Thurm & Heller documents (Document Nos. 2, 3, 4, 5, 6, and 9, as listed on Defendants' privilege log). These six documents do appear to have been created during the period when AIG was disclaiming coverage. Where an insurer disclaims coverage and fails to provide a defense to its insured, that insurer is not entitled, under the common interest rule, to gain access to the insured's communications with the counsel that does provide the insured's defense. *Int'l Ins. Co. v. Newmont Mining Corp.*, 800 F.Supp. 1195, 1196 (S.D.N.Y.1992). The fact that, in this action, Tudor has disagreed with AIG's initial coverage position is irrelevant to this analysis, as the issue turns on the actual relationship between AIG and 845 UN Plaza at the time the documents were generated. Similarly, AIG cannot now, by a belated acceptance of its coverage and defense obligations, turn back the clock, and undo the potentially adversarial relationship between it and 845 UN Plaza that existed at the time the documents were written. Documents once entitled to protection from disclosure as either privileged or work product maintain that protection, unless privilege is waived. *See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, No. 00 Civ. 4763(RMB)(JCF), 2002 WL 31093619, at *1-2 (S.D.N.Y. Sept. 17, 2002) (documents that were privileged at the time they were created did not lose privilege because adversary withdrew claim).

[17] As to Documents Nos. 7 and 8, these documents are dated August 6, 1999, and June 28, 1999, respectively. From the information the parties have supplied, it appears that both of these documents pre-date AIG's disclaimer. Prior to AIG's disclaimer, it cannot be said that AIG's interest was even potentially adverse to its insured. Therefore, under the common interest rule, AIG should be permitted access to these two documents, without breaching the privilege that attaches to them.

B. *AIG's Arguments As To Privilege Waiver*

[18] AIG also argues that it should be permitted access to the Thurm & Heller communications because, according to AIG, Tudor waived the attorney-client privilege by making a claim in this action against AIG for payment of 50 percent of 845 UN Plaza's defense costs. According to AIG, it would be unfair to permit Tudor to seek AIG's payment of attorney's fees (*i.e.*, fees incurred by Thurm & Heller), and, at the same time, deny AIG access to the documents showing whether those fees were reasonably incurred.

*16 This argument seeks to invoke an "at issue" waiver; in other words, AIG is contending that, by placing the insured's defense costs at issue in this case, Tudor has waived privilege as to all documents relating to those costs. The Court does not accept, however, that merely asserting a claim for indemnification of defense costs should vitiate the attorney-client privilege with respect to all aspects of a client's defense. This would be too broad an application of the principle of the "at issue" waiver. *See 670 Apartments Corp. v. Agric. Ins. Co.*, No. 96 Civ. 1464(PKL)(JCF), 1997 WL 801458, at *1- 2 (S.D.N.Y. Dec. 30, 1997) ("By claiming that its attorney's fees or actions in the underlying litigation were reasonable, [the insured] does not forfeit its protection of the privileged documents, providing it does not rely on the exact

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2002 WL 31729693 (S.D.N.Y.)  
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 17

nature of the legal advice made at that time or introduce its contents to prove these assertions as part of its legal case."); *Prudential Ins. Co. of America v. Coca-Cola Enter., Inc.,* No. 93 Civ. 1456(KMW)(JCF), 1993 WL 276065, at *1 (S.D.N.Y. July 21, 1993) ("A demand for attorneys' fees, whether based on a fee-shifting statute or on a contractual obligation, does not by itself constitute a waiver."). As noted in *670 Apartments,* the reasonableness of the attorneys' fees actually incurred in a case can "in all probability ... be determined ... by examination of attorney time records and documents filed in court." *670 Apartments,* 1997 WL 801458, at *2; *see also Prudential,* 1993 WL 276065, at *1 ("Coca-Cola's concern about its ability to challenge the reasonableness of White & Case's fees is exaggerated. Coca-Cola has full access to the attorney's diary entries as well as to the final copies of documents that reflect the ultimate product of White & Case's labor.").

AIG further argues, however, that there is a particular reason here to allow access to counsel's communications with Tudor--that is, because Tudor purportedly acted in bad faith with respect to its defense of 845 UN Plaza by commingling the defense of that insured with the defense of Tudor's other insured, Seasons. As mentioned above (*see supra* at 5), AIG contends that Tudor had a conflict of interest with respect to 845 UN Plaza, because, while it would have been in *845 UN Plaza's* interest to pass the Trochimko claim on to Seasons, it would *not* have been in *Tudor's* interest to do so, given the fact that Tudor stood alone as Season's sole insurer, but, as to 845 UN Plaza, Tudor could potentially share any coverage obligations with AIG. On its motion to compel, AIG asserts that a Tudor claims handler "acknowledged at his deposition" that Tudor failed to take appropriate steps to mitigate this conflict, in that it failed to build an internal "wall" to isolate the defense of 845 UN Plaza from the defense of Seasons. (*See* letter to the Court from Kenneth R. Maguire, Esq., dated September 20, 2002 ("9/20/02 Maguire Ltr."), at 2.) [FN9] AIG further asserts that, as a result of Tudor's conflict, and as evidence of its bad faith, Tudor apparently failed to direct counsel for 845 UN Plaza to bring an impleader action against Seasons. (*See* 6/3/02 Maguire Ltr., at 2; 6/17/02 Maguire Ltr., at 2.)

FN9. Although AIG refers to deposition testimony, it does not quote or submit any such testimony or any other evidence to the Court in support of its assertion that Tudor breached its duty of good faith to its insureds.

*17 Although an insurer is not permitted to control the decisions of insured's counsel, *see Feliberty,* 72 N.Y.2d at 120, 531 N.Y.S.2d at 782, 527 N.E.2d 261, the Court will accept, *arguendo,* that Tudor may have acted in bad faith toward its insured and improperly influenced counsel's handling of the insured's defense. The question, though, is whether this fact, if demonstrated, would open the door to disclosure to AIG of Tudor's otherwise privileged communications with counsel.

AIG relies on *Zurich Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 137 A.D.2d 401, 524 N.Y.S.2d 202 (1st Dep't 1988), for the proposition that, where a carrier has acted in bad faith in the defense of its insured, it cannot rely on privilege to shield the evidence of its misconduct. *Zurich,* however, involved a claim by an excess insurer against a primary insurer, for the primary's alleged bad faith refusal to settle an underlying claim against the insured. In holding that the primary insurer could not use the attorney-client privilege as a shield to prevent disclosure relevant to the asserted bad faith claim, the court relied on the fact that a primary insurer owes a fiduciary obligation to the excess insurer. *See id.* at 402, 524 N.Y.S.2d at 203; *see also Employers Mut. Cas. Co. v. Key Pharm., Inc.,* No. 91 Civ. 1630(LBS) (NG), 1992 WL 188336, at *1 (S.D.N.Y. July 27, 1992) (ruling in *Zurich* was "based on fiduciary principles").

[19] Here, although AIG, in one of its letters to the Court, states that it is disputed in this case as to whether its policy was coinsurance or excess insurance to Tudor's policy (*see* 6/17/02 Maguire Ltr. at 1), Tudor's counterclaims against AIG seek a 50 percent contribution based on coinsurance (*see* Tudor Answer ¶¶ 41, 45), and AIG itself informed Tudor that it was prepared to share equally in 845 UN Plaza's defense (*see* 8/29/02 Molod Ltr., Ex. 2), suggesting that there is, in fact, no dispute that AIG and Tudor were simply co-insurers. AIG has not provided the Court with any authority for the proposition that a carrier owes

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2002 WL 31729693 (S.D.N.Y.)  
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 18

a fiduciary duty to a co-insurer, and the Court is not aware of any such principle. [FN10] Thus, *Zurich* does not provide a rationale for requiring disclosure of the privileged communications at issue here, and is inapplicable.

> FN10. The only case AIG cites for this proposition, *Allstate Ins. Co. v. American Transit Ins. Co.*, 977 F.Supp. 197 (E.D.N.Y.1997) (*see* 6/17/02 Maguire Ltr. at 2), in fact involved an excess carrier, and emphasized that "[t]he primary insurer, entrusted with the defense of the claim, owes 'a primary obligation to its [insured] and to the excess insurer to exercise good faith in handling the defense *and to safeguard the rights and interests of the excess carrier.*" ' *Allstate*, 977 F.Supp. at 200 (citation omitted; emphasis added).

[20] To the extent AIG is arguing that Tudor has waived privilege by injecting into this case the issue of its good faith, this argument also fails. Other than merely seeking reimbursement from AIG for the cost of its settlement with Trochimko and related attorney's fees, Tudor has not raised any issue in this case that would, in fairness, require disclosure of its privileged communications with counsel regarding the defense of its insured. Rather, *AIG* has apparently raised the issue of Tudor's alleged bad faith as a *defense* to Tudor's counterclaim for reimbursement. (*See* 6/3/02 Maguire Ltr. at 2 (arguing that Tudor's alleged bad faith "will ... support an estoppel argument against Tudor's claim for co-insurance").) Generally, where a party does not itself place in issue the matter as to which the privileged communications are relevant, the privilege is not waived. *See generally Tribune*, 1997 WL 10924, at *5-6 (discussing standards for "at issue" waiver, and declining to find a waiver where issue of plaintiff's conduct was raised by way of defense); *see also Arkwright*, 1994 WL 510043, at *13 (plaintiff insurer "has not placed its good faith adjustment of the underlying ... claim at issue simply by suing for indemnity").

*18 [21] AIG also argues that it should not suffer prejudice in this action as a result of Tudor's "illicit conduct." (9/20/02 Maguire Ltr. at 2.) Where attorney-client privilege is concerned, however, the concept of "prejudice" is irrelevant, unless there is an independent basis for a privilege waiver. Once a waiver is found, *then* issues of fairness become relevant to determining the scope of the appropriate waiver.

In any event, AIG has not articulated how it would be prejudiced if the privileged documents at issue are not disclosed. As already noted, Tudor does not appear to be relying, in whole or in part, on the privileged communications to defend against AIG's claims, or to support its own counterclaims. Further, as pointed out in *Arkwright*, even if the protected communications contain factual information that would be useful to AIG in prosecuting its claims or in defending against the asserted counterclaims, AIG "has not shown that such information is not available through depositions and interrogatories." *Arkwright*, 1994 WL 510043, at *13. In fact, AIG already claims to have evidentiary support for its contention that Tudor commingled the defense of insureds with adverse interests. (*See* 9/20/02 Maguire Ltr at 2 (referring to the testimony of the Tudor claims handler).) Further, AIG claims to have already obtained, through discovery, an investigator's report that advised Tudor (or at least the Thurm & Heller firm) of Seasons's purported contractual obligation to indemnify 845 UN Plaza. AIG was free to ask Tudor's claim handler whether he was aware of this report, and, if so, when he became aware of it. AIG has not shown that this type of discovery would be insufficient to enable it to advance its estoppel defense.

In sum, AIG has not advanced any arguments that persuade the Court that Tudor has waived privilege as to its communications with Thurm & Heller, made during the course of 845 UN Plaza's defense. As for the one document on Defendants' privilege log that does not reflect Thurm & Heller communications, but rather constitutes a report by Season's separate counsel (Document No. 1), AIG has not provided any rationale that would support production, and the Court declines to find a privilege waiver.

*CONCLUSION*

For all of the above reasons:

(1) AIG is directed to produce to Defendants the following documents listed on AIG's privilege log: Documents Nos. 2, 12, 14, 18 and 19.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31729693 (S.D.N.Y.)
(Cite as: 2002 WL 31729693 (S.D.N.Y.))

Page 19

(2) Defendants are directed to produce to AIG the following documents listed on Defendants' privilege log: Documents No. 7 and 8.

(3) To the extent this Memorandum and Order directs the parties to make any supplementary submissions, such submissions shall be made no later than two weeks from the date of this Order.

2002 WL 31729693 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

• 2002 WL 32495880 (Trial Pleading) Answer to Counterclaim (Dec. 10, 2002)

• 2002 WL 32495878 (Trial Pleading) Amended Complaint (Jul. 08, 2002)

• 2001 WL 34545485 (Trial Pleading) Answer (Oct. 03, 2001)

• 2001 WL 34545533 (Trial Pleading) Answer (Jan. 09, 2001)

• 1:00CV09212 (Docket) (Dec. 05, 2000)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.