Oct. 10, 2002) [HN1]("There can be no doubt that insurance agreements are discoverable.").

Plaintiff served a second subpoena on Universal on August 15, 2002, commanding Universal to appear for a deposition and to produce documents in Overland Park, Kansas. In response, Universal filed a motion to quash on August 29, 2002 before the United States District Court for the District of Kansas. On January 23, 2003, the Kansas district court granted in part and denied in part the motion to quash the Universal subpoena. n2 Pursuant to Local Civil Rule [*5] 30.1, Defendant requests that this Court order Plaintiff to pay its expenses to attend the deposition, should it take place in Kansas.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 In Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc, 211 F.R.D. 658 (D. Kan. 2003), the court granted Universal's motion to quash as to those documents Universal claimed were protected by the work-product doctrine. Id. at 664. Universal's motion to quash was also granted as to those portions of the subpoena requiring Universal to travel more than 100 miles. Id. The remainder of Universal's motion to quash was denied. Id.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## II. Defendant's Motion to Quash

### A. Applicable Law

Defendant moves to preclude the subpoenaed documents, claiming that they are privileged, work-product, and irrelevant. As a threshold issue, this Court must decide which law applies to each claim. [HN2]In cases based on federal question jurisdiction, issues of privilege are governed by federal law. See Fed. R. Evid. 501. However, [*6] where federal jurisdiction rests on diversity, as it does here, privilege "shall be determined in accordance with State law." Id.; see also Railroad Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.), Inc., 97 F.R.D. 37, 40 (E.D.N.Y. 1983). Therefore, Defendant's claim of privilege is governed by New York state law. See id. [HN3]While state law applies to the question of whether the subpoenaed documents are privileged, the protection of documents under the work-product doctrine is a question of federal law. In federal cases, work-product is governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure. See id. Like the work-product doctrine, relevancy is governed by federal law. See Fed. R. Civ. P. 26(b)(1).

The Court first considers whether the subpoenaed documents are privileged and, hence, not discoverable.

### B. Privilege

In its motion to quash, Defendant asserts that the documents sought are privileged and, therefore, precluded from discovery. (Def.'s Reply Mem. at 2.) [HN4]The law governing discovery in New York can be found in the New York Civil Practice Law and Rules ("CPLR"). Privileged material is protected from discovery under CPLR § 3101(b), [*7] which states that "upon objection by a party privileged material shall not be obtainable." N.Y. C.P.L.R. § 3101(b).

Defendant claims that documents relating to Plaintiff's third-party claim should be protected from discovery because they are privileged material guaranteed protection by CPLR § 3101(b). However, having considered the authority Defendant relies upon for this proposition, the Court concludes that Defendant has failed to demonstrate that New York law has conferred a privileged status to documents created during investigations of third-party claims. For example, Defendant refers the Court to Kandel v. Tocher, 22 A.D.2d 513, 256 N.Y.S.2d 898 (1st Dept. 1965), in which that court stated that "there is no useful purpose revealed and every noxious hazard now indicated, if adverse parties in tort actions should be entitled to receive material created by ... the liability insurer in preparation of handling the claims made against the insured." Id. at 902. While the court indicated that there may be good reasons for protecting documents related to third-party claims, the Kandel court, however, ultimately relied on the state work-product doctrine to preclude [*8] discovery of insurance reports. Likewise, Defendant cites Finegold v. Lewis, 22 A.D.2d 447, 256 N.Y.S.2d 358 (2nd Dept. 1965), where the court ultimately precluded insurer documents from discovery on the basis of state work-product protection. New York state law, however, applies solely to the question of privilege and not work product. Therefore, Finegold does not support Defendant's arguments that New York law accords as privileged insurer documents created during investigations of third party claims. n3 Therefore, the holding of each case relied upon by Defendant applied New York work-product law, which is irrelevant to Defendant's motion.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 In addition, Defendant cites Weitzman v. Blazing Pedals, Inc, 151 F.R.D. 125 (D.

Colo. 1993) in support of its position that the subpoenaed documents are privileged and should be protected. However, Weitzman bases its decision on the federal work-product doctrine, which does not support Defendant's argument that the documents in the Guttenplan subpoena are privileged under New York state law.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*9]

An examination of Defendant's authority reveals that Defendant has not provided case law, nor is the Court aware of any, that supports Defendant's claim that the documents relating to Plaintiff's third-party claim are "privileged" under New York state law. Accordingly, Defendant's motion to quash on the ground that the subpoenaed documents are privileged is denied.

**C. Work Product**

Defendant claims work-product protection for "third-party investigation documents relating to the third-party claim." (Def.'s Mot. at 7.) [HN5]For documents to be protected under the work-product doctrine, Defendant must established that the documents were prepared in anticipation of litigation by Defendant or Defendant's representative. Fed. R. Civ. P. 26(b)(3); see United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998). The Court now considers whether Defendant has met its burden of establishing that the subpoenaed documents qualify for work-product protection.

*1. Privilege Log*

[HN6]Determining whether documents may be protected under the work-product doctrine requires a fact-based inquiry into the creation of the documents withheld. See, e.g., Westhemco Ltd. v. New Hampshire Ins. Co., 82 F.R.D. 702, 708 (S.D.N.Y. 1979) [*10] (holding that a report was not work-product because the facts showed that it was created within an insurer's ordinary course of business). Under Rule 26(b)(5) of the Federal Rules of Civil Procedure, parties withholding documents as work-product are required to:make the claim expressly and [to] describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.Fed. R. Civ. P. 26(b)(5). Accordingly, allegations of privilege are to be compiled into a "privilege log," which identifies "the date of the documents, who drafted the documents, the nature of the substance of the documents and each person who has been given access to or a copy of the documents, and the date on which any such access or copy was provided." Sidari v. Orleans County, 2000 U.S. Dist. LEXIS 15123, at *8 (W.D.N.Y. Mar. 31, 2000).

Here, Defendant has not provided the Court with a privilege log that would aid it in determining whether the documents are work-product. [HN7]Parties waive their rights to [*11] claim work-product protection for any documents that have been in their control and for which a privilege log has not been presented. See Weber v. Paduano, 2003 U.S. Dist. LEXIS 858, at *34 (S.D.N.Y. Jan. 22, 2003) (stating that "failure to provide a privilege log can result in a waiver of privilege" when party has been in possession of the disputed documents); see also Strougo v. BEA Assocs., 199 F.R.D. 515, 521 (S.D.N.Y. 2001). Therefore, the Court concludes that Defendant has waived its work-product claims for those documents related to the third-party claim that had been in Defendant's control, and are now in Compass's possession. n4 Accordingly, the Court now reviews the work-product claim for only those documents related to the third-party claim that had never been in Defendant's possession.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - -

n4 Defendant's principal, Mr. Eammon Kirk, testified at his deposition that he provided Compass with "all documents that he had relating to the subleased premises, the fire, Goodyear's claims, and any of Kirk's claimed damages, without maintaining copies for himself." (Pl.'s Opp. at 3.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*12]

*2. Anticipation of Litigation*

[HN8]When seeking to quash a subpoena, the burden is on the party claiming work-product protection to establish that the documents were prepared "in anticipation of litigation" by a party or its representative and not in the ordinary course of business. Fed. Civ. P. 26(b)(3); see Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470 (S.D.N.Y. 1993); see also von Bulow v. von Bulow v. Von Bulow, 811 F.2d 136, 144 (2d Cir. 1987). Fed. R. Civ. P. 26(b)(3) provides:[HN9][A]

party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.Id. [HN10]In the Second Circuit, parties must show that [*13] alleged work-product documents were created "because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of litigation." Adlman, 134 F.3d at 1195.

[HN11]Work-product protection may be extended to reports generated by insurers and adjusters because they are party representatives. See Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., 1998 U.S. Dist. LEXIS 16183, at *23 (S.D.N.Y. Oct. 16, 1998); Pate v. Federal Ins. Co., 1985 U.S. Dist. LEXIS 20274, at *5 (S.D.N.Y. Apr. 30, 1985); Railroad Salvage, 97 F.R.D. at 40-41. However, "application of the work-product doctrine to documents prepared by insurance companies has been particularly troublesome because it is the routine business of insurance companies to investigate and evaluate claims and to defend their insureds against third-party claims." Mount Vernon Fire Insurance Co., 1998 U.S. Dist. LEXIS 16183, at *16; see also American Ins. Co. v. Elgot Sales Corp., 1998 U.S. Dist. LEXIS 14822, at *6 (S.D.N.Y. Sept. 21, 1998); Westhemco, 82 F.R.D. at 708. The question of whether insurer and [*14] adjuster reports were created "because of" impending litigation depends on whether the moving party can point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litigation. See Westhemco, 82 F.R.D. at 708-09.

In Weber v. Paduano, defendants moved to quash a subpoena seeking investigative reports generated by defendants' insurance adjusters after a fire, which the defendants asserted were work product. See Weber, 2003 U.S. Dist. LEXIS 858, at *4-7. The Weber court denied Defendants work product claim, finding that "most of the documents pertain to 'investigation of [the] fire,' suggesting that they were created as part of [the insurer's] customary investigation, rather than in preparation for any lawsuit." Id. at *25. The Weber court thus concluded that defendants had presented "no evidence as to the insurers' deliberative processes ... when and if counsel was retained in anticipation of litigation, or any other evidence of benchmarks in the progression from claim to litigation that could enable the Court to infer that subsequent documents were prepared [*15] in anticipation of litigation." Id. at *36-37. [HN12]Without such benchmarks illustrating the "shift" from preparing documents in the insurer's and insurance adjuster's ordinary course of business to preparing documents in "anticipation of litigation," courts cannot extend work-product protection to insurer and adjuster reports. Id.

Here, Defendant argues that a letter sent by Plaintiff two and one-half weeks after the fire threatened litigation, and that it was this letter that marked the shift from preparing documents in the ordinary course of business to preparation "in anticipation of litigation." (Def.'s Mot. at 6-7.) Defendant claims that in the letter, "Goodyear informed Kirk's [of] its intention to seek full restitution from Kirk's." n5 Id. at 6. In response, Plaintiff argues that the communication between Plaintiff and Defendant after the fire did not threaten litigation. (Pl.'s Opp. at 4.) Apart from this letter, Defendant has not pointed to any evidence that would lead the Court to believe that when Compass began its investigation of the third-party claim, it was doing so in anticipation of litigation. For this reason, the Court lacks a sufficient basis to assert [*16] that a definite shift occurred, such that Compass was acting in anticipation of litigation, rather than in its ordinary course of business.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 The February 9, 1999 letter written by Julie Ellison, Goodyear's Liability Risks Manager to Kirk's reads: "Please be advised that Goodyear will expect full restitution for this loss ... You may wish to place your liability insurer on notice of this loss." (Ex. M attached to Braunstein Aff.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Court concludes that Defendant has not met its burden of establishing that the subpoenaed documents were prepared in anticipation of litigation. Therefore, Defendant's work-product claim is denied.

**D. Relevance**

Finally, Defendant claims that documents relating to its first-party claim are "wholly irrelevant and not designed to lead to admissible evidence and are, indeed confidential to Kirk's and none of Goodyear's business." (Def. Mot. at 7.) Plaintiff argues that every category of the subpoenaed documents is relevant to the action and that the documents contain information [*17] that is "'reasonably calculated to lead to admissible evidence.'" (Pl.'s Opp. at 6.) Plaintiff states,

2003 U.S. Dist. LEXIS 15917

furthermore, that "to the extent that any information to be supplied by Mr. Guttenplan is deemed confidential, Goodyear is willing to enter into an appropriate Confidentiality Order."(Pl.'s Opp at 5.)

[HN13]Documents that are "reasonably calculated to lead to the discovery of admissible evidence" are relevant under the federal discovery rules. Fed. R. Civ. P. 26(b)(1). "'Discovery should be relevant where there is Any possibility that the information sought may be relevant to the subject matter of the action.'" Westhemco, 82 F.R.D. at 709 (quoting Mallinckrodt Chem. Works v. Goldman, Sachs & Co., 58 F.R.D. 348, 353 (S.D.N.Y. 1973) (emphasis in original). Because the first-party claim was submitted as a result of the fire, the same event underlying this action and the third-party claim, the Court concludes that the documents are relevant and thus discoverable. As Plaintiff has indicated, for those documents that are confidential, the parties may enter into a confidentiality agreement.

### III. Defendant's Request for Expenses under Local Civil Rule 30.1 [*18]

Finally, Defendant requested this Court to order Plaintiff to pay for its expenses should its motion to quash the Universal subpoena be denied. On January 23, 2003, the United States District Court for the District of Kansas quashed "any portions of the subpoena that would require the appropriate Universal representatives to travel more than 100 miles from the place they reside, are employed or regularly transact business in person." Goodyear Tire & Rubber Co., 211 F.R.D. at 662. Therefore, this Court denies Defendant's request for expenses under Local Civil Rule 30.1 as moot.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to quash the Guttenplan subpoena and Defendant's request for expenses under Local Civil Rule 30.1 are denied.

So Ordered: September 10, 2003

**Richard Conway Casey, U.S.D.J.**

Page 7