# EXHIBIT F

2002 U.S. Dist. LEXIS 23322

BOVIS LEND LEASE, LMB, INC., f/ k/ a LEHRER McGOVERN BOVIS INC., a// k/ a LEHRER McGOVERN BOVIS CONSTRUCTION, INC., a/ k/ a THE LEHRER McGOVERN BOVIS GROUP, INC., DAEWOO AMERICA DEVELOPMENT (NEW YORK) CORPORATION and ILLINOIS NATIONAL INSURANCE COMPANY, Plaintiffs, -against-SEASONS CONTRACTING CORP. and TUDOR INSURANCE COMPANY, Defendants.

00 Civ. 9212 (DF)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 23322

December 4, 2002, Decided
December 5, 2002, Filed

**DISPOSITION:** Parties were ordered to exchange certain documents listed on their privilege logs.

### CASE SUMMARY

**PROCEDURAL POSTURE:** An underlying action for injuries sustained by a contractor's employee at a construction site was settled and plaintiffs, site managers and the site owner's insurer, sued defendants, the contractor and its insurer, seeking a declaration that plaintiffs were not liable for the settlement. Plaintiff insurer and defendants cross-moved to compel production of documents for which attorney-client and work product privileges were respectively claimed.

**OVERVIEW:** Defendants contended that the documents withheld by plaintiff insurer were not protected from discovery and, in any event, plaintiff insurer's selective disclosure of certain documents constituted a waiver of any protection from discovery. Plaintiff insurer asserted entitlement as a co-insurer to documents between defendant insurer and its attorneys and further claimed that any privilege was waived. The court first held that plaintiff insurer's documents were either privileged or prepared in anticipation of litigation, and thus not subject to discovery, except for a document created when plaintiff insurer was disclaiming coverage, routine investigation and status reports, and a letter which merely noted the possibility of litigation. Further, while plaintiff insurer's partial or complete disclosure of certain documents waived work product protection for such documents, the waiver did not extend to all of the documents for which protection was claimed. Also, plaintiff insurer was entitled as a co-insurer only to documents generated after it withdrew its disclaimer of coverage, and defendants' claim for attorney fees did not constitute a waiver of any privilege.

**OUTCOME:** The cross-motions to compel production of documents of plaintiff insurer and defendants were granted in part and denied in part.

**CORE TERMS:** work product, insured, insurer, e-mail, handler, privileged, disclosure, waived, coverage, message, attorney-client, log, work product doctrine, privileged communications, discovery, third-party, settlement, common interest, legal advice, anticipated, indemnification, disclaimer, broker, redacted, withheld, counterclaim, inadvertent, disclaimed, anticipation of litigation, pending litigation

**LexisNexis(TM) Headnotes**

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN1]In New York, the attorney-client privilege protects confidential communications between attorney and client relating to legal advice.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN2]Where an insurer retains counsel to defend an insured in litigation, the attorney's "paramount" client is the insured. This does not mean, however, that the insured is the attorney's only client. Rather, New York courts have held that the counsel retained by the insurer may act as an attorney for that insurer as well as for the insured. Accordingly, communications between the retained attorney and the insurer should be considered privileged, to the extent such communications request or provide legal advice or analysis. Indeed, it is generally accepted that, regardless of whether the retained attorney and the insurer can be said to have a distinct attorney-client relationship, their communications concerning such matters as progress reports, case evaluations, and settlement should be regarded as privileged and otherwise immune from discovery by the claimant or another party to the proceeding.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

Page 1


[HN3]Courts in the Second Circuit apply the "common interest rule" to allow an insurer aligned in interest with the insured to have access to privileged communications between the insured and its counsel, without breach of the privilege. The common interest rule, however, does not itself give rise to a separate privilege. Rather, it is a limited exception to the general rule that the attorney-client privilege is waived when a protected communication is disclosed to a third party outside the attorney-client relationship.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN4]Fed. R. Civ. P. 26(b)(3) protects, as work product, documents prepared in anticipation of litigation or for trial by or for a party or by or for that party's representative (including the party's attorney, consultant, surety, indemnitor, insurer, or agent). The phrase "in anticipation of litigation" has been construed by the Second Circuit to mean that, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN5]The work product doctrine protects documents prepared in an earlier litigation from discovery in a subsequent suit, particularly where the two cases are related.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN6]Insurance "claim files" may present difficult issues regarding where the line should be drawn between documents prepared in the ordinary course of the insurer's business (which, by its nature, involves claim investigation and analysis) and documents prepared in anticipation of litigation. Where, however, documents are generated after the insurer has declined coverage of a claim, or after the insurer has referred the matter to counsel, it can generally be said that the insurer is fairly anticipating litigation, and thus work product immunity will typically attach.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN7]Certainly, documents created after litigation has already commenced, when insurance claims handlers' work has plainly shifted from investigating the initial claim to assisting in the defense of the pending litigation and evaluating litigation exposure, are likely to be covered by the work product doctrine. Similarly, correspondence between an insured and its liability insurer, written as a consequence of pending litigation for the purpose of mounting a defense to the claim is entitled to work product protection.

*Civil Procedure > Disclosure & Discovery > Work Product*

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN8]The burden of establishing that communications are subject to the attorney-client privilege rests with the party asserting the privilege, and the same is true with respect to the burden of demonstrating that documents are eligible for work product protection.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN9]Unlike privilege, work product immunity may be overcome by a showing that the party seeking disclosure has a "substantial need" for the documents at issue, and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3). Even when such a showing is made, however, a court must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

*Civil Procedure > Disclosure & Discovery > Work Product*

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN10]Both privilege and work product protection may be waived by the conduct of the parties. For example, where a party selectively discloses certain privileged or work product material, but withholds similar (potentially less favorable) material, principles of fairness may require a more complete disclosure. Waiver of privilege and work product protection may also result from a party's injection of an issue into the litigation that, in fairness, requires the party to disclose otherwise protected material.

*Civil Procedure > Disclosure & Discovery > Work Product*

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN11]Privilege is waived by voluntary disclosure to a party outside the privileged relationship, and work product is waived by voluntary disclosure to an adverse party. Where, however, work product is disclosed to a third party aligned in interest with the author, the claim of work product protection may be maintained.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN12]Merely because a communication is between an insurer and its insured does not render it privileged.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN13]Fed. R. Civ. P. 23(b)(3) provides that work product may be discoverable, but only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN14]Depending upon the extent and context of the partial disclosure, a work product waiver may be broad or narrow. Thus, for example, where there is a partial disclosure in the context of the litigation for the benefit of the privilege holder, there may be a complete subject matter waiver as to all communications on the subject. In contrast, where the disclosure is extrajudicial or non-prejudicial to an adversary, there may be no waiver or only a narrow one.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN15]"Fairness concerns" govern the question of whether, by producing a portion of a document, a party waives work product protection for other work product material on the same subject. Because unfairness to the party seeking disclosure plays a central role in determination of the scope of the subject matter waiver, that party must demonstrate the specific prejudice it would suffer in the absence of the waiver.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN16]Under the common interest rule, an insurer aligned in interest with its insured may generally have access to the insured's privileged communications without breach of privilege.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN17]Where an insurer disclaims coverage and fails to provide a defense to its insured, that insurer is not entitled, under the common interest rule, to gain access to the insured's communications with the counsel that does provide the insured's defense.

*Civil Procedure > Disclosure & Discovery > Work Product*

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN18]Documents once entitled to protection from disclosure as either privileged or work product maintain that protection, unless privilege is waived.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN19]By claiming that its attorney's fees or actions in the underlying litigation were reasonable, a party does not forfeit its protection of the privileged documents, providing it does not rely on the exact nature of the legal advice made at that time or introduce its contents to prove these assertions as part of its legal case.

*Insurance Law > General Liability Insurance > Defense Obligations*

[HN20]An insurer is not permitted to control the decisions of an insured's counsel.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN21]Generally, where a party does not itself place in issue the matter as to which the privileged communications are relevant, a privilege is not waived.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN22]Where attorney-client privilege is concerned, the concept of "prejudice" is irrelevant, unless there is an independent basis for a privilege waiver. Once a waiver is found, then issues of fairness become relevant to determining the scope of the appropriate waiver.

**COUNSEL:** [*1] For BOVIS LEND LEASE, LMB, INC., DAEWOO AMERICA DEVELOPMENT (NEW YORK) CORPORATION, ILLINOIS NATIONAL INSURANCE COMPANY, plaintiffs: Kenneth R. Maguire, Ahmuty, Demers & McManus, Albertson, NY.

For SEASONS CONTRACTING CORP., TUDOR INSURANCE COMPANY, defendants: Frederick M. Molod, Molod, Spitz, DeSantis & Stark, P.C., New York, NY.

**JUDGES:** DEBRA FREEMAN, United States Magistrate Judge.

**OPINIONBY:** DEBRA FREEMAN

**OPINION: MEMORANDUM AND ORDER**

**DEBRA FREEMAN**, United States Magistrate Judge.

Discovery is nearly complete in this action. What remains are disputes regarding the discoverability of certain documents withheld by each side as subject to the attorney-client privilege and/ or the work product doctrine. As set out below, the Court finds that, whereas particular documents should be disclosed, either because they are not fairly characterized as privileged or work product, or because privilege or work product immunity has been waived, most of the documents at issue have been appropriately withheld from production. The Court, however, will accept further submissions from the parties on narrow points identified herein, specifically relating to issues of potential waiver, and will consider [*2] modifying aspects of this Order if those submissions demonstrate a basis for a broader waiver.

## BACKGROUND

This action, which is before me on consent of the parties, involves a dispute as to which party or insurer is responsible for payment of a settlement to Jan Trochimko ("Trochimko"), who was injured on a building construction site while in the employ of a demolition contractor, Seasons Contracting Corp. ("Seasons").

In an underlying personal injury suit in this Court, filed on May 12, 1999, n1 Trochimko sought to recover damages from the owner of the site ("845 UN Plaza"); n2 the site project manager, Daewoo America Development (New York) Corporation ("Daewoo"); and the sub-manager, Bovis Lend Lease, LMB, Inc. ("Bovis"). (Am. Compl. P 18.) All of those defendants requested that 845 UN Plaza's insurer, Illinois National Insurance Company (a member of the AIG insurance group, and, for simplicity, referred to herein as "AIG") n3 provide them with a defense in the Trochimko suit, and indemnification, should they be found liable. (Id. P 19.)

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n1 No. 99 Civ. 3480 (Kram, J).

n2 The parties herein generally refer to the site owner as "845 UN Plaza," and the Court will therefore do the same. In his personal injury suit, Trochimko named as defendants 845 UN Limited Partnership; Trump 845 UN GP LLC, as general partner; and Trump 845 UN GP LLC, individually.

[*3]

n3 Illinois National Insurance Company acted through AIG Claims Service Inc. (the claims division of the AIG insurance group) in connection with matters relevant to this action. For the most part, the parties refer to "Illinois National" and "AIG" interchangeably on the pending motions.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

On July 8, 1999, AIG, in turn, requested that Tudor Insurance Company ("Tudor"), which was Season's insurer, provide a defense to 845 UN Plaza, Daewoo and Bovis, in the Trochimko litigation. (See letter to the Court from Kenneth R. Maguire, Esq., dated July 31, 2002 ("7/31/02 Maguire Ltr."), at 4.) Tudor accepted defense and indemnity obligations for 845 UN Plaza, as an additional insured under the Tudor/ Seasons policy, and retained the firm of Thurm & Heller to defend 845 UN Plaza against the Trochimko claim. Tudor, however, rejected the defense of Daewoo and Bovis. (See id.)

On August 20, 1999, AIG disclaimed coverage under its policy. Nonetheless, upon learning that Tudor was refusing to defend Daewoo and Bovis, AIG stepped in to provide a defense for those two defendants, retaining outside counsel [*4] -- the firm of Jacobowitz, Garfinkel & Lesman -- to defend them against the Trochimko claim. (See letter to the Court from Kenneth R. Maguire, Esq., dated May 22, 2002, at 2.) Then, in June 2000, Daewoo and Bovis, through counsel, commenced a third-party action against Seasons, claiming that Seasons had a contractual duty to indemnify them for any damages paid to a Seasons employee injured on the job. (Id.) Although it arguably had a basis for asserting the same type of third-party indemnification claim against Seasons, 845 UN Plaza did not do so.

The Trochimko case was eventually settled in April 2001, when Tudor, together with its excess carrier, made a payment to Trochimko on behalf of 845 UN Plaza. Daewoo, Bovis, and AIG did not contribute to that settlement. (Am. Compl. P 23.)

The instant case was commenced on December 5, 2000, prior to the conclusion of the Trochimko case. (Dkt. No. 1.) Daewoo, Bovis and AIG brought this action to obtain a declaration that, to the extent Daewoo or Bovis were found liable to Trochimko, any such liability should be passed on to Seasons. (Am. Compl. PP 30-31.) Once the Trochimko case was settled, Daewoo, Bovis and AIG amended their complaint [*5] in this action to seek a declaration that they were not obligated to pay any part of that settlement. (Am. Compl. P 48.) Rather, Plaintiffs assert, the settlement should have been paid entirely by Seasons (or by Tudor, in its capacity as Seasons'

2002 U.S. Dist. LEXIS 23322

insurer). *Id.* In addition, Plaintiffs seek to recover their costs of defending the Trochimko action, claiming that Seasons/ Tudor were required to provide that defense. *Id.*

Complicating matters is the fact that, by letter dated January 23, 2001 (*i.e.*, shortly after commencing the instant action), AIG changed its position as to whether its policy afforded coverage to 845 UN Plaza for the Trochimko claim. (*See* letter to the Court from Frederick M. Molod, Esq., dated August 29, 2002 ("8/29/02 Molod Ltr."), Ex. 1.) AIG informed 845 UN Plaza and Tudor that its August 1999 disclaimer was in error, and that AIG should, in fact, have accepted coverage (both defense and indemnification) of 845 UN Plaza from the start. (*See id.*, Exs. 1, 2.) AIG informed Tudor that it would therefore share, on a 50 percent basis, the cost of Tudor's defense and indemnification of 845 UN Plaza on the Trochimko claim. (*See id.*, Ex. 2.)

Based on [*6] AIG's acceptance of its coverage obligations for 845 UN Plaza, Tudor has now counterclaimed against AIG for a one-half contribution to the settlement amount it has already paid on behalf of 845 UN Plaza, on the ground that AIG was a co-insurer of 845 UN Plaza, and that any settlement paid on behalf of that entity should therefore have been shared by the two insurers. (Tudor's Answer [and Counterclaims] ("Tudor Answer") P 42.) For the same reason, Tudor also seeks a contribution from AIG of 50 percent of the attorneys' fees Tudor incurred in providing for 845 UN Plaza's defense. (*Id.* P 45.)

AIG, however, contends that, despite its acceptance of its coverage obligations, it should have no actual obligation to make any payment to Tudor, because Tudor should never have settled with Trochimko on behalf of 845 UN Plaza, and acted in bad faith toward that insured. (*See* letter to the Court from Kenneth R. Maguire, Esq., dated June 17, 2002 ("6/17/02 Maguire Ltr."), at 2.) Specifically, AIG contends that, in the Trochimko suit, Tudor should have demanded that counsel for 845 UN Plaza commence a third-party claim against Seasons for indemnification, and that Tudor wrongfully failed [*7] to make such a demand because it had a conflict of interest as an insurer for both 845 UN Plaza and Seasons. *Id.* More precisely, AIG argues that, because 845 UN Plaza appeared to be co-insured by both Tudor and AIG, whereas Seasons was insured only by Tudor, Tudor had an incentive to try to steer any liability on the Trochimko claim to 845 UN Plaza (where the cost of any damages award or settlement might be shared with AIG), and away from Seasons (where Tudor would have to shoulder the cost alone). (*See* letter to the Court from Kenneth R. Maguire, Esq., dated June 3, 2002 ("6/3/02 Maguire Ltr."), at 2.) As noted above, AIG contends that Seasons, alone, was the party properly liable for Trochimko's injuries.

The present dispute relates to two sets of documents claimed to be privileged and/ or work product. The first set includes documents from AIG's "claim file" relating to the Trochimko claim. These documents were, for the most part, prepared in the course of the defense of Daewoo and Bovis in the Trochimko litigation, and, among other things, they anticipate the third-party claim against Seasons and the declaratory judgment suit now before the Court. The second set of documents [*8] constitute, for the most part, communications between Tudor and the attorneys it retained to defend 845 UN Plaza in the Trochimko action. Those communications generally took place during the period after AIG had disclaimed coverage of 845 UN Plaza, and before AIG changed its position and accepted that coverage obligation. The two discovery disputes will be addressed in turn, below.

I. DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS CONTAINED IN AIG'S CLAIM FILES

The first dispute before the Court involves documents principally authored by various claims handlers employed by AIG. In withholding these documents from production, AIG asserts, first, that its claims handlers' communications with litigation counsel (retained by AIG to defend Bovis and Daewoo in the Trochimko suit) are covered by attorney-client privilege. Second, AIG asserts that the documents at issue are protected as work product, in that they were all prepared either in connection with the defense of AIG's insureds in the Trochimko action, or in anticipation of the third-party action against Seasons.

A. Attorney-Client Privilege and the Work Product Doctrine

As jurisdiction in this case [*9] is based on diversity, n4 the New York law of privilege applies. *See Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc., 1998 U.S. Dist. LEXIS 16183,* No. 96 Civ. 5590 (MJL) (HBP), 1998 WL 729735, at *3 (S.D.N.Y. Oct. 14, 1998). [HN1]"In New York, the attorney-client privilege protects confidential communications between attorney and client relating to legal advice." *Id.* (citing N.Y. C.P.L.R. § 4503(a)); *Rossi v. Blue Cross & Blue Shield of Greater N.Y., 73 N.Y.2d 588, 593, 542 N.Y.S.2d 508, 510, 540 N.E.2d 703 (1989).*

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

Page 5