2002 U.S. Dist. LEXIS 23322

n4 The complaint in this action alleges that this Court has jurisdiction over this matter based on the parties' diversity of citizenship (Am. Compl. P 11), and also pursuant to 28 U.S.C. § 1367, because the action is related to the Trochimko case, which was pending at the time the complaint in this case was filed (see id. P 12). As noted herein, the Trochimko action was settled in April, 2001, and, according to the docket, that case was closed on September 28, 2001.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*10]

[HN2]Where, as in this case, an insurer retains counsel to defend an insured in litigation, the attorney's "paramount" client is the insured. _Feliberty v. Damon, 72 N.Y.2d 112, 120, 531 N.Y.S.2d 778, 782, 527 N.E.2d 261 (1988)._ This does not mean, however, that the insured is the attorney's only client. Rather, New York courts have held that the counsel retained by the insurer may act as an attorney for that insurer as well as for the insured. _Goldberg v. American Home Assurance Co., 80 A.D.2d 409, 439 N.Y.S.2d 2_ **5 (1st Dep't 1981) (counsel retained by insurer to defend claim against plaintiff insured "was acting as counsel not only for plaintiff insured but also for ... insurer"); _Liberty Mut. Ins. Co. v. Engels, 41 Misc. 2d 49, 244 N.Y.S.2d 983, 986 (Sup. Ct. Kings County 1963)_ ("The attorney selected is counsel not only for the insured, but also acts as the attorney for the insurer."), aff'd, _21 A.D.2d 808, 250 N.Y.S.2d 851 (2d Dep't 1964)._ Accordingly, communications between the retained attorney and the insurer should be considered privileged, to the extent such communications request or provide legal advice or [*11] analysis. Indeed, it is generally accepted that, regardless of whether the retained attorney and the insurer can be said to have a distinct attorney-client relationship, their "communications ... concerning such matters as progress reports, case evaluations, and settlement should be regarded as privileged and otherwise immune from discovery by the claimant or another party to the proceeding." Restatement (Third) of Law Governing Lawyers, § 134(f). n5

- - - - - - - - - - - - - Footnotes - - - - - - - - - - -

n5 [HN3]Courts in this circuit have also applied the "common interest rule" to allow an insurer aligned in interest with the insured to have access to privileged communications between the insured and its counsel, without breach of the privilege. See _North River Ins. Co. v. Columbia Cas. Co., 1995 U.S. Dist. LEXIS 53,_ No. 90 Civ. 2518 (MJL) (JCF), 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995); _Vt. Gas Sys., Inc. v. U.S. Fid. & Guar. Co., 151 F.R.D. 268, 277 (D. Vt. 1993)._ The common interest rule, however, does not itself give rise to a separate privilege. _Bruker v. City of N.Y., 2002 U.S. Dist. LEXIS 5334,_ No. 93 Civ. 3848 (MGC) (HBP), 2002 WL 484843, at *4 (S.D.N.Y. Mar. 29, 2002). "Rather, it is a limited exception to the general rule that the attorney-client privilege is waived when a protected communication is disclosed to a third party outside the attorney-client relationship." Id.; accord, _SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC, 2002 U.S. Dist. LEXIS 10919,_ No. 01 Civ. 9291 (JSK), 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*12]

In addition, [HN4]Rule 26(b)(3) of the Federal Rules of Civil Procedure protects, as work product, documents prepared "in anticipation of litigation or for trial by or for [a] party or by or for that ... party's representative (including the ... party's attorney, consultant, surety, indemnitor, insurer, or agent)." The phrase "in anticipation of litigation" has been construed by the Second Circuit to mean that, "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained _because of_ the prospect of litigation.'" _U.S. v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998)_ (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 _Federal Practice & Procedure_ § 2024, at 343 (1994)). [HN5]The work product doctrine "protect[s] documents prepared in an earlier litigation from discovery in a subsequent suit, particularly where the two cases are related." _Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 1994 U.S. Dist. LEXIS 13216,_ No. 90 Civ. 7811 (AGS) (JCF), 1994 WL 510043, at *5 (S.D.N.Y. Sept. 16, 1994).

[HN6]Insurance "claim files" may present difficult issues [*13] regarding where the line should be drawn between documents prepared in the ordinary course of the insurer's business (which, by its nature, involves claim investigation and analysis) and documents prepared "in anticipation of litigation." See, e.g.,

*Stephenson Equity Co. v. Credit Bancorp, Ltd.,* 2002 U.S. Dist. LEXIS 627, No. 99 Civ. 11395 (RWS), 2002 WL 59418, at *2 (S.D.N.Y. Jan. 16, 2002) ("As many courts have noted, it often is difficult to determine whether documents prepared by an insurance company or its representatives are entitled to work-product protection because insurers are in the business of investigating and adjusting claims."). Where, however, documents are generated after the insurer has declined coverage of a claim, *see Amoco Oil Co. v. Hartford Accident & Indem. Co.,* 1995 U.S. Dist. LEXIS 13532, No. 93 Civ. 7295 (JCF), 1995 WL 555696, at *1 (S.D.N.Y. Sept. 18, 1995), or after the insurer has referred the matter to counsel, *see American Nat'l Fire Ins. Co. v. Mirasco, Inc.,* 2001 U.S. Dist. LEXIS 10623, Nos. 99 Civ. 12405 (RWS), 00 Civ. 5098 (RWS), 2001 WL 876816, at *2 (S.D.N.Y. Aug. 2, 2001), it can generally be said that the insurer is fairly anticipating litigation, and thus work product immunity [*14] will typically attach.

[HN7]Certainly, documents created after litigation has already commenced, when the claims handlers' work has plainly shifted from investigating the initial claim to assisting in the defense of the pending litigation and evaluating litigation exposure, are likely to be covered by the work product doctrine. *See, e.g., Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 640 (E.D.N.Y. 1997) (document created after litigation commenced, and that related to legal advice in connection with the ongoing litigation, was work product). Similarly, correspondence between an insured and its liability insurer, written "as a consequence of pending litigation for the purpose of mounting a defense to the claim" is entitled to work product protection. *R.R. Salvage of Conn., Inc. v. Japan Freight Consol. (U.S.A.) Inc.,* 97 F.R.D. 37, 41 (E.D.N.Y. 1983); *see also Chaiken v. VV Publ'g Corp.,* 1994 U.S. Dist. LEXIS 16530, No. 91 Civ. 2102 (DLC), 1994 WL 652492, at *2 (S.D.N.Y. Nov. 18, 1994) (documents written by insured's attorney and sent to insurer were work product, where the documents concerned ongoing cases and included assessments by the attorney of the merits, [*15] legal strategy, and anticipated outcome of the cases), *aff'd,* 119 F.3d 1018 (2d Cir. 1997).

[HN8]The burden of establishing that communications are subject to the attorney-client privilege rests with the party asserting the privilege, *U.S. v. Int'l Bhd. of Teamsters,* 119 F.3d 210, 214 (2d Cir. 1997), and the same is true with respect to the burden of demonstrating that documents are eligible for work product protection, *A.I.A. Holdings v. Lehman Bros., Inc.,* 2002 U.S. Dist. LEXIS 22245, No. 97 Civ. 4978 (HBP), 2002 WL 31556382, at *4 (S.D.N.Y. Nov. 15, 2002) (citing *In re Grand Jury Subpoena Dated Dec. 19, 1978,* 599 F.2d 504, 510 (2d Cir. 1979)).

[HN9]Unlike privilege, work product immunity may be overcome by a showing that the party seeking disclosure has a "substantial need" for the documents at issue, and "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Even when such a showing is made, however, the Court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the [*16] litigation." *Id.*

[HN10]Both privilege and work product protection may also be waived by the conduct of the parties. For example, where a party selectively discloses certain privileged or work product material, but withholds similar (potentially less favorable) material, principles of fairness may require a more complete disclosure. *See, e.g., United States v. Doe (In re Grand Jury Proceedings),* 219 F.3d 175, 182-84 (2d Cir. 2000) (discussing privilege waiver); *U.S. v. Nobles,* 422 U.S. 225, 239-40, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975) (work product waiver). Waiver of privilege and work product protection may also result from a party's injection of an issue into the litigation that, in fairness, requires the party to disclose otherwise protected material. *See In re Grand Jury Proceedings,* 219 F.3d at 182 ("This court has recognized that implied waiver may be found where the privilege holder 'asserts a claim that in fairness requires examination of protected communications.'") (quoting *U.S. v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991)).

[HN11]Privilege is also waived by voluntary disclosure to a party outside the privileged relationship, [*17] *see, e.g., In re Kidder Peabody Secs. Litig.,* 168 F.R.D. 459, 468 (S.D.N.Y. 1996), and work product is waived by voluntary disclosure to an adverse party, *see In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235 (2d Cir. 1993). Where, however, work product is disclosed to a third party aligned in interest with the author, the claim of work product protection may be maintained. *See Adlman,* 134 F.3d at 1199-1200 (work product may be shown to others "simply because there [is] some good reason to show it," without necessarily destroying the work product nature of the document); *ECDC Envtl., L.C. v. N.Y. Marine & Gen'l Ins. Co.,* 1998 U.S. Dist. LEXIS 8808, No. 96 Civ. 6033 (BSJ) (HBP), 1998 WL 614478, at *4 (S.D.N.Y. June 4, 1998) ("Disclosure of material protected by the work-product doctrine ... results in a waiver of the protection afforded by that doctrine only when the disclosure is to an adversary or materially increases the likelihood of disclosure to an adversary.") (citations omitted).

2002 U.S. Dist. LEXIS 23322

### B. The Documents Sought from AIG

Tudor has sought production of 19 documents listed on AIG's privilege log. At the Court's request, these documents [*18] have been submitted to the Court for *in camera* review. The Court, having now reviewed the documents, finds as follows:

Document No. 1: This document, dated October 31, 2001, is a case analysis of the Trochimko claim, prepared by an AIG claims handler. By the date the document was prepared, the Trochimko lawsuit had already been settled, and the instant action (to which AIG is itself a party) had been commenced. The document, on its face, does not indicate whether it was transmitted to counsel, or to anyone else. Although counsel for AIG asserts that the document is "privileged" because the AIG claims handler was acting as a "surrogate for defense of the insured" in connection with the Trochimko case (*see* 7/31/02 Maguire Ltr., at 5), there is no indication that the document contains or memorializes any "communications" between persons, and thus the concept of a "privileged" communication does not appear to apply. Nonetheless, the document is covered by the work product doctrine. It was prepared by an employee of a party to existing litigation, and it contains an evaluation of the allegations made and the issues to be resolved in that litigation, as well as a specific plan [*19] as to litigation strategy going forward.

Document No. 2: This document consists of two pages, the first being a January 16, 2001 e-mail note written by an AIG claims handler to other AIG claims handlers, with a copy to Brian McCaffrey, Esq., the outside attorney retained to handle the defense of Bovis and Daewoo in the Trochimko action. The second page bears the same date, and appears to be an e-mail note written by the same author, but without designated recipients. Counsel for AIG describes the document (presumably referring to this second page) as an e-mail note "to file" that memorializes internal discussions among AIG claims handlers. (7/31/02 Maguire Ltr. at 5.) The document does not seek or describe the legal advice of counsel, and, therefore, it is not privileged, even though a copy of at least the first page was apparently sent to Mr. McCaffrey. The document is, however, eligible for protection as work product, as it relates to a potential strategy by AIG for settling the Trochimko litigation, and further anticipates litigation strategy going forward, in the event the Trochimko case could not be satisfactorily resolved. Although, in that context, the document also refers [*20] to possible business decisions by AIG, it appears that the document in whole would not have been created but for the litigation, and merely because the document's purpose may, in part, have been business-related does not mean that the document is exempt from work product protection. *See Adlman*, 134 F.3d at 1200.

Document No. 3: This document is a January 12, 2001 e-mail note written by an AIG claims handler to his supervisor, and copied to others within AIG, including an inside counsel. The document does not seek or contain legal advice, and therefore is not privileged. Once again, however, it is entitled to work product protection, as it was apparently prepared because of pending litigation. More specifically, the document analyzes what occurred at a court-ordered mediation of the Trochimko case, and, in the aftermath of the mediation, the document discusses potential strategies for settlement or pursuit of that litigation.

Document No. 4: This document is an October 11, 2000 e-mail message from Mr. McCaffrey, the attorney retained by AIG to defend Bovis and Daewoo in the Trochimko case, to an AIG claims handler, with copies to other attorneys at Mr. McCaffrey's [*21] firm. The document conveys counsel's request for assistance with the pending litigation, and also contains an assessment of the insured's potential exposure in the litigation. This document is protected by privilege and further constitutes work product, as it was plainly prepared because of the existing litigation.

Document No. 5: This document contains two e-mail messages, the first dated August 7, 2000, from Mr. McCaffrey to an AIG claims handler, and the second dated August 8, 2000, responding to the first. The responsive message is copied to another attorney at Mr. McCaffrey's firm, and to others within AIG, including an in-house counsel. The initial message reports on the Trochimko litigation and its likely outcome, and clearly anticipates the instant action. The second message seeks legal advice with respect to the pending and anticipated litigation, and suggests arguments that might be raised in litigation. Both of these e-mail messages are privileged and are also fairly characterized as work product.

Document Nos. 6-9: These three documents, which appear to be identical, all contain the same two e-mail messages as are contained in Document No. 5, together with an [*22] additional response from Mr. McCaffrey, dated August 10, 2000, and copied to others at Mr. McCaffrey's firm. This response contains legal advice. The documents are privileged and, in any event, protected under the work product doctrine. n6

--------------- Footnotes ---------------

n6 Documents No. 6-9 were among the documents submitted to the Court by AIG

Page 8

for *in camera* review. That submission was accompanied by a cover letter from AIG's counsel, explaining the basis for AIG's claims of privilege and/ or work product as to all documents submitted. (*See* 7/31/02 Maguire Ltr. at 6 (describing basis for withholding Documents No. 6-9).) Yet in Defendants' initial letter to the Court seeking production of the documents listed on AIG's privilege log, Defendants' counsel states that "items # 8 and 9 of the Log were supplied by counsel. The balance of the items were not ...." This is obviously contrary to the tenor of AIG's submissions, and thus the Court is left uncertain as to whether these documents have already been disclosed to Defendants. For purposes of this opinion, the Court is assuming that they were *not* disclosed. If this is incorrect, then the parties shall, within two weeks of the date of this Order, supplement their submissions to the Court, by setting out (1) exactly what documents were disclosed, (2) whether such disclosure was voluntary or inadvertent, (3) if the disclosure was inadvertent, the steps taken by AIG to protect against such inadvertent disclosure, and (4) the scope of any waiver that should result from the documents' disclosure.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*23]

Document No. 10: This document is an e-mail message from an AIG claims handler to Mr. McCaffrey, dated May 9, 2000. On its face, the message anticipates and plans for the instant litigation, and the document is thus protected as privileged or, at a minimum, as work product.

Document No. 11: This document consists of several e-mail notes, including (in chronological order): (1) an April 19, 2000 e-mail message from an AIG vice president in the claims division to an AIG claims handler (Stephen Haney), with a copy to another person within this AIG division; (2) an April 20, 2000 reply from Mr. Haney, copied to a number of people within AIG, including counsel; (3) a May 5, 2000 e-mail note written by Mr. Haney, with no apparent recipients, (4) a May 5, 2000 e-mail from Mr. Haney to Mr. McCaffrey, with copies to a number of people within AIG, including counsel, and (4) a May 5, 2000 response from Mr. McCaffrey to Mr. Haney and others within AIG. The last of these two messages, which are communications between AIG and Mr. McCaffrey, and which discuss litigation plans, are covered by privilege. In addition, all of these e-mail notes are work product, as they were written in the [*24] course of the ongoing Trochimko litigation, and anticipated both the third-party action against Seasons (which was imminent by that point) and the instant action.

Document No. 12: This document is an e-mail letter dated April 27, 2000, from an AIG claims handler to a representative of 845 UN Plaza, with copies sent to 845 UN Plaza's insurance broker and to Mr. McCaffrey, the attorney retained by AIG to represent Daewoo and Bovis. AIG was 845 UN Plaza's insurer, but, at the time this letter was written, AIG had disclaimed coverage of 845 UN Plaza for the Trochimko claim, and had refused to provide 845 UN Plaza with a defense in the Trochimko suit. Thus, it cannot be said that, at the time, AIG was working with 845 UN Plaza to provide a defense, nor can it reasonably be argued that AIG was writing to 845 UN Plaza for the purpose of assisting it in the prosecution of a third-party claim against Seasons. Indeed, as AIG itself points out in connection with its own motion to compel, 845 UN Plaza (represented in the Trochimko litigation by counsel retained by Tudor, not by AIG), never asserted a third-party claim against Seasons, leaving such a claim to be asserted only by Daewoo and [*25] Bovis. In this light, AIG's argument as to why this document is "privileged and confidential" makes little sense. (*See* 7/31/02 Maguire Ltr. at 6 (arguing that the letter was sent to 845 UN Plaza by an AIG claims handler "as a 'surrogate attorney' handling the defense of Trump [*i.e.*, 845 UN Plaza] prosecution of the third party action [against Seasons] and is thus privileged and confidential").)

[HN12]Merely because a communication is between an insurer and its insured does not render it privileged. *See Mount Vernon Fire Ins.*, 1998 U.S. Dist. LEXIS 16183, 1998 WL 729735, at *8 n.4 (although insurer attempted to assert an "insurer-insured" privilege, "no such privilege exists"); *Aiena v. Olsen*, 194 F.R.D. 134, 136 (S.D.N.Y. 2000) ("Federal courts have never recognized an insured-insurer privilege as such.") (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 303 U.S. App. D.C. 316, 5 F.3d 1508, 1514 (D.C. Cir. 1993)). Here, the bottom line is that, at the time this letter was written, AIG was *not* assisting 845 UN Plaza in mounting a defense or in asserting any third-party claims; if anything, AIG and 845 UN Plaza were potentially [*26] adverse. Under the circumstances, there does not appear to be a basis for deeming this document either privileged or work product, and it should be produced. *See Vt. Gas Sys.*, 151 F.R.D. at 277 ("where there is an adversarial relationship between an insured and insurer as to whether coverage

exists, the parties have never shared the same counsel or litigation strategy and the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by the parties, a common interest, at this time, does not exist beyond the formal designations of insured and insurer").

Document No. 13: This document consists of the same two e-mail messages identified above as the first two messages in the e-mail string that makes up Document No. 11. For the reasons stated above, the document constitutes work product.

Document No. 14: This document is a letter dated April 11, 2000, from AIG to 845 UN Plaza's insurance broker. Apparently at the request of the broker, the letter describes the status of a number of claims against 845 UN Plaza, including the Trochimko claim, which, by then, was in litigation. For described claims that were [*27] then in litigation or where litigation was expected, the summaries include the amounts of then-current indemnity reserves, with assessments as to whether such reserves were adequate. There does not seem to be any dispute that, to the extent this letter describes claims other than the Trochimko claim, it is not relevant to the claims or defenses asserted in this action. The question, then, is whether the portion relating to the Trochimko document should be disclosed.

Although AIG argues that the document, overall, is privileged, the Court is not convinced that either the attorney-client privilege, or the common interest rule, protects this letter. See SR Int'l, 2002 U.S. Dist. LEXIS 10919, 2002 WL 1334821 (declining to extend attorney-client or common interest privilege to communications between insured's broker and insured's attorney). A closer question is whether the document is work product. If the document was prepared "because of" litigation or anticipated litigation, its disclosure to the broker would not, in itself, prevent the document from being considered work product. See 2002 U.S. Dist. LEXIS 10919, [WL] at *4 (documents prepared by insured or its counsel in anticipation of litigation were work product, despite [*28] being shared with insured's broker); see also ECDC, 1998 U.S. Dist. LEXIS 8808, 1998 WL 614478, at *4. Here, however, it does not appear that the document was prepared because of litigation. Rather, it appears that the document was created because the broker, as a matter of routine, asked for a status report on all claims arising out of the 845 UN Plaza construction project, and that the document would have been prepared regardless of whether any claims were (or were anticipated to be) in litigation. AIG itself describes the document as a "periodic status report" (7/31/02 Maguire Ltr. at 7), which seems to confirm that the document was generated in the ordinary course of business. For this reason, the portion of the document relating to the Trochimko claim should be produced. See Adlman, 134 F.3d at 1202 (work product doctrine does not protect documents prepared in the regular course of business, rather than because of litigation).

Document No. 15: This document consists of (1) a March 16, 2000 e-mail "note to file" by an AIG claims handler, and (2) a March 22, 2000 e-mail note to that claims handler from Mr. McCaffrey, apparently reporting on a court appearance in the Trochimko [*29] action and commenting on aspects of the litigation. The first of these e-mails was apparently prepared in anticipation of the instant action, and is therefore work product. The second, to the extent it contains legal evaluations by counsel, is covered by attorney-client privilege; it is also covered by the work product doctrine.

Document No. 16: This document is an e-mail note from an AIG claims handler, memorializing certain discussions with his supervisor at AIG, and other discussions with Mr. McCaffrey. According to AIG's counsel, this document has already been produced to Defendants in redacted form, so as to exclude the communications with counsel regarding the litigation. Such communications are covered by privilege and were properly redacted.

Viewed in its entirety, however, this document raises a question as to why AIG chose to produce it in redacted form, as opposed to withholding it from production altogether. The unredacted portions of the document reveal AIG's internal views as to whether certain claims will be successful in litigation, and describes future litigation strategy. These portions of the document appear to have been prepared because of the litigation, [*30] and thus would have been eligible for work product protection. Tudor argues that, by producing portions of the document, AIG has waived privilege and/or work product protection as to the remainder of the document, and as to other withheld documents as well. This, and any other waiver arguments raised by Tudor, will be discussed further below, at Point D.

Document No. 17: This document is a March 9, 2000 e-mail message from Mr. McCaffrey to an AIG claims handler, with copies to others at Mr. McCaffrey's law firm. The document relates to pending and anticipated litigation and is protected by both privilege and the work product doctrine.

Document No. 18: This document is an August 29, 1999 n7 investigative report of the Trochimko claim, authored by an AIG claims investigator, and addressed