2002 U.S. Dist. LEXIS 23322

to an AIG claims handler. Although the document was apparently generated after AIG had disclaimed coverage, further review of the document shows that the "request for investigation" was received by the investigator on July 9, 1999, which was *before* AIG's August 20, 1999 disclaimer. This was also before AIG agreed to defend Daewoo and Bovis in the Trochimko case, and nothing about the [*31] document reflects litigation defense strategy, or an evaluation of litigation exposure. In fact, nothing about the document suggests that it was prepared "because of" the Trochimko litigation or because of anticipated litigation. Rather, the document appears to reflect the type of claim investigation that an insurer would normally carry out in the ordinary course of its business. As such, the document does not appear to be entitled to work product protection (*see* discussion *supra* at 7-9), and it should be produced.

-------------- Footnotes ---------------

n7 The date on this document is actually typed as "August 29th, 19990." Counsel has represented that the correct date is August 29, 1999, which would make sense in context.

------------ End Footnotes---------

Document No. 19: This document is a letter, dated June 14, 1999, from a representative of Bovis, to an AIG claims handler. Even though the Trochimko lawsuit (naming Bovis as a defendant) had already been filed by that date, it appears from the letter that its author may not have been aware of that fact. This is certainly [*32] possible, given that the docket for the Trochimko action shows that Bovis was not served with process in that action until June 17, 1999, and, even then, through the Secretary of State. (*See* 99 Civ. 3480, Dkt. No. 2.) The letter itself does not contain any privileged communications, and does not, "in pursuit of legal representation," contain disclosures regarding the insured's potential liability. *American Special Risk Ins. Co. v. Greyhound Dial Corp.*, 1995 U.S. Dist. LEXIS 10387, No. 90 Civ. 2066 (RPP), 1995 WL 442151, at *2 (S.D.N.Y. July 26, 1995) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 303 U.S. App. D.C. 316, 5 F.3d 1508, 1515 (D.C. Cir. 1993)). Further, on its face, the letter does not appear to have been written "because of" actual or anticipated litigation. The most that can be said on this point is that the letter notes the possibility of litigation, which is not sufficient, in the absence of any indication that this possibility was the motivation for the letter's creation. *See In re Grand Jury Proceedings*, 2001 U.S. Dist. LEXIS 15646, No. M-11-189, 2001 WL 1167497, at *14 (S.D.N.Y. Oct. 3, 2001); *see generally Adlman*, 134 F.3d at 1202. [*33] Thus, even though the situation presented by this document is unusual, the document is not covered by the work product doctrine and should be produced.

C. Defendants' Lack of Showing of "Need" or "Hardship"

As noted above, [HN13]Rule 23(b)(3) provides that work product may be discoverable, but "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Here, Defendants have not made such a showing with respect to the documents that the Court has identified as work product. Instead, Defendants principally rely on arguments that the documents are not actually entitled to protection in the first instance (*see* letter to the Court from Frederick M. Molod, Esq., dated May 14, 2002, at 2), or that any protection has been waived (*see infra* at Point D).

Defendants' only suggestion as to why they consider the withheld documents important is that many of these documents, Defendants believe, relate to meetings at which AIG representatives discussed whether the AIG policy contained an exclusion [*34] for demolition work, and, if not, whether AIG's initial disclaimer of coverage should therefore be withdrawn. (*See* letter to the Court from Frederick M. Molod, Esq., dated May 30, 2002, at 2 ("A good deal of that which is claimed to be work product and privileged are the entries made as a result of these meetings. Almost all of that which has been requested are notations of meetings that took place.").) Yet Defendants have not even demonstrated the basis for their belief that the withheld documents are, in fact, notations of such meetings. Certainly, Defendants have not shown why they have a "substantial need" for the purported notations, or why Defendants are unable, "without undue hardship," to obtain the substantial equivalent of this material from other sources.

With respect to need, it is difficult to see why the information sought is even relevant to this case, as there does not appear to be any dispute in the action that AIG policy did cover the Trochimko claim, and that AIG should not have initially disclaimed coverage. As for Defendant's ability to obtain the desired information through other means, the Court notes that Defendants have had access to AIG's witnesses for [*35] deposition, and have been able to inquire about the bases for both AIG's initial disclaimer and AIG's subsequent change of position. Indeed, Defendants

indicate that they learned, through deposition testimony, that "a demolition exclusion in the [845 UN Plaza] policy was searched for [by AIG] and not found." (8/29/02 Molod Ltr. at 3.) Given the availability of this information from witnesses with knowledge, Defendants have not demonstrated any basis for requiring the disclosure of AIG's protected work product.

### D. AIG's Potential Waiver of Privilege and/ or Work Product Protection

Defendants also argue that AIG has waived privilege and/ or work product protection with respect to at least some of the above documents (a) by producing numerous documents obtained by subpoena from the broker for AIG's insureds (see 8/29/02 Molod Ltr. at 3), and (b) by selectively disclosing other documents from the AIG claim file that are no different in character than the documents AIG has chosen to withhold (see id. at 3-4). The first argument is moot, because the argument suggests that privilege should be waived with respect to documents disclosed to the broker, and the Court has [*36] already found, on other grounds, that such documents should be produced, to the extent they relate to this case (see discussion re Documents No. 12 and 14, supra.) The second argument, however, requires consideration.

Defendants refer the Court, in particular, to three allegedly selective disclosures that, they claim, warrant a finding that privilege and/ or work product has been waived. First, Defendants state that AIG has already produced to them an April 20, 2000 e-mail message concerning the Trochimko case, written by an AIG claims handler and sent to others within AIG. (See 8/29/02 Molod Ltr. at 3 and Ex. 6 thereto (Document Bates No. 0000060).) This is the same April 20, 2000, message that is contained in the e-mail strings listed on AIG's privilege log as Documents No. 11 and 13 (see descriptions of those documents, supra). AIG responds that this document is indeed entitled to protection, and that its prior disclosure, "in production of hundreds of pages of such memoranda and Claims file documents" was inadvertent. (9/20/02 Maguire Ltr. at 3.)

AIG, however, has not made clear to the Court what steps were taken to guard against inadvertent disclosure of [*37] work product. See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105-06 (S.D.N.Y. 1985). For the time being, Defendants are directed to return the document to counsel for AIG, but, if AIG wishes to continue to assert work product protection for this document and those related to it, AIG must set out, in affidavit form, and no later than two weeks from the date of this Order, all facts relevant to the question of whether it took reasonable precautions to protect the confidentiality of its work product. If necessary, the Court will then revisit this issue.

The second document highlighted by Defendants is a January 16, 2001 e-mail message from an AIG claims handler to others within AIG and to Mr. McCaffrey (litigation counsel). (See 8/29/02 Molod Ltr. at 4 and Ex. 7 thereto (Document Bates No. 0000055).) This is the same January 16, 2001 message that is contained in Document No. 2 on AIG's privilege log. (See supra.) As to this e-mail message, AIG -- seemingly ignoring the fact that the document appears on its privilege log -- asserts that the document was produced because it is "merely a short memo concerning the scheduling of a meeting [*38] with an excess carrier" and therefore is "of no substance nor relevance in the case." (9/20/02 Maguire Ltr. at 3.)

Whatever its rationale for producing the document, AIG does not deny that a copy was produced in discovery voluntarily. As a result, work product protection as to the document is waived. See Niagra Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 125 F.R.D. 578, 587 (N.D.N.Y. 1989) ("work product protection is waived when documents are voluntarily shared with an adversary"). The Court is not persuaded, however, that the production of this brief January 16, 2001 e-mail should effect a waiver as to any other work product materials withheld by AIG. The disclosed e-mail, while apparently prepared because of the litigation, merely indicates that a meeting will take place and asks for others' participation in that meeting. It does not contain any more substantive content, and, thus, it does not appear to be a document on which AIG can possibly rely to support its position in this litigation. Cf. Coleco Indus., Inc. v. Universal City Studios, 110 F.R.D. 688, 691-92 (S.D.N.Y. 1986) (where party relied on work product to support its position [*39] by affirmatively proffering the material through testimony, fairness required that discovery not be limited to selectively disclosed documents). Nor can there fairly be said to be any real "subject matter" of the document (other than the scheduling of a meeting) as to which work product protection can be considered waived. Cf. Fullerton v. Prudential Ins. Co., 194 F.R.D. 100, 104 (S.D.N.Y. 2000) ("waiver of work product by disclosing that work product to one's opponent waives the privilege only as to matter covered in the waived documents"). For these reasons, the work product waiver resulting from the voluntary disclosure of this document is appropriately limited to the document itself.

The third document to which Defendants refer in arguing for a privilege waiver is Document No. 16 on AIG's privilege log. As discussed above, this document

was produced in redacted form, but the produced portion itself appears to constitute work product. With respect to this document, Defendants argue that the unredacted section of the document was not only voluntarily produced, but that it relates to the relevant question of whether the AIG policy provided coverage to 845 UN Plaza [*40] on the Trochimko claim, and the related question of why AIG withdrew its disclaimer. (See 8/29/02 Molod Ltr. at 4.) Once again, the Court is hard-pressed to see why, in this action, these questions are actually relevant, as both sides now agree that the AIG policy *did* provide coverage to 845 UN Plaza. Nonetheless, Defendants are correct that the voluntary production of the unredacted portion of the document gives rise to a work product waiver. See *Niagra Mohawk*, 125 F.R.D. at 587. The question, then, is the appropriate scope of the waiver under the circumstances presented. See *Tribune Co. v. Purcigliotti*, 1997 U.S. Dist. LEXIS 228, No. 93 Civ. 7222 (LAP) (THK), 1997 WL 10924, at *5 (S.D.N.Y. Jan. 10, 1997) [HN14]("Depending upon the extent and context of the partial disclosure, the waiver may be broad ... or narrow ... Thus, for example, where there is a partial disclosure in the context of the litigation for the benefit of the privilege holder, there may be a complete subject matter waiver as to all communications on the subject. In contrast, where the disclosure is extrajudicial or non-prejudicial to an adversary, there may be no waiver or only a narrow one.") (citations [*41] omitted).

As a preliminary matter, the Court has already determined that the redacted portion of the document is separately protected by the attorney-client privilege, which affords protection that is "separate and independent" from that afforded by the work product doctrine. *Fullerton*, 194 F.R.D. at 103. At this point, the Court has not found a waiver of attorney-client privilege, and therefore will not require the redacted portion of Document No. 16 to be produced.

[HN15]"Fairness concerns" govern the further question of whether, by producing a portion of the document, AIG has waived work product protection for other work product material on the same subject. *In re Grand Jury Proceedings*, 219 F.3d at 191; see also *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 245 (E.D.N.Y. 2001) ("The same fairness concerns that govern the scope of the attorney-client privilege waiver guide waiver of the work product privilege."). "Because unfairness to the party seeking disclosure plays a central role in determination of the scope of the subject matter waiver, that party must demonstrate the specific prejudice it would suffer in the absence [*42] of the waiver." *Bank Brussels Lambert v. Credit Lyonnais (Suisse)*, 1995 U.S. Dist. LEXIS 14808, Nos. 93 Civ. 6876, 94 Civ. 1317 (JCF), 1995 WL 598971, at *6 (S.D.N.Y. Oct. 11, 1995).

To date, AIG has not, in this action, affirmatively relied on any work product material relating to its initial decision to disclaim coverage of 845 UN Plaza, or to its subsequent decision to withdraw its disclaimer. Nor has AIG given any indication that it intends to rely on such material at trial. Indeed, as already noted, the parties do not dispute that AIG owed a defense and indemnification to 845 UN Plaza. As this is not a contested issue, Defendants cannot demonstrate why they would be prejudiced if they cannot obtain work product documents relating to AIG's underlying decision-making on the issue. In these circumstances, the Court declines at this time to extend the work product waiver to documents, or portions of documents, other than the portion voluntarily produced. Should AIG attempt, however, to use any of this work product material at trial, or to introduce it by affidavit in the context of dispositive motion practice, the Court will reconsider this decision and may find that a broader work product waiver [*43] is appropriate.

## II. AIG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS REFLECTING COMMUNICATIONS BETWEEN TUDOR AND THE ATTORNEYS ASSIGNED BY TUDOR TO REPRESENT ITS INSUREDS

For its part, AIG has moved to compel production of the nine documents listed on Defendants' privilege log. These documents appear to be virtually all of the same type, and, therefore, the Court has not reviewed them *in camera*. Eight of the documents (Nos. 2-9) are claimed by Tudor to be privileged communications between Tudor and attorneys with the law firm of Thurm & Heller, which was retained by Tudor to provide a defense to 845 UN Plaza in the Trochimko suit. The one other document on the log (No. 1) is identified by Defendants as a privileged report prepared by the separate counsel retained by Tudor to represent Seasons in the underlying litigation. That document is dated December 27, 2000, which was after Seasons was impleaded in the Trochimko case. The parties do not appear to dispute that the documents contain privileged communications, but do dispute (1) whether AIG may have access to any of these documents without breaching privilege, and (2) whether privilege has been waived. n8

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 Because defendants have not asserted a work product claim with respect to any of