the listed documents, the Court will not consider such a claim. See S.D.N.Y. Local R. 26.2(a)(1) (requiring party relying on privilege to specify the privilege being asserted (including work product) in its privilege log).

------------ End Footnotes--------------

[*44]

### A. AIG's Argument That, As an Insurer of 845 UN Plaza, It Is Entitled To Access To the Thurm Heller Documents

With respect to the Thurm & Heller communications, AIG claims that it is entitled to see these documents because, like Tudor, it was also an insurer of 845 UN Plaza. [HN16]Under the common interest rule (see supra at n.5), an insurer aligned in interest with its insured may generally have access to the insured's privileged communications without breach of privilege. See North River, 1995 U.S. Dist. LEXIS 53, 1995 WL 5792, at *4. Tudor, however, asserts that all the documents in question were created during the period when 845 UN Plaza was disclaiming coverage for the Trochimko claim, and refusing to participate in 845 UN Plaza's defense. Essentially, Tudor argues that, when AIG took the position that it had no coverage obligation toward 845 UN Plaza, AIG lost any right it might otherwise have had to be privy to the strategy for that insured's defense. (See letter to the Court from Frederick M. Molod, Esq., dated June 11, 2002 at 2.)

AIG argues that Tudor cannot maintain that AIG has no right to view the documents and simultaneously allege in this action that AIG was, [*45] in fact, a co-insurer of 845 UN Plaza. In addition, AIG argues that, regardless of its own prior position, it has now accepted that it did owe indemnification and a defense to 845 UN Plaza in the Trochimko suit, and it has informed both 845 UN Plaza and Tudor that it has accepted these obligations. (See letters to the Court from Kenneth R. Maguire, Esq., dated June 3, 2002 ("6/3/02 Maguire Ltr.") and June 17, 2002 ("6/17/02 Maguire Ltr.").)

On this issue, Tudor has the better argument, at least with respect to six of the Thurm & Heller documents (Document Nos. 2, 3, 4, 5, 6, and 9, as listed on Defendants' privilege log). These six documents do appear to have been created during the period when AIG was disclaiming coverage. [HN17]Where an insurer disclaims coverage and fails to provide a defense to its insured, that insurer is not entitled, under the common interest rule, to gain access to the insured's communications with the counsel that does provide the insured's defense. Int'l Ins. Co. v. Newmont Mining Corp., 800 F. Supp. 1195, 1196 (S.D.N.Y. 1992). The fact that, in this action, Tudor has disagreed with AIG's initial coverage position is irrelevant to this analysis, [*46] as the issue turns on the actual relationship between AIG and 845 UN Plaza at the time the documents were generated. Similarly, AIG cannot now, by a belated acceptance of its coverage and defense obligations, turn back the clock, and undo the potentially adversarial relationship between it and 845 UN Plaza that existed at the time the documents were written. [HN18]Documents once entitled to protection from disclosure as either privileged or work product maintain that protection, unless privilege is waived. See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, 2002 U.S. Dist. LEXIS 17532, No. 00 Civ. 4763 (RMB) (JCF), 2002 WL 31093619, at *1-2 (S.D.N.Y. Sept. 17, 2002) (documents that were privileged at the time they were created did not lose privilege because adversary withdrew claim).

As to Documents Nos. 7 and 8, these documents are dated August 6, 1999, and June 28, 1999, respectively. From the information the parties have supplied, it appears that both of these documents pre-date AIG's disclaimer. Prior to AIG's disclaimer, it cannot be said that AIG's interest was even potentially adverse to its insured. Therefore, under the common interest rule, AIG should be permitted access [*47] to these two documents, without breaching the privilege that attaches to them.

### B. AIG's Arguments As To Privilege Waiver

AIG also argues that it should be permitted access to the Thurm & Heller communications because, according to AIG, Tudor waived the attorney-client privilege by making a claim in this action against AIG for payment of 50 percent of 845 UN Plaza's defense costs. According to AIG, it would be unfair to permit Tudor to seek AIG's payment of attorney's fees (i.e., fees incurred by Thurm & Heller), and, at the same time, deny AIG access to the documents showing whether those fees were reasonably incurred.

This argument seeks to invoke an "at issue" waiver; in other words, AIG is contending that, by placing the insured's defense costs at issue in this case, Tudor has waived privilege as to all documents relating to those costs. The Court does not accept, however, that merely asserting a claim for indemnification of defense costs should vitiate the attorney-client privilege with respect to all aspects of a client's defense. This would be too broad an application of the principle of the "at issue" waiver. See 670 Apartments Corp. v. Agric. Ins. Co., 1997 U.S. Dist. LEXIS 20689, No. 96 Civ. 1464 (PKL) (JCF), 1997 WL 801458, at *1-2 (S.D.N.Y.

Dec. 30, 1997) [*48] [HN19]("By claiming that its attorney's fees or actions in the underlying litigation were reasonable, [the insured] does not forfeit its protection of the privileged documents, providing it does not rely on the exact nature of the legal advice made at that time or introduce its contents to prove these assertions as part of its legal case."); *Prudential Ins. Co. of America v. Coca-Cola Enter., Inc.*, 1993 U.S. Dist. LEXIS 9993, No. 93 Civ. 1456 (KMW) (JCF), 1993 WL 276065, at *1 (S.D.N.Y. July 21, 1993) ("A demand for attorneys' fees, whether based on a fee-shifting statute or on a contractual obligation, does not by itself constitute a waiver."). As noted in *670 Apartments*, the reasonableness of the attorneys' fees actually incurred in a case can "in all probability ... be determined ... by examination of attorney time records and documents filed in court." *670 Apartments*, 1997 U.S. Dist. LEXIS 20689, 1997 WL 801458, at *2; *see also Prudential*, 1993 U.S. Dist. LEXIS 9993, 1993 WL 276065, at *1 ("Coca-Cola's concern about its ability to challenge the reasonableness of White & Case's fees is exaggerated. Coca-Cola has full access to the attorney's diary entries as well as to the final copies of documents [*49] that reflect the ultimate product of White & Case's labor.").

AIG further argues, however, that there is a particular reason here to allow access to counsel's communications with Tudor -- that is, because Tudor purportedly acted in bad faith with respect to its defense of 845 UN Plaza by commingling the defense of that insured with the defense of Tudor's other insured, Seasons. As mentioned above (*see supra* at 5), AIG contends that Tudor had a conflict of interest with respect to 845 UN Plaza, because, while it would have been in *845 UN Plaza's* interest to pass the Trochimko claim on to Seasons, it would *not* have been in *Tudor's* interest to do so, given the fact that Tudor stood alone as Season's sole insurer, but, as to 845 UN Plaza, Tudor could potentially share any coverage obligations with AIG. On its motion to compel, AIG asserts that a Tudor claims handler "acknowledged at his deposition" that Tudor failed to take appropriate steps to mitigate this conflict, in that it failed to build an internal "wall" to isolate the defense of 845 UN Plaza from the defense of Seasons. (*See* letter to the Court from Kenneth R. Maguire, Esq., dated September 20, 2002 ("9/20/02 Maguire [*50] Ltr."), at 2.) n9 AIG further asserts that, as a result of Tudor's conflict, and as evidence of its bad faith, Tudor apparently failed to direct counsel for 845 UN Plaza to bring an impleader action against Seasons. (*See* 6/3/02 Maguire Ltr., at 2; 6/17/02 Maguire Ltr., at 2.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n9 Although AIG refers to deposition testimony, it does not quote or submit any such testimony or any other evidence to the Court in support of its assertion that Tudor breached its duty of good faith to its insureds.

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - -

Although [HN20]an insurer is not permitted to control the decisions of insured's counsel, *see Feliberty*, 72 N.Y.2d at 120, 531 N.Y.S.2d at 782, the Court will accept, *arguendo*, that Tudor may have acted in bad faith toward its insured and improperly influenced counsel's handling of the insured's defense. The question, though, is whether this fact, if demonstrated, would open the door to disclosure to AIG of Tudor's otherwise privileged communications with counsel.

AIG relies on *Zurich Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 137 A.D.2d 401, 524 N.Y.S.2d 202 [*51] (1st Dep't 1988), for the proposition that, where a carrier has acted in bad faith in the defense of its insured, it cannot rely on privilege to shield the evidence of its misconduct. *Zurich*, however, involved a claim by an excess insurer against a primary insurer, for the primary's alleged bad faith refusal to settle an underlying claim against the insured. In holding that the primary insurer could not use the attorney-client privilege as a shield to prevent disclosure relevant to the asserted bad faith claim, the court relied on the fact that a primary insurer owes a fiduciary obligation to the excess insurer. *See id.* at 402, 524 N.Y.S.2d at 203; *see also Employers Mut. Cas. Co. v. Key Pharm., Inc.*, 1992 U.S. Dist. LEXIS 11091, No. 91 Civ. 1630 (LBS) (NG), 1992 WL 188336, at *1 (S.D.N.Y. July 27, 1992) (ruling in *Zurich* was "based on fiduciary principles").

Here, although AIG, in one of its letters to the Court, states that it is disputed in this case as to whether its policy was coinsurance or excess insurance to Tudor's policy (*see* 6/17/02 Maguire Ltr. at 1), Tudor's counterclaims against AIG seek a 50 percent contribution based on coinsurance (*see* Tudor Answer [*52] PP 41, 45), and AIG itself informed Tudor that it was prepared to share equally in 845 UN Plaza's defense (*see* 8/29/02 Molod Ltr., Ex. 2), suggesting that there is, in fact, no dispute that AIG and Tudor were simply co-insurers. AIG has not provided the Court with any authority for the proposition that a carrier owes a fiduciary duty to a co-insurer, and the Court is not aware of any such principle. n10 Thus, *Zurich* does not provide a rationale for requiring disclosure of the privileged communications at issue here, and is inapplicable.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n10 The only case AIG cites for this proposition, *Allstate Ins. Co. v. American Transit Ins. Co.*, 977 F. Supp. 197 (E.D.N.Y. 1997) (see 6/17/02 Maguire Ltr. at 2), in fact involved an excess carrier, and emphasized that "the primary insurer, entrusted with the defense of the claim, owes 'a primary obligation to its [insured] and to the excess insurer to exercise good faith in handling the defense *and to safeguard the rights and interests of the excess carrier.*'" *Allstate*, 977 F. Supp. at 200 (citation omitted; emphasis added).

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*53]

To the extent AIG is arguing that Tudor has waived privilege by injecting into this case the issue of its good faith, this argument also fails. Other than merely seeking reimbursement from AIG for the cost of its settlement with Trochimko and related attorney's fees, Tudor has not raised any issue in this case that would, in fairness, require disclosure of its privileged communications with counsel regarding the defense of its insured. Rather, *AIG* has apparently raised the issue of Tudor's alleged bad faith as a *defense* to Tudor's counterclaim for reimbursement. (See 6/3/02 Maguire Ltr. at 2 (arguing that Tudor's alleged bad faith "will ... support an estoppel argument against Tudor's claim for co-insurance").) [HN21]Generally, where a party does not itself place in issue the matter as to which the privileged communications are relevant, the privilege is not waived. See generally *Tribune*, 1997 U.S. Dist. LEXIS 228, 1997 WL 10924, at *5-6 (discussing standards for "at issue" waiver, and declining to find a waiver where issue of plaintiff's conduct was raised by way of defense); see also *Arkwright*, 1994 U.S. Dist. LEXIS 13216, 1994 WL 510043, at *13 (plaintiff insurer "has not placed its good faith [*54] adjustment of the underlying ... claim at issue simply by suing for indemnity").

AIG also argues that it should not suffer prejudice in this action as a result of Tudor's "illicit conduct." (9/20/02 Maguire Ltr. at 2.) [HN22]Where attorney-client privilege is concerned, however, the concept of "prejudice" is irrelevant, unless there is an independent basis for a privilege waiver. Once a waiver is found, *then* issues of fairness become relevant to determining the scope of the appropriate waiver.

In any event, AIG has not articulated how it would be prejudiced if the privileged documents at issue are not disclosed. As already noted, Tudor does not appear to be relying, in whole or in part, on the privileged communications to defend against AIG's claims, or to support its own counterclaims. Further, as pointed out in *Arkwright*, even if the protected communications contain factual information that would be useful to AIG in prosecuting its claims or in defending against the asserted counterclaims, AIG "has not shown that such information is not available through depositions and interrogatories." *Arkwright*, 1994 U.S. Dist. LEXIS 13216, 1994 WL 510043, at *13 . In fact, AIG already claims to have evidentiary [*55] support for its contention that Tudor commingled the defense of insureds with adverse interests. (See 9/20/02 Maguire Ltr at 2 (referring to the testimony of the Tudor claims handler).) Further, AIG claims to have already obtained, through discovery, an investigator's report that advised Tudor (or at least the Thurm & Heller firm) of Seasons's purported contractual obligation to indemnify 845 UN Plaza. AIG was free to ask Tudor's claim handler whether he was aware of this report, and, if so, when he became aware of it. AIG has not shown that this type of discovery would be insufficient to enable it to advance its estoppel defense.

In sum, AIG has not advanced any arguments that persuade the Court that Tudor has waived privilege as to its communications with Thurm & Heller, made during the course of 845 UN Plaza's defense. As for the one document on Defendants' privilege log that does not reflect Thurm & Heller communications, but rather constitutes a report by Season's separate counsel (Document No. 1), AIG has not provided any rationale that would support production, and the Court declines to find a privilege waiver.

**CONCLUSION**

For all of the above reasons:

(1) AIG [*56] is directed to produce to Defendants the following documents listed on AIG's privilege log: Documents Nos. 2, 12, 14, 18 and 19.

(2) Defendants are directed to produce to AIG the following documents listed on Defendants' privilege log: Documents No. 7 and 8.

(3) To the extent this Memorandum and Order directs the parties to make any supplementary submissions, such submissions shall be made no later than two weeks from the date of this Order.

Dated: New York, New York

December 4, 2002

SO ORDERED

DEBRA FREEMAN

United States Magistrate Judge