UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PARFUMS  DE COEUR, LTD.   : CIVIL ACTION NO.
            : 302 CV 1454 (RNC)
  Plaintiff,      :
            :
v.           :
            :
LE PAPILLON, LTD.     :
            :
  Defendant,     : DECEMBER 22, 2004

**SECOND AMENDED COMPLAINT**

**FIRST COUNT** **(BREACH OF CONTRACT)**

1.  At all times hereinafter mentioned, Plaintiff, PARFUMS DE COEUR, LTD. ("PARFUMS") was and is a corporation duly organized and existing and qualified to do business in the State of Connecticut with a principal place of business in Darien, Connecticut.

2.  Upon information and belief, Defendant, LE PAPILLON LTD. ("PAPILLON") is a New Jersey corporation with a main business address of 12 Albany Street, New Brunswick, NJ 08901 and which does business in the State of Connecticut.

3. Plaintiff is a company engaged in the business of producing perfume fragrances including fragrances that it packages in Glitter Roll-On bottles for retail sale.

4. Defendant is engaged in the business of producing and selling assembled ball and collar fitments for use with bottles.

5. PARFUMS' Glitter Roll-On bottles are topped with two part dispensing mechanisms consisting of a roller ball and collar fitment (the "Mechanisms") that enable consumers to apply the fragrances.

6. Beginning on or about February 16, 2001, Plaintiff entered into a contract with PAPILLON pursuant to various purchase orders, whereby Plaintiff purchased from PAPILLON, and PAPILLON sold and supplied to Plaintiff, the Mechanisms to be used on top of its Glitter Roll-On bottles. Copies of purchase orders involved in this action are attached hereto as Exhibit "A" and made a part hereof.

7. Pursuant to the purchase order, PAPILLON expressly stated that the Mechanisms were "of merchantable quality,

conforms to specifications and is suitable for the Purchaser's intended uses and purposes in the ordinary course of business."

8.    Relying on PAPILLON'S contractual obligations, PARFUMS used the Mechanisms it purchased from PAPILLON for the purpose described above as the dispensing mechanism on its Glitter Roll-On products.

9.    From on or about June 2001 to November 12, 2004, PARFUMS received numerous complaints and claims alleging injuries that occurred prior to December 31, 2003, to consumers of its Glitter Roll-On products who claimed that the roller ball in the Mechanism supplied by PAPILLON would burst out of the fitment when pressure was applied to the bottle.

10.    On or about January 9, 2002, PAPILLON advised PARFUMS that the mold used to create the collar fitments of the Mechanisms was defective.

11.    PAPILLON breached its express contract with PARFUMS in one or more of the following ways:

    (a)   the Mechanisms provided by PAPILLON were not fit
          for normal use due to the defect which caused the

3

roller ball to burst out of the fitment when pressure was applied.

(b)  the Mechanisms provided by PAPILLON were not acceptable in the trade due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(c)  the Mechanisms provided by PAPILLON were not suitable  for PARFUMS' intended uses and purposes in the ordinary course of its business due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(d)  the Mechanisms provided by PAPILLON did not conform to specifications due to the defect which caused the roller ball to burst out of the fitment when pressure  was applied .

12. As a result of such defective quality of the Mechanisms and PAPILLON'S breach of its contract, PARFUMS has suffered substantial losses and damages including, but not limited to, lost profits, cancellation of its product liability

and general liability insurance by Travelers, increased insurance costs, excess manufacturing costs, other incidental and consequential damages, attorneys' fees and costs.

**SECOND COUNT** **(BREACH OF EXPRESS WARRANTY)**

1-6. Plaintiff repeats and realleges paragraphs 1 through and including 6 of the First Count as if same were fully set forth at length herein.

7. Pursuant to the purchase order, PAPILLON expressly warranted that the Mechanisms were "of merchantable quality, conforms to specifications and is suitable for the Purchaser's intended uses and purposes in the ordinary course of business."

8. Relying on PAPILLON'S express warranties PARFUMS used the Mechanisms it purchased from PAPILLON for the purpose described above as the dispensing mechanism on its Glitter Roll-On products.

9. From on or about June 2001 to November 12, 2004, PARFUMS received numerous complaints and claims alleging injuries that occurred prior to December 31, 2003, to consumers of its Glitter Roll-On products who claimed that the roller ball

in the Mechanism supplied by PAPILLON would burst out of the fitment when pressure was applied to the bottle.

10. On or about January 9, 2002, PAPILLON advised PARFUMS that the mold used to create the collar fitments of the Mechanisms was defective.

11. PAPILLON breached its express warranty with PARFUMS in one or more of the following ways:

    (a) the Mechanisms provided by PAPILLON were not fit for normal use due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

    (b) the Mechanisms provided by PAPILLON were not acceptable in the trade due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

    (c) the Mechanisms provided by PAPILLON were not suitable for PARFUMS' intended uses and purposes in the ordinary course of its business due to the defect

which caused the roller ball to burst out of the
fitment when pressure was applied.

(d)  the Mechanisms provided by PAPILLON did not
conform to specifications due to the defect which
caused the roller ball to burst out of the fitment
when pressure  was applied.

12. As a result of such defective quality of the
Mechanisms and PAPILLON'S breach of its express warranty,
PARFUMS has suffered substantial losses and damages including,
but not limited to, lost profits, cancellation of its product
liability and general liability insurance by Travelers,
increased insurance costs, excess manufacturing costs, other
incidental and consequential damages, attorneys' fees and costs.

**THIRD COUNT** **(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)**

1-6. Plaintiff repeats and realleges paragraphs 1 through
and including 6 of the First Count as if same were fully set
forth at length herein.

7.   At all relevant times mentioned herein, PAPILLON was a merchant of the Mechanisms, as that term is described in Conn. Gen. Stat. § 42a-2-314.

8.   Relying on the implied warranty of merchantability, PARFUMS used the Mechanisms it purchased from PAPILLON for the purpose described above as the dispensing mechanism on its Glitter Roll-On products.

9.   From on or about June 2001 to November 12, 2004, PARFUMS received numerous complaints and claims alleging injuries that occurred prior to December 31, 2003, to consumers of its Glitter Roll-On products who claimed that the roller ball in the Mechanism supplied by PAPILLON would burst out of the fitment when pressure was applied to the bottle.

10.  On or about January 9, 2002, PAPILLON advised PARFUMS that the mold used to create the collar fitments of the Mechanisms was defective.

11.  The Mechanisms sold and supplied by PAPILLON to PARFUMS were subject to the implied warranty of merchantability pursuant to Conn. Gen. Stat. Section 42a-2-314.

12.  PAPILLON   breached   the   implied   warranty   of merchantability  applicable  to  the  Mechanisms  it  sold  and supplied to PARFUMS in one or more of the following ways:

    (a)  the Mechanisms provided by PAPILLON were not fit for normal use due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

    (b)  the Mechanisms provided by PAPILLON were not acceptable in the trade due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

    (c)  the Mechanisms provided by PAPILLON were not suitable  for PARFUMS' intended uses and purposes in the ordinary course of its business due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

    (d)  the Mechanisms provided by PAPILLON did not conform to specifications due to the defect which

caused the roller ball to burst out of the fitment when pressure was applied.

13. As a result of such defective quality of the Mechanisms and PAPILLON'S breach of the implied warranty of merchantability, PARFUMS has suffered substantial losses and damages including, but not limited to, lost profits, cancellation of its product liability and general liability insurance by Travelers, increased insurance costs, excess manufacturing costs, other incidental and consequential damages, attorneys' fees and costs.

**FOURTH COUNT** **(BREACH OF IMPLIED WARRANTY OF FITNESS)**

1-6. Plaintiff repeats and realleges paragraphs 1 through and including 6 of the First Count as if same were fully set forth at length herein.

7. At the time of the purchase orders, PAPILLON knew or had reason to know of the particular purposes for which the Mechanisms were to be used by PARFUMS, namely to dispense perfume from PARFUMS Glitter Roll-On products, and PAPILLON further knew or had reason to know that PARFUMS was relying

solely on PAPILLON's skill and judgment to furnish Mechanisms that were suitable for PARFUMS' purposes.

8.   The assembled fitments purchased by PARFUMS pursuant to the purchase orders from PAPILLON were subject to the implied warranty of fitness for  particular purpose prescribed by Conn. Gen. Stat. § 42a-2-315.

9.   Relying on the implied warranty of fitness for particular use, PARFUMS used the Mechanisms for the purpose described above as the dispensing mechanism on its Glitter Roll-On products.

10.  From on or about June 2001 to November 12, 2004, PARFUMS received numerous complaints and claims alleging injuries that occurred prior to December 31, 2003, to consumers of its Glitter Roll-On products who claimed that the roller ball in the Mechanism supplied by PAPILLON would burst out of the fitment when pressure was applied to the bottle.

11.  On or about January 9, 2002, PAPILLON advised PARFUMS that the mold used to create the collar fitments of the Mechanisms was defective.

12.  PAPILLON breached the implied warranty of fitness for a particular purpose as provided in Conn. Gen. Stat. Section 42a-2-315, in one or more of the following ways:

(a)  the Mechanisms provided by PAPILLON were not fit for the particular use due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(b)  the Mechanisms provided by PAPILLON were not acceptable in the trade due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(c)  the Mechanisms provided by PAPILLON were not suitable  for PARFUMS' intended uses and purposes in the ordinary course of its business due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(d)  the Mechanisms provided by PAPILLON did not conform to specifications due to the defect which

caused the roller ball to burst out of the fitment when pressure  was applied.

13. As a result of such defective quality and PAPILLON'S breach of the implied warranty of fitness for particular purpose, PARFUMS has suffered substantial losses and damages including, but not limited to, lost profits, cancellation of its product liability and general liability insurance by Travelers, increased insurance costs, excess manufacturing costs, other incidental and consequential damages, and attorneys' fees and costs.

**<u>FIFTH COUNT</u> (CONTRACTUAL INDEMNIFICATION)**

1-6. Plaintiff repeats and realleges paragraphs 1 through and including 6 of the First Count as if same were fully set forth at length herein.

7. Pursuant to the purchase order, PAPILLON expressly stated that the Mechanisms were "of merchantable quality, conforms to specifications and is suitable for the Purchaser's intended uses and purposes in the ordinary course of business."

8. Pursuant to the purchase order, PAPILLON expressly stated that it would hold PARFUMS "harmless against any liability, judgment, damages, incidental or consequential, loss or expense, including reasonable counsel fees resulting from Seller's failure to meet the requirements of the [warranties]."

9. Relying on PAPILLON'S express warranties, PARFUMS used the Mechanisms it purchased from PAPILLON for the purpose described above as the dispensing mechanism on its Glitter Roll-On products.

10. From on or about June 2001 to November 12, 2004, PARFUMS received numerous complaints and claims alleging injuries that occurred prior to December 31, 2003, to consumers of its Glitter Roll-On products who claimed that the roller ball in the Mechanism supplied by PAPILLON would burst out of the fitment when pressure was applied to the bottle.

11. On or about January 9, 2002, PAPILLON advised PARFUMS that the mold used to create the collar fitments of the Mechanisms was defective.

12. PAPILLON breached its express warranty with PARFUMS in one or more of the following ways:

(a)  the Mechanisms provided by PAPILLON were not fit for normal use due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(b)  the Mechanisms provided by PAPILLON were not acceptable in the trade due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(c)  the Mechanisms provided by PAPILLON were not suitable  for PARFUMS' intended uses and purposes in the ordinary course of its business due to the defect which caused the roller ball to burst out of the fitment when pressure was applied.

(d)  the Mechanisms provided by PAPILLON did not conform to specifications due to the defect which caused the roller ball to burst out of the fitment when pressure  was applied.

13.   Pursuant to the hold harmless provision in the purchase orders, PAPILLON expressly and impliedly contracted to indemnify PARFUMS against all claims, judgments, damages, incidental or consequential, loss or expense, including reasonable counsel fees damages resulting from its failure to satisfy its warranties.

**SIXTH COUNT** (CUTPA)

1-12.   Plaintiff repeats and realleges paragraphs 1 through and including 11 of the First Count as if same were fully set forth at length herein.

13.   The matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

14.   This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332.

15.   PAPILLON failed to have any proper quality control measures in place in its manufacturing process of the Mechanisms or to oversee the actions of its molder in maintaining the mold and producing the Mechanisms.

16. In or about late June/early July 2001, PAPILLON received complaints from another one of its customers, Kaufman Containers ("Kaufman"), indicating that the roller balls were coming out of the fitments.

17. As a result of the roller balls coming out of the fitments, Kaufman rejected thousands of Mechanisms.

18. After receiving notification in late June/early July 2001, PAPILLON worked with Kaufman Containers to solve the problems Kaufman's customer, Bonne Bell, was experiencing with the Mechanisms.

19. Despite possessing the knowledge of the widespread problems Kaufman and Bonne Bell experienced, PAPILLON kept this knowledge and the extent of the problem secret from PARFUMS.

20. On or about August 2, 2001, PARFUMS notified PAPILLON that the balls were coming out of the fitments and sought PAPILLON's assistance in correcting the problem.

21. Despite possessing the knowledge that PARFUMS was experiencing a similar problem as Kaufman and Bonne Bell,

PAPILLON kept this knowledge and the extent of the problem secret from PARFUMS.

22. On or about August 2, 2001, PARFUMS sent PAPILLON samples of the containers it was using with the Mechanisms and the results of testing done by its filler which showed widely inconsistent ball retention in the Mechanisms supplied by PAPILLON. PARFUMS requested PAPILLON's assistance in solving the ball retention problem.

23. Despite possessing the knowledge of PARFUMS' containers which PAPILLON alleges in defense of this action were not suitable for use with the Mechanisms, PAPILLON kept this knowledge secret from PARFUMS.

24. In late September 2001, after losing the Bonne Bell business, PAPILLON engaged the services of a consultant to examine its mold and molding process. He determined that the mold core pins which make the Mechanism were very inconsistent cavity to cavity and two cavities were below specification. Because of the inconsistencies in the cavities of the mold, PAPILLON could not produce consistent parts.

25.  Despite possessing said knowledge about the defective mold, PAPILLON also kept this information secret from PARFUMS.

26.  PAPILLON also discovered that there were problems with the molding process used by its molder, but also kept this information secret from PARFUMS.

27.  PAPILLON had a duty to disclose the information it had about the mold and the Mechanisms.

28.  PAPILLON's failure to disclose all information regarding its Mechanisms is immoral, unethical, oppressive, unscrupulous, and offends public policy.

29.  PAPILLON's failure to disclose said information resulted in substantial injuries being caused to consumers.

30.  PAPILLON's failure to disclose said information to PARFUMS was deceptive and unfair, and amounted to a deceptive trade practice.

31.  PARFUMS suffered ascertainable losses including, but not limited to, lost profits, cancellation of its product liability and general liability insurance by Travelers, increased insurance costs, excess manufacturing costs, payment

of claims by consumers, other incidental and consequential damages, and attorneys' fees and costs.

32. PARFUMS is entitled to damages pursuant to Conn. Gen. Stat. § 42-110a, et seq.

**WHEREFORE,** Plaintiff PARFUMS claims as to Counts One through Four:

1. Money damages;

2. Consequential and incidental damages pursuant to Conn. Gen. Stat. § 42a-2-715.

3. Costs of this action;

4. Reasonable attorney fees; and

5. Such other and further relief as this court may deem just and proper.

**WHEREFORE,** Plaintiff PARFUMS seeks as to Count Five:

1. Money damages;

2. Costs of this proceeding;

3. Reasonable attorney fees; and

4.   Such other and further relief as this court may deem just and proper.

**WHEREFORE,** Plaintiff PARFUMS seeks as to Count Six:

1.   Damages pursuant to Conn. Gen. Stat. § 42-110a, et seq.;

2.   Costs of this proceeding;

3.   Reasonable attorney fees;

4.   Punitive damages; and

5.   Such other and further relief as this court may deem just and proper.

                    THE PLAINTIFF

                    PARFUMS DE COEUR, LTD.


                    BY: _____
                        Richard E. Castiglioni(ct072820)
                        Jonathan M. Shapiro(ct24075)
                        DISERIO MARTIN O'CONNOR &
                          CASTIGLIONI, LLP  #102036
                        One Atlantic Street
                        Stamford, CT 06901
                        (203)358-0800

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing has been mailed, postage prepaid, this 22nd day of December, 2004, to the following counsel and parties of record:

Robert N. Chan
Robson Ferber Frost Chan & Essner, LLP
530 Fifth Avenue
New York, NY 10036
(212) 944-2000

Michael T. Ryan (CT05685)
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT 06905-3057
(203) 357-9200

Peter D. Clark, Esq. (CT06814)
Law Offices of Peter D. Clark
525 Bridgeport Avenue
Shelton, CT 06484
(203) 925-9688

_____
Jonathan M. Shapiro

H:\LIT\JMS\Parfum\21090.second amended complaint.doc